# EXHIBIT 1



JAYSON S. MYERS
CHIEF ADMINISTRATIVE LAW JUDGE
TERESA A. DEMEO
CHRISTOPHER M. TATE
MATTHEW J. TIERNEY
PRINCIPAL ADMINISTRATIVE LAW JUDGE

STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
ADMINISTRATIVE LAW JUDGE SECTION
290 MAIN STREET, RM. 207
BUFFALO NY 14202
(716) 851-2711
FAX:(716) 851-2795

MARK SOKOLOWSKI
SENIOR ADMINISTRATIVE LAW JUDGE

*DECISION AND NOTICE OF DECISION*
*DECISIÓN Y AVISO DE LA DECISIÓN TOMADA*

A.L.J. Case No. 017-13333

IN THE MATTER OF:

JENNIFER S FISCHMAN
40 WILDWOOD RD
SCARSDALE NY 10583

Mailed and Filed: October 24, 2017

MITSUBISHI CHEMICAL
HOLDINGS AMERICA INC
655 3RD AVENUE
NEW YORK NY 10017-4611

HOGUET NEWMAN ET AL
RICHARD M. REICE, ESQ
10 EAST 40TH ST - FLOOR 35
NEW YORK NY 10016-

GORDON & REES
MERCEDES COLWIN, ESQ.
1 BATTERY PARK PLAZA 28TH FL
NEW YORK NY 10004-

MITSUBISHI CHEMICAL
HOLDINGS AMERICA INC
401 VOLVO PKWY
CHESAPEAKE VA 23320-4611

Department of Labor Office: 831            Hearing Requested: July 12, 2017

**PLEASE TAKE NOTICE** that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within **TWENTY DAYS** from the date this decision was mailed. **READ IMPORTANT INFORMATION ON REVERSE SIDE REGARDING YOUR RIGHT TO APPEAL.** Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear.

**POR FAVOR TOME NOTA:** esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, puede apelar dentro de **VEINTE DIAS** contados a partir de la fecha en que esta decisión fue enviada por correo. **LEA LA INFORMACIÓN IMPORTANTE AL REVERSO SOBRE SUS DERECHOS DE APELACIÓN.** Cualquiera de las partes que falle en comparecer a la audiencia, tiene el derecho de solicitar que se reabra su caso. Para que dicha solicitud sea otorgada, la parte interesada debe solicitarlo dentro de un periodo de tiempo razonable y debe establecer buena causa por no haber comparecido a la audiencia.

DOCUMENTO IMPORTANTE. PUEDE OBTENER UNA TRADUCCIÓN DEL MISMO LLAMANDO
AL 1-888-209-8124 (FUERA DEL ESTADO DE NUEVA YORK 1-877-358-5306)

ISSUES:    Loss of employment through misconduct.
           Claimant's Application to Reopen Case No. 017-10873.

AB 665-0 (10/06)

The Department of Labor issued the initial determination disqualifying the claimant from receiving benefits effective January 31, 2017, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by MITSUBISHI CHEMICAL prior to January 31, 2017 cannot be used toward the establishment of a claim for benefits. The claimant requested a hearing.

The Claimant has applied to reopen A.L.J. Case No. 017-10873. In that case, the Administrative Law Judge sustained the initial determination based upon the claimant's failure to proceed at a hearing on June 29, 2017.

Telephone conference hearings were held at which testimony was taken. There were appearances by and on behalf of the claimant and by and on behalf of the employer.

FINDINGS OF FACT: The hearing in A.L.J. Case No. 017-10873 was held on June 29, 2017. The claimant was not able to proceed with the hearing on that date because she had just recently retained counsel. The case was closed with leave to apply to reopen.

The claimant is an attorney who was admitted to practice in California in 1996. She is registered as in house counsel in New York State. She was hired as Assistant General Counsel by the employer, a Japanese corporation, on March 3, 2008. She became the Acting General Counsel on April 1, 2015 and held that title until November 30, 2015, after the return to the company of a male attorney who had left in 2007 and then returned as General Counsel. The claimant handled labor matters on behalf of the employer and was responsible for managing litigation. She had four or five attorneys to supervise and was in charge of legal matters for 22 affiliated companies of the corporation. As part of her regular job duties, she engaged in multiple settlement negotiations and was allowed to make settlement offers on behalf of the employer for lawsuits other than the one in issue in the instant case. The employer had no spcific rules about how to condcut or manage litigation matters.

In 2016, the employer filed a lawsuit against another business and sought damages of 2.5 million dollars. After a settlement conference with a United States Magistrate Judge, the employer gave the General Counsel the authority to settle the case. As part of this proceeding, an outside attorney was retained to assist in the settlement negotiations. The claimant and her supervisor were in regular communication with a "window person"(a lower level functionary) at the corporation in Japan. They were also communicating regularly with various other high level members of the corporation. The "window person" told the claimant to negotiate a settlement with the opposing party to the lawsuit. The claimant was in charge of the subject litigation at the time that the new General Counsel returned to the company and she was the person who hired the outside counsel. In September of 2016, the opposing party threatened to file a bankruptcy proceeding, which would have reduced the employer's opportunity to get its money.

