**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER S. FISCHMAN, | Index No. 18-cv-08188 (JMF) |
| Plaintiff, | |
| v. | |
| MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.; MITSUBISHI CHEMICAL CORPORATION; MITSUBISHI CHEMICAL HOLDINGS CORPORATION; NICHOLAS OLIVA, in his individual and professional capacities; DONNA COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in their individual and professional capacities, | |
| Defendants. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOVING DEFENDANTS' MOTION TO DISMISS

---

**GORDON & REES, LLP**
ATTORNEYS FOR MOVING DEFENDANTS
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500
FAX:    (212) 269-5505

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

PLAINTIFF'S COMPLAINT....................................................................................2

PLAINTIFF'S ALLEGATIONS ................................................................................3

ARGUMENT ...........................................................................................................5

    A.    The Legal Standard On A Motion To Dismiss Under FRCP 12(b)(6) ...................5

    B.    The Complaint Should Be Dismissed Because It Relies Almost
Exclusively On Privileged And Confidential Information .......................................6

        1.    As Former Counsel For Mitsubishi, Plaintiff Has Ethical
Obligations To Protect Privileged And Confidential Information.............. 6

        2.    Plaintiff Relies Upon Confidential Information To Support Her
Claims And Evinces An Intent To Reveal Further Confidential
Information ........................................................................................ 9

            a.    Plaintiff's Complaint Is Replete With Privileged and
Confidential Information ................................................... 9

        3.    Plaintiff's Reliance On Confidential Information Necessitates
Dismissal........................................................................................... 12

            a.    Plaintiff's Discrimination Claims Are Wholly Reliant Upon
The Disclosure of Confidential Information................................ 12

                i.    Failure to Promote............................................. 13

                ii.    Demotion.......................................................... 14

                iii.    Termination....................................................... 15

                iv.    Pay Discrimination............................................. 16

            b.    Plaintiff's Retaliation Claims Are Wholly Reliant Upon
The Disclosure of Confidential Information................................ 16

                i.    Failure to Promote............................................. 17

                 ii.    Demotion.......................................................... 17

                 iii.    Termination....................................................... 18

c.  Without Reliance on Confidential Information, Plaintiff Fails to State A Claim .................................................................. 18

    i.  Plaintiff's Claims for Discrimination and Retaliation Must be Dismissed (Causes of Action Nos. 1, 2, 4, 5, 6, 7(a), 7(b)) .............................................. 18

    ii.  Plaintiff's Claims for Aiding and Abetting Must Similarly be Dismissed (Causes of Action Nos. 9 and 10) ............................................................................. 20

    iii.  Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Destruction of Employment Opportunities Must Similarly be Dismissed (Causes of Action Nos. 7(c), 8) ...................... 21

C.  Independent Grounds Exist For Dismissing Multiple Causes of Action ............ 21

    1.  Plaintiff's Claim for Retaliation in Violation of NYLL §215 (Cause of Action No. 7(b)) ........................................................ 21

    a.  NYLL §215 Protects Plaintiffs Who Complain of NYLL Violations .................................................................................... 21

    2.  Plaintiff's Claim for Intentional Infliction of Emotional Distress Must Fail (Cause of Action No. 7(c)) ...................................... 22

    3.  Plaintiff's Claim For Negligent Destruction of Plaintiff's Employment Opportunities Must Fail (Cause of Action No. 8) ............... 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ................................................................................... 5

*Ackerman v. National Property Analysts*,
  887 F. Supp. 510 (S.D.N.Y. 1993) ...................................................................... 8, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5

*Baity v. Kralik*,
  51 F. Supp. 3d 414 (S.D.N.Y. 2014) ..................................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 5

*Carroll v. Bayerische Landesbank*,
  150 F. Supp. 2d 531 (S.D.N.Y. 2001) ................................................................... 23

*Castro v. New York City Bd. of Educ. Personnel Dir.*,
  No. 96 Civ. 6314 (MBM) 1998 U.S. Dist. LEXIS 2863 (S.D.N.Y. Mar. 12, 1998) ................ 24

*Conboy v. AT&T Corp.*,
  84 F. Supp.2d 492 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001) ................................ 23

*Copantitla v. Fiskardo Estiatorio, Inc.*,
  788 F. Supp.2d 253 (S.D.N.Y. 2011) ................................................................... 22

*Doe v. A Corp.*,
  330 F. Supp. 1352 (S.D.N.Y. 1971) ....................................................................... 7

*Eckhaus v. Alfa-Laval, Inc.*,
  764 F. Supp. 34 (S.D.N.Y. 1991) ........................................................ 8, 9, 11, 12, 14

*Emle Industries, Inc. v. Patentex, Inc.*,
  478 F.2d 562 (2d Cir. 1973) .................................................................................... 7

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
  722 F. Supp. 2d 295 (E.D.N.Y. 2010) .................................................................... 7

*Fletcher v. Dakota, Inc.*,
  99 A.D.3d 43 (1st Dep't 2012) .............................................................................. 17

*Grady v. Affiliated Cent.*,
    130 F.3d 553 (2d Cir. 1997) ............................................................... 19

*Ifill v. UPS*,
    No. 04 Civ. 5963 (LTS) (DFE) 2005 U.S. Dist. LEXIS 5230 (S.D.N.Y. Mar. 29, 2005) ....... 23

*Johnson v. MediSys Health Network*,
    No. 10-CV-1596 (ERK) (VVP) 2011 U.S. Dist. LEXIS 156828
    (E.D.N.Y. April 28, 2011) ............................................................... 7, 8

