**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER S. FISCHMAN,<br><br>Plaintiff,<br><br>v.<br><br>MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC. et al.<br><br>Defendants. | CIVIL ACTION NO.: 18-CV-08188 |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOVING DEFENDANTS' MOTION TO RECONSIDER


**VALLI KANE & VAGNINI LLP**

Sara Wyn Kane
Robert J. Valli, Jr.
Matthew L. Berman

600 Old Country Road, Suite 519
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiff*

# Table of Authorities

## Cases

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 193 F.R.D. 189, 199 (S.D.N.Y. 1999) . 6
*Byrnes v. Empire Blue Cross Blue Shield*, 2000 WL 60221, *6 (S.D.N.Y. Jan 25, 2000) .......... 12
*Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, *8 (S.D.N.Y. July 12, 2018) .......................... 11
*Dorsett v. County of Nassau,* 289 F.R.D. 54, 68 (E.D.N.Y. 2012) ("*Dorsett II*") ........................ 13
*Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) ("*Dorsett I*") ............. 13
*Ello v. Singh,* 531 F. Supp. 2d, 583-84 (S.D.N.Y. 2007) .................................................... 2, 4, 12
*Farrow v. Allstate Ins. Co.,* 862 N.Y.S. 2d 92, 93 (N.Y. App. Div. 2008) ................................. 11
*Gucci America, Inc. v. Guess?, Inc.,* 281 F.R.D. 58, 70 (S.D.N.Y. 2010) .................................... 6
*In re DoubleClick Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 514-15 (S.D.N.Y. 2001) ................. 9
*In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ................................................ 6
*In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) .................................................................... 6, 8
*Johnson v. MediSys Health Network,* 10-cv-1596, 2011 U.S. Dist. LEXIS 156828, * 86 (E.D.N.Y. Apr. 28, 2011) ......................................................................................... 12, 13
*Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ........................................................................ 5
*Lugosch v. Pyramid Co. of the Onodaga,* 435 F.3d 110 (2d Cir. 2006) .................................... 2, 5
*Nixon v. Warner Communications,* 435 U.S. 589, 602 (1978) ...................................................... 2
*Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) .................................................... 3
*Strougo v. Barclays PLC,* 2018 WL 4635670, *1 (S.D.N.Y. Sept. 21, 2018) .............................. 3
*United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") .................................... 2
*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") ..................... 2, 4, 12
*United States v. Bilzenan,* 926 F.2d 1285, 1292 (2d Cir. 1991) ................................................... 8
*United States v. Int'l Bhd. Of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) ................................ 6
*Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ............................................................... 6

## Statutes

N.Y. Comp. Codes R. & Regs. Tit 22, § 1200.0 (22 NYCRR 1200) ............................................ 9
NYRPC §5.8 ................................................................................................................... 11
NYRPC §§5.5 ................................................................................................................. 11
NYRPC §5.8(a) ............................................................................................................... 10

# Table of Contents

Introduction ........ 1

Legal Standards Applicable to Requests for Protective Orders ........ 2

Legal Standard Applicable to a Motion to Reconsider ........ 3

Argument ........ 4

I. The Complaint Satisfies the First and Second Steps of the *Lugosch* Analysis ........ 4

II. The Complaint Satisfies the Third Step of the *Lugosch* Analysis ........ 5

III. The Information is Not Protected from Disclosure ........ 5

A The Information is Not Privileged ........ 6

B The Information Isn't Confidential Under The Rules of Professional Conduct ........ 9

IV. The Court Did Not Overlook Any Controlling Decisions ........ 12

CONCLUSION ........ 13

## Introduction

Plaintiff Jennifer S. Fischman ("Ms. Fischman"), by and through her attorneys Valli Kane & Vagnini LLP, submits this memorandum of law in opposition to the Motion for Reconsideration (the "Motion") filed by moving Defendants Mitsubishi Chemical Holdings America, Inc. ("MCHA"), Nicholas Oliva ("Mr. Oliva") and Donna Costa ("Ms. Costa") (collectively, "Defendants").[1] The Motion seeks reconsideration of that portion of the Court's Order (ECF No. 26) which denied Defendants' letter motion (the "Letter Motion," ECF No. 24) seeking an order to seal or otherwise redact Plaintiff's complaint (the "Complaint," ECF No. 3). The information Defendants sought to seal or redact (the "Information") was identified in the form of a redacted complaint annexed as Exhibit A to Defendants' Letter-Motion (ECF No. 24-1) and at pages 9-11 of Defendants' Memorandum of Law in Support of Moving Defendants' Motion to Dismiss (the "MOL," ECF No. 25-8).

