UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JENNIFER S. FISCHMAN,                                                   :
                                                                        :
                              Plaintiff,                                :     18-CV-8188 (JMF)
                                                                        :
              -v-                                                       :     OPINION AND ORDER
                                                                        :
MITSUBISHI CHEMICAL HOLDINGS AMERICA,                                   :
INC. et al.,                                                            :
                                                                        :
                              Defendants.                               :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Jennifer Fischman filed a complaint against Mitsubishi Chemical Holdings America, Inc. ("MCHA"), Nicolas Oliva, and Donna Costa (collectively "Defendants"), as well as other Mitsubishi-related Defendants not at issue here, on September 7, 2018. *See* Docket No. 1. She refiled the identical and now-operative complaint a few days later. *See* Docket No. 3 ("Compl."). The Complaint alleges, among other things, that Defendants discriminated against Fischman on the basis of sex during her time as MCHA's Corporate Counsel, Assistant General Counsel, and finally, Acting General Counsel and Chief Compliance Officer. *See id.* ¶¶ 4, 10, 24, 35, 41, 47. Nearly three months after Fischman filed her Complaint, on December 3, 2018, Defendants filed a motion to dismiss and a short letter motion to seal both the Complaint and their motion papers. *See* Docket Nos. 24 ("Mot. to Seal"), 25 ("MTD"). The Court denied the motion to seal with regard to the Complaint. *See* Docket No. 26 ("Sealing Order").[1] The Court noted that Defendants "provide[d] no explanation, let alone justification, why they waited over

---

[1] The Court temporarily granted Defendants' request to file redacted motion papers, explaining that it would permanently resolve the sealing issue for those papers when it resolved the underlying motion to dismiss. *See* Docket No. 26.

two months to seek the relief they are seeking." *Id.* The Court concluded that "in light of that delay, the presumption in favor of public access outweighs any countervailing interests." *Id.*

Now pending are two motions filed by Defendants: one asking the Court to reconsider its Sealing Order and the other seeking to dismiss the Complaint. *See* Docket No. 28 ("Mot. for Recons."); MTD. Defendants' primary argument in both motions is that the Complaint relies heavily on privileged or confidential information that Fischman learned while employed in the General Counsel's office at MCHA. They argue that any such information in the Complaint should be redacted and that any allegations based on the confidential information should be stricken. *See* Docket No. 28-3 ("Recons. Mem."); Docket No. 25-8 ("MTD Mem."), at 1-21. For the reasons provided below, Defendants' motion for reconsideration is denied and their motion to dismiss is granted in part and denied in part.

## BACKGROUND

Fischman filed her complaint first on September 7, 2018, and then again on September 11, 2018 (when she filed an identical complaint). *See* Docket No. 1; Compl. Defendants received the Complaint no later than September 28, 2018 (when they waived service), *see* Docket Nos. 8, 9, 10, and appeared through counsel on November 20, 2018, *see* Docket Nos. 15, 17, 18. Also on November 20, 2018, Defendants filed a letter motion seeking an extension of the deadline by which they had to respond to the Complaint. *See* Docket No. 16. Defendants did not file their two-page letter motion to seal the Complaint, however, until December 3, 2019; in other words, they waited more than two months from when they first received the Complaint before seeking to seal it. *See* Mot. to Seal. Defendants also filed their motion to dismiss that same day. *See* MTD. By the time Defendants filed these motions, news outlets had already reported on the allegations in the Complaint. *See, e.g.*, Kristen Rasmussen, *Ex-Acting GC Hits*
2

*Mitsubishi Chemical Holdings With Federal Gender Discrimination Suit*, LAW.COM, Sept. 19, 2018, https://www.law.com/corpcounsel/2018/09/19/ex-acting-gc-hits-mitsubishi-chemical-holdings-with-federal-gender-discrimination-suit/. In part for these reasons, the Court on December 4, 2018, denied Defendants' motion to seal the Complaint, noting that the "cat [wa]s long out of the bag." *See* Sealing Order. Defendants now move for reconsideration of the Court's Sealing Order and to dismiss the Complaint.

