UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER S. FISCHMAN,<br><br>    Plaintiff,<br><br> v.<br><br>MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.; MITSUBISHI CHEMICAL CORPORATION; MITSUBISHI CHEMICAL HOLDINGS CORPORATION; NICOLAS OLIVA, in his individual and professional capacities; DONNA COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in their individual and professional capacities,<br><br>    Defendants. | Civil Action No. 18-cv-08188 (JMF)<br><br>ORAL ARGUMENT REQUESTED |

**MITSUBISHI CHEMICAL HOLDINGS CORPORATION AND
MITSUBISHI CHEMICAL CORPORATION'S MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 3

   I.   Plaintiff's Employment At MCHA ................................................................ 3

   II.   Defendants MCHC And MCC ..................................................................... 4

   III.   Procedural History And Plaintiff's Claims ................................................. 4

ARGUMENT ......................................................................................................... 7

   I.   THIS COURT LACKS PERSONAL JURISDICTION OVER MCHC AND MCC ............................................................................................. 7

      A.   This Court Lacks General Jurisdiction Over MCHC And MCC Under CPLR § 301 ...................................................................... 8

      B.   This Court Lacks Specific Jurisdiction Over MCHC And MCC ................ 9

         1.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1) ........... 9

         2.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2) ......... 13

         3.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3) ......... 14

      C.   An Exercise Of Personal Jurisdiction Over MCHC Or MCC Would Not Comport With Due Process ....................................................... 15

         1.   The Exercise Of General Jurisdiction Would Not Comport With Due Process ............................................................................. 15

         2.   The Exercise Of Specific Jurisdiction Would Not Comport With Due Process ............................................................................. 15

   II.   PLAINTIFF DOES NOT PLEAD THAT EITHER MCHC OR MCC WAS HER EMPLOYER AND THUS FAILS TO STATE ANY CLAIM AGAINST THEM ..................................................................................... 17

   III.   EACH CLAIM AGAINST MCHC AND MCC IS FATALLY DEFECTIVE ............... 19

      A.   The Court Should Dismiss Plaintiff's Title VII Claims Because Her EEOC Complaint Did Not Name MCHC Or MCC .................................. 19

      B.   Plaintiff Fails To State An Equal Pay Act Claim .................................. 21

      C.   The Court Should Dismiss The Three Claims Previously Dismissed As To MCHA, Nicolas Oliva, And Donna Costa ..................................... 24

      D.   The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State And Local Law Claims ..................................... 24

      E.   Plaintiff's Discrimination Claims Based On Failure-To-Promote Allegations Are Time-Barred ......................................................... 24

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Andrews v. Citigroup Inc.*, 1999 WL 1277427 (S.D.N.Y. Dec. 30, 1999)....................................18

*Atuahene v. City of Hartford*, 10 Fed. App'x 33 (2d Cir. 2001)...............................................10, 22

*Aybar v. Aybar*, 169 A.D. 3d 137 (App. Div. 2d 2019)....................................................8

*Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001)....................21

*Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234 (S.D.N.Y. 1995)....................................14

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .........................................10

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)....................................................24

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) ...........................................13

*Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16 (2d Cir. 2015) ......................7, 10

*Chukwueze v. NYCERS*, 2013 WL 5878174 (S.D.N.Y. Nov. 1, 2013) .........................................25

*Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014)...........................................................16

*CMNY Cap., L.P. v. Perry*, No. 97 Civ. 6172, 1998 WL 132846 (S.D.N.Y. Mar. 23, 1998) .........................................................................................10

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) ...............................18

*Corning Glass Works v. Brennan*, 47 U.S. 188 (1974)....................................................21

*Da Silva v. Kinsho*, 210 F. Supp. 2d 241 (S.D.N.Y. 2000), *aff'd*, 229 F.3d 358 (2d Cir. 2000) .........................................................................................11

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ....................................................8, 9, 15

*Dennis v. United Parcel Service Inc.*, 2008 WL 4945634 (S.D.N.Y. Nov. 20, 2008) .........................................................................................19

*Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505 (S.D.N.Y. 2016)...........................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ...............................7, 9

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007)....................................23

*Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111 (2d Cir. 2000)...........................17

ii

*Fernandez v. Chertoff*, 471 F.3d 45 (2d Cir. 2006) ......................................................20

*Frasier v. Gen. Elec. Co.*, 930 F.2d 1004 (2d Cir. 1991) ..............................................21

*Gibbons v. Malone*, 703 F.3d 595 (2d Cir. 2013) ...........................................................3

*Goodwine v. City of New York*, 2016 WL 3017398 (S.D.N.Y. May 23, 2016)............................25

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)...............................8, 17

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ...........................................8

*Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361 (2d Cir. 2006) ......................................17

*Hammond v. Bloom New York*, 2001 WL 789295 (S.D.N.Y. July 12, 2001)..........................18, 19

*Heinfling v. Colapinto*, 946 F. Supp. 260 (S.D.N.Y. 1996)............................................14

*Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999)...................................................................................11

*Hilton v. Bedford Paving*, *LLC*, 769 F. Supp. 2d 92 (W.D.N.Y. 2010).................................20

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)....................................................16

*Iqbal v. Ashcroft*, 556 U.S. 662 (2009) ............................................................22, 23

*J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544 (S.D.N.Y. 2001) ............................8

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998).............................................8, 17

*Johnson v. Palma*, 931 F.2d 203 (2d Cir. 1991) .......................................................20

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2018 WL 4681616 (S.D.N.Y. Sept. 11, 2018)...........................................................................11

*Karabu Corp v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998).........................................11

*Klein v. New York Univ.*, No. 07 Civ. 160, 2008 WL 3843514 (S.D.N.Y. Aug. 14, 2008) .............................................................................................21

*Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ...............................................11

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210 (2000)................................................14

*Laurin v. Pokoik*, 2004 WL 513999 (S.D.N.Y. Mar. 15, 2004) .......................................18

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001)........................................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015
WL 6243526 (S.D.N.Y. Oct. 20, 2015) ...................................................................16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ...............16, 17

*Local 1180, Comm. Workers of Am., AFL-CIO v. City of New York*, 318 F. Supp.
3d 672 (S.D.N.Y. 2018) .................................................................................17

*Manos v, Geissler*, 377 F. Supp. 2d 422 (S.D.N.Y. 2005)...........................................20

*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990) .......................................................8

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ..............................9

*Medina v. Bauer*, No. 02 CIV. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004).....................10

*Mendez v. Pure Foods Management Grp., Inc.*, 2016 WL 136636 (D. Conn. Jan.
14, 2016) ...............................................................................................12

*In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2d Cir. 1998)...............................24

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ......................8

*Murray v. Miner*, 74 F.3d 402 (2d Cir. 1996)......................................................11, 18

*Nechis v. Oxford Health Plans*, 421 F.3d 96 (2d Cir. 2005)........................................5

*PaineWebber. Inc. v. Westgate Grp. Inc.*, 748 F. Supp. 115 (S.D.N.Y. 1990).....................10

