UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER S. FISCHMAN,<br><br>        Plaintiff,<br><br>   v.<br><br>MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.; MITSUBISHI CHEMICAL HOLDINGS CORPORATION; NICOLAS OLIVA, in his individual and professional capacities; DONNA COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in their individual and professional capacities,<br><br>        Defendants. | Civil Action No. 18-cv-08188 (JMF)<br><br>ORAL ARGUMENT REQUESTED |

**MITSUBISHI CHEMICAL HOLDINGS CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................4

   I.     Plaintiff's Employment At MCHA................................................................4

   II.    MCHC..........................................................................................................5

   III.   Procedural History And Plaintiff's Claims ...................................................5

ARGUMENT ...........................................................................................................7

   I.     THIS COURT LACKS PERSONAL JURISDICTION OVER MCHC .........7

         A.   This Court Lacks General Jurisdiction Over MCHC .............................8

         B.   This Court Lacks Specific Jurisdiction Over MCHC ............................8

             1.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1).................8

             2.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2)...............13

             3.   This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3)...............14

         C.   An Exercise Of Personal Jurisdiction Over MCHC Would Not Comport With Due Process ......................................................................................14

   II.    PLAINTIFF DOES NOT PLEAD THAT MCHC WAS HER EMPLOYER AND THUS FAILS TO STATE ANY CLAIM AGAINST IT ...............................16

         A.   The Court Should Not Credit Plaintiff's Newly Minted "Joint Employer" Theory....................................................................................................16

         B.   Plaintiff Fails To Adequately Plead Her Joint Employer Theory..........................19

   III.   EACH OF PLAINTIFF'S CLAIMS IS FATALLY DEFECTIVE ...............................22

         A.   The Court Should Dismiss Plaintiff's Title VII Claims Because Her EEOC Complaint Did Not Name MCHC ........................................................22

         B.   Plaintiff Fails To State An Equal Pay Act Claim .................................22

         C.   The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State And Local Law Claims...............................................24

         D.   Plaintiff's Discrimination Claims Based On Failure-To-Promote Allegations Are Time-Barred....................................................................................24

CONCLUSION......................................................................................................25

**TABLE OF AUTHORITIES**

| Cases | Page |
|---|---|
| *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193 (2d Cir. 2005) | 20 |
| *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) | 23 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 18 |
| *Barbosa v. Continuum Health Partners Inc.*, 716 F. Supp. 2d 210 (S.D.N.Y. 2010) | 20 |
| *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491 (E.D.N.Y. 2001) | 22 |
| *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234 (S.D.N.Y. 1995) | 14 |
| *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) | 8 |
| *Boehm v. SportsMem, LLC, et al.*, 2019 WL 3239242 (S.D.N.Y. June 18, 2019) | 23 |
| *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) | 17 |
| *Bravo v. Established Burger One, LLC*, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) | 20, 21 |
| *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) | 24 |
| *Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000) | 10 |
| *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16 (2d Cir. 2015) | 8, 9 |
| *Chukwueze v. NYCERS*, 2013 WL 5878174 (S.D.N.Y. Nov. 1, 2013) | 25 |
| *Clinton's Ditch Coop. Co. v. Nat. Labor Relations Bd.*, 778 F.2d 132 (2d Cir. 1985) | 20 |
| *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, 2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014) | 15 |
| *CMNY Cap., L.P. v. Perry*, 1998 WL 132846 (S.D.N.Y. Mar. 23, 1998) | 9 |
| *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) | 19 |
| *Creech v. P.J. Wichita, L.L.C.*, 2017 WL 914810 (D. Kan. Mar. 8, 2017) | 10 |

*Da Silva v. Kinsho Int'l Corp.*, 210 F. Supp. 2d 241 (S.D.N.Y. 2000), *aff'd*, 229
F.3d 358 (2d Cir. 2000)................................................................................................21

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .........................................................8, 14

*Dennis v. United Parcel Serv. Inc.*, 2008 WL 4945634 (S.D.N.Y. Nov. 20, 2008) .....................19

*Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505 (S.D.N.Y. 2016)........................................21

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) ....................................7

*Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111 (2d Cir. 2000)..........................16

*In re Enter. Rent-A-Car Wage & Hour Empl't. Practices Litig.*, 735 F. Supp. 2d
277 (W.D. Pa. 2010) ................................................................................................10

*Fernandez v. Chertoff*, 471 F.3d 45 (2d Cir. 2006) ........................................................22

*Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) .............................................19

*Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533 (1967).........................................10

*Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263 (E.D.N.Y. 2010).....................................11

*Gibbons v. Malone*, 703 F.3d 595 (2d Cir. 2013) ..........................................................4

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)...............................8, 16

*Green v. Fishbone Safety Sols., Ltd.*, 2017 WL 4012123 (D. Col. Sept. 12, 2017) .....................10

*Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361 (2d Cir. 2006) ...........................................16

*Gurvey v. Cowan, Liebowitz & Latman, PC*, 2009 WL 691056 (S.D.N.Y. Mar. 17,
2009) ........................................................................................................................11

*Hsieh Liang Yeh v. Han Dynasty, Inc.*, 2019 WL 633355 (S.D.N.Y. Feb. 14,
2019) ........................................................................................................................21

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).........................................................15

*J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544 (S.D.N.Y. 2001) ...............................12

*James v. Enterprise Assoc. of Steamfitters Local 638*, 2007 WL 5065001
(E.D.N.Y. Oct. 30, 2007) ...........................................................................................17

*James v. Gage*, 2019 WL 1429520 (S.D.N.Y. Mar. 29, 2019)........................................19

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)........................................10, 16

*Johnson v. Palma*, 931 F.2d 203 (2d Cir. 1991) .............................................................22

*Karabu Corp v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998) .......................................13

*Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, 2012 WL 1638326
    (S.D.N.Y. May 8, 2012).............................................................................................18

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ...............................................13

*Lavin-McEleney v. Marist Coll.*, 239 F.3d 476 (2d Cir. 2001).......................................23

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526
    (S.D.N.Y. Oct. 20, 2015) ..........................................................................................15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) .......16

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ....15

*Local 1180, Commc'ns. Workers of Am., AFL-CIO v. City of New York*, 318 F.
    Supp. 3d 672 (S.D.N.Y. 2018)..................................................................................16

*Mendez v. Pure Foods Management Grp., Inc.*, 2016 WL 183473 (D. Conn. Jan.
    14, 2016) .....................................................................................................................9

*In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56 (2d Cir. 1998).............................24

*Nat. Labor Relations Bd., v. Solid Waste Servs., Inc.*, 38 F.3d 93 (2d Cir. 1994)........20

*Novelaire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938 (S.D.N.Y. Nov. 21,
    2013) ..........................................................................................................................11

*PaineWebber Inc. v. Westgate Grp. Inc.*, 748 F. Supp. 115 (S.D.N.Y. 1990)................9

*Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575 (E.D.N.Y. May
    2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) ......................................................19

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992).............................................12

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) ...........................7

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994) ........................................................24

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) .....................16

*In re Roman Catholic Diocese Inc.*, 745 F.3d 30 (2d Cir. 2014).................................15

*Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001).........16, 22

*RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ...............................................................................13