Settlement conferences for this lawsuit began in November of 2016 and the employer granted broad authority to its in house attorneys to settle the case. An offer to settle was made on December 28, 2016. The claimant was on vacation on December 30, 2017 and then took ill until January 4, 2017. She had a discussion with her supervisor, the General Counsel on or about January 4, 2017 where he told her that he was thinking that they should offer to settle for 2.2 million dollars. The General Counsel did not prohibit the claimant from communicating a counter offer of settlement. The claimant proposed a figure of 2.3 million and he agreed. The claimant authorized the outside counsel to make the offer and he did so on January 7, 2017, offering to settle for a payment of 2.3 million.. The claimant got sick again on January 5, 2017, was home for a couple of days and forgot to communicate the details of the settlement offer to the "window person" in Japan. On January 10, 2017, the claimant and the General Counsel had an in-person meeting in New York City with a higher-level member of the corporation and told him about all of the settlement issues and actions. He said that he agreed with their strategy and he did not express any displeasure with the fact that the offer had been made.

Nine days after this meeting, there were some e mail exchanges with the "window person" in Japan, who expressed surprise at the fact that there had been an offer of settlement made. He wrote to the General Counsel and said "personally, I do not believe that the $2.3 MM offer is not so bad. But some MCC members are a little upset by the fact that Josh made it without advising us of the offer. I appreciate that you check what happened in the process of that offer. There might be miscommunication between us. But please kindly supervise Jennifer(and Josh) if the process was not appropriate. Please understand that we do not want this kind of thing happen again in the future" (sic) The claimant learned of this e mail exchange and wrote her own e mail to the "window person" where she told him that his action of writing to her supervisor could be considered "back-stabbing". After additional e mails back and forth between the claimant and the "window person" where she offered a "mea culpa", nothing more was said about this issue until January 30, 2017, when the claimant was discharged by the General Counsel. For the week before the discharge, the claimant and her supervisor, the General Counsel, were traveling around California while the claimant administered training in ethics to employer subsidiaries.

On January 30, 2017, the General Counsel called the claimant into a meeting in the presence of human resources person, wherein he read aloud a document to explain that she was being discharged. He stated that she had a documented history of poor communication and a lack of judgment. No such documentation was presented. He stated that her presentation of the settlement offer was patently unethical and that she had deliberately failed to disclose her actions. Prior to the date of discharge, the claimant had no warnings about her job performance and had no idea that anything she had done had placed her job in jeopardy.

OPINION: On application duly made, an Administrative Law Judge may reopen a case where a decision was made upon or following the default of a party if such party shows good cause for the default. (See, Appeal Board Rule 12 NYCRR 461.8.) The credible evidence establishes that the claimant failed to proceed at the hearing in A.L.J. Case No. 017-10873 because the claimant had just recently retained counsel. I find that such circumstances constitute good cause for the default and that the application to reopen is therefore granted.

Pursuant to Labor Law § 593 (3), a claimant is disqualified from receiving benefits after having lost employment through misconduct in connection with that employment. Pursuant to Labor Law § 527, the wages paid in such employment cannot be used to establish a future claim for benefits.

The credible evidence establishes that the claimant was discharged from her job under circumstances that did not rise to the level of misconduct within the meaning of the Unemployment Insurance law. One of the hallmarks of the Unemployment Insurance law regarding the determination of misconduct is a finding that a claimant's actions have been to the detriment of the employer. That element is completely absent in this case. At the very worst, the claimant forgot to communicate immediately with the "window person" from the corporation about the proffered settlement figure by the outside counsel, which was done on January 7, 2017. This falls within the ambit of poor performance, which is not misconduct in the Unemployment Insurance law.Her failure to do this is excused by the fact that she was on vacation and then sick, off and on, between December 30 and January 9, 2017. I note that the claimant's unrefuted testmony establishes that she and the General Counsel met with a corporate higher up on January 10, 2017 where the details of the litigation and the settlement offer were disclosed and that he indicated that he agreed with their strategy in the case. Also, the email written by the "window person " on January 19, 2017 to the General Counsel expresses only mild displeasure with the fact that the offer was made. There was no testimony offered by the employer to prove that the corporation suffered as a result of this offer. I must also assess the credbility of the testimony of the employer's General Counsel in his contention that he expressly told the claimant that she had to clear the settlement offer with the client first.   The fact that he would accompany the claimant to Califonia for a week of ethics trainings and then fire her for ethics violatons strains credulity. This could be called "having your cake and eating it too". If, as he says, the claimant violated some eithical standard, why then would he do nothing to address the issue with her prior to allowing her to provide trainings in ethics? I msut also note that he admitted that there were no established rules about how to proceed with litigation and that the claimant had no prior

..ys.

She therefore did not know and could not have known that her job was at risk. I conclude that the claimant was discharged for reasons which were not disclosed by the employer and which did not rise to the level of misconduct. The employer was within its rights to discharge the claimant for any legal reason it deemed fit, but there is a lack of substantial evidence to show that there was misconduct. The claimant is entitled to her benefits.

DECISION: The claimant's application to reopen A.L.J. Case No. 017-10873 is granted.

The initial determination, disqualifying the claimant from receiving benefits effective January 31, 2017, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by MITSUBISHI CHEMICAL prior to January 31, 2017 cannot be used toward the establishment of a claim for benefits, is overruled.

The claimant is allowed benefits with respect to the issues decided herein.

CB

/s/ Catherine Agnello
**Administrative Law Judge**