*Johnson v. MediSys Health Network*,
    No. 10-CV-1596, 2011 U.S. Dist. LEXIS (E.D.N.Y. June 3, 2011) ........................... 7

*Kalola v. IBM*,
    No. 13-CV-7339 (VB) 2015 U.S. Dist. LEXIS 27444 (S.D.N.Y. Feb. 10, 2016) ................ 19

*Kirkland v. Cablevision Sys.*,
    760 F.3d 223 (2d Cir. 2014) ............................................................... 13

*Krause v. Lancer & Loader Group, LLC*,
    40 Misc. 3d 385 (Sup. Ct. New York Co. 2013, Edmead, C.) ................................. 20

*Lydeatte v. Bronx Overall Economic Dev. Corp.*,
    No. 00 Civ. 5433 (GBD) 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. Feb. 22, 2001) ............... 23

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................... 12, 16

*Morin v. Trupin*,
    728 F. Supp. 952 (S.D.N.Y. 1989) ....................................................... 6, 14

*Murphy v. Amer. Home Prods.*,
    58 N.Y.2d 293, N.Y.S.2d 232 (N.Y. 1983) ................................................. 23

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
    208 F.3d 368 (2d Cir. 2000) ............................................................... 24

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
    648 F. Supp. 2d 507 (S.D.N.Y. 2009) ....................................................... 24

*Saenger v. Montefiore Med. Ctr.*,
    706 F. Supp. 2d 494 (S.D.N.Y. 2010) ....................................................... 13

*Sowemimo v. D.O.A.R. Sec., Inc.*,
    43 F.Supp. 2d 477 (S.D.N.Y. 1999) ........................................................ 20

*State of New York ex rel. Danon v. Vanguard Group, Inc.,*
    Index No. 100711/13 (JAM) 2015 N.Y. Misc. LEXIS 4239
    (Sup. Ct. New York Cty, 2015) .................................................................. 7

*Summa v. Hofstra Univ.,*
    708 F.3d 115 (2d Cir. 2013) .................................................................. 16

*United States v. Construction Products Research, Inc.,*
    73 F.3d 464 (2d Cir. 1996) .................................................................. 6

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981).................................................................. 6

*White v. Eastman Kodak Co.,*
    368 Fed. Appx. 200 (2d Cir. 2010).................................................................. 13

*Williams v. Regus Mgmt. Group, LLC,*
    836 F. Supp. 2d 159 (S.D.N.Y. 2011) .................................................................. 13

*Wise v. Consol. Edison Co. of N.Y.,*
    282 A.D.2d 335, 723 N.Y.S.2d 462 (1st Dep't 2001).................................................................. 7

**Statutes**

NYLL §215 .................................................................. 1, 2, 3, 19, 21, 22

**Rules**

Fed. R. Civ. P. 12 .................................................................. 1, 2, 5, 19, 20

NYRPC Rule 1.6.................................................................. 2, 6, 7, 8, 11, 16, 17, 18

Defendants Mitsubishi Chemical Holdings America, Inc. ("MCHA"), Nicholas Oliva ("Mr. Oliva") and Donna Costa ("Ms. Costa") in each of their individual and professional capacities (collectively "Moving Defendants"), submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6): (1) dismissing the Complaint in its entirety, with prejudice, because Plaintiff's claims are entirely dependent on confidential and attorney-client-privileged information that she has wrongfully disclosed and without which she cannot state such claims; and, for independent reasons, (2) dismissing with prejudice for failure to state a claim Plaintiff's causes of action alleging: (a) retaliation in violation of New York Labor Law §215; (b) intentional infliction of emotional distress; and (c) negligent destruction of employment opportunities.

## PRELIMINARY STATEMENT

For years, Plaintiff served as MCHA's Assistant General Counsel ("Assistant GC") before being promoted to Acting General Counsel ("Acting GC"). MCHA then replaced her with a permanent General Counsel ("GC"), demoting her back to Assistant GC and, ultimately, terminating her for performance failures and ethical violations. In her capacity as counsel to MCHA, she learned of crucial privileged and confidential information about countless aspects of Defendants' businesses and responsibilities.

Disturbingly, and in breach of all fiduciary obligations and professional standards, Plaintiff has filed a Complaint replete with privileged and confidential information she learned while serving as counsel for MCHA and providing legal services to ████ and ████ both of which are MCHA clients ███████████████████ Plaintiff's reliance on such information to support her allegations violates the attorney-client privilege, her fiduciary duties, and her ethical obligations under New York Rule of Professional Conduct 1.6 ("NYRPC Rule

1

1.6"). Plaintiff's breach of her ethical obligations - while unsurprising to Defendants because they terminated Plaintiff for similar ethical violations - demonstrates a flagrant disregard for the rules of the legal profession. Plaintiff cannot disclose such information to benefit herself in a lawsuit - indeed, the law requires dismissal of claims reliant on such information.

This Court should dismiss the Complaint in its entirety because Plaintiff has filled it with privileged and confidential information learned during her employment with MCHA. Absent such confidential information, Plaintiff's Complaint fails to plead sufficient factual support to state the claims alleged. As such, Moving Defendants seek dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6). Moreover, there are independent grounds upon which the Court should dismiss Plaintiff's claims for retaliation under New York Labor Law ("NYLL") §215, intentional infliction of emotional distress, and negligent destruction of employment opportunities because, *even with the reliance on* privileged and confidential information, these claims are insufficiently pled.