Defendants' Motion should be denied because, as the proponents of a motion seeking a protective order, it is their burden to rebut the presumption that judicial records are open to the public. They have failed to meet that burden for three reasons. *First,* Defendants have failed to establish that the Information is protected by attorney-client privilege. *Second*, Defendants haven't shown that the Information arises to the level of a legally protected "client confidence" because, among other things, they haven't demonstrated any cognizable harm posed by disclosure. Third, Defendants have failed to identify any controlling caselaw overlooked by the Court in denying their Letter Motion. Accordingly, for the reasons below, Defendants' motion should be denied in its entirety.

[1] Two additional non-moving corporate defendants, located in Japan, are named in the Complaint. The Court entered an Order on December 3, 2018 (ECF No. 23) appointing an international process server to serve the Complaint upon them. They have not yet appeared.

**Legal Standards Applicable to Requests for Protective Orders**

Courts in the Southern District of New York apply the Second Circuit's three-step "*Lugosch* analysis" when they are asked to determine "whether to issue a protective order denying public access to records." *Ello v. Singh,* 531 F. Supp. 2d, 583-84 (S.D.N.Y. 2007) (citing *Lugosch v. Pyramid Co. of the Onodaga,* 435 F.3d 110 (2d Cir. 2006)). These steps are to: (1) "determine whether the documents are 'judicial documents'" (*id.* at 583, quoting *Lugosch* at 119); (ii) determine the weight of the presumption of public access afforded to documents that are "judicial in nature" (*id.*); and (iii) balance competing considerations (*id.*).

In *Lugosch*, the Second Circuit explained that it had set forth the standards for determining when a document is a "judicial document" and what the weight of the presumption of access to it should be in *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") and *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). To be considered a "judicial document," the item filed "must be relevant to the performance of the judicial function and useful in the judicial process ...." *Amodeo I, supra,* at 145.

Once Courts determine that disputed records are "judicial documents," a "presumption favoring access" applies. *See Amodeo I,* supra, at 146 (citing *Nixon v. Warner Communications,* 435 U.S. 589, 602 (1978)). The "weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II, supra,* at 1049. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* "Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

"Once the weight of the presumption is determined, a court must balance competing considerations against it." *Id.* "[C]ountervailing factors" can include "the privacy interests of those resisting disclosure." *Id.* In this regard, *Amadeo II* teaches that:

> In determining the weight to be accorded an assertion of a right of privacy, courts should consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.
>
> * * *
>
> The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information. Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts, and personal vendettas similarly need not be aided. The court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.

*Amodeo II*, at 1051. We apply this analysis, below, in considering Defendants' Motion.

**<u>Legal Standard Applicable to a Motion to Reconsider</u>**

"The standard for granting a motion to reconsider 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Strougo v. Barclays PLC*, 2018 WL 4635670, *1 (S.D.N.Y. Sept. 21, 2018) (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court. *Id.* (internal citations omitted). Here, as set forth in section IV, below, Defendants do not point to any controlling decisions that the Court overlooked which might reasonably be expected to alter the Court's conclusion.

## Argument

Application of the foregoing legal standards requires denial of the Motion. Defendants have not met their burden of showing that the Information poses any recognized threat that outweighs the presumption of public access. Instead, the only threats Defendants identify are vague, speculative and/or not cognizable under the law. Moreover, the case law Defendants cite in support of their Motion is either not controlling, or, read fully and fairly, actually counsels in favor of denial of their Motion. For these reasons, Defendants' motion should be denied.

### I. The Complaint Satisfies the First and Second Steps of the *Lugosch* Analysis

The Complaint satisfies the First and Second Steps of the *Lugosch* analysis because it is a "judicial document" that weighs in favor of a strong presumption of public access. *See Amodeo II, supra,* 1049-1050.