## MOTION FOR RECONSIDERATION

The Court begins with the motion for reconsideration. Motions for reconsideration are governed principally by Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, the latter of which is meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (citation omitted). Reconsideration "is appropriate where the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (internal quotation marks omitted). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks and alteration omitted). Ultimately, "a district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).[2]

---

[2]   It is of no consequence whether the motion here is viewed as a "motion for

Applying those standards here, the Court can and does swiftly reject Defendants' motion for reconsideration. As Fischman points out in response to Defendants' motion, "Defendants do not cite any controlling decisions that the court overlooked" in its Sealing Order. Docket No. 30 ("Recons. Opp'n"), at 12; *see* Recons. Mem. 3-7. In fact, Defendants cite only two Second Circuit cases: one, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), on the standard for reconsideration and the other, *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995), for the general proposition that "third party privacy interests are a venerable common law exception to the presumption of access." Recons. Mem. ii, 3, 7. Nor do Defendants suggest that the Court overlooked evidence or that new evidence has come to light. At most, Defendants cite two district court cases for the proposition that "federal district courts in New York regularly grant motions to seal that are filed months after the filing of those documents they seek to seal." Recons. Mem. 4 (citing *Johnson v. MediSys Health Network*, No. 10-CV-1596 (ERK) (VVP), 2011 WL 5222917 (E.D.N.Y. June 1, 2011), *report and recommendation modified*, 2011 WL 4101323 (E.D.N.Y. Sept. 8, 2011); *Gelb v. American Tel. & Tel. Co.*, 813 F. Supp. 1022 (S.D.N.Y. 1993)). But those cases, of course, are not "controlling."

More fundamentally, the two cases cited by Defendants notwithstanding, there is ample authority for the proposition that where, as here, a party fails to take immediate steps to request that publicly filed materials be sealed, its request to redact or seal may be denied for that reason. *See, e.g.*, *Next Caller Inc. v. Martire*, 368 F. Supp. 3d 663, 666-67 (S.D.N.Y. 2019) (denying a motion to seal as "untimely" in part because it was filed "nearly a year" after the unsealing order, even though the documents had not yet been unsealed); *In re Document Techs. Litig.*, 282 F.

---

reconsideration or reargument" or a "motion to alter or amend" because "the legal standards governing these motions are essentially the same." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998), *aff'd*, 241 F.3d 135 (2d Cir. 2001).

Supp. 3d 743, 750 (S.D.N.Y. 2017) ("[T]he proverbial cat is out of the bag, and plaintiffs' request for redaction is thus moot." (internal quotation marks omitted)); *SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*, No. 14-CV-2270 (JMF), 2014 WL 5643683, at *6 (S.D.N.Y. Nov. 4, 2014) (denying a request to redact as moot because "the proverbial cat [was] out of the bag"); *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, No. 11-CV-5697 (JSR), 2012 WL 4840805, at *6 (S.D.N.Y. Sept. 25, 2012) ("If UPS was concerned about the disclosure of confidential information, it should have immediately moved the court to seal the documents. . . . By UPS's own admission, at this point, the 'cat was out of the bag,' and ING's failure to seal the documents was irrelevant."); *King Pharm., Inc. v. Eon Labs, Inc.,* No. 04-CV-5540 (DGT), 2010 WL 3924689, at *10 (E.D.N.Y. Sept. 18, 2010) (denying redaction request for information that was "already public"); *see also, e.g.*, *Bailey v. City of N.Y.*, No. 14-CV-2091 (JBW) (VMS), 2015 WL 4523196, at *9 (E.D.N.Y. July 27, 2015) (denying a request for a confidentiality order where the party failed to take "timely action to correct any inadvertent disclosure" of the materials at issue); *SmithKline Beecham Corp. v. Pentech Pharm., Inc*., 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (Posner, J., sitting by designation) (noting, with respect to confidential information referenced in an opinion, "the cat is out of the bag").