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) .............................7

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705
(2d Cir. 2013)...........................................................................................23

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) ...............................9

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ..................................................24

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) .........................17

*In re Roman Catholic Diocese Inc.*, 745 F.3d 30 (2d Cir. 2014).................................16

*Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001).....................5, 17, 21

*RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387
Fed App'x 72 (2d Cir. 2010)...........................................................................12

*Ruiz v. New Avon*, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) ...............................21

iv

*Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949 (S.D.N.Y. 1995)....................................20

*Shukla v. Viacom Inc.*, 2019 WL 1932568 (S.D.N.Y. May 1, 2019) ......................17, 18

*Smith v. City of New York*, 2013 WL 1903856 (S.D.N.Y. May 8, 2013) ........................5

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ...................................................................................................................14

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) .............9

*SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ........................................7, 11

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013)....................8, 17

*Tese-Milner v. DeBeers Centenary A.G.*, 613 F. Supp. 2d 404 (S.D.N.Y. 2009) ........12

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)....................................................24

*Van Essche v. Leroy*, 692 F. Supp. 320 (S.D.N.Y. 1988)..............................................14

*Walden v. Fiore*, 571 U.S. 277 (2014)............................................................10, 16, 17

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ..........................17

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003)....................................13

**Statutes & Rules**

28 U.S.C. § 1367(a) .......................................................................................................24

29 U.S.C. § 206(d)(1) ....................................................................................................21

42 U.S.C. § 2000e-5 .......................................................................................................20

Fed. R. Civ. P. 8(a) ...................................................................................................11, 23

N.Y. Labor Law § 215(2)(a) ..........................................................................................25

N.Y. C.P.L.R. § 301 .........................................................................................................8

N.Y. C.P.L.R. § 302(a) ....................................................................................8, 9, 13, 14

Defendants Mitsubishi Chemical Holdings Corporation ("MCHC") and Mitsubishi Chemical Corporation ("MCC") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 2) for lack of personal jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff's Complaint names two companies—MCHC and MCC—that she did not name in the complaint that she filed with the Equal Employment Opportunity Commission ("EEOC") prior to initiating this action. Plaintiff had good reason not to name them: MCHC and MCC were never Plaintiff's employer, and both are Japanese corporations headquartered in Tokyo. In her EEOC complaint, Plaintiff named only a wholly distinct entity: Mitsubishi Chemical Holdings America, Inc. ("MCHA"), a Delaware corporation headquartered in New York, and a subsidiary of MCHC. Unlike MCHC and MCC, MCHA *was* Plaintiff's employer.

The Complaint, despite naming MCHC and MCC, confirms on its face that they do not belong in this action. The Complaint contains no well pleaded facts showing that MCHC and MCC are subject to the Court's jurisdiction or ever employed Plaintiff. On the other hand, Plaintiff expressly pleads that "Defendant Mitsubishi Chemical Holdings America, Inc. employed Ms. Fischman in its legal department from March 3, 2008 to January 30, 2017." The Complaint contains further factual allegations indicating that *MCHA,* as Plaintiff's employer, took the employment actions that form the basis of her claims—MCHA promoted her to the position of Acting General Counsel, then hired a permanent General Counsel and restored Plaintiff to her previous position, and later terminated her.

Plaintiff's misguided claims against MCHC and MCC are accordingly subject to dismissal for the following reasons:

*First*, the Court cannot exercise personal jurisdiction over MCHC or MCC. Neither one is

subject to general jurisdiction because neither is "at home" in New York. MCHC and MCC are not subject to specific jurisdiction, because, *inter alia*, Plaintiff does not allege they have engaged in any suit-related conduct in New York.

*Second*, Plaintiff fails to state a claim against MCHC or MCC because, in order to be liable under the statutes that Plaintiff invokes, MCHC and MCC had to be Plaintiff's employer. As noted, the Complaint specifically pleads that *MCHA* hired Plaintiff and was her employer until she was terminated. The employment actions at the core of Plaintiff's claims—her promotion to Acting General Counsel, her reappointment as Associate General Counsel, and her eventual termination—are, virtually by definition, the actions of an employer, and the Complaint pleads facts indicating that *MCHA* took those actions. On the face of the Complaint, there is no basis for holding MCHC and MCC liable.

*Third*, even assuming for the sake of argument that MCHC and MCC were also Plaintiff's employers, Plaintiff still fails to plead any federal claims against them. Plaintiff's Title VII claims against MCHC and MCC must be dismissed because her EEOC complaint—and the EEOC's Notice of Right to Sue—did not name MCHC and MCC as respondents. Under Title VII, a plaintiff may not bring suit against a defendant unless the plaintiff has filed a timely complaint with the EEOC that names that defendant. As for her Equal Pay Act claim, Plaintiff fails to state a plausible claim for relief because the Complaint does not plead facts to support her contention that *MCHC* and *MCC* paid her, as Acting General Counsel, lower compensation than *MCHC* and *MCC* paid the new general counsel. Because Plaintiff fails to plead Title VII and EPA claims against MCHC and MCC, her state and local law claims should be dismissed, too. It is well settled in the Second Circuit that, as a general rule, when federal claims are dismissed, a court should decline to exercise supplemental jurisdiction over any remaining non-federal claims. Finally,

Plaintiff's failure-to-promote claims are time-barred, regardless of how the Court rules on any other issue.

Each of the foregoing grounds independently supports dismissal of the Complaint in its entirety as to MCHC and MCC, and the Court should dismiss it with prejudice.

## BACKGROUND[1]

### I. Plaintiff's Employment At MCHA

Defendant MCHA hired Plaintiff on March 3, 2008, and employed her until January 30, 2017. Compl. ¶ 10. MCHA is a Delaware corporation, with its principal place of business in New York City. *Id.* ¶ 11.

Plaintiff initially held the position of Corporate Counsel in MCHA's legal department. *Id.* ¶ 24. She reported to Defendant Donna Costa, who was then General Counsel and Chief Compliance Officer of MCHA. *Id.* In February 2013, Plaintiff was promoted to the position of Assistant General Counsel of MCHA. *Id.* ¶ 41.

On December 3, 2014, Defendant Costa informed Plaintiff that she, Ms. Costa, was being promoted from the position of General Counsel and Chief Compliance Officer to the position of President of MCHA. *Id.* ¶ 49. Ms. Costa also informed Plaintiff that Plaintiff was being promoted to Acting General Counsel and Chief Compliance Officer of MCHA. *Id.* Shoji Yoshisato, as the executive leader of MCHA, was responsible for selecting the person who would fill the role of General Counsel and Chief Compliance Officer, once Ms. Costa had been promoted to MCHA President. *Id.* ¶ 67. Mr. Yoshisato was also responsible for determining whether the person selected would retain the position. *Id.* Mr. Yoshisato decided not to promote Plaintiff to the

---

[1] This summary is taken from the factual allegations of the Second Amended Complaint, which are accepted as true solely for purposes of this motion to dismiss. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

permanent position of General Counsel and Chief Compliance Officer, and searched for someone to replace her. *Id.*

On November 30, 2015, Defendant Nicolas Oliva became General Counsel and Chief Compliance Officer of MCHA, whereupon Plaintiff once again became Assistant General Counsel. *Id.* ¶ 71. Fourteen months later, on January 30, 2017, Mr. Oliva—who was then still General Counsel and Chief Compliance Officer of MCHA—terminated Plaintiff. *Id.* ¶ 80. Mr. Oliva told Plaintiff that she had been fired for cause. *Id.*

## II. Defendants MCHC And MCC

MCHC is a Japanese corporation with its principal place of business in Tokyo, Japan. MCHC has direct wholly owned and indirect subsidiaries around the world. One of MCHC's wholly owned subsidiaries is defendant MCC. Another is defendant MCHA.