*Ruiz v. New Avon L.L.C.*, 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) ...................22

*Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949 (S.D.N.Y. 1995)................................22

*Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015)............................20

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ...............................................................................................................14

*Sosa v. Medstaff, Inc.*, 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013)........................20

*SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ...................................7, 13

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013)....................16

*Tolliver v.. Delmarva Found. for Med. Care*, 2018 WL 3735889 (D. Del. Aug. 3, 2018) .......................................................................................................10

*Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) ................................20, 21

*Tsegaye v. Impol Aluminum Corp.*, 2003 WL 221743 (S.D.N.Y. Jan. 20, 2003)..................11, 12

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .......................................24

*Walden v. Fiore*, 571 U.S. 277 (2014)......................................................................9, 15

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ..........................16

*Wilder v. News Corp.*, 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ......................10, 12

*Yousef v. Al Jazeera Media Network*, 2018 WL 1665239 (S.D.N.Y. Mar. 22, 2018) ...............................................................................................................11

**Statutes and Rules**

42 U.S.C. § 2000e-5(f)(1) .............................................................................................22

N.Y. Labor Law § 215(2)(a) ..........................................................................................25

N.Y. Labor Law § 518 ...................................................................................................24

N.Y. C.P.L.R. § 301 .......................................................................................................14

N.Y. C.P.L.R. § 302(a) ..................................................................... *passim*

Defendant Mitsubishi Chemical Holdings Corporation ("MCHC") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("Amended Complaint" or "AC") (ECF No. 89) for lack of personal jurisdiction and failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Conceding fatal deficiencies in her original complaint, Plaintiff, a former in-house lawyer with Mitsubishi Chemical Holdings America, Inc. ("MCHA"), no longer pleads any claims against Mitsubishi Chemical Corporation ("MCC"), a Japanese affiliate of MCHA. In an effort to plead around the same deficiencies in her claims against MCHC, MCHA's Japanese parent, Plaintiff advances a newly minted theory that MCHC was (with MCHA) her "joint employer." But that theory directly contradicts her original complaint, her Equal Employment Opportunity Commission ("EEOC") complaint (the "EEOC Complaint"), the position that she took before the New York Unemployment Insurance Appeal Board ("UIAB"), and even allegations in the Amended Complaint itself. Plaintiff's supposed epiphany that she was also employed by MCHC is no basis to permit her otherwise insufficient claims to survive a motion to dismiss.

MCHC and MCC showed in their motion to dismiss Plaintiff's original complaint (the "Initial Motion") that neither of them belonged in this case because they were not Plaintiff's employer, and both are Japanese corporations not subject to this Court's jurisdiction. Although she does not dispute these points as to MCC, Plaintiff attempts to salvage her claims against MCHC by alleging for the first time that it was her "joint employer." This is a transparent, and inadequate, attempt to plead around the defects that MCHC and MCC pointed out in their Initial Motion. It contradicts her EEOC Complaint, in which, despite being asked to identify other employers as well, she identified only MCHA, a Delaware corporation headquartered in New

York. In proceedings before the UIAB that Plaintiff initiated before this action, she likewise asserted that MCHA was her employer.

Plaintiff's new theory also contradicts her original complaint, in which Plaintiff expressly pleaded that "Defendant Mitsubishi Chemical Holdings America, Inc. employed Ms. Fischman in its legal department from March 3, 2008 to January 30, 2017." She also alleged in that complaint that MCHA, as her employer, took the employment actions that form the basis of her claims— MCHA promoted her to the position of Acting General Counsel, then hired a permanent General Counsel and restored Plaintiff to her previous position, and later terminated her. Plaintiff's joint employer theory is even negated by the Amended Complaint, which alleges that "Ms. Fischman was hired *by Defendant MCHA*," and "the executive leader *of MCHA* was responsible for selecting the person who would fill the role of General Counsel." AC ¶¶ 23, 70. The Amended Complaint also expressly relies upon the EEOC Complaint and incorporates by reference a decision issued by the UIAB. The EEOC Complaint and the UIAB decision both reflect Plaintiff's view that MCHA was her employer.

Plaintiff's use of an eleventh-hour joint employer theory to prop up her claims against MCHC should be rejected. She is not simply adding details that were omitted from her initial pleading but blatantly seeking to avoid dismissal by amending her complaint to make allegations that contradict the position she has consistently taken in numerous forums for three years. This is nothing but a cynical litigation tactic.

Even if Plaintiff's joint employer theory were permitted, it still does not cure the defects in her claims. The Court should dismiss the case, for the following reasons:

*First*, the Court cannot exercise personal jurisdiction over MCHC. MCHC is not subject to general jurisdiction because it is not "at home" in New York. MCHC is also not subject to

specific jurisdiction, because, *inter alia*, Plaintiff does not allege that MCHC has engaged in any suit-related conduct in New York. Plaintiff's joint employer allegations, even if accepted, do not provide a basis for asserting jurisdiction over MCHC because the joint employer doctrine is not a *jurisdictional* doctrine, but only a doctrine of *liability*.

*Second*, Plaintiff fails to state a claim against MCHC because MCHC can be liable under the statutes that Plaintiff invokes only if it was her employer. It was not. Even if the Court were to permit Plaintiff to change her position as to who her employer was, the Amended Complaint still fails to plead *facts* establishing MCHC's purported joint employer status.

*Third*, even assuming for the sake of argument that MCHC was Plaintiff's joint employer, Plaintiff still fails to plead any federal claims against it. Plaintiff's Title VII claims against MCHC must be dismissed, because, as noted, her EEOC Complaint—and the EEOC's Notice of Right to Sue—did not name MCHC as a respondent. Under Title VII, a plaintiff may not bring suit against a defendant unless the plaintiff has filed a timely complaint with the EEOC that names that defendant. As for her Equal Pay Act claim, Plaintiff fails to state a plausible claim for relief because the Amended Complaint does not plead facts to support her contention that *MCHC* paid her wages, much less paid her, as Acting General Counsel, lower compensation than the new general counsel. Because Plaintiff fails to plead Title VII and EPA claims against MCHC, her state and local law claims should be dismissed, too. It is well settled in the Second Circuit that, as a general rule, when federal claims are dismissed, a court should decline to exercise supplemental jurisdiction over any remaining non-federal claims.

*Finally*, Plaintiff's failure-to-promote claims are time-barred, regardless of how the Court rules on any other issue.

Each of the first three grounds set forth above independently supports dismissal of the Amended Complaint in its entirety as to MCHC. The Court should dismiss it with prejudice.

## BACKGROUND[1]

### I.    Plaintiff's Employment At MCHA

Defendant MCHA hired Plaintiff on March 3, 2008, and employed her until January 30, 2017. AC ¶ 10. MCHA is a Delaware corporation, with its principal place of business in New York City. *Id.* ¶ 11.

Plaintiff initially held the position of Corporate Counsel in MCHA's legal department. *Id.* ¶ 24. She reported to Defendant Donna Costa, who was then General Counsel and Chief Compliance Officer of MCHA. *Id.* In February 2013, Plaintiff was promoted to the position of Assistant General Counsel of MCHA. *Id.* ¶ 41.