## PLAINTIFF'S COMPLAINT

On September 7, 2018, Plaintiff filed the Complaint in this matter, alleging: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation and wrongful termination in violation of Title VII; (3) retaliation and wrongful termination in violation of the Sarbanes-Oxley Act;[1] (4) pay discrimination in violation of the Equal Pay Act ("EPA"); (5) discrimination in violation of the New York State Human Rights Law ("NYSHRL"); (6) discrimination in violation of the New York City Human Rights Law ("NYCHRL"); (7a) pay discrimination in violation of the New York State Equal Pay Act ("NY

---

[1] On November 14, 2018, Plaintiff voluntarily withdrew this third cause of action with prejudice.

EPA");[2] (7b) retaliation in violation of NYLL §215; (7c) intentional infliction of emotional distress; (8) negligent destruction of employment opportunities; (9) aiding and abetting discrimination and retaliation in violation of the NYSHRL; and (10) aiding and abetting discrimination and retaliation in violation of the NYCHRL. *See* Compl. ¶4.

## PLAINTIFF'S ALLEGATIONS[3]

Plaintiff began working as Corporate Counsel for MCHA's legal department on March 3, 2008. *See* Compl. ¶¶ 10, 35. In February 2013, MCHA promoted Plaintiff to the position of Assistant General Counsel ("Assistant GC"). *See id.* ¶¶ 39, 41. In her role as Assistant GC, Plaintiff provided legal advice to MCHA and its clients, including ████ and ████, on ████████████████████████████████████████████████████████████████████████████████████████████████████████. *See id.* ¶ 42. Plaintiff also claims she served as MCHA's primary internal trainer on corporate ethics and compliance. *See id.* ¶ 43.

In 2014, effective April 2015, MCHA promoted two women to the highest echelons of the company: it elevated then-General Counsel ("GC") Donna Costa to the role of President, and promoted Plaintiff to the role of Acting General Counsel ("Acting GC"). *See id.* ¶ 46, 49. In November 2015, Ms. Costa gave Plaintiff a negative mid-year review based on poor performance and MCHA hired Mr. Oliva to serve as GC and returned Plaintiff to the position of Assistant GC. *See id.* ¶¶ 60, 61, 69, 71. Plaintiff served as Assistant GC for another year, but was terminated after extending a settlement offer without client authorization. *See id.* ¶¶ 78-84.

---

[2] Plaintiff incorrectly numbers her causes of action such that three causes of action are entitled "Seventh Cause of Action." For purposes of clarity, Moving Defendants refer to Plaintiff's claim for pay discrimination under the NY EPA as cause of action 7(a), Plaintiff's claim for retaliation in violation of NYLL §215 as cause of action 7(b) and Plaintiff's claim for intentional infliction of emotional distress as cause of action 7(c).

[3] For the purposes of this motion only, Moving Defendants treat the allegations set forth in the Complaint as true. Moving Defendants reserve the right to dispute the accuracy and the veracity of these allegations should it be necessary during the course of the litigation

Plaintiff claims Ms. Costa told her that she viewed Plaintiff as her successor, but that "Japan" had made the decision not to promote her to full GC. *See id.* ¶ 50. Although Ms. Costa was, at all times, Plaintiff's supervisor at MCHA and, according to Plaintiff, was supportive of Plaintiff's promotions, Plaintiff alleges ███████████████████████████████ ████████████████████ *See id.* ¶ 50. Plaintiff contends that the decision to promote her to the role of Acting GC was "unprecedented" and somehow discriminatory, despite the fact that Plaintiff (a) was promoted; (b) replaced a female GC who was herself promoted to the presidency of MCHA; and (c) as Acting GC, reported to that female president. *See id.* ¶ 51, 52.

Plaintiff claims, without sufficient support, that MCHA placed her in the role of Acting GC only until it could find a suitable male replacement. *See id.* ¶¶ 58. Plaintiff alleges that the November 2015 negative "mid-year review" she received from Ms. Costa was nothing more than an effort at "papering her file" in advance of demoting her from the role of Acting GC. *See id.* ¶ 78. Plaintiff relies on the fact that MCHA paid her an expected (but pro-rated) bonus for her service as Acting GC as evidence that she was performing well. *See id.* ¶¶ 78, 79. She further insists that Ms. Costa's unscheduled November 2015 review was a pretext for discrimination. *Id.*. This evaluation, however, was specifically prepared to evaluate Plaintiff's performance following her recent *promotion* to the role of Acting CG.

Plaintiff alleges that, upon learning that MCHA had hired Mr. Oliva, she complained to MCHA's Human Resources representative, Patricia Saunders ("Ms. Saunders"), of potential discrimination. *See id.* ¶ 70. Plaintiff claims that, in 2016, she continued to complain to Ms. Saunders and Mr. Oliva that Mitsubishi was discriminating against women. *See id.* ¶¶ 73, 74.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████████████████████████ *See id.* ¶

76. Plaintiff claims that she complained to Mr. Oliva regarding MCHA's allegedly discriminatory decision. *Id.*

Plaintiff summarily alleges that MCHA terminated her on January 30, 2017, in retaliation for her complaints of gender discrimination, including ████████████████████████████

██████ *See id.* ¶ 80. Plaintiff contends that Mitsubishi's stated reason for her termination—that

████████████████████████████████████████████████████████████████

██████—was merely a pretext for discrimination. *See id.* ¶¶ 76, 83.