Here, there is no dispute that the Complaint satisfies the "judicial document" requirement marking the first step of the *Lugosch* analysis. *See generally*, Def. Mem; *see also Ello, supra*, at 584 ("the [Proposed Second Amended Complaint] is clearly a judicial document."); *id.* at n. 32 ("The Complaint ... is the sort of document that the Court must rely upon....").

Likewise, Defendants do not dispute that the Information is entitled to a strong presumption of public access under the second step of that analysis. *See generally,* Def. Mem. Under the second step of the *Lugosch* analysis, there is a strong presumption that a pleading, as a document normally not filed under seal, and that directly impacts the adjudication of disputes, is to be afforded a strong presumption in favor of public access. *See Amodeo II, supra,* 1049-1050. That presumption is strengthened where, as here, Defendants have filed a motion to dismiss the Complaint which Defendants seek to seal or redact. *See Ello, supra*, at 584-85 ("the weight of that presumption should be considerable.... The Motion currently before the Court pertains to the legal sufficiency of the Document that [Defendants' Counsel] would like to seal: [the pleading]. As a

result, public access to the [pleading] is necessary to monitor the decision of the Court. Without access to the [pleading], the public would be unable to 'assess the correctness of the judge's decision.'") (quoting *Lugosch,* 435 F.3d at 120). Accordingly, the first two *Lugosch* analysis factors are easily met.

Instead, Defendants only challenge the Complaint under to the third prong of the *Lugosch* analysis, which requires balancing the competing considerations of public access against privacy. *See Lugosch, supra,* at 119. But Defendants' argument that "significant privacy interests outweigh the presumption of access" (*see* Def. Mem. at 4) puts the cart before the horse because it is completely unsubstantiated.

## II. The Complaint Satisfies the Third Step of the *Lugosch* Analysis

Defendants have the affirmative burden of demonstrating that their privacy interests overcome that weighty presumption, after taking into account the subject matter and sensitivity of the information, the nature and degree of the injury purportedly threatening those resisting disclosure, and how the person seeking access intends to use the information. *See Amodeo II*, at 1051; *Ello* at 584 ("The final question is whether the 'competing considerations' ... are sufficient to overcome the presumption against denying public access."). Here, Defendants attempt to meet that burden by showing that the Information is: (1) privileged; (2) comprised of protected client confidences; and (3) threatening them with material harm. Defendants fail on all counts.

## III. The Information is Not Protected from Disclosure

As a threshold matter, the involvement of a publicly owned company "weighs in favor of unsealing." *Amodeo II*, at 1051, citing *Joy v. North,* 692 F.2d 880, 894 (2d Cir. 1982) (vacating protective order) (*cert denied sub nom. Citytrust v. Joy*, 490 U.S. 1051 (1983)). "The expectation of privacy is diminished where the client is a body such as a labor union or publicly held corporation." *Amodeo II*, at 1052. Moreover, for the reasons set forth below, the information is

not protected from disclosure pursuant to the attorney-client privilege or as protected "client confidences."

A The Information is Not Privileged

Importantly, the Information is not protected by the attorney-client privilege. "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *United States v. Int'l Bhd. Of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)).

> The attorney-client privilege applies only in limited circumstances: (1) Where legal advice is sought; (2) from a professional legal advisor in his capacity as such; (3) the communication relating to that purpose; (4) made in confidence; (5) by the client [or attorney] (6) are at his instance permanently protected; (7) from disclosure by himself or the legal advisor; (8) except if the privilege is waived.

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 193 F.R.D. 189, 199 (S.D.N.Y. 1999) (citations omitted). "In other words, the attorney-client privilege applies only to communications between privileged persons in confidence for the purpose of obtaining or providing legal assistant to the client." *Id.* The attorney-client privilege only protects disclosure of communications, and it does not protect disclosure of underlying facts by those who communicated with the attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); *accord Gucci America, Inc. v. Guess?, Inc.*, 281 F.R.D. 58, 70 (S.D.N.Y. 2010) ("In the corporate context ... communications conveying business (as opposed to legal) advice are excluded from the privilege."). The attorney-client privilege belongs solely to the client and can be asserted only by the client. *See In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987).

Here, Defendants seek to protect Information that fails to meet one or more of the elements necessary to establish privilege. This is easily demonstrated by reference to the portions of the

Information that Defendants have emphasized as the most likely to be protected. *See* MOL at 9-11. Defendants specify eleven (11) such items in the MOL:

1. "In 2014, Plaintiff conducted two employment investigations and brought them to successful conclusions." MOL at 9.