The fact that Defendants' request to seal was (and is) premised on their claim that the Complaint includes privileged material does not strengthen their request; it dooms their request. A party seeking to show that inadvertent disclosure of privileged material did not waive the privilege must show, among other things, that it "tried to remedy such disclosure immediately." *Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2012 WL 1392965, at *8 (W.D.N.Y. Apr. 19, 2012) (citing cases); *accord LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04-CV-5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007). "Generally," that

5

requires "a request for the return or destruction of inadvertently produced privileged materials *within days* after learning of the disclosure." *Ceglia*, 2012 WL 1392965, at *9 (emphasis added) (citing cases); *accord LaSalle Bank Nat. Ass'n*, 2007 WL 2324292, at *5. Where the delay can be measured in weeks or months, as here, courts routinely reject requests to put the proverbial genie back in the bottle. *See, e.g.*, *LaSalle Bank Nat. Ass'n*, 2007 WL 2324292, at *3 (delay of "one full month"); *SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (delay of twelve days); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96-CV-2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (delay of one month).

Thus, the Court's decision was supported by ample precedent. It was also supported by common sense. There is a presumption in favor of access to judicial documents like complaints. *See, e.g.*, *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016) (holding that a complaint is a judicial document subject to a presumption of access); *see also Brown v. Maxwell*, — F.3d —, 2019 WL 2814839, at *3 (2d Cir. July 3, 2019) (reaffirming the presumption of access to judicial documents). Where, as here, a party seeks to overcome that presumption, it is that party's burden to demonstrate, with more than "generalized concerns," that sealing is supported by countervailing interests — that is, that some identifiable harm is likely to occur in the absence of sealing. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018); *see, e.g.*, *In re Document Techs. Litig.*, 282 F. Supp. 3d at 747 (stating that the party seeking to seal judicial documents has "the burden to establish, through competent evidence," that disclosure "would cause . . . clearly defined and serious harm"). The failure to act promptly plainly belies any such claim of harm, just as it does in other contexts. *See, e.g.*, *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (noting, in reference to a stay pending appeal, that the failure to act diligently to stop or reduce a harm

6

"severely undermines" any request for judicial intervention to stop the harm); *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 222 (S.D.N.Y. 2019) (noting, in the preliminary injunction context, that "it is well established that a court must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm in the absence of relief." (internal quotation marks omitted)); *Cassano*, 189 F.R.D. at 86 (finding that there was "no excuse" for "waiting 12 days" to figure out what privileged document had been shared by mistake); *cf. USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d 175, 197 (S.D.N.Y. 2011) (finding that there was no undue delay where a defendant sought and was granted a temporary restraining order against the plaintiff's disclosure of confidential information "less than a month" after the complaint was filed).

In short, Defendants' motion for reconsideration of the Court's denial of the motion to seal the Complaint is without merit and thus DENIED.[3] To the extent that Defendants seek to redact from their motion papers the same material that appears publicly in the Complaint, that request is also DENIED. Nevertheless, out of an abundance of caution, the Court will give Defendants a week to renew their request as to any other material. That is, if there is material that is not yet public that Defendants believe should be redacted, they shall request that it be redacted in accordance with the Court's Individual Rules and Practices **within one week of the date of this Opinion and Order**. In the absence of such a request, Defendants shall promptly file their heretofore sealed motion papers on the docket.

## MOTION TO DISMISS

The Court turns, then, to Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the

---

[3] Even if Defendants could otherwise satisfy the reconsideration standard, their request to seal would fail for an independent reason: As discussed below, they fail to demonstrate that the Complaint includes privileged or confidential information.

7

Federal Rules of Civil Procedure. In evaluating Defendants' motion, the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Fischman's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) (internal quotation marks omitted). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Defendants' primary argument for dismissal is premised on Fischman's disclosure of privileged or confidential information in the Complaint. Defendants contend that any such allegations should be stricken and that, without those allegations, Fischman does not allege any plausible claims. *See* MTD Mem. 9-21. In addition, Defendants argue that three of Fischman's claims — for retaliation, intentional infliction of emotional distress, and negligent destruction of employment opportunities — should be dismissed for independent reasons. *See id.* at 21-25. The Court begins with Defendants' primary argument and then turns to the others.