MCHC and MCC have not leased or owned property in New York, maintained offices in New York, kept a telephone listing or files in New York, hired employees in New York, advertised in New York, registered to do business in New York, maintained a bank account in New York, or filed tax returns in New York. *See* Declaration of Yasukuni Noguchi, ¶¶ 7, 8, 10–13 ("MCHC Decl."); Declaration of Koichiro Kanemaru, ¶¶ 6, 7, 9–12 ("MCC Decl."). Neither maintains an agent for service of process in New York. *See* MCHC Decl. ¶ 9; MCC Decl. ¶ 8. Each corporation's human resources department, books and records, bank accounts and board meetings are separate from MCHA's. *See* MCHC Decl. ¶¶ 14–17; MCC Decl. ¶¶ 13–16.

## III. Procedural History And Plaintiff's Claims

On May 7, 2017, Plaintiff filed a form complaint titled "Charge of Discrimination," with the EEOC (the "EEOC Complaint").[2] Compl. ¶ 9. In her EEOC Complaint, Plaintiff identified

---

[2]  A copy of the EEOC Complaint is attached as Exhibit A to the Declaration of Jerome S. Fortinsky ("Fortinsky Declaration" or "Fortinsky Decl."). The Court may rely on this document because the Plaintiff relies on it in the

"Mitsubishi Chemical Holdings America, Inc." as the "[e]mployer . . . that I believe discriminated against me." Fortinsky Decl., Ex. A at 1. Plaintiff asserted that she was "hired by" MCHA, and was later "discriminated against, passed up for a promotion that I was highly qualified for, and was ultimately terminated in January 2017 from my employment with [MCHA] for . . . discriminatory reasons." *Id.*

Plaintiff's form EEOC Complaint contained a separate box for the person filing the complaint to identify the name of a second employer in the event that the person believed that a second entity had discriminated against her. Plaintiff left that separate box blank in the EEOC Complaint. Nowhere else in the EEOC Complaint did Plaintiff identify any employer other than MCHA. Plaintiff did not mention MCHC or MCC at all in her EEOC Complaint.

The EEOC issued a Notice of Right to Sue to Plaintiff on June 14, 2018 ("Right to Sue Notice").[3] Compl. ¶ 9. It stated, *inter alia*, "[i]n order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge [*i.e.*, the EEOC Complaint] within 90 days of the date you receive this Notice." *See* Fortinsky Decl., Ex. B at p. 2. The only respondent named in Plaintiff's EEOC Complaint was MCHA. *See id.*, Ex. A.

Plaintiff filed the operative complaint (the "Complaint") (ECF No. 2) on September 11, 2018. Plaintiff alleges in this case, among other things, that Defendants discriminated and retaliated against her (1) when she was promoted to Acting General Counsel and Chief Compliance Officer; (2) when Mr. Oliva was appointed to the positions of General Counsel and Chief Compliance Officer and Plaintiff resumed her former position as Assistant General Counsel; and

---

Complaint. *See Nechis v. Oxford Health Plans*, 421 F.3d 96, 100 (2d Cir. 2005); *Smith v. City of New York*, 2013 WL 1903856, at *1 (S.D.N.Y. May 8, 2013) (Furman, J.) (court may consider documents incorporated by reference in a complaint on a motion to dismiss); *see also Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 n.2 (S.D.N.Y. 2001) (considering EEOC complaint mentioned in plaintiff's complaint at motion-to-dismiss stage).

[3] A copy of the Right to Sue Notice is attached as Exhibit B to the Fortinsky Declaration.

(3) when Plaintiff's employment was eventually terminated. Plaintiff also alleges that Mr. Oliva was paid more for serving as General Counsel and Chief Compliance Officer than she was paid for serving in those positions in an acting capacity. *See* Compl. ¶¶ 91–153.

Based on these allegations, among others, Plaintiff pleads claims against each of the five named defendants, including MCHC and MCC—even though Plaintiff did not name either of them as a respondent in the complaint that she filed with the EEOC, and neither was named in the Right to Sue Notice.

The Complaint asserts six claims against only "the Company Defendants" (an undefined term apparently referring to MCHA, MCHC, and MCC): Count I for discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); Count II for retaliation and wrongful termination in violation of Title VII; Count III for retaliation and wrongful termination in violation of the Sarbanes-Oxley Act; Count IV for pay discrimination in violation of the Equal Pay Act ("EPA"); Count V for discrimination in violation of the New York State Human Rights Law ("NYSHRL"); and Count VII for pay discrimination in violation of the New York State Equal Pay Act ("NYEPA").[4]

The Complaint asserts four more claims against all Defendants: Count VI for discrimination in violation of the New York City Human Rights Law ("NYCHRL"); a second Count VII for retaliation in violation of the New York Labor Law ("NYLL"); a third Count VII for intentional infliction of emotional distress; and Count VIII for "Negligent Destruction of

---

[4] Plaintiff "acknowledged that her counsel made an error in numbering the causes of action such that three claims are each entitled 'Seventh Cause of Action.'" Pl. Opposition to Motion to Dismiss at 3. We refer to those three causes of action as Plaintiff's "Count VII," "second Count VII," and "third Count VII."

Plaintiffs' [sic] Employment Opportunities."  The Complaint asserts two "aiding and abetting" claims (Counts IX and X) against only Ms. Costa and Mr. Oliva.  *See* Compl. ¶¶ 91–153.

On November 14, 2018, Plaintiff voluntarily withdrew Count III of the Complaint with prejudice (ECF No. 13), and the Court accordingly dismissed that cause of action (ECF No. 14). On July 11, 2019, the Court granted in part and denied in part a motion to dismiss filed by Defendants MCHA, Ms. Costa, and Mr. Oliva.  The Court granted their motion to the extent that it sought dismissal of Plaintiff's second Count VII, third Count VII, and Count VIII.  This Motion addresses, as to MCHC and MCC, all the claims asserted against them, *i.e.,* Counts I–II, Counts IV–VII, the second and third Count VIIs, and Count VIII.

## ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER MCHC AND MCC

The Complaint should be dismissed as to MCHC and MCC for lack of personal jurisdiction because Plaintiff's allegations do not make a *prima facie* showing of personal jurisdiction over either of them.