On December 3, 2014, Defendant Costa informed Plaintiff that she, Ms. Costa, was being promoted from the position of General Counsel and Chief Compliance Officer to the position of President of MCHA. *Id.* ¶ 49. Ms. Costa also informed Plaintiff that Plaintiff was being promoted to Acting General Counsel and Chief Compliance Officer of MCHA. *Id.* Shoji Yoshisato, as the executive leader of MCHA, was responsible for selecting the person who would fill the role of General Counsel and Chief Compliance Officer, once Ms. Costa had been promoted to MCHA President. *Id.* ¶ 70. Mr. Yoshisato was also responsible for determining whether the person selected would retain the position. *Id.* Mr. Yoshisato decided not to permanently promote Plaintiff, and searched for someone to replace her. *Id.*

On November 30, 2015, Defendant Nicolas Oliva became General Counsel and Chief Compliance Officer of MCHA, whereupon Plaintiff once again became Assistant General

---

[1]    This summary is taken from the factual allegations of the First Amended Complaint, which are accepted as true solely for purposes of this motion to dismiss. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

Counsel. *Id.* ¶ 72. Fourteen months later, on January 30, 2017, Mr. Oliva—who was then still General Counsel and Chief Compliance Officer of MCHA—terminated Plaintiff. *Id.* ¶ 84. Mr. Oliva told Plaintiff that she had been fired for cause. *Id.*

## II. MCHC

MCHC is a Japanese corporation with its principal place of business in Tokyo, Japan. MCHC has direct wholly owned and indirect subsidiaries around the world. One of MCHC's wholly owned subsidiaries is defendant MCHA. *Id.* ¶ 12.

MCHC has not leased or owned property in New York, maintained offices in New York, kept a telephone listing or files in New York, hired employees in New York, advertised in New York, registered to do business in New York, maintained a bank account in New York, or filed tax returns in New York. *See* Declaration of Yasukuni Noguchi, ¶¶ 7, 8, 10–13 ("MCHC Decl.").[2] MCHC does not maintain an agent for service of process in New York. *See id.* ¶ 9. MCHC's human resources department, books and records, bank accounts and board meetings are separate from MCHA's. *See id.* ¶¶ 14–17.

## III. Procedural History And Plaintiff's Claims

On May 7, 2017, Plaintiff filed a form complaint titled "Charge of Discrimination," with the EEOC.[3] AC ¶ 9. In her EEOC Complaint, Plaintiff identified "Mitsubishi Chemical Holdings America, Inc." as the "[e]mployer . . . that I believe discriminated against me." Fortinsky Decl., Ex. A at 1. Plaintiff asserted that she was "hired by" MCHA, and was later "discriminated against, passed up for a promotion that I was highly qualified for, and was ultimately terminated in January 2017 from my employment with [MCHA] for . . . discriminatory reasons." *Id.* Plaintiff's form

---

[2]  A copy of the Declaration of Yasukuni Noguchi, previously filed as ECF No. 69, is attached as Exhibit C to the Declaration of Jerome S. Fortinsky ("Fortinsky Declaration" or "Fortinsky Decl.").
[3]  A copy of the EEOC Complaint is attached as Exhibit A to the Fortinsky Declaration.

EEOC Complaint contained a separate box for the person filing the complaint to identify the name of a second employer in the event that the person believed that a second entity had discriminated against her. Plaintiff left that separate box blank. *Id.*

The EEOC issued a Notice of Right to Sue to Plaintiff on June 14, 2018 ("Right to Sue Notice").[4] AC ¶ 9. It stated, *inter alia*, "[i]n order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge [*i.e.*, the EEOC Complaint] within 90 days of the date you receive this Notice." *See* Fortinsky Decl., Ex. B at p. 2. The only respondent named in Plaintiff's Right to Sue Notice was MCHA. *See id.*, Ex. A.

Plaintiff filed her initial complaint (the "Original Complaint," ECF No. 2) in this action on September 11, 2018. MCHC and MCC filed their Motion to Dismiss the Complaint (ECF No. 67) on January 17, 2020. On January 21, 2020, this Court ordered that, if Plaintiff wanted to amend her complaint, she had to do so by February 28, 2020, and that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (ECF No. 72). After being granted two extensions of this deadline, Plaintiff filed the Amended Complaint on April 8, 2020 (ECF No. 89). In the Amended Complaint, Plaintiff dropped MCC as a defendant, withdrew several claims, and added allegations that MCHC was her "joint employer."

Plaintiff alleges, among other things, that Defendants MCHC and MCHA "jointly" discriminated and retaliated against her (1) when she was promoted to Acting General Counsel and Chief Compliance Officer; (2) when Mr. Oliva was appointed to the positions of General Counsel and Chief Compliance Officer, and Plaintiff resumed her former position as Assistant General Counsel; and (3) when Plaintiff's employment was eventually terminated. Plaintiff also

---

[4]     A copy of the Right to Sue Notice is attached as Exhibit B to the Fortinsky Declaration.

alleges that Mr. Oliva was paid more than she was paid for serving in the same positions in an acting capacity. *See* AC ¶¶ 115–164.

Based on these allegations, among others, Plaintiff pleads claims against each of the four named defendants, including MCHC. The Amended Complaint asserts five claims against only "the Company Defendants" (an undefined term apparently referring to MCHA and MCHC): Count I for discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); Count II for retaliation and wrongful termination in violation of Title VII; Count III for pay discrimination in violation of the Equal Pay Act ("EPA"); Count IV for discrimination in violation of the New York State Human Rights Law ("NYSHRL"); and Count VI for pay discrimination in violation of the New York State Equal Pay Act ("NYEPA"). The Amended Complaint asserts one additional claim against all Defendants: Count V for discrimination in violation of the New York City Human Rights Law ("NYCHRL"). The Amended Complaint also asserts two "aiding and abetting" claims (Counts VII and VIII) against only Ms. Costa and Mr. Oliva. *See* AC ¶¶ 115–164. This Motion addresses all claims asserted against MCHC, *i.e.*, Counts I–VI.

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER MCHC

For the reasons discussed above and further detailed below in Section II.A., the Court should not give any weight to the joint employer theory that Plaintiff deploys to shore up her claims against MCHC. But the Court need not even reach that issue, because Plaintiff's allegations do not make a *prima facie* showing of personal jurisdiction over MCHC.

A plaintiff bears the burden of establishing a court's personal jurisdiction over each defendant. *See, e.g.*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To satisfy that burden here, the Amended Complaint must make a *prima facie* showing of jurisdiction, *i.e.*, "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice

to establish jurisdiction over the defendant." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018); *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013). This standard "requires non-conclusory fact-specific allegations." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015). Plaintiff does not satisfy this standard.

### A.     This Court Lacks General Jurisdiction Over MCHC

A court may exercise general jurisdiction over a non-domiciliary defendant "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff has not alleged that MCHC is headquartered or incorporated in New York, or that it is otherwise "at home" in New York. Plaintiff acknowledges that MCHC "is a Japanese corporation, with its principal place of business in Tokyo, Japan." AC ¶¶ 12–13; *see also* MCHC Decl. ¶ 4. This Court therefore lacks general jurisdiction over MCHC.