## ARGUMENT

### A. The Legal Standard On A Motion To Dismiss Under FRCP 12(b)(6)

On a Rule 12(b)(6) motion, courts must accept as true the factual allegations in the complaint and draw all inferences in a plaintiff's favor. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation omitted). In order to withstand such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this context, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Id.* (internal citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Once the complaint has been stripped of its conclusory assertions, the court must determine if the remaining allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## B. **The Complaint Should Be Dismissed Because It Relies Almost Exclusively On Privileged And Confidential Information**

### 1. As Former Counsel For Mitsubishi, Plaintiff Has Ethical Obligations To Protect Privileged And Confidential Information

The attorney-client privilege protects confidential communications between a client and his or her attorney when made for the purpose of obtaining or providing legal advice. *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The purpose of the privilege is to allow for the free flow of information between attorneys and their clients. In doing so, the privilege promotes "broader public interests in the observance of law..." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

An attorney's obligation to maintain her client's confidences goes far beyond protecting communications that are subject to the attorney-client privilege. The New York Rules of Professional Conduct ("NYRPC") provide that an attorney "shall not knowingly reveal confidential information... or use such information to the disadvantage of the client or for the advantage of the lawyer..." NYRPC Rule 1.6(a). NYRPC Rule 1.6(a) defines "confidential information" to include "information gained during or relating to the representation of a client, whatever its source, that is: (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." NYRPC Rule 1.6(a). The confidential information governed by NYRPC Rule 1.6 is a "broader category" of information than that which is protected by the attorney-client privilege and "embraces all other information gained in the professional relationship...the disclosure of which would be embarrassing or...detrimental to the client." *Morin v. Trupin*, 728 F. Supp. 952, 955 (S.D.N.Y. 1989). Information need not be legal in nature

to qualify as confidential under NYRPC Rule 1.6. *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 306 (E.D.N.Y. 2010).

Courts place a significant emphasis on the importance of these rules, holding that the duty of confidentiality lies at the center of an attorney's relationship with her current and former clients and must be applied as a "strict prophylactic rule to prevent any possibility...that confidential information...may subsequently be used to the client's disadvantage." *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). A lawsuit initiated by an attorney against a former client "clearly implicates this rule." *Johnson v. MediSys Health Network*, No. 10-CV-1596 (ERK) (VVP) 2011 U.S. Dist. LEXIS 156828 (E.D.N.Y. April 28, 2011), *report and recommendation adopted*, No. 10-CV-1596, 2011 U.S. Dist. LEXIS (E.D.N.Y. June 3, 2011). Similarly, where a lawyer institutes a suit against a corporate client suspected of wrongful conduct, she infringes on the rules of ethics. *See Doe v. A Corp.*, 330 F. Supp. 1352, 1354 (S.D.N.Y. 1971). An attorney's obligation to follow these rules strictly is beyond dispute.

New York courts regularly dismiss claims brought by or at the behest of an attorney against a former client or employer that rely on the disclosure of privileged or confidential information. *See Wise v. Consol. Edison Co. of N.Y.*, 282 A.D.2d 335, 335-336, 723 N.Y.S.2d 462 (1st Dep't 2001) (recognizing the broad obligation to maintain client confidences and dismissing wrongful discharge claims brought by defendant's former in-house counsel where permitting the action to move forward would have entailed the improper disclosure by plaintiff of client confidences); *State of New York ex rel. Danon v. Vanguard Group, Inc.*, Index No. 100711/13 (JAM) 2015 N.Y. Misc. LEXIS 4239 (Sup. Ct. New York Cty, 2015) (dismissing *qui tam* claim based on information plaintiff obtained while employed as counsel for defendant).

For example, in *Ackerman v. National Property Analysts*, this Court dismissed plaintiffs' claims based upon confidential information provided by defendant's former counsel, and disqualified plaintiffs' counsel from further representing plaintiffs in any related matter. *Ackerman v. National Property Analysts*, 887 F. Supp. 510, 519 (S.D.N.Y. 1993) (listing cases that dismissed actions "based upon improperly disclosed information"). In doing so, this Court held that Canon 4 of the Code of Professional Responsibility (now incorporated into NYRPC Rule 1.6) required courts to "do what is appropriate to ensure that any confidential and secret information disclosed by a party's formal counsel not subsequently be used against that same party in another litigation." *Id.* at 518-19; *see also Johnson*, 2011 U.S. Dist. LEXIS 156828 at *98 (holding that former in-house counsel was prohibited, by the rules of ethics, from using confidential information learned during her employment in litigation against her former employer). Importantly, this Court noted that the harm from plaintiffs' use of confidential information would not be limited to disclosure, but would include "knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlement to accept and what offers to reject." *Id.* at 517 (citation omitted). In dismissing the case, the Court determined that each cause of action relied extensively on confidential information provided by defendant's former counsel, that the disclosure of such confidential information constituted an ethical breach, that plaintiffs could not rely on such information, and that without the inclusion of such confidential information, plaintiff failed to state a claim for recovery. *Id.* at 520-521.

Similarly, in *Eckhaus v. Alfa-Laval, Inc.,* this Court considered a claim for defamation made by defendant's former general counsel. *Eckhaus v. Alfa-Laval, Inc.*, 764 F. Supp. 34 (S.D.N.Y. 1991). Plaintiff's claim was based upon allegedly defamatory statements defendant

8

made in plaintiff's employment evaluation. *Id.* at 35. Specifically, defendant noted in the evaluation that plaintiff had mishandled or provided poor advice on several specific matters. *Id.* Defendant moved for summary judgment on the sole ground that further prosecution of the claim would require plaintiff to reveal client confidences in violation of the New York Code of Professional Responsibility. *Id.* at 36-37. This Court, taking notice that plaintiff included confidential information in both the Complaint and in his opposition to defendant's motion for summary judgment, held that plaintiff had evinced a clear intent to reveal further confidential information, such disclosure would "impinge upon the sanctity of the attorney-client relationship," and that defendant's motion must therefore be granted. *Id.* at 38.