2. "MCHA client Mitsubishi Polyester Film ('MPF') was the subject of multiple gender discrimination complaints, all of which were managed or settled privately." *Id.*

3. During 2014, a former MCHA President (identified in the Complaint by name)[2] was the subject of a sexual harassment and hostile work environment claim. Plaintiff, as counsel, investigated the matter and asked the executive invasive and embarrassing questions regarding his own genitalia. *Id.* at 10.

4. The executive "attempted to blackmail a potential whistleblower (the man who brought the claims described in Complaint ¶ 65 ) in order to keep him from revealing financial improprieties."

5. The results of the investigation "revealed possible violations of city, state, or federal law against sexual misconduct, sexual harassment, or Sarbanes-Oxley." *Id.*

6. "Mitsubishi 'paid a very large sum' to resolve the sexual harassment complaint" against [the executive]." *Id.*

7. "A female employee, Amber, was denied severance upon termination while a male employee, Dan (Amber's husband), was given severance upon termination; Plaintiff complained of this conduct; no investigation was undertaken." *Id.*

8. "In August 2016, Plaintiff, as counsel conducted an investigation into a claim of sexual harassment made by a female in MCHA's legal department; Mr. Oliva refused to allow Plaintiff to interview the alleged wrongful actor; and the female employee involved left the company shortly thereafter." *Id.*

9. "MCHA's client, MCC, authorized Mr. Oliva to settle the Genomatica litigation for $2,000,000 or more; that Plaintiff, as counsel extended a settlement demand of $2,300,000 to Genomatica; and that the settlement demand was issued at Mr. Oliva's express direction." *Id.*

---

[2] Although Plaintiff considers it completely unnecessary, for the reasons set forth herein, Plaintiff does not believe that the prosecution of her case would be impaired if the Court chose to redact the executive's name from the Complaint, now that his identity has been disclosed to Defendants.

10. "Plaintiff discloses and/or threatens to disclose other confidential information, including aspects of Mitsubishi's internal procedures, such as what it specifically defines as grounds for termination; its policies of progressive discipline, and how it has handled employees who have been disciplined in accordance with company practices and procedures." *Id.*

11. "Plaintiff discloses conversations between herself and Mr. Oliva, as to competency of employees in the MCHA legal department." *Id.*

In addition to the foregoing items, Defendants also claim, generally, that certain paragraphs of the Complaint disclose the content of conversations "about MCHA's clients," "detailed information" Plaintiff learned about "disciplining of company employees," "quality of work performed by other members of the MCHA legal department"; "claims brought against the company", "results of internal investigations", and "confidential negotiations with third parties." Def. Mem. at 11.

None of the foregoing items comprise "communications" seeking or providing "legal advice." Instead, they are underlying facts, or relate to business as opposed to legal advice, that are outside of the protection of the attorney-client privilege. Moreover, only one of the Defendants, MCHA, was Plaintiffs' client, and thus any attorney-client privilege cannot extend to the other Defendants. Finally, to the extent that any privilege would attach (and it does not), Defendants have waived the privilege under the doctrine of implied waiver (to the extent that Defendants placed in issue the contents of any privileged communications at issue by accusing Plaintiff of violating her professional ethics) or pursuant to the "crime/tort" exception to the privilege. *See In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) (privilege may be waived when holder of privilege makes assertions placing privileged information at issue); *see also United States v. Bilzenan,* 926 F.2d 1285, 1292 (2d Cir. 1991), *cert denied*, 502 U.S. 813 (1991) ("[P]rivilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497,

514-15 (S.D.N.Y. 2001) (exception applies where crime or tort was "primary motivation" or "determinative factor" behind defendant's conduct).