**A. Use of Privileged or Confidential Information as Basis for Dismissal**

Defendants' primary argument — that the case must be dismissed because Fischman relies in the Complaint, and is likely to rely in the future, on privileged or confidential

8

information — fails for three independent reasons. First, for the reasons discussed above, Defendants waived any privilege (or confidentiality protections) with respect to the contents of the Complaint by failing to take immediate steps to remedy any misuse by Fischman. Second, and in any event, the Complaint does not actually include any privileged or confidential information. And third, even if it did and Defendants had not waived the issue, dismissal would not be the appropriate remedy at this stage of the proceedings. The Court need not say anything more with respect to the first point, but addresses the latter two in turn.

Defendants' suggestion that the Complaint contains privileged information is easily rejected. The attorney-client privilege may be invoked for "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007); *see also* Restatement (Third) of the Law Governing Lawyers § 68 (2000) (hereinafter "Restatement"). All but three of Defendants' proposed redactions involve narratives of events, rather than communications, and thus are not subject to attorney-client privilege. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications"); *compare* Compl. ¶¶ 25, 36, 38, 42, 46, 61, 65-68, 89, 97, 102, *with* Docket No. 24-1 ("Proposed Redacted Compl.") ¶¶ 25, 36, 38, 42, 46, 61, 65-68, 89, 97, 102. The three redactions that do involve communications recount informal conversations between employees about sexism in the company; those communications are not comments made for the purpose of obtaining or providing legal advice. *Compare* Compl. ¶¶ 53, 63, 73, *with* Proposed Redacted Compl. ¶¶ 53, 63, 73. Accordingly, none of the redacted information is actually protected by attorney-client privilege. Indeed, the argument that the Complaint includes

9

privileged information is so weak that Defendants shift in their motion to dismiss to focus instead on the argument that the obligation to protect client confidences "goes far beyond protecting communications that are subject to the attorney-client privilege." MTD Mem. 6.

Defendants' claim that Fischman relies on confidential client information she has an ethical duty to protect is stronger, but it too falls short. A lawyer's obligation to protect confidential client information does extend beyond attorney-client privilege. *See* New York Rules of Professional Conduct § 1.6 (hereinafter "N.Y. Rules"); *see also* Restatement § 60.[4] Confidential client information includes information "gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." N.Y. Rules § 1.6. But the definition of the term and exceptions to the rule limit the rule in three ways relevant here. First, as discussed, none of the redacted information is actually protected by attorney-client privilege. Second, confidential client information must be "gained during or related to the representation of a client." *Id.*; *see Levitt v. Brooks*, 669 F.3d 100, 104 (2d Cir. 2012). A "communication concerning the fee to be paid has no direct relevance to the legal advice to be given" because it

---

[4] The parties agree that the New York Rules of Professional Conduct govern here. *See* MTD Mem. 6-7; MTD Opp'n 9-12; *see also* Compl. ¶¶ 21, 24 (alleging that Fischman was registered as MCHA's in-house counsel under New York state law and worked in New York). Reliance on the New York Rules is proper because the "salutary provisions of New York's ethical rules have consistently been relied upon by the courts of this district and circuit in evaluating the ethical conduct of attorneys." *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 163 (2d Cir. 2013). This is true even though "the Rules of Professional Conduct lack the force of law." *In re Thelen LLP*, 736 F.3d 213, 223 (2d Cir. 2013). Reliance on the ABA Model Rules of Professional Conduct (on which the New York Rules were modeled) and on the Restatement is also proper, as those sources frequently inform courts' interpretation of the New York Rules. *See, e.g.*, *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of N.Y.*, 852 F.3d 178, 183 n.3 (2d Cir. 2017); *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 177-78 (2d Cir. 2009).

does not "relate to the subject matter of the attorney's professional employment." *Levitt*, 669 F.3d at 104 (regarding attorney-client privilege). Accordingly, Fischman's allegations about her and her colleagues' wages — which are essentially disputes about the fee she was paid for her legal work — do not come from, or relate to, her representation of MCHA, and thus are not properly considered confidential client information. *See* Compl. ¶¶ 61, 88; Restatement § 65 cmt. e (noting that the exception for fee disputes "applies to a claim by an inside legal counsel for a salary"). Similarly, any allegations regarding general comments made about sexism within the company (rather than regarding action taken relating to official complaints) do not come from, or relate to, Fischman's legal work and thus are not protected client information. *See* Compl. ¶¶ 53, 54, 63. Third, Defendants do not represent that they requested that the information at issue be kept confidential at any point before Fischman commenced this action. For these reasons, Defendants' proposed redactions to Paragraphs 25, 38, 53, 54, 61, 63, and 88 of the Complaint are unjustified.