A plaintiff bears the burden of establishing a court's personal jurisdiction over each defendant.  *See, e.g., Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Where, as here, the parties have not engaged in discovery, a plaintiff must make a *prima facie* showing of jurisdiction.  *See, e.g., Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013); *see also Penguin Grp.*, 609 F.3d at 34–35 ("[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists.").  To make the required showing, a Complaint "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).  This standard "requires non-conclusory fact-specific allegations."  *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x

16, 19 (2d Cir. 2015). A court "will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal citation and quotation marks omitted); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (rejecting jurisdictional allegations lacking "supporting facts" and "factual specificity").

Here, the Complaint fails to allege facts sufficient to make a *prima facie* showing that the exercise of jurisdiction over MCHC or MCC would be proper under the applicable Supreme Court precedents, or the New York CPLR,[5] or comport with principles of due process.[6]

## A.      This Court Lacks General Jurisdiction Over MCHC And MCC Under CPLR § 301

A court may exercise general jurisdiction over a non-domiciliary defendant "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Aybar v. Aybar*, 169 A.D. 3d 137, 145 (App. Div. 2d 2019) (CPLR § 301's jurisdictional reach governed by *Daimler*); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("[A] corporation may nonetheless be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." (*quoting Daimler*, 571 U.S. at 919)).

---

[5]   MCHC and MCC address below CPLR §§ 301 and 302(a) in particular, but Plaintiff does not and cannot allege general or specific jurisdiction under any other provision of the CPLR.

[6]   In a case brought under a federal statute, personal jurisdiction is governed by the law of the forum state, here New York. *See, e.g., Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) ("[w]here the underlying action is based on a federal statute, we are to apply state personal jurisdiction rules"). Under New York law, a foreign defendant is subject to personal jurisdiction in New York if the CPLR confers a statutory basis for personal jurisdiction and the exercise of jurisdiction is consistent with constitutional due process. *See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001).

Plaintiff has not alleged that MCHC and MCC are headquartered or incorporated in New York, or that they are otherwise "at home" in New York. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home. For a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases."). Nor do they show that this is the type of "exceptional case" that would justify the exercise of general jurisdiction even though MCHC and MCC are not headquartered in New York. *Daimler AG*, 571 U.S. at 139 n.19 (identifying, as an example of an "exceptional case," the complete relocation of a Philippine corporation's operations to Ohio during World War II in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)). Plaintiff acknowledges the obvious, that MCHC "is a Japanese corporation, with its principal place of business in Tokyo, Japan," and that MCC's "principal place of business [is] in Tokyo." Compl. ¶¶ 12–13. Like MCHC, MCC is incorporated in Japan. *See* MCC Decl. ¶ 4.[7] Therefore, the Court lacks general jurisdiction over MCHC or MCC.

**B.    This Court Lacks Specific Jurisdiction Over MCHC And MCC**

Plaintiff also fails to allege any basis for the Court to exercise specific personal jurisdiction over MCHC or MCC. *See* CPLR § 302(a).

### 1.    This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1)

Section 302(a)(1) of New York's long-arm statute permits a court to exercise jurisdiction over a person or entity that "in person or through an agent . . . transacts business within the state or contracts anywhere to supply goods and services in the state." C.P.L.R. § 302(a). To determine whether jurisdiction exists under Section 302(a)(1), a court must decide "(1) whether the

---

[7]    A court is permitted to consider evidence submitted on a motion under Rule 12(b)(2). *See, e.g., Dorchester Fin. Sec.*, 722 F.3d at 86; *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).

Courts look to the totality of circumstances to determine whether there is sufficient purposeful activity, and whether there is a sufficient nexus to the cause of action to confer long-arm jurisdiction. *E.g., PaineWebber. Inc. v. Westgate Grp. Inc.*, 748 F. Supp. 115, 118 (S.D.N.Y. 1990). To establish jurisdiction under the "transacting business" provision, a plaintiff must show that a defendant's contacts with New York with respect to the transaction at issue were of a quality and quantity sufficient to establish that they "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CMNY Cap., L.P. v. Perry*, No. 97 Civ. 6172, 1998 WL 132846, at *3 (S.D.N.Y. Mar. 23, 1998).

Moreover, to establish specific jurisdiction, a defendant's "suit-related conduct must create a substantial connection with the forum State" that "must arise out of contacts that the defendant *himself* creates with the forum State," and "not . . . with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis in original). Under these standards, Plaintiff falls far short of what she needs to allege to make a *prima facie* showing of specific jurisdiction over MCHC and MCC. The Complaint does not allege even in a conclusory manner—much less make "fact-specific allegations," *Chirag*, 604 F. App'x at 19—that MCHC and MCC have transacted business in New York or otherwise availed themselves of its privileges.[8] Indeed, as the

---

[8] The Complaint makes certain allegations that lump together MCHA, MCHC, and MCC and refer to them as "Mitsubishi" or "the Company." *See, e.g.*, Compl. ¶¶ 52, 69, 78, 86. This practice of "group pleading" is impermissible, and, in any event, Plaintiff cannot use it to show a *prima facie* case of jurisdiction over MCHC or MCC. *See, e.g., Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy [Fed. R. Civ. P. 8(a)'s] minimum standard"); *Medina v. Bauer*, No. 02 CIV. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("lumping all the defendants together and failing to distinguish their conduct" failed to

accompanying declarations demonstrate, MCHC and MCC have not leased or owned properties in New York, maintained offices in New York, kept a telephone listing or files in New York; hired employees in New York, advertised in New York, registered to do business in New York, maintained a bank account in New York, or filed state tax returns in New York; and neither maintains an agent for service of process in New York. *See* MCHC Decl. ¶¶ 7–13; MCC Decl. ¶¶ 6–12.[9]

Plaintiff's allegation that MCHA is wholly owned by MCHC, Compl. ¶ 12, is insufficient to establish "control" of MCHA by MCHC for purposes of Section 302(a). *See, e.g., Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2018 WL 4681616, at \*12 (S.D.N.Y. Sept. 11, 2018) (complete stock control and overlapping directors and officers are "intrinsic to the parent-subsidiary relationship" and therefore are not determinative).[10] Plaintiff's vague and conclusory allegations that MCHC and MCC control MCHA, Compl. ¶¶ 26, 28, 57, likewise fall short of an "averment of facts that, if credited by the ultimate trier of fact, would suffice to establish" that MCHA acted as MCHC's and MCC's agent. *SPV OSUS, Ltd.*, 882 F.3d at 342.

Plaintiff's conclusory allegations are also insufficient to make a *prima facie* showing that MCHA's alleged actions were "for the benefit of" or with "the consent of" MCHC and MCC. *RSM*

---

satisfy Rule 8 and "fail[ed] to give adequate notice to these defendants as to what they did wrong"); *see also* Fed. R. Civ. P. 8(a).