### B.     This Court Lacks Specific Jurisdiction Over MCHC

#### 1.     This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(1)

Section 302(a)(1) of New York's long-arm statute permits a court to exercise jurisdiction over a person or entity that "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a). To determine whether jurisdiction exists under Section 302(a)(1), a court must decide "(1) whether the defendant transacts any business in New York, and if so, (2) whether this cause of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks omitted).

Courts look to the totality of circumstances to determine whether there is sufficient purposeful activity, and whether there is a sufficient nexus to the cause of action to confer long-

arm jurisdiction. *E.g.*, *PaineWebber Inc. v. Westgate Grp. Inc.*, 748 F. Supp. 115, 118 (S.D.N.Y. 1990). To establish jurisdiction under the "transacting business" provision, a plaintiff must show that a defendant's contacts with New York with respect to the transaction at issue were of a quality and quantity sufficient to establish that they "purposefully avail[ed] [themselves] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CMNY Capital, L.P. v. Perry*, 1998 WL 132846, at *3 (S.D.N.Y. Mar. 23, 1998).

Moreover, to establish specific jurisdiction, a defendant's "suit-related conduct must create a substantial connection with the forum State" that "must arise out of contacts that the defendant *himself* creates with the forum State," and "not . . . with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (internal quotation marks omitted) (emphasis in original). Under these standards, Plaintiff falls far short of alleging what is required. The Amended Complaint does not allege even in a conclusory manner—much less make "fact-specific allegations," *Chirag*, 604 F. App'x at 19—that MCHC transacted business in New York or otherwise availed itself of its privileges. Indeed, as the accompanying declarations demonstrate, MCHC has not leased or owned properties in New York, maintained offices in New York, kept a telephone listing or files in New York, hired employees in New York, advertised in New York, registered to do business in New York, maintained a bank account in New York, or filed state tax returns in New York; nor does MCHC maintain an agent for service of process in New York. *See* MCHC Decl. ¶¶ 7–13.

Plaintiff's conclusory "joint employer" allegations do not establish specific jurisdiction. The "joint employer" doctrine is not a *jurisdictional* doctrine, but only a doctrine of *liability*. *See, e.g., Mendez v. Pure Foods Mgmt. Grp., Inc.*, 2016 WL 183473 (D. Conn. Jan. 14, 2016) (plaintiffs not permitted to "avoid [the] high bar" of veil piercing by using "joint employer" doctrine);

*Tolliver v. Delmarva Found. for Med. Care*, 2018 WL 3735889, at *4 (D. Del. Aug. 3, 2018) ("There is no general jurisdiction based upon Plaintiff's allegations of a joint employer").[5]

Plaintiff likewise pleads no facts tending to demonstrate that MCHC engaged in any transaction within New York through an agent. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) ("conclusory statements—without any supporting facts—that [American subsidiary] is 'wholly controlled' by [foreign parent] and 'wholly dependent' on [foreign parent]" are insufficient to confer jurisdiction). New York courts have personal jurisdiction over a foreign parent based on a New York-based subsidiary *only* when the subsidiary is "either an 'agent' or a 'mere department' of the foreign parent." *Jazini*, 148 F.3d at 184. "The standard for veil-piercing in the personal jurisdiction context is a demanding one . . . and a Court will only find jurisdiction over the foreign [entity] when the activities show a disregard for the separate corporate existence of the subsidiary." *Wilder v. News Corp.*, 2015 WL 5853763, at *6 (S.D.N.Y. Oct. 7, 2015) (internal quotation marks omitted).

"To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" *Jazini*, 148 F.3d at 184 (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537 (1967). The "essential question is whether the services that [the subsidiary] provided to [the foreign parent] were essential to [the foreign parent], such that the corporation itself would perform

---

[5]  As one Court of Appeals has explained, "jurisdiction and liability" are separate inquiries, and the laws on which a suit is based (e.g., the joint employer doctrine) are irrelevant to the jurisdictional inquiry "because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action." *Cent. States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). *See also, e.g., Green v. Fishbone Safety Solns, Ltd.*, 2017 WL 4012123, at * (D. Col. Sept. 12, 2017) ("alleged status as joint employers is irrelevant to the question of personal jurisdiction"); *Creech v. P.J. Wichita, L.L.C.*, 2017 WL 914810, at *3–4 (D. Kan. Mar. 8, 2017) ("[P]ersonal jurisdiction derives from a constitutional inquiry of due process, liability theories arise from federal or state statutes"); *In re Enter. Rent-A-Car Wage & Hour Empl't. Practices Litig.*, 735 F. Supp. 2d 277, 319, 326–28 (W.D. Pa. 2010) (collecting cases).

equivalent services if no agent were available." *Yousef v. Al Jazeera Media Network*, 2018 WL 1665239, at *10 (S.D.N.Y. Mar. 22, 2018) (internal quotation marks omitted). "[I]n order for a sufficient agency to be found for jurisdictional purposes, the agent must be a *substantial participant* in the defendant's actual business and have the *discretion and authority to bind* the defendant." *Novelaire Techs., L.L.C. v. Munters AB*, 2013 WL 6182938, at *5 (S.D.N.Y. Nov. 21, 2013) (emphasis in original).

As is self-evident from its name, MCHC acts as a holding company for Mitsubishi entities around the world.[6] MCHA provides support to MCHC subsidiaries in the Americas, including risk management, compliance, auditing, tax, IT, and finance. *See* http://www.mitsubishichemicalholdings.com. Plaintiff makes no allegations suggesting that MCHA is a "substantial participant" in MCHC's business, or that MCHA has the "discretion and authority to bind" MCHC. This is unsurprising, because, as a general matter, when the relationship between a parent and subsidiary is that of a *holding company* (*e.g.,* MCHC) and its wholly owned subsidiary (*e.g.,* MCHA), the subsidiary is not an agent of the parent.[7]

MCHA is also not a "mere department" of MCHC. In order to establish that a subsidiary is a "mere department" of the parent, a plaintiff must show that the parent exerts "pervasive" control over the subsidiary. *See Tsegaye v. Impol Aluminum Corp.*, 2003 WL 221743, at *5 (S.D.N.Y. Jan. 20, 2003). The four relevant factors are: "1) common ownership—which is essential; 2) financial dependency of the subsidiary on the parent; 3) the degree to which the parent

---

[6]  A copy of the MCHC Corporate Governance Report, dated May 31, 2016, is attached as Exhibit E to the Fortinsky Declaration. *See* Fortinsky Decl., Ex. E, at 12 ("[MCHC] adopts a holding company system that separates the Group business management functions and individual business operation functions"). Plaintiff quotes and relies on this document extensively in the Amended Complaint. *See* AC ¶¶ 95–100.