These cases apply squarely here. For nearly a decade, Plaintiff served as one of the most senior lawyers for MCHA. She learned vast amounts of critical privileged and confidential information, and now seeks to exploit it for her personal benefit. The law does not permit this.

2. Plaintiff Relies Upon Confidential Information To Support Her Claims And Evinces An Intent To Reveal Further Confidential Information

    a. Plaintiff's Complaint Is Replete With Privileged and Confidential Information

Here, Plaintiff relies almost exclusively on privileged and confidential information, both related and unrelated to specific MCHA legal matters, to support her claims. Plaintiff learned of the confidential information recited in the Complaint during her employment as a lawyer for MCHA. Among other items, Plaintiff pleads the following privileged and/or confidential information:





In addition to these allegations containing extensive amounts of confidential and privileged information, Plaintiff discloses the content of conversations she had with and about MCHA's clients, *See* Compl. ¶¶ 49, 50, 52, 54, 55, as well as detailed information she learned in

the course of performing her duties as counsel to MCHA and its clients. These details include:

[REDACTED]

The disclosure of such information, whether accurate or inaccurate, breaches attorney-client privilege and plaintiff's confidentiality obligations, and could greatly embarrass or prejudice Defendants. *See* NYRPC 1.6. As such, Plaintiff's disclosures in these factual assertions are in direct violation of her legal and ethical obligations.

As in *Ackerman*, Plaintiff uses confidential information as the factual support for her claims. Without reliance upon such confidential information, Plaintiff, like the plaintiffs in *Ackerman*, will be unable to prosecute her claims. Moreover, the exact concerns that the Court expressed in *Ackerman* exist here: Plaintiff, as Defendants' former counsel, will know specifically what items to seek in discovery, which witnesses she should depose, what questions she should ask them, what their settlement tendencies are and, most importantly, what confidential information, if released, will be most damaging to Defendants.

As in *Eckhaus*, Plaintiff's claims rely on confidential information, including information concerning specific legal matters Plaintiff oversaw or investigated while at MCHA, and prosecution of these claims will necessarily require disclosure of additional confidential information, [REDACTED]

[REDACTED]. Accordingly, as in *Ackerman* and *Eckhaus*, this case must be dismissed in its entirety.

Notably, Plaintiff includes the following paragraphs at the end of her factual recitations:

[REDACTED]



These pleadings provide a clear indication that Plaintiff intends either to disclose additional confidential information or, at the very least, to threaten the disclosure of additional information in order to compel Moving Defendants to resolve this matter without further disclosure of privileged and confidential company information. Here, as in *Eckhaus*, Plaintiff evinces a clear intent to reveal further confidential information that would impinge upon the sanctity of the attorney-client relationship. Plaintiff has no justification for including these paragraphs.



Plaintiff, who litters her Complaint with numerous references to her vast legal experience and who, given the basis for her termination, should be particularly conscious of her ethical obligations, surely understands the significance of her threats and disclosures.

### 3. Plaintiff's Reliance On Confidential Information Necessitates Dismissal

a. Plaintiff's Discrimination Claims Are Wholly Reliant Upon The Disclosure of Confidential Information

Claims of discrimination are analyzed utilizing the three-part burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., White v. Eastman*

*Kodak Co.*, 368 Fed. Appx. 200, 202 (2d Cir. 2010). In the first step of the analysis, Claimant must establish a *prima facie* case of gender discrimination by showing that: (1) she belongs to a protected group; (2) she was qualified for her position; (3) her employer took an adverse action against her; and (4) the adverse action occurred under circumstances giving rise to an inference of gender discrimination. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 505 (S.D.N.Y. 2010). In order to satisfy the fourth element of a prima facie case under the NYCHRL, which provides protections broader than those provided under Title VII and the NYSHRL, claimant must offer sufficient evidence establishing that she was treated differently than other similarly-situated individuals who are not members of the same protected class. *Williams v. Regus Mgmt. Group, LLC*, 836 F. Supp. 2d 159, 170-71 (S.D.N.Y. 2011); *see also Baity v. Kralik*, 51 F. Supp. 3d 414, 445 (S.D.N.Y. 2014).

Plaintiff contends that Defendants discriminated against her when they: (1) refused to promote her to GC; (2) demoted her from Acting GC to Assistant GC in favor of Mr. Oliva; and (3) terminated her employment. Plaintiff fails to state a *prima facie* case of discrimination because the support she offers for her claim that she suffered an adverse action under circumstances giving rise to an inference of gender discrimination consists almost entirely of confidential information.

i.   Failure to Promote

In clear breach of her obligations, Plaintiff discloses the fact that ██████████ ████████████████████████████ and uses this fact to support her claim that MCHA's refusal to promote her to permanent GC was discriminatory. *See* Compl. ¶¶ 53, 63. Plaintiff improperly reveals that ████████████████████████████████████████ ██████ *See id.* ¶55. Plaintiff's only knowledge of ████████████████████

[REDACTED] Her disclosure of the [REDACTED]

[REDACTED] Moreover, in order to establish a connection between her gender and MCHA's alleged failure to promote her to GC, Plaintiff will necessarily need to reveal further confidential information regarding [REDACTED], which is a further basis for dismissal with prejudice. *Eckhaus*, 764 F. Supp. at 13.

Plaintiff also alleges that MCHA's refusal to promote her to GC was motivated, in part, by a culture of gender discrimination at Mitsubishi. *See* Compl. ¶¶ 50, 52. In support of this [REDACTED] Plaintiff similarly relies upon [REDACTED] While not traditionally protected by the attorney-client privilege, the information Plaintiff claims to have obtained in these conversations constitutes "confidential information" under the NYRPC, as it was learned by Plaintiff during her employment as a lawyer with MCHA and representation of MCHA's clients, and is likely to be embarrassing or detrimental Defendants. *Morin,* 728 F. Supp. 9 at 955.