B The Information Isn't Confidential Under The Rules of Professional Conduct

The Information identified by Defendants, including the items identified in pages 9-11 of Defendants' MOL, does not arise to the level of protected "confidential information" or of protected client "confidences." Under Rule 1.6(a) of the New York Rules of Professional Conduct, N.Y. Comp. Codes R. & Regs. Tit 22, § 1200.0 (22 NYCRR 1200) (the "NYRPC"), "Confidential Information" consists of information that is: "(a) protected by the attorney-client privilege; (b) likely to be embarrassing or detrimental to the client if disclosed; or (c) information that the client has requested to be kept confidential. *Id.* While the test is disjunctive, Defendants fail each of the three (3) prongs of this analysis. *First*, as set forth above, the Information is not protected by attorney-client privilege. *Next*, having submitted no declaration or affirmation by a person with personal knowledge, Defendants have made no showing that Plaintiff's client (MCHA) requested to keep the Information confidential. *Finally*, the information is not likely to be embarrassing or detrimental to MCHA if it is disclosed.

Defendants make the unsubstantiated claim that disclosure threatens them with the "chance" of "significant harm" that is "financial or reputational." *See Def. Mem.* at 6-7. But Defendants do not identify any financial or reputational harm that is more than speculative in nature. Indeed, they proffer no declarations or affidavits attesting to the supposed threat, after having waited more than two months to seek a protective order. Nor do they point to any harm that has actually materialized during that time. As pointed out by the Court's Order (ECF No. 26), this significant delay belies their claims of harm. Instead, they assert in a vague, ambiguous, and conclusory fashion that:

> A significant number of MCHA's clients, MCC and MCHC's employees and MCC and MCHC's customers are based in Japan. Service upon MCC and MCHC will likely draw additional attention to this matter. If the Complaint remains public through the period in which MCC and MCHC are served, there is significant risk of harm to Moving Defendants, MCC, MCHC and to the careers and personal lives of several non-party individuals who are the subject of confidential information set forth in the Complaint and who, as non-parties, have no independent means to seek redaction of this information.

Def. Mem. at 6. This argument is entirely specious and unsupported. First, MCHA and its attorney of record have refused to accept service on behalf of the Japanese entities although they have acknowledged to Plaintiff's counsel that they will eventually represent MCC and MCHC but first will require Plaintiff to go through the unnecessary expense and delay of satisfying the "Hague Convention" requirements to serve the Japanese parties. Thus, MCHA has no standing here to argue that a risk or harm will come to MCC or MCHC's employees or customers.

Further, Defendant MCHA is an administrative holding company, not a law firm or other entity authorized to practice law on behalf of external clients. While the corporate Defendants are signatories to a Legal Services Agreement "pursuant to which all of their legal matters throughout the United States are managed by the MCHA legal department" (Complaint, ¶27), that does not entitle MCHA to engage in the unauthorized practice of law in New York. MCHA's principal place of business is located in New York, and under the ethical rules applicable in New York, MCHA cannot provide legal services and operate any other business. Pursuant to Rule 5.8(a) of the NYRPC:

> Multi-disciplinary practice between lawyers and nonlawyers is incompatible with the core values of the legal profession and therefore, a strict division between services provided by lawyers and those provided by nonlawyers is essential to protect those values.

NYRPC §5.8(a).

MCHA's Legal Services Agreement may also run afoul of other provisions of the NYRPC, including: (i) Rule 5.8(a)(2)'s prohibition of a lawyer or law firm permitting a nonlegal professional or nonlegal professional service firm from obtaining, holding, or exercising, directly or indirectly, any ownership or investment interest in, or managerial or supervisory right, power or position in connection with the practice of law by the lawyer or law firm.; and (ii) Rule 5.5's prohibition on aiding a nonlawyer in the unauthorized practice of law. *See* NYRPC §§5.5, 5.8. So, even though there is no harm to MCHA, MCHA would not be entitled to a protective order on the basis of such harm even if it did exist.

The only applicable protection Defendants can argue for, in good faith, is on the basis of "Confidential Information" but, for the reasons set forth herein, no "Confidential Information" has been revealed. As set forth above, only MCHA, Plaintiff's sole client, can even assert that protection. As to the other defendants, they have no independent right of privacy under applicable law. *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, *8 (S.D.N.Y. July 12, 2018), citing *Farrow v. Allstate Ins. Co.,* 862 N.Y.S. 2d 92, 93 (N.Y. App. Div. 2008) ("New York State does not recognize the common-law tort of invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51."). And, as mentioned above, MCHA does not have standing to assert the privacy interests of the non-moving Defendants.[3]