In any event, confidential client information does not generally include "the fact of representation." *Bernstein*, 814 F.3d at 145. Under this standard, for example, the fact that Fischman visited or handled projects for two entities publicly affiliated with MCHA, Mitsubishi Chemical Performance Polymers, Inc. and Mitsubishi Polyester Film, Inc. does not qualify as confidential client information. *See* Compl. ¶¶ 38, 54; *see also* http://www.mitsubishichemical holdings.com/us-co.php. Confidential client information also "does not ordinarily include . . . information that is generally known in the local community or in the trade, field or profession to which the information relates." N.Y. Rules § 1.6. (internal quotation marks omitted). The New York Rules do not define what information is "generally known," but the Restatement explains that information in "public-record depositaries such as government offices, or in publicly

11

accessible electronic-data storage is generally known if the particular information is obtainable through publicly available indexes and similar methods of access." Restatement § 59 cmt. d. Applying that principle, courts have held that where information is publicly filed (and the party seeking to protect it does not take immediate steps to do so), the information no longer qualifies as "confidential." *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[H]owever confidential [information] may have been beforehand, subsequent to publication it [i]s confidential no longer."); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409-10, 422 (6th Cir. 2008) (noting that "[t]he use of the word 'secret' [in the Michigan Rules of Professional Conduct] suggests that a lawyer may disclose information that originated in a confidential document when that information has subsequently become publicly known"). As discussed above, that is the case here. However confidential the information in the Complaint was before September 2018, it was no longer confidential by December 2018 and, thus, no longer protected by Rule 1.6. That is, by the time Defendants filed their motion to dismiss, "the cat [wa]s out of the bag." *Gambale*, 377 F.3d at 144 n.11.

That brings the Court to the final reason that Defendants' primary argument fails: Even if Fischman's Complaint did include privileged or confidential information, and Defendants had not waived the issue, dismissal would be inappropriate at this stage of the proceedings. There is no fixed rule for dealing with violations of state ethics rules because courts are "not bound by" those rules. *Grievance Comm. for S. Dist. of N.Y. v. Simels*, 48 F.3d 640, 646 (2d Cir. 1995). The Second Circuit and New York State courts have upheld both the dismissal of complaints "prepared in reliance on privileged information," *see United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 166 (2d Cir. 2013) (citing *Ackerman v. Nat'l Prop. Analysts, Inc.*, 887 F. Supp. 510, 517 (S.D.N.Y. 1993)), and the admission of evidence "even if it finds that counsel obtained

the evidence by violating ethical rules," *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 126 (S.D.N.Y. 1999) (emphasis omitted) (citing Second Circuit and New York appellate court decisions); *see also Bacote v. Riverbay Corp.*, No. 16-CV-1599 (GHW) (AJP), 2017 WL 945103, at *6 (S.D.N.Y. Mar. 10, 2017). More broadly, recognizing that dismissal "may impede the pursuit of meritorious litigation to the detriment of the justice system," the Second Circuit has cautioned courts to balance the competing concerns of enforcing ethical rules and allowing possibly meritorious litigation "by limiting remedies for ethical violations to those necessary to avoid tainting the underlying trial." *Quest Diagnostics*, 734 F.3d at 166 (internal quotation marks and alteration omitted). Here, Fischman alleges behavior that, if true (and the Court must assume that it is true at this stage of the litigation), could form the basis of meritorious litigation. Thus, even if the allegations rely in part on improperly disclosed client information — or Fischman is likely to rely on such information to prove her case — it would be "to the detriment of the justice system" to dismiss the Complaint.