9  The Complaint also does not allege that either MCHC or MCC is subject to personal jurisdiction in New York because they do business in New York "*through an agent*" C.P.L.R. § 302(a) (emphasis added). To establish that a defendant acted through an agent, a plaintiff must "convince the court that [the New York actors] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of [the defendant] and that [the defendant] exercised some control over [the New York actors] in the matter." *Karabu Corp v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (quoting *Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

10  It is well established that a corporation may organize "so as to isolate liabilities among separate entities." *Da Silva v. Kinsho*, 210 F. Supp. 2d 241, 243 (S.D.N.Y. Jan 4, 2000), *aff'd*, 229 F.3d 358 (2d Cir. 2000); *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Under the doctrine of limited liability, "a parent is liable for the acts of its subsidiary only under 'extraordinary circumstances.'" *Da Silva*, 210 F. Supp. 2d at 243. *See also Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 308 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

*Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 Fed App'x 72 (2d Cir. 2010) (dismissing claims for lack of jurisdiction where complaint was devoid of allegations that purported agents "were acting for [defendant's] benefit, with his knowledge and consent, and subject to his control").[11]

Lastly, the Complaint does not allege any facts establishing that MCC or MCHC transacted business in New York because Plaintiff (or any other MCHA employee) acted as MCC's or MCHC's employee in New York. The Complaint does not plead in even conclusory fashion—much less plead specific facts show*in*g—that MCHC or MCC was the "employer" of Plaintiff (or other MCHA personnel).[12] To the contrary, the Complaint pleads facts indicating that *MCHA* was Plaintiff's employer. For example, the Complaint alleges that *MCHA* hired Plaintiff, Compl. ¶ 23, and that *MCHA,* as her employer, took the employment actions that form the basis of Plaintiff's claims—*i.e,* promoted her to the position of Acting General Counsel, then hired a permanent General Counsel and restored Plaintiff to her previous position, and later terminated her.[13] *Id.* ¶¶ 41, 42, 47, 60, 64, 70, 71, 80.

---

[11] The Complaint's allegation that "approximately 40" "affiliates of Mitsubishi" were "signatories to a Legal Services Agreement . . . pursuant to which all of their legal matters throughout the United States are managed by the MCHA legal department" also does not suffice. Compl. ¶ 27. The Complaint fails to allege facts indicating that MCHA or its employees acted as the "agents" of all the signatory entities. Moreover, the Complaint contains no specific allegation that *MCHC* or *MCC* were signatories to the Legal Services Agreement.

[12] Plaintiff's inability to plead and prove that MCHC and MCC qualified as Plaintiff's employers is fatal to Plaintiff's claims on the merits as well. *See infra* at II.

[13] There is a doctrine—commonly referred to as the "integrated enterprise" doctrine (and sometimes also called the "single employer" doctrine)—pursuant to which an employee can assert employer liability against two or more entities that are so intertwined that they can be considered the single employer of the employee. The integrated enterprise doctrine is only a doctrine of liability, not of jurisdiction, and so even if Plaintiff pleaded factual allegations establishing that MCHC, MCC, and MCHA were an integrated enterprise (and she has not, *see infra*), that would not establish personal jurisdiction as to MCHC or MCC. *See, e.g., Tese-Milner v. DeBeers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not encountered, and Plaintiff does not offer any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law.*"); Mendez v. Pure Foods Management Grp., Inc*., 2016 WL 136636, at *6 (D. Conn. Jan. 14, 2016) (holding that jurisdictional standard and single employer standards are "distinct").

Nor does the Complaint plead facts showing that either MCHC or MCC was Plaintiff's "joint employer." Factors that guide the analysis of whether one entity was a joint employer with another entity include whether the first entity "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67 (2d Cir. 2003) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). Here, Plaintiff does not plead facts showing that any of these factors applies. The Complaint does not contain factual allegations showing that MCHC and MCC had the power to hire or fire MCHA employees, that they set the rate and method of payment, or that they regulated the conditions of employment at MCHA. In fact, the Complaint specifically states that Plaintiff was terminated by MCHA. Compl. ¶ 80.

### 2. This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2)

Under C.P.L.R. § 302(a)(2), courts have jurisdiction over a non-resident defendant where a cause of action arises from the defendant's commission of "a tortious act within the state." Plaintiff fails to plead that MCHC and MCC are subject to jurisdiction under Section 302(a)(2).

*First*, the Complaint does not make well pleaded allegations that MCHC or MCC committed a "tortious act" (whether within or outside New York). All the federal statutes upon which the Complaint's claims are based, along with her NYSHRL and NYSEPA claims, impose liability only upon a plaintiff's "employer." Therefore, to the extent the Complaint alleges conduct in violation of those statutes, Plaintiff's *employer* must have engaged in that conduct for it to be "tortious" pursuant to these statutes invoked in the Complaint. Yet, as explained above, the Complaint does not make a *prima facie* showing that MCHC or MCC was Plaintiff's employer. Indeed, the Complaint pleads facts indicating that *MCHA* hired Plaintiff, and that *MCHA*—as her employer—took the employment actions that form the basis of Plaintiff's claims.

*Second*, MCHC and MCC are not subject to jurisdiction under Section 302(a)(2) because, to establish jurisdiction under § 302(a)(2), a defendant "must be physically present in New York" when committing the alleged "tortious act." *See, e.g., Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 239 (S.D.N.Y. 1995); *see also, e.g., Van Essche v. Leroy*, 692 F. Supp. 320, 324 (S.D.N.Y. 1988) (mailing of tortious letter from Texas to New York did not give rise to jurisdiction under § 302(a)(2) because mailing was not an act committed in New York). The Complaint does not plead any facts indicating that either MCHC or MCC was "physically present" in New York at any time, much less that they were present at the time, and in the place, that the "tortious conduct" alleged by Plaintiff occurred.[14]

### 3. This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3)

To establish jurisdiction under § 302(a)(3), the plaintiff must show that (1) the "defendant committed a tortious act outside the State," (2) "the cause of action arises from that act," and (3) "the act caused injury to a person or property within the State." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) (quoting *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).[15] Plaintiff does not plead facts that satisfy *any* of Section 302(a)(3)'s threshold requirements, *i.e.*, the Complaint does not contain well pleaded allegations that MCHC or MCC committed a tortious act outside New York upon which Plaintiff's claims are based and that caused Plaintiff injury.

---

[14] Even if Plaintiff had pleaded calls or emails to New York from Japan, such allegations would not subject MCHC or MCC to jurisdiction under Section 302(a)(2). Phone calls made and correspondence sent from outside the state "do not constitute tortious acts committed 'within the state'" for purposes of Section 302(a). *See, e.g., Heinfling v. Colapinto*, 946 F. Supp. 260, 264 (S.D.N.Y. 1996).

[15] A plaintiff also must show that (a) the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (b) the "defendant expected or should reasonably have expected the act to have consequences in the State," and the "defendant derived substantial revenue from interstate or international commerce." CPLR § 302(a)(3).