[7]  *See, e.g.*, *Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 274 (E.D.N.Y. 2010) ("The business of [the parent] is that of a holding company, the business of which is 'nothing more than an investment mechanism [—] a device for diversifying risk through corporate acquisitions.' . . . Since the subsidiaries carry out their own business, and not the investment business of [the parent], the subsidiaries cannot be deemed the agents of [the parent]") (citing *Gurvey v. Cowan, Liebowitz & Latman, PC*, 2009 WL 691056, at *4 (S.D.N.Y. Mar. 17, 2009).

interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and 4) the degree of the parent's control of the subsidiary's marketing and operational policies." *Id.*

Plaintiff's new allegations do nothing to establish MCHA as a "mere department." *See* AC ¶ 12. Plaintiff alleges that MCHC "has embedded its own executives in dual roles acting simultaneously as both: (i) direct agents of MCHC and (ii) executives of MCHC's respective subsidiaries and affiliates" and "controls every material aspect of its subsidiaries' and affiliates' operations," including budgets, headcount, organizational and reporting structure, strategic decision-making, and personnel decisions like hiring, promotion, compensation, and termination. *Id.*; *see Palmieri v. Estefan*, 793 F. Supp. 1182, 1188 (S.D.N.Y. 1992) (affiliates not mere departments of parent despite common ownership and fact that parent required approval of major financial decisions, guaranteed affiliate's financial obligations, reviewed budget, approved key personnel decisions, and assisted affiliate in strategy, negotiations, and policy development).

But just like the parent and subsidiaries in *Palmieri*, MCHC and MCHA maintain separate books, have their own bank accounts and finance and accounting departments, control their own budgets and payroll, file their own tax returns and financial statements, and MCHA exercised control over their finances and spending without any day-to-day oversight from MCHC.[8] *See* MCHC Decl. ¶¶ 7, 8, 10–13; *see also, e.g.*, *Wilder*, 2015 WL 5853763 at *9–11.

Even if this Court found MCHA to be an agent or department of MCHC, the allegations in Plaintiff's Amended Complaint would be insufficient to confer personal jurisdiction over MCHC.

---

[8] Further, Plaintiff has made no allegations that MCHC did not observe corporate formalities. That several members of MCHA's Board are affiliated with MCHC does not support a conclusion that corporate formalities were disregarded. *See J.L.B. Equities v. Ocwen Fin. Corp.*, 131 F. Supp. 544, 550 (S.D.N.Y. 2001) ("overlapping officers and directors are intrinsic to the parent-subsidiary relationship" and do not confer personal jurisdiction) (internal quotation marks omitted).

Where a foreign defendant is alleged to have transacted business through an agent, a plaintiff must show that the agent acted "for the benefit of and with the knowledge and consent" of the foreign principal, who "exercised some control" over the agent with respect to that matter." *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988); *Karabu Corp v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) (granting motion to dismiss where plaintiff "[had] not satisfied the 'control' prong"). Plaintiff's vague and conclusory allegations that MCHC controlled MCHA, AC ¶¶ 12, 26, 60, 95, 104, 107, 108, fall short of an "averment of facts that, if credited by the ultimate trier of fact, would suffice to establish" that MCHA acted "for the benefit of" and "with the knowledge and consent" of MCHC.[9]

### 2. This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(2)

Under CPLR § 302(a)(2), courts have jurisdiction over a non-resident defendant where a cause of action arises from the defendant's commission of "a tortious act within the state." Plaintiff fails to plead that MCHC is subject to jurisdiction under Section 302(a)(2).

*First*, the Amended Complaint does not make well pleaded allegations that MCHC committed a "tortious act" (whether within or outside New York). All the federal statutes upon which the Amended Complaint's claims are based, along with her NYSHRL and NYSEPA claims, impose liability only upon a plaintiff's "employer." Therefore, to the extent the Amended Complaint alleges conduct in violation of those statutes, Plaintiff's *employer* must have engaged in that conduct for it to be "tortious" pursuant to these statutes invoked in the Amended Complaint. Yet, as explained below, the Amended Complaint does not make a *prima facie* showing that MCHC was Plaintiff's employer.

---

[9] *See SPV OSUS, Ltd.*, 882 F.3d at 342; *RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (dismissing claims for lack of jurisdiction where complaint was devoid of allegations that purported agents "were acting for [defendant's] benefit, with his knowledge and consent, and subject to his control") (internal quotation marks omitted).

*Second*, MCHC is not subject to jurisdiction under Section 302(a)(2), because to establish jurisdiction under § 302(a)(2), a defendant "must be physically present in New York" when committing the alleged "tortious act." *See, e.g.*, *Beckett v. Prudential Ins. Co. of Am.*, 893 F. Supp. 234, 239 (S.D.N.Y. 1995). The Amended Complaint does not plead facts indicating MCHC was "physically present" in New York at any time, much less at the time, and in the place, that the "tortious conduct" alleged by Plaintiff occurred.

### 3. This Court Lacks Specific Jurisdiction Under CPLR § 302(a)(3)

To establish jurisdiction under § 302(a)(3), the plaintiff must show that, *inter alia*, (1) the "defendant committed a tortious act outside the State," (2) "the cause of action arises from that act," and (3) "the act caused injury to a person or property within the State." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006). Plaintiff does not plead facts that satisfy *any* of Section 302(a)(3)'s threshold requirements, *i.e.*, the Complaint does not contain well pleaded allegations that MCHC committed a tortious act outside New York upon which Plaintiff's claims are based and that caused Plaintiff injury.

### C. An Exercise Of Personal Jurisdiction Over MCHC Would Not Comport With Due Process

Even if Plaintiff were able to establish jurisdiction under Section 301 or 302, dismissal of all claims asserted against MCHC would still be required, because this Court's exercise of jurisdiction over it would not comport with the Due Process Clause. As noted above, the Supreme Court in *Daimler* held that *general* jurisdiction may be exercised over a defendant in a forum "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." 571 U.S. at 122 (internal quotation marks omitted). For the reasons set forth in Point I.A., Plaintiff has not made (and cannot make) a *prima facie* showing that MCHC is subject to *general* jurisdiction under *Daimler*.

Plaintiff also does not (and cannot) plead a *prima facie* showing of *specific* jurisdiction over MCHC that comports with due process. To satisfy the Due Process Clause, a plaintiff seeking to establish specific jurisdiction over a defendant must adequately plead that (1) the defendant's purported *suit-related conduct* created a sufficient connection with the forum, and (2) the exercise of jurisdiction is "reasonable," *i.e.*, it does not "offend traditional notions of fair play and substantial justice." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's "suit-related conduct must create a substantial connection with the forum" that "must arise out of contacts that the defendant *himself* creates with the forum," and "not . . . with persons who reside there." *Walden*, 571 U.S. at 283–85 (emphasis in original) (internal quotation marks omitted).[10]

Here, Plaintiff fails to satisfy these requirements because, *inter alia*, she does not make a *prima facie* showing of purposeful, suit-related conduct by MCHC, either directly or through an agent, in New York (or in the United States as a whole). As explained below, to be liable under the statutes under which Plaintiff asserts her claims, MCHC had to be Plaintiff's employer, and the conduct complained of must be its conduct as her employer. *See* Point II. Yet the Amended Complaint is devoid of sufficient allegations that MCHC acted as her employer or otherwise engaged (directly, through an agent, or through employees at MCHA) in the employment-related conduct that forms the basis of Plaintiff's claims. Accordingly, Plaintiff has not pleaded facts indicating that MCHC engaged in "suit-related conduct [that] create[d] a substantial connection with the forum State," *Walden*, 571 U.S. at 284, or "in-state activity that 'gave rise to the episode-

---

[10] Moreover, specific jurisdiction requires a "'substantial nexus' between the [contacts] and the cause of action." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014); *see also In re Roman Catholic Diocese Inc.*, 745 F.3d 30, 38 (2d Cir. 2014). Courts in the Second Circuit require no less than a "'but for' connection between the defendant's forum-directed activities and the claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *28 (S.D.N.Y. Oct. 20, 2015).

in-suit.'"  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Goodyear*, 564 U.S. at 923).[11]

## II.  PLAINTIFF DOES NOT PLEAD THAT MCHC WAS HER EMPLOYER AND THUS FAILS TO STATE ANY CLAIM AGAINST IT

For each of Plaintiff's claims, MCHC can be liable only if it was Plaintiff's "employer."[12] This Court should dismiss all claims against MCHC because Plaintiff does not adequately plead that MCHC was Plaintiff's employer.