## ii. Demotion

Plaintiff alleges that Defendants opted to demote her from her position as Acting GC because Mitsubishi preferred that a male occupy that position. Plaintiff claims that the explanation provided for her demotion in her November 2015 performance review was a pretext

in order to lay a foundation for her ultimate termination. *See* Compl. ¶ 78. Yet the performance review to which she refers, and thus incorporates by reference into the Complaint for purposes of this motion to dismiss, spells out in detail Plaintiff's mishandling of client matters. Disclosure of this document, which is central to Plaintiff's claim of improper demotion and important to Moving Defendants' defense of the same, will unquestionably disclose additional privileged and confidential information belonging to MCHA and other legal clients.

### iii. Termination

Plaintiff asserts that Defendants' stated reason for her termination— ████████████ ████████████████████████████████████—was mere pretext for discrimination. *See id.* ¶ 84. Plaintiff claims that Defendants began "papering" her personnel file in November 2015, when Ms. Costa submitted a negative review of Plaintiff's work, in order to lay a foundation for her ultimate termination. *See id.* ¶78. Once again, to successfully demonstrate that Defendants' stated basis for termination is merely a pretext, Plaintiff will necessarily have to reveal additional confidential information both from the November 2015 review and from the ████████████████████████████████████████████████

Plaintiff relies on confidential information in order to allege that there is a causal connection between Defendants' alleged adverse employment actions and her gender or that Plaintiff was treated less favorably than male employees. Specifically, Plaintiff points to confidential information relating ████████████████████████████████████ ████████████████████████████████████████ This is precisely the kind of confidential information that the courts

strive to ensure will not be utilized by attorneys against their former employers or clients. Indeed, Plaintiff's use of this confidential information is a serious and significant breach of her ethical obligations as an attorney and should not be permitted.

### iv. Pay Discrimination

Consistent with the confidential information based allegations she offers in support of her discrimination claims, Plaintiff also relies on confidential information to support her claims under the EPA and the NY EPA that Mr. Oliva was treated more favorably with regard to pay than she was for performing substantially similar work. To support her claim that she was doing substantially similar work to Mr. Oliva for less pay than him, Plaintiff refers to, among other allegations, ███████████████████████████████████████████ ███████████████████████████ Moreover, a detailed examination of the work performed by both Plaintiff and Mr. Oliva would necessarily reveal further confidential information. Again, Plaintiff's improper disclosure, and the likelihood of further disclosures, of such confidential information violates NYRPC Rule 1.6 and supports dismissal of Plaintiff's EPA and NY EPA claims.

### b. Plaintiff's Retaliation Claims Are Wholly Reliant Upon The Disclosure of Confidential Information

Retaliation claims under Title VII are also analyzed using the *McDonnell Douglas* burden-shifting framework, in which the claimant bears the initial burden of making out a *prima facie* case for retaliation. *McDonnell Douglas Corp. v. Green, supra.*, 411 U.S. at 802; *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (holding that the burden-shifting framework laid out in *McDonnell Douglas* governs retaliation claims).

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse

action against the plaintiff; and, (4) the existence of a causal connection between the protected activity and adverse employment action, *i.e.,* that a retaliatory motive played a part therein. *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 44, (1st Dep't 2012).

Plaintiff alleges that Defendants retaliated against her by: (1) failing to promote her to GC; (2) demoting her from Acting GC to Assistant GC; and (3) terminating her employment and then challenging her claim for unemployment benefits.

### i.    Failure to Promote

Plaintiff asserts that Defendants refused to promote her to GC in retaliation for her participation in ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ All of this information constitutes confidential information and Plaintiff's disclosure of this information is in violation of NYRPC Rule 1.6. ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

### ii.    Demotion

Plaintiff alleges that Defendants also demoted her from Acting GC to Assistant GC because of her involvement in ████████████████████████████████████████ ██████████ This is *the only factual allegation supporting* Plaintiff's claim that her demotion was retaliatory. As detailed above, Plaintiff's reliance on confidential information involving the ████████████████████████████████████ is improper and constitutes a violation of NYRPC 1.6.

### iii. Termination

Plaintiff generally alleges that Defendants terminated her employment (and challenged her claims for unemployment) in retaliation for Plaintiff having made multiple complaints of gender discrimination. *See* Compl. ¶¶ 73, 74, 76. Specifically, Plaintiff claims that she complained when: █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

any of these occurrences are confidential and subject to the protections of NYRPC Rule 1.6.

As set forth above, the factual support Plaintiff provides for her allegations that Defendants discriminated and/or retaliated against her consists almost exclusively of confidential information that Plaintiff is not permitted to disclose and must not be permitted to rely upon in order to benefit herself at the expense of her former employer and clients. The Complaint also indicates that Plaintiff will not only be required to further disclose confidential information in order to pursue her claims, but that Plaintiff is eager to do so, as specifically threatened in Paragraphs ██████ of the Complaint.