Finally, the Information disclosed is uniformly benign, mundane, and routine. Whether analyzed individually or collectively, the items identified are not significant enough or sensitive enough to outweigh the presumption of public access afforded to a pleading. Indeed, these items do not constitute "Financial records of a wholly owned business, family affairs, illnesses,

[3] Plaintiff also observes that Defendants' contentions concerning the purported embarrassment of defendants MCHC and MCC underscore Plaintiff's allegations that MCHA act just like it is a Japanese company elevating adherence to *Japanese* customs and norms over compliance with U.S. laws.

embarrassing conduct with no public ramifications, and similar matters" or items that will enable "commercial competitors seeking an advantage" over Defendants. *See Amodeo II,* at 1051. Statements in a pleading, such as those identified by Defendants, do not "'gratify private spite or promote public scandal' to such a degree that they overcome the presumption against sealing judicial records." *See Ello, supra* at 584. (quoting *United States v. Amodeo,* 71 F.3d, 1044, 1051 (2d Cir. 1995)). Nor are the disclosures here "embarrassing or detrimental." *See Johnson v. MediSys Health Network,* 10-cv-1596, 2011 U.S. Dist. LEXIS 156828, * 86 (E.D.N.Y. Apr. 28, 2011), cited by Defendants (Def. Mem. at 4) (disclosure of the existence of a corporation's compliance programs and provisions, descriptions of those programs, and what they said, did not amount to confidential information whose disclosure would be embarrassing or detrimental to corporation; paragraph in complaint concerning termination simply reflected an employment decision, and did not arise to a confidence nor a disclosure embarrassing or detrimental to defendants). Defendants offer no explanation or evidence concerning how the Information threatens any actual harm. Indeed, the paucity of their claims of harm is especially transparent with respect to matters which have been settled and fully released. *See* Information items 1, 2, and 9, *supra* at Section A.

Where, as here, Defendants offer only a "very thin and speculative basis for sealing," such assertions are insufficient to overcome the presumption against sealing afforded to judicial documents, such as the instant Complaint. *See, e.g., Byrnes v. Empire Blue Cross Blue Shield,* 2000 WL 60221, *6 (S.D.N.Y. Jan 25, 2000).

## IV. The Court Did Not Overlook Any Controlling Decisions

As set forth above, a Motion to Reconsider will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. Here, Defendants do not cite any controlling decisions that the Court overlooked and the controlling authority they cite

militates in favor of denying their motion. *See generally,* Def. Mem. at 4-6. Instead, Defendants primarily rely on non-controlling cases from the Eastern District of New York. *See id.*, citing *Johnson v. MediSys Health Network,* 2011 U.S. Dist. LEXIS 156828 (E.D.N.Y. Apr. 28, 2011) (report and recommendation of Magistrate Judge); *Gelb v. American Tel. & Tel. Co.,* 813 F. Supp. 1022 (S.D.N.Y. 1992) (concerning information that rose to the level of *trade secrets* and information that would allow defendants' competitors to cause it competitive injury); *Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) ("*Dorsett I*") (granting protective order in connection police department internal affairs report that was not a "judicial document," and thus no presumption of public access attached to it); *Dorsett v. County of Nassau,* 289 F.R.D. 54, 68 (E.D.N.Y. 2012) ("*Dorsett II*") (granting in part, and denying in part, motion to vacate protective order). Nothing in the *Gelb* and *Dorsett* cases supports Defendants' motion for reconsideration.

The remaining two cases cited by Defendants, *Ello v. Singh* and *United States v. Amodeo,* discussed in detail above, actually support denial of their request to seal or redact the Complaint. Accordingly, reconsideration of Defendants' Letter Motion does not warrant the relief requested.

## CONCLUSION

For the reasons set forth herein, Defendants' motion should be denied in its entirety.

Dated: Garden City, New York
December 17, 2018

Respectfully Submitted,

**VALLI KANE & VAGNINI LLP**

By: /s/ *Matthew L. Berman*

Sara Wyn Kane
skane@vkvlawyers.com
Robert J. Valli, Jr.
rvalli@vkvlawyers.com
Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2018 a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Defendants' (Partial) Motion to Reconsiderwas served via electronic email on all counsel of record.

Date: December 17, 2018

*/s/ Matthew L. Berman*
Matthew L. Berman, Esq.