To the extent that Defendants' motion is premised on what may happen later in the litigation — that is, on evidence that Fischman may seek to introduce or on defenses that Defendants may assert — it is even more plain that dismissal at this stage is an inappropriate remedy. *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 n.19 (2d Cir. 2015) (noting that the existence of what "may ultimately prove to be a successful defense . . . does not . . . warrant dismissal at the pleading stage"). Defendants' concerns about disclosure of privileged or confidential information can be mitigated, if not eliminated, through an appropriate protective order. *See* Fed. R. Civ. P. 26(c); *see, e.g.*, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (citing cases about confidential personnel files and noting that "the harm that would result from the disclosure of . . . undisputedly personal

13

information" establishes good cause for a protective order). And at this stage of the case, there is no way of knowing what evidence Fischman (or Defendants themselves) may seek to use and whether a less drastic remedy than dismissal would address any concerns about inappropriate disclosures. That is, Defendants can always renew the argument that Fischman cannot prove her case without compromising privileged or confidential information at the summary judgment stage, when the Court will have the benefit of a full factual record. *Cf., e.g.*, *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002) (holding that a ruling on qualified immunity is "premature" where the defense "turns on factual questions"); *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (same).

**B. Defendants' Other Arguments for Dismissal**

That leaves Defendants' arguments that three of Fischman's claims must be dismissed for "reasons independent of Plaintiff's reliance upon confidential information." MTD Mem. 21.

### 1. Retaliation Under New York Labor Law § 215

First, Defendants seek to dismiss Fischman's allegation that Defendants retaliated against her in violation of New York Labor Law. *See id.* at 21-22; Compl. ¶¶ 133-36. To state a claim, Fischman "must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) because [s]he has opposed any unlawful employment practice." *Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir. 2018); *see DeLuca*, 2017 WL 3671038, at *23 (noting that "[s]tate-law retaliation claims are analyzed under identical standards" as federal retaliation claims). Here, Fischman alleges the existence of an adverse employment action (namely, her termination on January 30, 2017, *see* Compl. ¶ 80) and that she complained about pay discrimination (most prominently, a complaint on March 1, 2016, about the company's denial of a severance package to a female employee, *see id.* ¶ 73). But she fails to

14

plausibly allege that the former was caused by the latter. At most, she relies on the temporal proximity of the two. Without more, however, a nearly ten-month gap between protected activity and adverse employment action is insufficient to support an inference of causation. *See, e.g.*, *Brown v. City of N.Y.*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (affirming dismissal of a retaliation claim where "[t]he time lapses between Brown's protected activities and the alleged retaliatory acts — ranging from two months to several years — were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations"); *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 401 (S.D.N.Y. 2012) (granting motion for judgment on the pleadings as to a retaliation claim where four months elapsed between the complaint and the adverse action, because "it is well settled that when mere temporal proximity is offered to demonstrate causation, the protected activity and the adverse action must occur very close together" (internal quotation marks omitted)); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457-58 (S.D.N.Y. 2012) (holding that a gap of three to six months between protected activity and an adverse employment action was "insufficient, standing alone, to establish a causal connection" (collecting cases)); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." (collecting cases)); *see generally Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (noting that, without more, the temporal proximity between an employer's knowledge of protected activity and an adverse action must be "very close" to establish a prima facie case of retaliation).[5] Thus, Fischman's retaliation claim

---

[5] The Complaint can be read to suggest that Fischman complained about pay

under New York Labor Law § 215 must be and is dismissed.