To the contrary, as explained above, Plaintiff specifically alleges that she suffered injury as a result of violations of federal and state anti-discrimination laws that impose liability for—and permit recovery for injuries suffered as the result of—the conduct of the plaintiff's employer. The Complaint does not plead facts showing that either MCHC or MCC was Plaintiff's employer. The Complaint pleads facts indicating that her employer was MCHA.

**C.    An Exercise Of Personal Jurisdiction Over MCHC Or MCC Would Not Comport With Due Process**

Even if plaintiff were able to establish jurisdiction under Section 301 or 302, dismissal of all claims asserted against MCHC and MCC would still be required, because, as explained below, this Court's exercise of jurisdiction over them would not comport with due process.

**1.    The Exercise Of General Jurisdiction Would Not Comport With Due Process**

As noted above, the Supreme Court in *Daimler* held that, under the Due Process Clause, general jurisdiction may be exercised over a defendant in a forum "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." 571 U.S. at 122 (internal quotations omitted). For the reasons set forth in Point I.A, Plaintiff has not made a *prima facie* showing (and cannot make one) that either MCHC or MCC is subject to general jurisdiction under *Daimler*.

**2.    The Exercise Of Specific Jurisdiction Would Not Comport With Due Process**

Plaintiff also does not (and cannot) plead a *prima facie* showing of jurisdiction over MCHC or MCC that comports with due process. To satisfy the Due Process Clause, a plaintiff seeking to establish specific jurisdiction over a defendant must adequately plead that (1) the defendant's purported *suit-related conduct* created a sufficient connection with the forum, and (2) the exercise of jurisdiction is "reasonable," *i.e.* it does not "offend traditional notions of fair play and substantial

justice." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A defendant's "suit-related conduct must create a substantial connection with the forum" that "must arise out of contacts that the defendant *himself* creates with the forum," and "not . . . with persons who reside there." *Walden,* 571 U.S. at 283–85 (emphasis in original). Moreover, specific jurisdiction requires a "'substantial nexus' between the [contacts] and the cause of action." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014); *see also In re Roman Catholic Diocese Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("specific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction.") (citation and internal quotation marks omitted). Courts in the Second Circuit require no less than a "'but for' connection between the defendant's forum-directed activities and the claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6243526, at *28 (S.D.N.Y. Oct. 20, 2015), *on reargument*, 2016 WL 1301175 (S.D.N.Y. Mar. 31, 2016).

Here, Plaintiff fails to satisfy the requirements of due process because, *inter alia*, she does not make a *prima facie* showing of purposeful, suit-related conduct by MCHC or MCC in New York (or in the United States as a whole). As explained below, to be liable under the statutes under which Plaintiff asserts her claims, MCHC and MCC had to be Plaintiff's employer and the conduct complained of must be their conduct as employers. *See* Point II. Yet the Complaint is devoid of well pleaded allegations that MCHC or MCC acted as her employer or otherwise engaged (directly, through an agent, or through employees at MCHA) in the employment-related conduct that forms the basis of Plaintiff's claims. Accordingly, Plaintiff has not pleaded facts indicating that MCHC or MCC engaged in "suit-related conduct [that] create[d] a substantial connection with the forum

State," *Walden*, 571 U.S. at 284, or "in-state activity that 'gave rise to the episode-in-suit.'"[16] *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Goodyear*, 564 U.S. at 923).

## II. PLAINTIFF DOES NOT PLEAD THAT EITHER MCHC OR MCC WAS HER EMPLOYER AND THUS FAILS TO STATE ANY CLAIM AGAINST THEM

For MCHC or MCC to be liable under any of Plaintiff's statutory claims (*i.e.*, Counts I-II, Counts IV-VII, and the second Count VII), they must have been Plaintiff's "employer."[17] This Court should dismiss all statutory claims against MCHC and MCC because Plaintiff does not plead in even conclusory fashion that MCHC or MCC was Plaintiff's employer.[18] Nor does Plaintiff plead that MCHC, MCC, and MCHA were an "integrated enterprise." *See supra* at n.13.

As noted above, pursuant to the integrated enterprise doctrine, a plaintiff can assert employer liability against two or more entities who are so intertwined that they can be considered the plaintiff's single employer. A plaintiff bears the burden of pleading and proving that the defendants are an integrated enterprise. *Shukla v. Viacom Inc.*, 2019 WL 1932568, at *7 (S.D.N.Y. May 1, 2019) (granting motion to dismiss with prejudice because, inter alia, complaint's "smattering of allegations f[ell] well short of" satisfying plaintiff's burden of establishing

---

[16] To the extent that the Complaint contains conclusory statements to the contrary, *see, e.g.*, Compl. ¶¶ 50, 52, 57, those allegations are based on "legal conclusion[s] couched as a factual allegation," *Jazini*, 148 F.3d at 185; *see also In re Terrorist Attacks*, 714 F.3d at 673, or "argumentative inferences," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Licci*, 673 F.3d 50, 59 (2d Cir. 2012), and, therefore, cannot establish personal jurisdiction.

[17] *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (Title VII claims); *see also Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) (NYSHRL claims); *Local 1180, Comm. Workers of Am., AFL-CIO v. City of New York*, 318 F. Supp. 3d 672, 679 (S.D.N.Y. 2018) (EPA claims); *Rose v. Goldman, Sachs*, 163 F. Supp. 2d at 243 (EPA and NYSEPA claims evaluated under the same standard). Although Plaintiff's NYCHRL and NYLL claims also permit liability against employees and agents, Plaintiff does not (and cannot) assert that MCHC or MCC were employees or agents of MCHA.

[18] Although there are two *non*-statutory claims asserted against MCHC and MCC, those claims have already been dismissed by the Court as to MCHA, Nicolas Oliva and Donna Costa, and should be dismissed as to MCHC and MCC as well, *see infra* Point III-C.

integrated enterprise).[19]  Specifically, to survive a motion to dismiss, a plaintiff must allege facts sufficient to establish an "interrelationship between the [defendants]," considering the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."[20]  *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995).  "Although no one factor is determinative . . . control of labor relations is the central concern."  *Murray*, 74 F.3d at 404.  "Centralized control over labor relations . . . can include such factors as whether the companies have separate human resources departments and whether the entity establishes its own policies and makes its own decisions as to hiring, discipline, and termination of its employees."  *Laurin v. Pokoik*, 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004) (internal quotation marks omitted)).

The Complaint is devoid of factual allegations establishing that MCHC or MCC had "centralized control over labor relations," or any other indicia of an integrated enterprise. Plaintiff's allegations that MCHC and MCC "engaged, supervised and directed" MCHA's legal department are simply legal conclusions, and fail to plead any facts sufficient to allege common control over labor relations.  *Shukla*, 2019 WL 1932568, at *6–7 (plaintiff failed to satisfy pleading burden because allegations did not "support the conclusion that [the defendant] had general control over [the] employment practices [of the defendant's subsidiary], such as the power to hire and fire [the subsidiary's] employees, supervise them, set employee rates of pay, or maintain employee records").[21]  Plaintiff's conclusory allegations that MCHA board members report directly to

[19]  *See also, e.g., Hammond v. Bloom New York*, 2001 WL 789295, at *2 (S.D.N.Y. July 12, 2001) (granting motion to dismiss with prejudice because plaintiff failed to adequately plead integrated enterprise); *Andrews v. Citigroup Inc.*, 1999 WL 1277427, at *3 (S.D.N.Y. Dec. 30, 1999) (same).