### A.  The Court Should Not Credit Plaintiff's Newly Minted "Joint Employer" Theory

In an attempt to plead around the fatal weaknesses of the Original Complaint, the Amended Complaint grafts onto Plaintiff's allegations a new theory that MCHC was Plaintiff's "joint employer."  But that theory *directly contradicts* the Original Complaint, including the EEOC Complaint that it relied on and the UIAB Decision that it incorporated by reference.  Original Compl. ¶¶ 9, 86.  As explained below, Plaintiff's theory also contradicts the Amended Complaint itself, which also relies upon the EEOC Complaint and incorporates the UIAB Decision by reference.[13]

In her EEOC Complaint, Plaintiff identified "Mitsubishi Chemical Holdings America, Inc." as the "[e]mployer . . . that I believe discriminated against me."  Fortinsky Decl., Ex. A at

---

[11]  To the extent that the Amended Complaint contains conclusory statements to the contrary, *see, e.g.*, AC ¶¶ 72, 82, 112–114, those allegations are "legal conclusion[s] couched as a factual allegation," *Jazini*, 148 F.3d at 185; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), or "argumentative inferences," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012), and cannot establish personal jurisdiction.

[12]  *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (Title VII claims); *see also Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) (NYSHRL claims); *Local 1180, Commc'ns. Workers of Am., AFL-CIO v. City of New York*, 318 F. Supp. 3d 672, 679 (S.D.N.Y. 2018) (EPA claims); *Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) (EPA and NYSEPA claims evaluated under the same standard).  Although Plaintiff's NYCHRL and NYLL claims also permit liability against employees and agents, Plaintiff does not (and cannot) assert that MCHC was an employee or agent of MCHA.

[13]  A copy of the UIAB Decision is attached as Exhibit D to the Fortinsky Declaration.

1.[14]  Plaintiff's form EEOC Complaint contained a separate box for identifying the name of a second employer in the event that the person believed that a second entity had discriminated against her.  Plaintiff left that separate box blank.  Nowhere else in the EEOC Complaint did Plaintiff identify any employer other than MCHA.  Plaintiff did not even mention MCHC at all in her EEOC Complaint.  And the EEOC Right to Sue Notice gave her a right "to sue the *respondent*(s) named in the charge [*i.e.*, the EEOC Complaint]."  *See* Fortinsky Decl., Ex. B at p. 2.  The only "respondent" named in Plaintiff's Right to Sue Notice was MCHA.  *See id.*, Ex. A. In her Original Complaint and Amended Complaint, Plaintiff expressly relied upon the EEOC Complaint and the Right to Sue Notice.  Original Compl. ¶ 9; AC ¶ 9.

Likewise, as reflected in the UIAB Decision incorporated by reference into both the Original Complaint and Amended Complaint, Plaintiff took the position in the UIAB Proceeding that MCHA was her employer.  Original Compl. ¶ 86; AC ¶ 90.  In the case caption of the UIAB Decision, the "claimant" is identified as "Jennifer Fischman," and the employer as "Mitsubishi Chemical Holdings America, Inc."—*i.e.*, MCHA.  Fortinsky Decl., Ex. D at 1.  Elsewhere in the Decision, the Administrative Law Judge ("ALJ") uses the shorthand "Mitsubishi Chemical" to refer to MCHA.  *Id.* at 3, 7.  The ALJ notes that Plaintiff challenged an initial determination that "the wages paid to [her] by Mitsubishi Chemical [*i.e.*, MCHA] . . . cannot be used toward the establishment of a claim for benefits."  *Id.* at 7; *see also* AC ¶ 90; Original Compl. ¶ 86.

Plaintiff's "joint employer" theory also contradicts the Original Complaint, in which Plaintiff expressly pleaded that "Defendant Mitsubishi Chemical Holdings America, Inc.

---

[14]  "The rule in this Circuit has been to treat plaintiff's allegations to administrative bodies in discrimination claims as integral parts of the pleadings." *James v. Enterprise Assoc. of Steamfitters Local* 638, 2007 WL 5065001, at *4 (E.D.N.Y. Oct. 30, 2007) (EEOC Complaint "deemed to be incorporated by reference" and considered in deciding the defendant's motion to dismiss).  The Court may also take judicial notice of the EEOC Complaint because it is a public record. *See, e.g., Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records . . . in deciding a motion to dismiss.").

employed Ms. Fischman in its legal department from March 3, 2008 to January 30, 2017." Original Compl. ¶ 10. The Original Complaint further alleged that *MCHA* took the employment actions that form the basis of her claims—*e.g.*, the Original Complaint alleged that "Mr. Oliva terminated Ms. Fischman's employment," and identifies Mr. Oliva as the "General Counsel and Chief Compliance Officer of MCHA." Original Compl. ¶¶ 15, 80.

Plaintiff cannot claim that she only recently became aware of which entity (or entities) employed her. Plaintiff alleges that she worked for MCHC for nine years, and asserts that she was the "primary attorney assigned to manage and advise on employment law matters." AC ¶¶ 10, 91. Plaintiff therefore had to have known who her own employer was, especially in light of her expertise, sophistication, and knowledge of the inner workings of the two companies that she alleges were her "joint employers" (MCHA and MCHC) and on whose behalf she supposedly acted as in-house counsel on employment and other matters for years. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (determination of whether complaint states plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Also, the Amended Complaint's "joint employer" allegations rely upon a *publicly available* document issued in 2016—i.e., one year before her EEOC and UIAB proceedings, and *two years* before she filed her Original Complaint. AC ¶ 95 *et seq.*

It is well established that, where an amended complaint makes allegations that contradict allegations in a prior complaint, the Court may give no weight to the amended allegations. *See, e.g.*, *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) ("a court may disregard amended pleadings when they directly contradict facts that

have been alleged in prior pleadings."); *James v. Gage*, 2019 WL 1429520, at \*6–7 (S.D.N.Y. March 29, 2019) (collecting cases).[15]

Here, there is all the more reason to accord no weight to Plaintiff's "joint employer" allegations, because they contradict even the *Amended* Complaint. It alleges that "Ms. Fischman was hired by Defendant MCHA," "the executive leader of MCHA was responsible for selecting the person who would fill the role of General Counsel," and "Mr. Oliva [the General Counsel of MCHA, AC ¶ 14] terminated Ms. Fischman's employment." AC ¶¶ 23, 70, 84. The Amended Complaint also relies upon the EEOC Complaint and incorporates by reference the UIAB Decision. Both reflect Plaintiff's view that MCHA was her employer. AC ¶¶ 9, 90; Fortinsky Decl., Ex. A at 1; Fortinsky Decl., Ex. D at 1. *See also, e.g.*, *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court . . . is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint"); *Dennis v. United Parcel Serv. Inc.*, 2008 WL 4945634, at \*5 (S.D.N.Y. Nov. 20, 2008) (dismissing claim where plaintiff's own pleadings defeated his claim on their face).