### c. Without Reliance on Confidential Information, Plaintiff Fails to State A Claim

#### i. Plaintiff's Claims for Discrimination and Retaliation Must be Dismissed (Causes of Action Nos. 1, 2, 4, 5, 6, 7(a), 7(b))

Plaintiff's allegations of discrimination by Japan are particularly spurious. She concedes that she was hired not by a Japanese company, but by MCHA—a U.S. corporation located in New York—where she reported to MCHA's female GC, Ms. Costa, who was later promoted to President of MCHA. *See id.* ¶¶ 23, 49. While employed by MCHA, Plaintiff was twice promoted by MCHA and Ms. Costa, the second time when Ms. Costa was promoted to President

of MCHA, from which position she supervised the legal department. *See id.* ¶¶ 14, 41, 49. At the time of Plaintiff's termination, Ms. Costa remained President of MCHA. *See id.* ¶¶ 14, 41, 49, 78. Plaintiff, likely recognizing the difficulty in making a claim for gender discrimination against MCHA while it was promoting her and being led by a woman, instead attempts to blame "Japan," and to use confidential information to embarrass MCHC and MCC in order to induce Defendants to resolve the case. *See Grady v. Affiliated Cent.*, 130 F.3d 553, 560 (2d Cir. 1997) (finding invidious discrimination unlikely when Plaintiff hired and fired by same individual or individual in same protected class).

Once cleansed of improperly-disclosed confidential information, however, the Complaint, as detailed above, lacks the factual support required by Fed. R. Civ. Pro. 12(b)(6) to state a claim for discrimination. Plaintiff, rather, is left with merely conclusory allegations insufficient to state a claim for discrimination and unsupported by anything other than generalizations about the long history of gender discrimination in Japan and the demographics of Mitsubishi's Japanese entities, which, even if true, have no relation to the specific facts at issue in this case. *See* Compl. ¶¶ 1, 2, 3. Mere conclusory allegations of discrimination and retaliation, without more, are insufficient to state a claim under Fed. R. Civ. Pro. 12(b)(6). *See Kalola v. IBM*, No. 13-CV-7339 (VB) 2015 U.S. Dist. LEXIS 27444, *1 *(S.D.N.Y. Feb. 10, 2016)* (holding that mere conclusory allegations are insufficient to state a claim).

Similarly, Plaintiff, once stripped of her improper reliance on confidential information, is unable to set forth sufficient facts to state a retaliation claim. Plaintiff's admission that she was, in fact, promoted twice during her nine-year career with MCHA belies her claim alleging retaliatory failure to promote. *See* Compl. ¶¶ 41, 49. Moreover, Plaintiff is unable to sufficiently plead participation in any protected activity, including any activity protected under NYLL §215

unrelated to the confidential information discussed above, which cannot be relied upon to advance her claims.

As detailed above, New York courts have routinely held that counsel cannot use confidential information to the detriment of his or her former employer or client. Plaintiff must not be permitted to rely on such information to support her claims and must not be provided with a forum in which she can further disclose Defendants' confidential information. Without reliance upon improperly disclosed confidential information, Plaintiff fails to set forth the factual support required by Fed. R. Civ. Pro 12(b)(6) to state claims for discrimination and retaliation and, as a result, her claims for discrimination and retaliation fail.

ii.    <u>Plaintiff's Claims for Aiding and Abetting Must Similarly be Dismissed (Causes of Action Nos. 9 and 10)</u>

Under both the NYSHRL and the NYCHRL, an individual employee may be held liable for aiding, abetting, inciting, compelling, or coercing discriminatory or retaliatory conduct. *Krause v. Lancer & Loader Group, LLC*, 40 Misc. 3d 385 (Sup. Ct. New York Co. 2013, Edmead, C.). These causes of action rely, of course, on the existence of an underlying act of retaliation or discrimination. In order to establish a claim against an individual for aiding and abetting discrimination, Claimant has to establish liability as to the employer. *Sowemimo v. D.O.A.R. Sec., Inc.*, 43 F.Supp. 2d 477, 490-91 (S.D.N.Y. 1999). Here, because Plaintiff cannot establish discrimination or retaliation claims against Mitsubishi without relying almost entirely on confidential information, ███████████████████████████████████████ ███████████████████████████████████████████ ████ she cannot establish claims for aiding and abetting against Ms. Costa or Mr. Oliva and these claims must be dismissed.

iii. Plaintiff's Claims for Intentional Infliction of Emotional Distress and Negligent Destruction of Employment Opportunities Must Similarly be Dismissed (Causes of Action Nos. 7(c), 8)

Plaintiff's claims alleging intentional infliction of emotional distress and negligent destruction of employment opportunities arise out of the alleged ongoing campaign of discrimination and retaliation Defendants carried out against her. Given the totality of the allegations, these claims are also dependent upon confidential information disclosed by the Plaintiff in her Complaint and should be dismissed.

In light of the foregoing, the Court should dismiss Plaintiff's Complaint, in its entirety, based on Plaintiff's reliance upon, and disclosure of, confidential information.

## C. Independent Grounds Exist For Dismissing Multiple Causes of Action

1. Plaintiff's Claim for Retaliation in Violation of NYLL §215 (Cause of Action No. 7(b))

For reasons independent of Plaintiff's reliance upon confidential information, the Court should dismiss Plaintiff's retaliation claim under NYLL §215, as Plaintiff fails to sufficiently plead that she participated in protected activity which was causally related to Defendants' allegedly retaliatory conduct.

a. NYLL §215 Protects Plaintiffs Who Complain of NYLL Violations

NYLL §215(1) (a) provides, in relevant part:

No employer . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee:

(i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

21

Under NYLL §215, "a plaintiff must adequately plead that while employed by the defendant, [he] made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp.2d 253, 302 (S.D.N.Y. 2011).

Plaintiff alleges that Moving Defendants violated NYLL § 215 by refusing to promote her to GC, subsequently demoting her to Assistant GC, and wrongfully terminating her employment after she complained about allegedly discriminatory treatment. Nowhere in her Complaint, however, does Plaintiff allege that she, while an employee of MCHA, complained to Defendants of any potential NYLL violations.