### 2. Intentional Infliction of Emotional Distress

Next, Defendants move to dismiss Fischman's claim for intentional infliction of emotional distress on the ground that she fails to allege "extreme and outrageous conduct" by Defendants. *See* MTD Mem. 22-24; Compl. ¶¶ 137-40. To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996). For conduct to qualify as "extreme and outrageous," it "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (internal quotation marks omitted). That standard is so high because intentional infliction of emotional distress is a "highly disfavored tort under New York law . . . to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and alterations omitted). Fischman does not come close to meeting the threshold, as the allegations that someone was fired and "forcibly and publicly escorted from the building" fall "'far short' of the tort's 'strict standard' for outrageous behavior." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86 (N.Y. 1983)). Nor does Defendants' refusal to let Fischman email her colleagues and clients about her termination and their decision to contest her unemployment benefits qualify as "outrageous conduct." *See* Compl. ¶¶ 86, 138. Thus, this claim is also

---

discrimination on unspecified occasions other than March 1, 2016. *See* Compl. ¶¶ 61, 64, 70. But the Complaint suggests that these occasions predated March 1, 2016, making the timing no closer for purposes of the retaliation claim.

dismissed.

### 3. Negligent Destruction of Employment Opportunity

Finally, Defendants seek to dismiss a claim that Fischman styles "Negligent Destruction of Plaintiffs' [sic] Employment Opportunities." *See* MTD Mem. 24-25; Compl. ¶¶ 141-46. The allegations relevant to this claim "are identical to those supporting the claim for intentional infliction of emotional distress" — in short, that Fischman was not allowed to send a goodbye email to her colleagues and was escorted from the building when she was fired. MTD Opp'n 20-21; *see* Compl. ¶¶ 142-43. In taking those steps, Fischman argues, "Defendants breached their duty of reasonable care by terminating [her] employment in a manner that all but guaranteed she would never work as an attorney again." MTD Opp'n 20. That claim borders on frivolous. "The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach. If the defendant owes no duty to the plaintiff, the action must fail." *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Valdez v. City of N.Y.*, 960 N.E.2d 356, 361 (N.Y. 2011) (discussing the "fundamental obligation of a plaintiff pursuing a negligence cause of action to prove that the putative defendant owed a duty of care"). Fischman cites, and the Court has found, no case to support the proposition that an employer has a duty to fire an employee in a way that will not interfere with her future employment opportunities or to provide her with a letter of recommendation. Nor does Fischman provide any factual support for her assertion that Defendants have "all but guaranteed" that she will not be able to find work as a lawyer again. MTD Opp'n 20. Thus, whether construed as a negligence claim or as a claim for tortious interference with prospective economic advantage (which requires, at this stage, a factual allegation of a business relationship

with a third party, *see, e.g.*, *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012)), this claim must also be dismissed.

## CONCLUSION

In sum, for the reasons stated above, Defendants' motion for reconsideration is **DENIED** and their motion to dismiss is **GRANTED in part and DENIED in part**. Specifically, Defendants' motion to dismiss is granted to the extent it seeks to dismiss Fischman's claims for retaliation under New York Labor Law § 215, for intentional infliction of emotional distress, and for "Negligent Destruction of Plaintiffs' Employment Opportunities," and it is otherwise denied.

Fischman is granted leave to amend her Complaint to address the deficiency in her retaliation claim, in part because the deficiency is one that Defendants arguably did not even identify in their motion. The Court declines to grant Fischman leave to amend with respect to the other two claims, however, because she does not suggest that she possesses any additional facts that could remedy the defects in those claims and any such amendment would undoubtedly be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a district court may dismiss without granting leave to amend when the problems with the plaintiff's claims are "substantive," where "better pleading will not cure" them, and thus, where repleading would be "futile"); *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) (denying leave to amend where the plaintiff did not request permission to amend or "give[] any indication that [s]he is in possession of facts that would cure the problems identified in this [O]pinion"). Fischman shall file any amended complaint **within two weeks of this Opinion and Order**.

To the extent that Defendants seek to redact from their motion papers any information that appears publicly in the Complaint, that request is also **DENIED**. To the extent that

Defendants seek to redact other information, they shall request that it be redacted in accordance with the Court's Individual Rules and Practices **within one week of the date of this Opinion and Order**.  In the absence of such a request, also **within one week of the date of this Opinion**, Defendants shall file their heretofore sealed motion papers on the docket.

The Clerk of Court is directed to terminate Docket Nos. 25 and 28.

SO ORDERED.

Dated: July 11, 2019
New York, New York

_____
JESSE M. FURMAN
United States District Judge