[20]  The same standard applies under Title VII, the NYHRL, and the NYCHRL.  *See, e.g.*, *Shukla*, 2019  WL 1932568, at *6.

[21]  *Cf. Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 518–19 (S.D.N.Y. 2016) (finding plaintiff alleged sufficient "commonality of hiring, firing, and supervision" between plaintiff's direct employer and another corporate defendant to survive motion to dismiss where board member of that corporate defendant regularly met with

MCHC or MCC, Compl. ¶ 26, are also insufficient to establish integrated enterprise liability, particularly where, as here, these allegations are merely general and do not relate to any of the specific actions at issue.

Plaintiff not only fails to plead allegations establishing that the Defendant entities were an integrated enterprise, but the allegations she does plead defeat any such argument. *See Dennis v. United Parcel Service Inc.*, 2008 WL 4945634, at *5 (S.D.N.Y. Nov. 20, 2008) (dismissing claim where plaintiff's own pleadings defeated his claim on their face). For example, Plaintiff pleads that MCHA hired her, Compl. ¶ 23, and employed her in its legal department until January 30, 2017, *id.* ¶ 10, when MCHA's General Counsel, Mr. Oliva, terminated her employment. *Id.* ¶ 80. Plaintiff also pleads that Shoji Yoshisato, "as the executive leader of MCHA," (a) "was responsible for selecting the person who would fill the role of General Counsel and Chief Compliance Officer," (b) "refus[ed] to promote [Plaintiff] to the full role of General Counsel and Chief Compliance Officer," and (c) "searched for someone [else]" to fill that role. *Id.* ¶ 67. These allegations plainly disprove that MCHC or MCC had "centralized control over labor relations," and preclude any argument that MCHC, MCC, and MCHA were an integrated enterprise. *See, e.g., Hammond*, 2001 WL 789295, at *2 (because plaintiff acknowledged that personnel of the subsidiary were "responsible for . . . hiring and firing," plaintiff "has not met his burden of showing that the subsidiary and its parent company were integrated enterprise").

### III. EACH CLAIM AGAINST MCHC AND MCC IS FATALLY DEFECTIVE

### A. The Court Should Dismiss Plaintiff's Title VII Claims Because Her EEOC Complaint Did Not Name MCHC Or MCC

Plaintiff's Title VII claims against MCHC and MCC must be dismissed because her

---

plaintiff to review his performance evaluations and recommended a replacement for plaintiff after telling plaintiff that he should retire).

EEOC Complaint—and the EEOC's Right to Sue Notice—did not name either entity as a respondent. *See* Fortinsky Decl., Ex. A, Ex. B.

Under Title VII, a plaintiff may bring suit in federal court against a defendant only if he or she files a timely complaint with the EEOC that names that defendant. *See* 42 U.S.C. § 2000e-5(f)(1) (an aggrieved party may bring a civil action "against the respondent named in the [EEOC] charge.").[22]  A plaintiff who attempts to assert a Title VII claim against a defendant not named in connection with the EEOC proceedings has not exhausted all available administrative remedies and, as a result, the claim must be dismissed. *See Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006) ("Before bringing a Title VII action in the district court, an aggrieved employee is required to exhaust his administrative remedies").

Courts in some circumstances have recognized an exception to the rule that a defendant must be named in the EEOC charge "where there is a clear identity of interest between the unnamed defendants and the party named in the administrative charge." *Johnson*, 931 F.2d at 209.  This exception does not apply here.  The Complaint does not allege an "identity of interest" among MCHC, MCC, and MCHA, nor could Plaintiff allege one.  More important, however, is that this exception to the general rule is not applicable here, because Plaintiff—an attorney herself, who claims to have been MCHA's "primary employment lawyer," *see* Compl. ¶ 42—was represented by experienced counsel in preparing and filing her EEOC charge. *See Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949, 954 (S.D.N.Y. 1995) ("As a threshold matter, [the identity-of-interest] exception only applies where plaintiff is not represented by counsel."); *see also Ruiz*

---

[22] *See also Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) ("A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant.") (citing 42 U.S.C. § 2000e-5); *see also, e.g., Manos v. Geissler*, 377 F. Supp. 2d 422, 426 (S.D.N.Y. 2005) ("Generally, a plaintiff's Title VII claims against a defendant who is not named as a respondent in an EEOC charge or the right-to-sue letter in connection with the complaint will be dismissed from a Title VII action."); *Hilton v. Bedford Paving, LLC*, 769 F. Supp. 2d 92, 100 (W.D.N.Y. 2010) ("A plaintiff generally cannot assert a Title VII claim against someone not named in the EEOC complaint").

*v. New Avon*, 2019 WL 4601847, at *11–12 (S.D.N.Y. Sept. 22, 2019) (holding that the identity-of-interest exception was inapplicable "in particular because [plaintiff] had the benefit of counsel in preparing and filing" EEOC complaint).

**B.      Plaintiff Fails To State An Equal Pay Act Claim**

Plaintiff's sole remaining federal claim against MCHC and MCC—and the only remaining basis for the Court's assertion of original jurisdiction—is her claim under the federal EPA (Count IV).  That claim has no more validity than her Title VII claims.

The Equal Pay Act provides that "[n]o employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex."  29 U.S.C. § 206(d)(1).  To state a claim under the Equal Pay Act, a plaintiff must allege that: "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  *Klein v. New York Univ.*, No. 07 Civ. 160, 2008 WL 3843514, at *3 (S.D.N.Y. Aug. 14, 2008) (citing *Corning Glass Works v. Brennan*, 47 U.S. 188, 195 (1974)).  To establish "a *prima facie* case under the EPA, a plaintiff has the burden of showing that the employer paid different wages to employees of opposite sexes in the same establishment for equal work on jobs whose performance requires equal skill, effort and responsibility."  *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

"To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that her employer violated the Equal Pay Act."  *Rose v. Goldman, Sachs*, 163 F. Supp. 2d at 243.  Thus, "[e]ven at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim" because a "plaintiff must allege at least some facts to support contentions that her employer violated the EPA."  *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001).