### B. Plaintiff Fails To Adequately Plead Her Joint Employer Theory

Even assuming the Court attaches any weight to Plaintiff's joint employer allegations, Plaintiff still fails to adequately plead that MCHC was her "joint employer." The "joint employer" doctrine assumes that employers are separate legal entities, but "have merely chosen to handle

---

[15] *See also, e.g., Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575, at \*5 (E.D.N.Y. May 2, 2011) ("a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in his original complaint" (citation, alteration, and internal quotation marks omitted), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at \*6 (S.D.N.Y. Sept. 24, 2008) ("[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true" (citation, internal quotation marks, and alterations omitted), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

certain aspects of their employer-employee relationships jointly." *Clinton's Ditch Coop Co. v. Nat. Labor Relations Bd.*, 778 F.2d 132, 137 (2d Cir. 1985). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *see also Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216–17 (S.D.N.Y. 2010) (applying doctrine to NYSHRL and NYCHRL claims).

While the Second Circuit has yet to articulate a test for joint employer liability, factors of formal control to consider in determining whether a plaintiff is constructively employed by a defendant are "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (citing *Nat. Labor Relations Bd. v. Solid Waste Servs., Inc.*, 38 F.3d 93, 93 (2d Cir. 1994)). Courts consider "the control that [the employers] exercise over the employee in setting the terms and conditions of the employee's work." *Sosa v. Medstaff, Inc.*, 2013 WL 6569913, at *3 (S.D.N.Y. Dec. 13, 2013); *see also NLRB*, 38 F.3d at 94 ("A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees").

Plaintiff's allegations in her Amended Complaint that MCHA and MCHC "jointly" employed her do nothing more than rephrase the NLRB factors of constructive employment, without any specific facts or allegations, which is insufficient to establish joint employer liability. *See, e.g.*, *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *6–7 (S.D.N.Y. Oct. 8, 2013) (plaintiff who alleged that defendant "exercised control over the terms and conditions of [their] employment by exercising power to fire and hire, determining rate and method of pay,

determining employee work schedules, maintaining employee records, and otherwise affecting the quality of employment" had not alleged any "specific facts" and failed to satisfy their pleading burden under the joint employer doctrine); *see also Hsieh Liang Yeh v. Han Dynasty, Inc.*, 2019 WL 633355, at *7–8 (S.D.N.Y. Feb. 14, 2019). For example, in *Tracy v. NVR, Inc.*, the plaintiffs alleged "that, *upon information and belief*, [the defendant] had the general authority to hire and/or fire employees, and that he maintained employee records," and that the defendant "supported, or indirectly impacted" the plaintiff's work schedule, conditions of employment, and compensation. 667 F. Supp. 2d 244, 248 (W.D.N.Y. 2009) (emphasis in original) (internal quotation marks omitted). These allegations were insufficient because the plaintiffs "offer[ed] no supporting details to substantiate their belief . . . and allege no facts concerning the extent of [the defendant's] alleged involvement in [the subsidiary's] hiring and/or firing processes or record-keeping policies." *Id.* Conversely, in *Donahue v. Asia TV USA Ltd.*, the Court found that the plaintiff had sufficiently alleged that her television network and its parent corporation were joint employers when she specifically alleged that:

> [Defendant] visited [subsidiary's] offices twice a month; met with employees, including [plaintiff], to review their performance evaluations; approved departmental budgets and expenses above $1,000; sought to determine when employees arrived in the morning and left at night through access to their electronic swipe cards; reviewed employee responses to a survey with employees individually; established particular policies at [subsidiary] governing employee duties; and 'met with several high-ranking [subsidiary] employees . . . to discuss business strategy. Additionally, [Defendant's employee] allegedly recommended a replacement for [the plaintiff] after telling him he should retire, and that person ultimately did replace [plaintiff].

208 F. Supp. 3d 505, 518 (S.D.N.Y. 2016). Plaintiff's allegations are nothing like the allegations in *Donahue*, and similar to those that were held inadequate in *Bravo* and *Tracy v. NVR*. *See Bravo*, 2013 WL 5549495, at *6–7; *NVR*, 667 F. Supp. 2d at 248; *see also Da Silva v. Kinsho Int'l Corp.*, 210 F. Supp. 2d 241, 243(S.D.N.Y. 2000) ("a parent is liable for the acts of its subsidiary only under extraordinary circumstances") (internal quotation marks omitted).

## III.    EACH OF PLAINTIFF'S CLAIMS IS FATALLY DEFECTIVE

### A.    The Court Should Dismiss Plaintiff's Title VII Claims Because Her EEOC Complaint Did Not Name MCHC

Plaintiff's Title VII claims against MCHC must be dismissed because her EEOC Complaint—and the EEOC's Right to Sue Notice—did not name MCHC as a respondent. *See* Fortinsky Decl., Ex. A, Ex. B (ECF No. 68). Under Title VII, a plaintiff may bring suit in federal court against a defendant only if he or she files a timely complaint with the EEOC that names that defendant. *See* 42 U.S.C. § 2000e-5(f)(1).[16] A plaintiff who attempts to assert a Title VII claim against a defendant not named in connection with the EEOC proceedings has not exhausted all available administrative remedies and, as a result, the claim must be dismissed. *See Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006).[17]

### B.    Plaintiff Fails To State An Equal Pay Act Claim

Plaintiff's sole remaining federal claim against MCHC—and the only remaining basis for the Court's assertion of original jurisdiction—is her claim under the federal EPA (Count III). "To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that her employer violated the Equal Pay Act." *Rose v. Goldman, Sachs*, 163 F. Supp. 2d at 243. Thus, "vague, conclusory, and speculative allegations will not save an Equal Pay Act claim." *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001).

---

[16] *See also, e.g., Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) ("A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant.").

[17] Courts in some circumstances have recognized an exception to the rule that a defendant must be named in the EEOC charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson*, 931 F.2d at 209. This exception does not apply here. The Complaint does not allege an "identity of interest" between MCHC and MCHA (their alleged joint employer status notwithstanding). Further, this exception does not apply here because Plaintiff—an attorney who claims she was MCHA's "primary employment lawyer," *see* AC ¶ 42—was represented by experienced counsel in preparing and filing her EEOC charge. *See Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949, 954 (S.D.N.Y. 1995) ("As a threshold matter, [the identity-of-interest] exception only applies where plaintiff is not represented by counsel."); *see also Ruiz v. New Avon L.L.C.*, 2019 WL 4601847, at *11–12 (S.D.N.Y. Sept. 22, 2019) (identity-of-interest exception did not apply "in particular because [plaintiff] had the benefit of counsel in preparing and filing" EEOC complaint).