The sole allegation Plaintiff raises under the NYLL is that Mitsubishi violated the Equal Pay Act by agreeing to pay Mr. Oliva, as GC, more than it had paid Plaintiff as Acting GC. Plaintiff, however, does not plead that she raised claims of unequal pay before she filed her Complaint, long after the alleged retaliatory conduct occurred. As Plaintiff has failed to allege that she complained of a NYLL violation during her employment, and prior to the occurrence of Moving Defendants' allegedly retaliatory actions, Plaintiff does not sufficiently plead a claim under NYLL § 215. As such, Plaintiff's claim under NYLL § 215 must be dismissed.

### 2. Plaintiff's Claim for Intentional Infliction of Emotional Distress Must Fail (Cause of Action No. 7(c))

For reasons independent of Plaintiff's reliance on confidential information, the Court should dismiss Plaintiff's claim for intentional infliction of emotional distress. Under New York law, a claim of intentional infliction of emotional distress requires proof of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Ifill v. UPS*, No. 04 Civ. 5963 (LTS) (DFE) 2005 U.S. Dist. LEXIS

22

5230 at *17 (S.D.N.Y. Mar. 29, 2005). This Court, in *Ifill*, held that "intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Murphy v. Amer. Home Prods.*, 58 N.Y.2d 293, N.Y.S.2d 232 (N.Y. 1983)); *Carroll v. Bayerische Landesbank*, 150 F. Supp. 2d 531, 538 (S.D.N.Y. 2001) (standard for extreme and outrageous conduct is extremely high). This Court has further held that "satisfying the first element…is difficult, even at the pleadings stage." *Conboy v. AT&T Corp.*, 84 F. Supp.2d 492, 507 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001).

It is rare for intentional infliction of emotional distress claims raised employment actions to survive motions to dismiss. *See Ifill,* 2005 U.S. Dist. LEXIS 5230 at *18 (dismissing intentional infliction of emotional distress claims in employment context); *Lydeatte v. Bronx Overall Economic Dev. Corp.*, No. 00 Civ. 5433 (GBD) 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. Feb. 22, 2001) (dismissing intentional infliction of emotional distress claim in wrongful termination action where defendant withheld information regarding plaintiff's employment from prospective employers).

Plaintiff's claim for intentional infliction of emotional distress is based upon MCHA's escorting Plaintiff from the premises upon her termination and denying her the opportunity to say goodbye to co-workers or send departure emails to clients. These actions, even if true, are not "extreme and outrageous" conduct. As if recognizing this deficiency, Plaintiff attempts to bolster her claim by arguing that Defendants' actions "impress[ed] upon other employees that Ms. Fischman had committed criminal or otherwise despicable acts." *See* Compl. ¶ 138. Plaintiff, however, does not allege that anyone saw her escorted out of the building, that she was flanked

by security, or that there were any other indicia of criminal conduct present. Plaintiff's purely conclusory statement is not, without more, sufficient to avoid dismissal of these claims.

Even if Defendants' actions did impress upon other employees that Plaintiff had committed criminal or otherwise despicable acts, such allegations are still insufficient to please the "extreme and outrageous" conduct required. *See Castro v. New York City Bd. of Educ. Personnel Dir.*, No. 96 Civ. 6314 (MBM) 1998 U.S. Dist. LEXIS 2863, *30 (S.D.N.Y. Mar. 12, 1998) (holding that defendant's conduct in having plaintiff escorted out of the office by police was not "extreme and outrageous" conduct). Plaintiff's claims for intentional infliction of emotional distress should thus be dismissed.

> 3. Plaintiff's Claim For Negligent Destruction of Plaintiff's Employment Opportunities Must Fail (Cause of Action No. 8)

For reasons independent of Plaintiff's reliance on confidential information, the Court should dismiss Plaintiff's claim for negligent destruction of employment opportunities. As an initial matter, a claim for negligent destruction of Plaintiff's employment opportunities is a fictitious cause of action. If, however, Plaintiff is attempting to express a claim for tortious interference with prospective business relations, such a claim also fails.

The elements of a claim for tortious interference with prospective business relations are: (1) business relations with a third party; (2) defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000). A plaintiff must demonstrate that the defendant directed activities toward a third party such that the third party was convinced not to enter into a business relationship with the plaintiff. *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 523 (S.D.N.Y. 2009).

Plaintiff alleges that Defendants denied Plaintiff the opportunity to send a departure email to clients and refused to provide Plaintiff with a positive employment reference. As a result, Plaintiff alleges, she has been unable to find subsequent employment in the legal profession. *See* Compl. ¶¶ 142, 143, 144. Plaintiff, however, does not allege that she has engaged in discussions with prospective employers nor does Plaintiff allege that MCHA specifically directed activities toward any third party in order to convince it not to enter into an employment relationship with her. As such, Plaintiff fails to allege facts sufficient to state a claim for interference with prospective business relations and Plaintiff's claim in this regard must be dismissed.

## CONCLUSION

For the foregoing reasons, Moving Defendants respectfully request that this Court grant their motion in its entirety and dismiss all allegations in Plaintiff's Complaint with prejudice.

Dated:     New York, New York
           December 3, 2018

Respectfully submitted,

GORDON, REES, SCULLY &
MANSUKHANI, LLP

By: _____

Mercedes Colwin (MC-3682)
Francis J. Giambalvo (FG-2601)
Jeffrey Camhi (JC-8295)
*Attorneys for Moving Defendants*
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 269-5500
Fax: (212) 269-5505
Mcolwin@grsm.com
Fgiambalvo@grsm.com
Jcamhi@grsm.com

25