The sum total of the Complaint's *factual* EPA allegations is that: "Mr. Oliva received more compensation for the position [of General Counsel] than Ms. Fischman, even though both of them performed identical duties and responsibilities requiring equal skill, effort, and responsibility, under similar working conditions, during their respective tenures." *See* Compl. ¶ 61. These allegations do not give rise to a plausible inference that MCHC or MCC violated the EPA.[23] As noted, to plead an EPA claim, a plaintiff must allege facts that the *defendant* "pays different wages to employees of the opposite sex." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001). As a matter of logic and law, to support that allegation, a plaintiff must plead that the same entity paid two individuals—one of each sex—a different wage. Here, however, the Complaint is devoid of any factual allegation that either MCHC or MCC paid the wages of either Plaintiff or Mr. Oliva. In fact, the Complaint does not identify with specificity which entity paid either Plaintiff's or Mr. Oliva's wages. This stark pleading deficiency dooms Plaintiff's EPA claim.[24]

Rather than identify, with a specific factual allegation, which entity paid her and Mr. Oliva's wages, the Complaint merely alleges that "Defendants provided her with lower pay and other forms of compensation." Compl. ¶ 106. This improper "group pleading" hardly "allows the court to draw the reasonable inference" that any specific defendant paid Plaintiff's wages. *Iqbal*, 556 U.S. at 678; *Atuahene*, 10 Fed. App'x at 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy [Fed. R. Civ. P. 8(a)'s] minimum standard"). The Complaint does not

---

[23] Plaintiff's allegations in the section of the Complaint titled "Fourth Cause of Action" are purely conclusory, boilerplate allegations that contain no specific factual matter, much less "sufficient factual matter" to state a claim to relief as against either MCHC or MCC that is "plausible on its face." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). Those allegations do not even contain any specific references to either MCHC or MCC.

[24] Putting aside who employed and paid *Plaintiff's* wages, the Complaint contain no allegations that either MCHC or MCC was Mr. Oliva's employer, so the Complaint does not even plausibly support an inference that either MCHC or MCC paid Mr. Oliva, let alone plead that either MCHC or MCC paid him more than they purportedly paid Plaintiff.

explain, however—nor could it—how each of three different entities can pay the wages of the same employee. The Complaint certainly pleads no factual basis for such a facially implausible arrangement.

What the Complaint does specifically plead is that Plaintiff was hired by MCHA, and remained in MCHA's employ, throughout the time period to which her claims relate. Compl. ¶¶ 23, 80. Absent any factual allegations that she was paid by MCHC or MCC, the only "reasonable inference" to be drawn from the Complaint is that MCHA paid her—and therefore only MCHA can have potential liability under the EPA. *Iqbal*, 556 U.S. at 678.[25]

The Complaint attempts to sidestep the question of who paid Plaintiff by failing to specify which entity paid Plaintiff's wages. The determination of whether a Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Here, common sense dictates that Plaintiff—who concedes she was "hired by Defendant MCHA in 2008," Compl. ¶ 23, and worked there for almost nine years—had ready access to information showing which entity was paying her own wages. Her failure to disclose that to the Court warrants dismissal of her EPA claim, at least as to MCHC and MCC. "The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation . . . *A complaint should contain information that one can provide and that is clearly important . . . .*" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007) (emphasis added).[26]

---

[25] The Court must disregard "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (quoting *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[26] *See also Pension Benefit Guar. Corp.*, 712 F.3d at 723 (concluding that the plaintiffs' "imprecise pleading is

**C.** **The Court Should Dismiss The Three Claims Previously Dismissed As To MCHA, Nicolas Oliva, And Donna Costa**

As noted above, the Court granted the motion to dismiss filed by MCHA, Ms. Costa, and Mr. Oliva to the extent that it sought dismissal of Plaintiff's second Count VII and third Count VII and Count VIII. (ECF No. 35.) The grounds for the dismissal of these claims apply equally here. Accordingly, to the extent there is any uncertainty as to whether those claims survive against MCHC and MCC, the Court should dismiss these claims against them.

**D.** **The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State And Local Law Claims**

Finally, the Court should dismiss the three remaining state and city claims—Counts V, VI, and VII. As a general rule, in a federal question case such as this one, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"[27] *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The Court has no basis to depart from that rule here. The traditional "values of judicial economy, convenience, fairness, and comity" do not favor the exercise of supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also, e.g., Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (if federal claims are dismissed before trial and there has not been a substantial expenditure of resources on the state claims, state claims should generally be dismissed too). The Court should therefore dismiss Counts V, VI, and VII.

**E.** **Plaintiff's Discrimination Claims Based On Failure-To-Promote Allegations Are Time-Barred**

Plaintiff's failure-to-promote claims are time-barred, regardless of how the Court rules on

---

particularly inappropriate . . . where the plaintiffs necessarily ha[d] access, without discovery, to . . . specific information from which to fashion a suitable complaint").

[27] The Complaint invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's NYSHRL, NYCHRL, and NYLL claims. Compl. ¶ 7.

any other issue.  Plaintiff alleges that, on December 3, 2014, Ms. Costa told her that "the decision had been made" not to promote her to full General Counsel and Chief Compliance Officer, and that she was being appointed to those roles—"beginning in April 2015"—only in an "acting" capacity.  Compl. ¶ 49.  Plaintiff asserts that she was "passed over for promotion" at that time "until the Company could hire a suitable male replacement."  Compl. ¶ 58.  Five of Plaintiff's causes of action against MCHC and MCHA—Counts I, II, V and VI, and the second Count VII— are expressly based, in part, on these allegations.  *See* Compl. ¶¶ 92, 97, 117, 122, 135. Discrimination claims under all the statutes that Plaintiff invokes are time-barred if brought more than three years after the employment actions at issue, *see, e.g., Chukwueze v. NYCERS*, 2013 WL 5878174, at *1 (S.D.N.Y. Nov. 1, 2013) (Furman, J.), except for claims under NYLL § 215, for which the statute of limitations is *two* years.  NYLL § 215(2)(a).  Thus, to the extent that Plaintiff's claims are based on MCHC's or MCC's alleged failure to promote her, those claims are time-barred, and should be dismissed, because she asserts that she learned on December 3, 2014 that she was "passed over for promotion," but did not file this action until September 7, 2018.  Compl. ¶¶ 49, 58.[28]

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint as against MCHC and MCC with prejudice.

---

[28] Although claims are tolled upon the filing of an EEOC Complaint, Plaintiff's failure-to-promote claims are not saved by tolling.  To preserve claims, a plaintiff must file a complaint with the EEOC within 300 days of the underlying conduct at issue.  *See Goodwine v. City of New York*, 2016 WL 3017398, at *4 (S.D.N.Y. May 23, 2016) (Furman, J.)  Plaintiff's failure-to-promote claims—of which she asserts she became aware on December 3, 2014 (Compl. ¶ 49)—therefore were already time-barred when she filed her EEOC Complaint on May 8, 2017.

Dated: New York, New York
      January 17, 2020

SHEARMAN & STERLING LLP

By:   _/s/ Jerome S. Fortinsky_

Jerome S. Fortinsky
599 Lexington Avenue
New York, NY 10022-6069
Telephone: +1.212.848.4000
Facsimile: +1.212.848.7179
jfortinsky@shearman.com

George Anhang
401 9th Street, N.W.
Suite 800
Washington, DC 20004
Telephone: +1.202.508.8000
Facsimile: +1.202.508.8100
george.anhang@shearman.com

*Attorneys for Mitsubishi Chemical*
*Holdings Corporation and Mitsubishi*
*Chemical Corporation*