To plead an EPA claim, a plaintiff must allege facts showing that the *defendant* "pays different wages to employees of the opposite sex." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001). The Original Complaint was devoid of any factual allegation that *MCHC* paid the wages of either Plaintiff or Mr. Oliva. In fact, the Original Complaint did not identify with specificity which entity paid either Plaintiff's or Mr. Oliva's wages.

In an effort to cure this pleading defect, Plaintiff now alleges in her Amended Complaint, "on information and belief," that MCHC paid the wages of Plaintiff and Mr. Oliva, using its own funds, and (tacitly acknowledging which entity actually paid) that MCHA at most served as a conduit to transmit the funds to them.[18] AC ¶ 134. But these new allegations should not be accorded any weight, for two reasons. *First*, Plaintiff alleges these facts "upon information and belief," but Plaintiff's allegations are not, as they must be, "accompanied by a statement of the facts upon which the belief is founded." *Boehm v. SportsMem, LLC, et al.*, 2019 WL 3239242 at *1, *4 n.1 (S.D.N.Y. June 18, 2019) (Furman, J.); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Without the required statement, Plaintiff's allegation that MCHC "paid" Plaintiff's wages is pure "conjecture and speculation."[19] *Boehm*, 2019 WL 3239242 at *4 n.1.

*Second*, Plaintiff's "information and belief" allegations conflict with the allegations in her Original Complaint (left unchanged in the Amended Complaint) regarding the UIAB Decision. *See supra*. In the UIAB Proceedings, the respondent—*i.e.*, Plaintiff's "employer," who "paid" her "wages"— was MCHA. Plaintiff had challenged an initial determination that "the wages paid to

---

[18] The Amended Complaint does not meaningfully assert that by serving as a conduit, MCHA was also "paying" Plaintiff's and Mr. Oliva's wages. The Amended Complaint does not explain—nor could it—how each of two different entities can pay, in full, the wages of the same employee.

[19] On top of that, it is not plausible that Plaintiff would have to resort to "information and belief" allegations as to which entity actually paid her wages, considering that she allegedly worked for MCHC (as her supposed "joint employer") for nine years, and served as Acting General Counsel of MCHA, with substantial responsibilities over labor and employment matters. AC ¶ 91.

[her] by" MCHA "cannot be used toward the establishment of a claim for [unemployment] benefits." *Id.* at 7; *see* also AC ¶ 90; Original Compl. ¶ 86. Clearly, Plaintiff took the position in the UIAB Proceedings—a position adopted by the UIAB— that MCHA was her employer and paid her wages.[20] Especially because Plaintiff attached the UIAB Decision as an exhibit to her Original Complaint, incorporated it by reference and made express allegations about it (and even incorporated it again into her Amended Complaint), the Court should disregard her contradictory last-minute "information and belief" allegations.

### C. The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's State And Local Law Claims

Finally, the Court should dismiss the three remaining state and city claims—Counts IV, V, and VI. As a general rule, in a federal question case such as this one, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The Court has no basis to depart from that rule here. The traditional "values of judicial economy, convenience, fairness, and comity" do not favor the exercise of supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (if federal claims are dismissed before trial and there has not been a substantial expenditure of resources on the state claims, state claims should generally be dismissed too). The Court should therefore dismiss Counts IV, V, and VI.

### D. Plaintiff's Discrimination Claims Based On Failure-To-Promote Allegations Are Time-Barred

In the Initial Motion, MCHC (and MCC) showed that Plaintiff's claim that she was passed over for promotion in April 2015 was time-barred, regardless of how the Court rules on any other

---

[20]  In fact, under N.Y. Labor Law, only "remuneration" that is "paid *by an employer to his employee*" can be used to support a claim for benefits. N.Y. Labor Law § 518(1)(a) (emphasis added).

issue. Plaintiff attempts to plead around this by asserting a *second* "failure-to-promote" claim. Whereas in her Original Complaint, Plaintiff asserted only that MCHC (among others) failed to promote her in April 2015 (or before), she now pleads that MCHC (among others) "decided again" not to promote her "[i]n November 2015." AC ¶ 72. *First*, this does not change the fact that Plaintiff's claim that MCHC failed to promote her in April 2015 is time-barred.[21] *Second*, Plaintiff's new claim conflicts with her allegation that she was "passed over for promotion . . . until the Company could hire a suitable male replacement . . . ." AC ¶ 61; *see supra* at 16–19. The import is clearly that a one-time decision was made to promote her to acting General Counsel until a "suitable male replacement" was found. That decision obviously could not have been made in November 2015 (when Mr. Oliva became General Counsel, and Plaintiff had already been Acting General Counsel for six months). *Third*, while a predicate of Plaintiff's new claim is that she "continually requested" to be appointed full General Counsel (leading to her purported second demotion), conspicuously missing is any allegation that she made that request *to MCHC*, or that when "her requests were denied on each occasion," that they were denied *by MCHC*. AC ¶ 52.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint as against MCHC with prejudice.

---

[21] It is still time-barred because Plaintiff still alleges that, on December 3, 2014, Ms. Costa told her that "the decision had been made" not to promote her to full General Counsel and Chief Compliance Officer, and that she was being appointed to those roles in April 2015 only in an "acting" capacity. AC ¶ 50. Plaintiff asserts that she was "passed over for promotion . . . until the Company could hire a suitable male replacement." *Id.* ¶ 61. Four of Plaintiff's causes of action against MCHC—Counts I, II, IV and V—are based, in part, on these allegations. *See id.* ¶¶ 116, 124, 141, and 146. Discrimination claims under all the statutes that Plaintiff invokes are time-barred if brought more than three years after the employment actions at issue, *see, e.g., Chukwueze v. NYCERS*, 2013 WL 5878174, at *1 (S.D.N.Y. Nov. 1, 2013) (Furman, J.), except for claims under New York Labor Law § 215, for which the statute of limitations is two years. NYLL § 215(2)(a). Thus, to the extent that Plaintiff's claims are based on MCHC's alleged failure to promote her in April 2015 (or before), those claims are time-barred, and should be dismissed, because she asserts that she learned on December 3, 2014 that she was "passed over for promotion," but did not file this action until September 7, 2018. AC ¶¶ 50, 61.

Dated: New York, New York          SHEARMAN & STERLING LLP
       May 4, 2020


                                   By:  _/s/ Jerome S. Fortinsky_____

                                   Jerome S. Fortinsky
                                   599 Lexington Avenue
                                   New York, NY 10022-6069
                                   Telephone:  +1.212.848.4000
                                   Facsimile:  +1.212.848.7179
                                   jfortinsky@shearman.com


                                   George Anhang
                                   401 9th Street, N.W.
                                   Suite 800
                                   Washington, DC 20004
                                   Telephone:  +1.202.508.8000
                                   Facsimile:  +1.202.508.8100
                                   george.anhang@shearman.com

                                   *Attorneys for Mitsubishi Chemical*
                                   *Holdings Corporation*