# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JENNIFER S. FISCHMAN, | : | CIVIL ACTION NO.: 18-CV-08188 |
| | : | (JMF) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MITSUBISHI CHEMICAL HOLDINGS | : | |
| AMERICA, INC. et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOVING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**VALLI KANE & VAGNINI LLP**

Sara Wyn Kane
Robert J. Valli, Jr.
Matthew L. Berman

600 Old Country Road, Suite 519
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiff*

# <u>Table of Authorities</u>

## <u>Cases</u>

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) .................................. 5

*Allard v. Arthur Andersen & Co.*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997) ................................ 23

*Anderson v. City of New York, Health and Hospital Corporation,* 2017 WL 9538862, *19
(S.D.N.Y. Jan. 19, 2017) .................................................................................................... 24

*Bridges v. Eastman Kodak Co.,* 822 F. Supp. 1020, 1026 (S.D.N.Y.1993) ................................ 22

*Calder v. Jones,* 465 U.S. 783, 788-91 (1984) .......................................................................... 17

*Cameron v. New York City Dept. of Education,* 2018 WL 1027710, *11 (S.D.N.Y. Feb. 21,
2018) ................................................................................................................................... 24

*Cassese v. Washington Mut. Inc.,* 262 F.R.D. 179, 185 (E.D.N.Y. 2009) .................................. 16

*Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158 (2d Cir. 2010) ...................................... 6

*Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241-42 (2d Cir. 1995) .............................. 21

*Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014) .................................................................... 6

*Distefano v. Carozzi N. Am. Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) ............................................... 5

*Duverny v. Hercules Medical P.C.,* 2020 WL 1033048, *9 (S.D.N.Y. Mar. 3, 2020) ................ 21

*ESI,Inc. v. Coastal Corp.,* 61 F. Supp.2d. 35, 51 (S.D.N.Y. 1999) ............................................ 15

*Fernandez v. HR Parking Inc.,* 407 F. Supp.3d 445, 450-51 (S.D.N.Y. 2019) ........................... 23

*Frilando v. New York City Transit Authority,* 2020 WL 1940313, *6 (S.D.N.Y. April 22, 2020)
............................................................................................................................................... 21

*Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 537 (1967) .............................................. 13

*Galvelli v. Crown Imports, LLC,* 701 F. Supp.2d 263, 273-74 (E.D.N.Y. 2010) ........................ 15

*Han v. Kuni's Corporation,* 2020 WL 2614726 (S.D.N.Y. May 22, 2020) ................................. 21

*Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n.8 (1984) ........................... 17

*Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) ............................... 22

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) ...................................................... 22

*In re Terrorist Attacks on September 11, 2001,* 714 F.3d 659, 674 (2d Cir. 2013) ................ 6, 16

*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) ......................................... 16, 17

*J. McIntyre Mach, Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011) .................................................. 17

*Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184-85 (2d Cir. 1998) ..................................... 13

*Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir. 1991) ................................................................ 20

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 773-74 (1984) ............................................... 17

*Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d. Cir. 1996) ...................................... 13

*Kossner v. 2d Avenue Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir. 2007) .............................. 25

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.
1991) ..................................................................................................................................... 5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 169 (2d Cir. 2013) ........... 11

*Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327, 340 (2012) ................................................. 11

*MacDermid, Inc. v. Deiter,* 702 F.3d 725, 727 (2d Cir. 2012) .............................................. 5, 16

*Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir. 1993) ................................................. 22

*Mendex v. Pure Foods Mgmt. Grp., Inc.,* 2016 WL 183473, *6 (D. Conn. Jan. 14, 2016) ......... 19

*Mercer v. Rampart Hotel Ventures, LLC,* 2020 WL 882007, *3 (S.D.N.Y. Feb. 24, 2020) .... 7, 16

*Moore v. Publicis Groupe SA,* 2012 WL 6082454, * 9 (S.D.N.Y. Dec. 3, 2012) ................. 12, 14

*Newbro v. Freed,* 337 F. Supp.2d 428, 434 (S.D.N.Y. 2004) .................................................... 18

*Payne v. McGettigan's Management Services LLC,* 2020 WL 2731996 (S.D.N.Y. May 26, 2020) ................................................................................................................. 12, 20, 21
*PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)..................................... 6
*Senecal v. B.G. Lenders Service LLC,* 976 F. Supp.2d 199, 214-15 (N.D.N.Y. 2013) .............. 21
*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC,* 450 F.3d 100, 103 (2d Cir. 2006).......... 7
*SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 342 (2d Cir. 2018)..................................... 5
*The Rockefeller Univ. v. Ligand Pharms.,* 581 F.Supp.2d 461 (S.D.N.Y. 2008) ........................ 6
*Tolliver v. Delmarva Found. For Med. Care,* 2018 WL 3735889, *2-4 (D. Del. Aug. 3, 2018). 18
*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)13, 14
*Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014) ................................................................ 17
*Williams v. Preeminent Protective Servs., Inc.,* 81 F. Supp.3d 265, 271-72 (E.D.N.Y. 2015) ...... 8
*Williams v.; Preeminent Protective Services, Inc.,* 81 F. Supp.3d 265, 272 (E.D.N.Y. 2015)..... 18
*Winner v. Tryko Partners, LLC,* 333 F. Supp.3d 250, 259 (W.D.N.Y. 2018) ........................... 6, 7
*Yousef v. Al Jazeera Media Network*, 2018 WL 1665239, *10 (S.D.N.Y. Mar. 22, 2018).......... 13

## Statutes

42 U.S.C. § 2000e-5(e)(1)................................................................................................ 24
42 U.S.C. §2000e-5(f)(1) ............................................................................................... 20
CPLR § 301....................................................................................................................... 13
CPLR § 302(a)(1) ............................................................................................................. 11
N.Y. CPLR § 214................................................................................................................ 25
N.Y. Exec. Law §§ 290-297 .............................................................................................. 25
N.Y.C. Admin Code § 8-502(d)......................................................................................... 25
New York Labor Law § 215 .............................................................................................. 25
NY CPLR § 302.................................................................................................................. 7

# Table of Contents

Preliminary Statement...................................................................................................... 1

Procedural History ........................................................................................................... 4

Argument ......................................................................................................................... 5

I.    This Court Has Personal Jurisdiction Over MCHC ................................................ 5

    A  This Court Has Specific Jurisdiction Under CPLR § 302................................. 7

    B  This Court Has Jurisdiction Over Moving Defendant Based Upon The Actions It Took Through Its Subsidiary MCHA ........................................................................... 13

    C  Exercise of Specific Personal Jurisdiction Comports With Due Process...................... 16

    D  Factual Allegations Supporting "Joint Employer" Liability May Also Be Asserted To Support a Finding of Personal Jurisdiction .......................................................... 18

II.    Plaintiff Has Properly Plead Joint Employment Against MCHC .................................... 20

III.    Plaintiff Has Adequately Plead Her Claims ................................................................ 22

    A  Plaintiffs' Claims Reasonably Relate to the Administrative Charge ................................ 22

    B  Plaintiff Properly States an Equal Pay Act Claim ........................................................ 23

    C  The Court Has Supplemental Jurisdiction Over Plaintiff's State Law Claims.................. 23

    D  Plaintiff's Failure-to-Promote Claims are Timely .......................................................... 24

CONCLUSION................................................................................................................. 26

Plaintiff Jennifer S. Fischman ("**Plaintiff**," or "**Ms. Fischman**"), by and through her attorneys Valli Kane & Vagnini LLP, submits this memorandum of law in opposition to the Motion of Defendant Mitsubishi Chemical Holdings Corporation, Inc. ("**MCHC**," or "**Moving Defendant**") to Dismiss Plaintiff's First Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 92, the "**Motion**"). For the reasons set forth below, the Motion should be denied in its entirety.

<u>**Preliminary Statement**</u>

In this case, Ms. Fischman, a female attorney, alleges that she suffered gender discrimination while employed by two subsidiaries of international Japanese conglomerate Mitsubishi. She alleges that she was jointly employed by Mitsubishi Chemical Holdings America, Inc. ("**MCHA**"), in Manhattan, New York, and by its parent, Moving Defendant, located in Japan. During her employment, Ms. Fischman was: (i) passed over at least twice for promotions in favor of Defendant Nick Oliva, a less qualified male comparator; (ii) paid less compensation than Mr. Oliva; (iii) demoted, with her job reassigned to Mr. Oliva; and ultimately terminated in retaliation for her investigations into sexual harassment and complaining about gender discrimination.

Now, Moving Defendant seeks to escape accountability by hiding behind its American subsidiary (MCHA) and its own Japanese domicile. It argues that: (1) as a foreign corporation it is beyond the jurisdiction of this Court; (2) it is not Ms. Fischman's employer or joint employer (in contrast to its subsidiary, MCHA); (3) Ms. Fischman's naming of the MCHA subsidiary but not the parent (Moving Defendant) as her employer in her administrative charge of discrimination filed with the United States Equal Opportunity Employment Commission ("**EEOC**") is dispositive of her claims; (4) Ms. Fischman's allegation that she was paid her wages by subsidiary MCHA requires dismissal of Plaintiff's claim under the Equal Pay Act, 29 U.S.C. §§ 206(d) *et seq.* (the "**Equal Pay Act**" or "**EPA**") against Moving Defendant; and (5) Plaintiff's claims for failure to

promote her are time-barred.  *See generally* Defendant's Memorandum of Law In Support of its Motion to Dismiss the First Amended Complaint ("**Def. Mem.**").  These arguments have no merit.

*First*, by employing Ms. Fischman jointly with MCHA in New York, and via its own conduct in connection with employing her, Moving Defendant created the basis for this Court to exercise specific jurisdiction.  Moving Defendant's joint employment of Ms. Fischman constitutes transaction of business within the New York forum.  In the process of transacting that business, Moving Defendant itself took the adverse employment actions that are the subject of the First Amended Complaint (ECF No. 89, the "**FAC**").  Moving Defendant made the decision to hire Ms. Fischman, set her terms and conditions of employment (including her compensation), determined whether to promote her or someone else into the vacant position she aspired to, decided to demote her, and made the decision to retaliate against her for engaging in protected activity by terminating her employment.  This conduct by Moving Defendant, which Plaintiff has confirmed through documents obtained from subsidiary MCHA during discovery, establishes a nexus between Plaintiff's employment discrimination claims and Defendant's transaction of business within the state.  This alone satisfies all applicable personal jurisdictional requirements under New York's long-arm statute, which this federal Court applies due to the Court's presence within the forum state.

Moreover, New York law's jurisdictional requirements are alternatively satisfied because it is undisputed that subsidiary MCHA is subject to New York's jurisdiction, and MCHA operated as a mere department of MCHC, performing the work of a legal department for MCHC's affiliates.  Thus, it is entirely appropriate for this Court to exercise specific jurisdiction over Moving Defendant in connection with its own actions and the actions it orchestrated through its directly controlled, alter-ego subsidiary.

*Second*, the law in the Second Circuit is clear that federal employment discrimination claims may be asserted by a plaintiff against multiple employers where a joint employment relationship exists. Moving Defendant argues that Plaintiff's assertion of a joint employment theory in the FAC contradicts the allegations contained in her original complaint and in her administrative charge of discrimination. To the contrary, a theory of joint employment is entirely consistent with Plaintiff's allegation that she was employed by Moving Defendant's subsidiary MCHA. Indeed, the contention that Plaintiff was employed jointly by both Moving Defendant and its subsidiary logically *requires* Plaintiff to allege employment by the subsidiary.

*Third*, whether Moving Defendant is specifically named in an administrative charge is not dispositive of the issue of whether Plaintiff has satisfied the "exhaustion of remedies" requirements of Title VII of the Civil Rights Act of 1964 ("**Title VII**") and the Equal Pay Act. Under federal law, any claims "reasonably related" to the facts articulated in an administrative charge of discrimination filed with the EEOC satisfy the "exhaustion of remedies" requirements of Title VII and the Equal Pay Act. Moving Defendant fails to address this standard and improperly looks only to the face of the administrative charge and the Right to Sue Notice issued by the EEOC.

*Fourth*, an entity that sets compensation in an unlawful manner under the EPA may not evade liability by funding an intermediary and using it as a transactional middleman to disburse discriminatory wages. Federal law requires courts to apply the "economic realities" test to determine if the intermediary is part of a vertically integrated enterprise and, where it is, liability will attach to a joint employer who satisfies the test.

*Fifth*, Plaintiff's failure to promote claim is not time barred. Moving Defendant argues that Plaintiff's assertion of a *second* failure to promote claim conflicts with the allegation of a single failure-to-promote claim in the original complaint. *See* Def. Mem. at 24. There is no

inconsistency.  The FAC clarifies that there was more than one decision point, and that Ms. Fischman was denied promotion at each point.  In any event, even using the earliest of these dates, Ms. Fischman's federal and state claims are still timely under the applicable statutes of limitations.

### Procedural History

This case was filed on behalf of Ms. Fischman against affiliates of Mitsubishi, an international corporate conglomerate based in Japan.  Prior to filing the Complaint, Plaintiff exhausted her administrative remedies by filing a charge of discrimination with the EEOC on May 1, 2017.  *See* Exhibit A (the "**Charge**," ECF No. 93-1) to the Declaration of Jerome E. Fortinski ("**Fortinski Dec.**"), at 4.  The EEOC issued a Notice of Right to Sue (the "**Right to Sue Letter**," *see* Fortinski Dec. Exh. B., ECF No. 93-2) dated June 14, 2018, which provided Plaintiff with ninety days to file suit, running from Plaintiff's receipt of the Right to Sue Letter.  *Id.* ("Your lawsuit under Title VII, the ADA or GINA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this notice or your right to sue based on this charge will be lost.").  The case was thus timely filed when it commenced on September 7, 2018 (*see* "**Complaint**," ECF No. 1).

The Complaint named two individual and three corporate defendants: (1) Moving Defendant (MCHC); (2) its domestic subsidiary MCHA; and (3) Mitsubishi Chemical Corporation ("**MCC**"), another foreign subsidiary of MCHC.  Moving Defendant and MCC filed their motion to dismiss the Complaint (ECF No. 25), which was granted in part and denied in part (*see* "**Opinion and Order**," ECF No. 35).

Plaintiff amended her complaint with the filing of the FAC, which dropped MCC as a defendant and also dropped certain claims that the Court had dismissed as part of its Opinion and Order.  The FAC asserts gender discrimination claims on behalf of Ms. Fischman under Title VII, the Equal Pay Act, New York State Human Rights Law, N.Y. Exec. Law §296 *et seq.* and the

Administrative Code of the City of New York §8-107 *et seq.* In response to the FAC, Moving Defendant filed the instant Motion seeking dismissal of Plaintiff's claims. Defendants Mitsubishi MCHA, Nicholas Oliva, and Donna Costa have not joined in the Motion and have instead elected to answer (ECF No. 90) the First Amended Complaint.

## Argument

Application of appropriate legal principals compels denial of the Motion. *First*, Plaintiff has made factual allegations constituting a *prima facie* showing of personal jurisdiction over Moving Defendant. *Second,* Plaintiff has plead facts that, if proven at trial, are sufficient to demonstrate that Moving Defendant was her joint employer. *Third*, Plaintiff has properly plead her claims under both federal and state law. For these reasons, the Motion should be denied in its entirety.

## I.     This Court Has Personal Jurisdiction Over MCHC

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of personal jurisdiction through pleadings, affidavits and supporting materials. *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 342 (2d Cir. 2018) (plaintiff "must include an averment of facts that, if credited by the ultimate tried of fact, would suffice to establish jurisdiction over the defendant"); *see also MacDermid, Inc. v. Deiter,* 702 F.3d 725, 727 (2d Cir. 2012); *accord Distefano v. Carozzi N. Am. Inc.,* 286 F.3d 81, 84 (2d Cir. 2001). Allegations are construed in the light most favorable to plaintiff and all factual disputes are resolved in Plaintiff's favor regardless of contravening evidence submitted by Defendant. *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991).

Where, as here, a defendant does not request an evidentiary hearing in connection with its pre-discovery Rule 12(b)(2) motion, it is limited to challenging the *sufficiency* of plaintiff's

allegations, not their veracity.  *Winner v. Tryko Partners, LLC,* 333 F. Supp.3d 250, 259 (W.D.N.Y. 2018) ("Defendant may elect to raise the proper-employer issue again, but – at this stage – Plaintiff's factual allegations must be credited as true, 'notwithstanding any controverting presentation by Defendant, and the Court looks only to the sufficiency of Plaintiff's allegations.'") (citing *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 86 (2d Cir. 2013) and quoting *Marine Midland Bank,* 664 F.2d 899, 904 (2d Cir. 1981)).

Personal jurisdiction may attach under "general jurisdiction," where a defendant has continuous and systematic conduct with the forum such as to render them "at home" within the jurisdiction.  *See generally, Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014).  Alternatively, "specific jurisdiction" may attach when a state exercises personal jurisdiction over a defendant in a suit arising out of or relating to the defendant's contact with the forum.  *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158 (2d Cir. 2010).

In evaluating personal jurisdiction over a nonresident defendant in a lawsuit based upon a federal question, federal district courts apply the personal jurisdiction rules of the forum state.  *See PDK Labs v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997); *see also The Rockefeller Univ. v. Ligand Pharms.,* 581 F.Supp.2d 461 (S.D.N.Y. 2008).  If the Court finds that personal jurisdiction exists under the law of the forum state, it must then determine whether the exercise of personal jurisdiction comports with the requirements of due process.  *See In re Terrorist Attacks on September 11, 2001,* 714 F.3d 659, 674 (2d Cir. 2013).

Here, the Court has specific jurisdiction over Moving Defendant under CPLR 302 and, alternatively, general jurisdiction under CPLR 301.  Under either standard, due process is satisfied.

A     <u>This Court Has Specific Jurisdiction Under CPLR § 302</u>

New York's long arm statute provides that personal jurisdiction may be exercised over a foreign corporation when there is "specific jurisdiction" over that entity. The requirements are codified in New York's CPLR § 302, which provides:

> §302. Personal jurisdiction by acts of non-domiciliaries. (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to a person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce, or 4. owns, uses or possesses any real property situated within the state.

NY CPLR § 302.

Personal jurisdiction is appropriate under CPLR 302(a)(1) [1] when a defendant transacts business in the state and when the plaintiff's cause of action arises from that conduct. CPLR 302(a)(1); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC,* 450 F.3d 100, 103 (2d Cir. 2006). Only one such predicate transaction of business is required because CPLR 302(a)(1) is a "single act" statute. *See Mercer v. Rampart Hotel Ventures, LLC,* 2020 WL 882007, *3 (S.D.N.Y. Feb. 24, 2020). Here, both requirements are satisfied.

i     <u>Moving Defendant has Transacted Business Within New York</u>

The first requirement of "transacting business" is satisfied when a foreign entity forms an employment relationship in New York. *See Winner, supra,* 333 F. Supp. 3d at 259 ("When an

---

[1] CPLR 302(a)(2) and (a)(3) apply only to tortious conduct, and we are not aware of any authority under New York law that categorizes employment discrimination as a tort, although it may, perhaps, constitute a quasi-tort.

out of state employer contemplates and creates an ongoing relationship with a New York employee to further its own business in the state, such proactive efforts may suffice as transacting business within the purview of New York's long-arm statute."); *see also Williams v. Preeminent Protective Servs., Inc.,* 81 F. Supp.3d 265, 271-72 (E.D.N.Y. 2015) (Defendants . . .availed themselves of the forum when they hired plaintiff to conduct their marketing and communications while she lived in Brooklyn, which satisfies the requirements of the state's long-arm statute.").

Here, Moving Defendant has transacted business in New York by hiring employees to work for MCHA including its executive officers, Ms. Fischman, employees who reported to Ms. Fischman, her colleagues, and Ms. Fischman's male comparator, Defendant Oliva. This conclusion that Moving Defendant transacted business in New York is supported by the following allegations set forth in the FAC concerning Moving Defendant MCHC:

1.     MCHC's "Nominating Committee" "approves the selection and dismissal of operating company presidents (excluding listed subsidiaries)." ¶ 96 (quoting MCHC's Corporate Governance Report (the "**CGR**"));[2]

2.     "MCHC's Compensation Committee 'determines the individual amount of compensation for operating presidents (excluding listed subsidiaries).'" ¶ 97 (quoting the CGR);

3.     MCHC maintains complete control over its subsidiaries, including MCHA, and each of their corporate executive officers. ¶ 100 (quoting the CGR);

4.     MCHC decides the execution of duties delegated to the executive officer [of its subsidiaries] ¶ 100 (quoting the CGR);

5.     Executive officers of affiliates manage the subsidiaries to try to achieve the policy goals decided by MCHC's board of directors, and establish a system to report material

---

[2] Citations to "¶" denote citations to the FAC, unless otherwise noted.

management matters at board meetings and to manage the subsidiary's management plan and annual budget. ¶ 100 (quoting the CGR);

6.       MCHC had the ability to hire and fire Ms. Fischman, to supervise and control the conditions of her employment, to determine her rate and method of payment, and to maintain her employment records. ¶ 104;

7.       MCHC benefited from Ms. Fischman's work as an employee, and in the course of her employment, she provided legal and business advice and counsel to MCHC's subsidiaries and affiliates, and MCHC compensated MCHA and its staff in connection with the value of the services provided to the subsidiaries and affiliates. ¶ 105;

8.       Ms. Fischman's performance necessitated and resulted in increased budget allocations by MCHC to MCHA in order to cover the employee compensation paid to Ms. Fischman and her colleagues at MCHA. ¶ 105;

9.       All of the salaries and benefits paid to Ms. Fischman as employment compensation derived from funds that were provided to MCHA from MCHC. ¶ 106;

10.      At all relevant times, the President of MCHA was actually an employee of MCHC, and received compensation directly from MCHC in connection with the performance of executive duties at MCHA. ¶ 106;

11.      At all relevant times, the terms and conditions of Ms. Fischman's employment (her hiring, compensation, promotion, demotion, and termination) were all controlled and approved by executive-level employees of MCHC, including: (1) Ken Fujiwara; (2) Hidefumi Data; (3) Mr. Kosaki (first name unknown); (4) Noriyoshi Oohira; (5) Masanori Sakaguchi; and (6) Shoki Yoshisato. ¶¶ 65, 107;

12.     The key terms of Ms. Fischman's employment were controlled, dictated and approved by MCHC.  ¶ 108;

13.     The decision to hire Ms. Fischman was jointly made by both MCHA and MCHC, with MCHC having final approval over the decision to hire her. ¶ 110;

14.     All decisions concerning the rate of Ms. Fischman's compensation were made jointly by both MCHA and MCHC, with MCHC having final approval over the decision. ¶ 111. All decisions concerning Ms. Fischman's promotions were made jointly by both MCHA and MCHC, with MCHC having final approval over the decisions. ¶ 111;

15.     The decision to terminate Ms. Fischman was made jointly by Ken Fujiwara, an MCHC executive, and Donna Costa, MCHA's then-President, with Mr. Fujiwara having final approval in the matter. ¶ 113; and

16.     All decisions concerning Mr. Oliva's employment, including the decision to hire him and all determinations concerning his compensation and benefits were made jointly by both MCHA and MCHC, with MCHC having final approval over the decisions.  ¶ 114.

Documents obtained from MCHC during discovery substantiate that Moving Defendant made the key decisions concerning Ms. Fischman.[3]

Finally, the facts enumerated above and the discovery obtained to date also demonstrate that Moving Defendant MCHC transacted business in New York as alleged in the FAC (¶ 12) because, at minimum its own executives – including Defendant Costa, who was both President of MCHA and, simultaneously, an executive officer of MCHC (¶ 13) and her successor Shoji Yoshisato (¶ 59) – acted as Moving Defendant's agents to transact business in New York on its

---

[3] *See* Declaration of Matthew L. Berman ("**Berman Dec.**"), submitted herewith, at Exhibit A  (DEF-000004, 186-187, 289-294, 314, 342-43, 346-53) (Emails demonstrating MCHC decisionmaking), Exhibit B (Defendant MCHA's Interrogatory Responses, at Response #2). Exhibit C (MCHA Supplemental Responses, at Response #8).

behalf. These transactions included the hiring of employees (including Ms. Fischman, her subordinates and colleagues, and Mr. Oliva), and also: negotiating real property leases, providing legal advice and counsel; managing litigation; retaining outside attorneys, and vetting and engaging investment bankers and other strategic advisors for Moving Defendant and its affiliates. *See* Berman Dec., Exhibit D-E (Plaintiff's annual performance evaluations for 2014 and 2015, showing that all of these functions were assigned to Ms. Fischman by Defendant Costa during her employment); Berman Dec. Exhibits F-G (emails reflecting negotiation with Lazard and Rothchild investment banking firms).

Accordingly, Ms. Fischman has more than met her burden of making a *prima facie* showing that Moving Defendant has transacted business within New York.

ii  Plaintiff's Claims "Arise from" Moving Defendant's Transaction of Business

The second requirement of CPLR 302(a)(1) is met where a plaintiff's causes of action "arise from" a defendant's transaction of business in New York. "CPLR 302(a)(1) does not require that every element of the cause of action . . . be related to New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 169 (2d Cir. 2013) "In effect, the 'arise from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction." *Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327, 340 (2012) (quoting *Johnson v. Ward,* 4 N.Y.3d 516, 520 (2005)).

Here, Ms. Fischman's causes of action arise out of Moving Defendant's business transactions described above, including the employment relationship with Moving Defendant and the adverse employment actions that it took during that relationship, as well as the work Ms. Fischman performed in aid of the transactions of Moving Defendant and its affiliates, identified

in section I(A)(i), above. As set forth there, and in Section II, below, Ms. Fischman alleges that in order to perform the work necessary for Moving Defendant and its affiliates to consummate their business transactions, it and its MCHA subsidiary jointly hired Ms. Fischman, failed to promote her multiple times, demoted her, and ultimately terminated her in retaliation for her engaging in protected activity during her joint employment by MCHA and Moving Defendant. This, in conjunction with the presence and activity of MCHC's executives to manage the affairs of MCHA on behalf of Moving Defendant (*see generally,* ¶¶ 95 – 114), is sufficient to support Ms. Fischman's contention that her causes of action "arise from" Moving Defendant's transaction of business within this forum. Indeed, this case is on all fours with *Moore v. Publicis Groupe SA,* 2012 WL 6082454, * 9 (S.D.N.Y. Dec. 3, 2012), where the trial court found specific jurisdiction over the foreign domiciled indirect parent based upon its transacting of business in New York, where the parent set salaries, approved hiring and compensation decisions, maintained oversight over personnel, required reporting of costs and changes in recruits and departures, controlled the budget for subsidiary, and where its employees traveled to New York for business purposes on limited occasions. All of those factors are present in the instant case. *See also Payne v. McGettigan's Management Services LLC,* 2020 WL 2731996 (S.D.N.Y. May 26, 2020) (holding that cause of action for sexual harassment of plaintiff by bar's patrons arose from defendant's transaction of business in New York by employing plaintiff where defendant routinely visited and managed the bar).

In *Payne*, the plaintiff filed suit against a Company that managed a chain of eponymous pubs, and its individual owner, Dennis McGettigan. The individual defendant moved to dismiss the case for lack of personal jurisdiction and based upon the affirmative defense of failure to exhaust administrative remedies, because the charge of discrimination that the plaintiff filed with

the EEOC, through her counsel, did not name the individual owner as a defendant. The Court first found that Plaintiff had made the required *prima facie* showing of personal jurisdiction by alleging that the owner routinely visited and managed the location where the plaintiff worked, which constituted the transaction of business within New York State, satisfying its long-arm statute, N.Y. C.P.L.R. §302(a). Similarly, the Court found an "articulable nexus" between the Owner's New York business activities in managing the establishment and Plaintiff's employment discrimination claims, where she alleged that she was being harassed by customers, she complained to the manager, and the manager responded that he would be fired by the owner if he tried to take corrective action. Finally, the Court allowed the case to proceed against the originally unnamed defendant, as discussed in Section II, below.

B      This Court Has Jurisdiction Over Moving Defendant Based Upon The Actions It Took Through Its Subsidiary MCHA

In addition to the specific jurisdiction provided by CPLR § 302, above, New York CPLR § 301 provides Courts with general jurisdiction over foreign entities whose subsidiaries act as their "agents" or as their "mere departments." *See Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184-85 (2d Cir. 1998); *see also Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d. Cir. 1996); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) ("*Beech*"). Here, Ms. Fischman has made a *prima facie* showing that MCHA is both an "agent" and a "mere department" of Moving Defendant.

A plaintiff satisfies the "agent" requirement when it shows that the foreign entity's subsidiary "Does all the business which [the parent corporation] could do were it here by its own officials." *Jazini, super, quoting Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537 (1967). Agency is established where the services provided by the subsidiary to the foreign parent are essential, "such that the corporation itself would perform equivalent services if no agent were

available." *Yousef v. Al Jazeera Media Network*, 2018 WL 1665239, *10 (S.D.N.Y. Mar. 22, 2018) (internal quotes omitted).

Here, the business transactions that Moving Defendant engaged in, described in section I(a)(ii), above, satisfy these standards. They were conducted under the auspices of Defendant Costa, who was both President of MCHA and a direct employee of Moving Defendant. ¶ 13. Ms. Costa supervised the work of the attorney group housed at MCHA's Manhattan offices, including Ms. Fischman, Defendant Oliva, and their subordinates. ¶ 24.

Additionally, general jurisdiction over Moving Defendant is warranted because MCHA was its "mere department" under CPLR §301. To determine whether a subsidiary is a "mere department," Courts look to a four-part test identified in *Beech*, supra. A court considers: (1) common ownership; (2) financial dependency of the subsidiary on the parent corporation; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of control over the marketing and operational policies exercised by the parent. *See Beech, supra*, 751 F.2d 117, 120-22 (2d Cir 1994); *accord Jaznini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 184-85 (2d Cir. 1998) (applying *Beech* factors). The first factor is considered "essential" for an assertion of jurisdiction, while the three others are important, but not essential. *Moore,* supra, * 5 (quoting *Tese-Milner v. De Beers Centenary A.G.,* 613 F. Supp.2d 404, 416 (S.D.N.Y. 2009)).

Here, Ms. Fischman's allegations satisfy all four of the *Beech* factors. First, MCHA is a 100% owned, direct subsidiary of Moving Defendant MCHC (¶¶ 25, 101), satisfying the common ownership requirement. *See Moore, supra,* *5-6 (S.D.N.Y. Dec. 3, 2012) (100% owned independent subsidiary satisfied the *Beech* common ownership criteria). Second, subsidiary MCHA has complete financial dependency on its parent, Moving Defendant (¶¶ 102, 103, 105,

106, 134). Thus the second *Beech* factor is satisfied, because "[W]hen reviewing the financial dependency factor,] courts also inquire whether the subsidiary retains its own profits or whether they are received and reported on the financial statements of the parent." *ESI,Inc. v. Coastal Corp.,* 61 F. Supp.2d. 35, 51 (S.D.N.Y. 1999) (citing *Koehler, supra*, 101 F.3d at 865). Here, subsidiary MCHA would be unable to function without the financial support of Moving Defendant, satisfying the inquiry. *See Gallelli v. Crown Imports, LLC,* 701 F. Supp.2d 263, 273-74 (E.D.N.Y. 2010) citing *Reers v. Deutsche Bahn AG,* 320 F. Supp.2d 140, 156 (S.D.N.Y. 2004). Third, Moving Defendant satisfies *Beech's* interference criteria because it places its own corporate officers and directors into the President title at MCHA, which is the most senior executive position within the subsidiary, and makes other key selection decisions, including the adverse employment actions it took concerning Ms. Fischman (¶¶ 12, 17, 26, 49, 70-72, 84, 87, 98, 100-114; *see also* Berman Dec. Exhibit H (MCHA's Organizational Chart, Bates Stamped Def-000866). Fourth, Moving Defendant sets the operational policies for subsidiary MCHA (¶ 100).

Notably, MCHA does not conduct any of its own business, it simply operates as MCHC's administrative support department, performing the tax, internal audit, legal & compliance, finance & accounting and I.T. functions. This is apparent from the face of its Organizational Chart *See* Berman Dec., Exh. F. The Organization Chart demonstrates that subsidiary MCHA was entirely dependent upon, subservient to, and controlled by Moving Defendant, and supports the allegations in the complaint that Moving Defendant provided MCHA with all of its operating revenue, directed its operations, dictated its policies and procedures, and governed it through an interlocking "captive" board comprised of Moving Defendants' own Japan-domiciled directors and officers, including one who served the dual role of subsidiary MCHA's highest ranking

executive.  *See generally*, FAC ¶¶ 95-114.  The Chart is even emblazoned with: (i) the logo "Mitsubishi Chemical Holdings Group," which is a pseudonym that Moving Defendant uses for itself while conducting business and (ii) Moving Defendant's "KAITEKI Value for Tomorrow" slogan.[4]  These factors compel a finding of jurisdiction over Moving Defendant.  *See Cassese v. Washington Mut. Inc.,* 262 F.R.D. 179, 185 (E.D.N.Y. 2009) (finding that subsidiary was a "mere department" where parent exercised control over the subsidiary with respect to lending and servicing activities, the companies shared common management who controlled the day to day operations of the subsidiary, and the parent's financial statements include earnings derived from the activities of the subsidiary).[5]

Accordingly, because MCHA acted as Moving Defendant's agent and "mere department," general jurisdiction is warranted here under CPLR § 301.

C  <u>Exercise of Specific Personal Jurisdiction Comports With Due Process</u>

"Once a *prima facie* showing of a state-law statutory basis for jurisdiction has been made, the plaintiff must then 'demonstrate that the exercise of jurisdiction comports with due process.'" *Mercer, supra,* at *3 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.,* 883 F.3d 68, 81-82 (2d Cir. 2018).  Courts may exercise jurisdiction over the nonresident if it meets a two-part test: (1) there must be minimum contacts between the nonresident defendant and the forum state and (2) reasonableness under the circumstances.  *See In re Terrorist Attacks on September 11, 2001,* 714 F.3d 659, 674 (2d Cir. 2013); *accord MacDermid, Inc v. Deiter,* 702 F.3d 725, 730 (2d Cir. 2012).  "The contacts must be such that 'maintenance of the suit does not offend traditional notions

---

[4] *See* https://www.mitsubishichem-hd.co.jp/english/, and https://www.mitsubishichem-hd.co.jp/english/kaiteki_management/ (accessed May 31, 2020).
[5] MCHC's reliance (Def. Mem. at 12) on *Palmieri v. Estefan,* 793 F. Supp. 1182 (S.D.N.Y. 1992) is misplaced.  That case predated *Daimler's* restatement of the law, and the corporate parent there had only "significant" control over its subsidiary, unlike the complete control alleged here.  *Id*. at 1190; ¶95.  Moreover, the *Palmieri* court found jurisdiction under the "agency" prong of CPLR 301, denying the parent's motion to dismiss.  793 F. Supp. 1194.

of fair play and substantial justice.'" *Id., quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction is reasonable where a defendant purposely avails itself of the privilege of conducting activities within the state, invoking its benefits and protections. *MacDermid, supra,* at 730. "Physical presence in the forum state, however, is not required." *Id.* at 730.

In assessing whether the "minimum contacts" test is satisfied, the Supreme Court has distinguished conceptually between exercising jurisdiction over the nonresident for all purposes ("general jurisdiction") and the exercise of jurisdiction for limited purposes ("specific jurisdiction"). For determining whether the minimum contacts test is satisfied for purposes of specific jurisdiction, the proper question is whether the defendant's conduct connects him to the forum in a meaningful way. *See, e.g., Calder v. Jones*, 465 U.S. 783, 788-91 (1984) (California Court had jurisdiction over Florida defendant who wrote libelous article widely circulated in the state); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984) (same); *J. McIntyre Mach, Ltd. v. Nicastro,* 564 U.S. 873, 880 (2011) (finding jurisdiction over intentional tortfeasor who fell within State's authority by reason of attempt to obstruct its laws). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014) (internal quotation marks omitted).

Where a non-resident defendant's contacts with the forum give rise to, or are related to, the plaintiffs causes of action (an act or occurrence taking place in the forum or with an impact there), the exercise of specific jurisdiction may be appropriate. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n.8 (1984) ("It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the

forum, the State is exercising 'specific jurisdiction' over the defendant.") (internal citation omitted); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945) ("Presence in the state . . . has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on . . .") (internal quotation marks omitted).

Here, as set forth in Section I(A)(i), Moving Defendant has transacted business within the state, availing itself of the state's benefits and protections including by hiring employees in New York and by entering into contracts in New York (*see* Berman Dec., Exhibit E (Plaintiff's annual performance evaluations)), and thus the exercise of jurisdiction is reasonable. *See Williams v.; Preeminent Protective Services, Inc.,* 81 F. Supp.3d 265, 272 (E.D.N.Y. 2015) (traditional notions of fair play and substantial justice were not offended by exercising jurisdiction in New York over Maryland employer and Defendants "'availed' themselves of the forum when they hired plaintiff to conduct their marketing and communications while she lived in Brooklyn"). "Ordinarily . . . if jurisdiction is proper under the C.P.L.R., due process will be satisfied because C.P.L.R. § 302 does not reach as far as the constitution permits." *Newbro v. Freed,* 337 F. Supp.2d 428, 434 (S.D.N.Y. 2004) (quoting *Topps Co. v. Gerrit J. Verburg Co.,* 961 F. Supp. 88, 90 (S.D.N.Y. 1997)("At bottom, the limitations on exertion of personal jurisdiction, as reflected in Section 302(a)(I)'s requirement of purposeful activity, exist to satisfy constitutional requirements of due process.")).

D      Factual Allegations Supporting "Joint Employer" Liability May Also Be <u>Asserted To Support a Finding of Personal Jurisdiction</u>

Moving Defendant incorrectly contends that "joint employer" allegations do not establish specific jurisdiction. *See* Def. Mem. at 9. This argument is a "red herring" because the two cases they cite were decided on the basis of *general* jurisdiction. In *Tolliver v. Delmarva Found. For Med. Care,* 2018 WL 3735889, *2-4 (D. Del. Aug. 3, 2018), the court explained that in *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) "The Supreme Court rejected the notion that

'continuous and systematic' contacts alone could confer general jurisdiction and clarified that the role of general jurisdiction is to 'afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." The *Tolliver* court stated "There is no **general** jurisdiction based upon Plaintiff's allegations of a joint employer." *Id*. at *3 (emphasis added). It also stated "Nor is there general jurisdiction based upon the allegations that Quality Health Strategies is the parent company and/or alter ego of Delmarva Foundation for Medical Care. The parent-subsidiary relationship itself is not sufficient to establish in personam jurisdiction over the parent entity." *Id*. at *4. In analyzing whether there was a basis for *specific* jurisdiction, the *Tollivar* Court did not reach the issue of whether joint employment sufficed to satisfy Delaware's long-arm statute. The *pro se* plaintiff in the case made no specific allegations supporting her bald legal conclusion of joint employment to contradict defendant's argument that it did not employ or terminate her, submitting only a Professional Services Agreement that the defendant was not a party to or mentioned in. *Id*. at 4.

Similarly, in *Mendex v. Pure Foods Mgmt. Grp., Inc.,* 2016 WL 183473, *6 (D. Conn. Jan. 14, 2016), the court explained the distinctions between a "single integrated enterprise" (or "single employer") and "joint employer theory," pointing to *Clinton's Ditch Co-op Co. v. N.L.R.B.,* 778 F.2d 132, 137 (2d Cir. 1985). The *Mendex* court explained that despite using terms interchangeably in pleadings and arguments, the plaintiff actually was asserting the single employer theory and <u>not</u> a joint employer theory. *Mendex* at *2.

Moving Defendant does not point to any other controlling authority (and we have not located any) supporting its contention that facts sufficient to support liability under a "joint employer" theory of liability may not also be used to demonstrate that a defendant has transacted business within this forum. Therefore, the Court may find that by adequately alleging facts

supporting joint employer liability, Ms. Fischman has also plead facts demonstrating that Moving Defendant has transacted business under CPLR § 302(a)(1).

## II.    Plaintiff Has Properly Plead Joint Employment Against MCHC

Moving Defendant's Motion contends that: (i) Ms. Fischman has not adequately plead that Moving Defendant MCHC was her joint employer because her charge and Unemployment Insurance Appeal Board ("UIAB") filings name subsidiary MCHA as her employer; (ii) the FAC's joint employment allegations should be rejected as contradicting the original complaint; and (iii) that the FAC fails to allege the "control" required to hold Moving Defendant liable as a joint employer.  These arguments lack merit.

First, an overly narrow reading of the charge and UAIB documents is not dispositive of the joint employment issue.  *See, e.g., Payne v. McGettigan's Management Services LLC,* 2020 WL 2731996 (S.D.N.Y. May 26, 2020) (allowing suit to proceed against employer not named in EEOC charge), discussed below.  In *Payne,* after finding personal jurisdiction, the Court turned to the question of whether plaintiff exhausted her administrative remedies, considering 42 U.S.C. §2000e-5(f)(1) (providing that after administrative exhaustion a "a civil action may be brought against the respondent named in the charge") and *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir. 1991), both of which Defendants cite.  *See* Def. Mem. at 22.  The Court found that plaintiff's failure to name the individual owner as a defendant in the charge did not merit dismissal of her Title VII claims because of an "identity of interest" between the unnamed defendant and the party named in the charge.  *Id*. at *3.  The Court looked to four factors: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the filing of the charge; (2) whether the interests of a named party are so similar as to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be necessary to

include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Id.* The Court stated that "In evaluating the second factor, a key consideration is whether the unnamed party exercised control over the labor relations of the entity named in the EEOC charge. *See Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241-42 (2d Cir. 1995) (finding that where unnamed entity approved all personnel decisions at named entity, the two entities had "identical interests with respect to conciliation and compliance"). "No single factor is dispositive; courts weigh the factors holistically." *Id. See also Frilando v. New York City Transit Authority,* 2020 WL 1940313, *6 (S.D.N.Y. April 22, 2020) (denying motion for summary judgment and allowing Plaintiff to sue additional defendants Manhattan and Bronx Surface Transit Operating Authority under "Identity of Interest" doctrine where his EEOC charge named only the New York City MTA); *accord Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, *9 (S.D.N.Y. Mar. 3, 2020) (allowing Plaintiff to sue defendant not named in charge). *Compare Han v. Kuni's Corporation*, 2020 WL 2614726 (S.D.N.Y. May 22, 2020) (Dismissing Title VII claims where Plaintiff was represented by counsel while filing charge and <u>none</u> of the *Palma* factors applied).

The instant case is on all fours with *Payne.* Defendants contend that Ms. Fischman cannot assert Identity of Interest because she was represented by "experienced counsel" in filing her charge. Def. Mem. at 22. But this is not dispositive of the issue; there are cases that cut both ways concerning parties who were represented by counsel, and the Second Circuit has not explicitly addressed the issue. *See Senecal v. B.G. Lenders Service LLC,* 976 F. Supp.2d 199, 214-15 (N.D.N.Y. 2013)(collecting cases and finding a "categorical bar" inappropriate). Here, the second,

third and fourth factors counsel in favor of "identity of interest," especially where Moving Defendant represents, even to this day, that Ms. Fischman was employed only by its subsidiary. *See generally* Def. Mem.

Second, the FAC does not "contradict" the original complaint, which named MCHA as Ms. Fischman's employer, it just adds new information supporting a different legal theory of liability by alleging facts supporting the contention that, in addition to MCHA, Moving Defendant was *also* her employer. ¶¶ 94 -114.

Third, contrary to Moving Defendant's assertion, Plaintiff has adequately plead that Moving Defendant exercised such control over its subsidiary MCHA that it may be held liable as her joint employer (¶¶95 – 114), including that Moving Defendant itself made the key decisions at issue in this case concerning Ms. Fischman's compensation, promotion, demotion, and ultimate termination, as set forth in Sections I(A) and I(B), above.

### III.     Plaintiff Has Adequately Plead Her Claims

A     Plaintiffs' Claims Reasonably Relate to the Administrative Charge

Moving Defendant argues that Plaintiff's Title VII claims must be dismissed because her EEOC charge and Right to Sue Notice did not name Moving Defendant as a respondent.  This argument fails for the reasons set forth in Section II above, and also because plaintiffs may raise claims not included in the original charge where they are "reasonably related" to the allegations in the charge.  *See Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001)*; Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208 (2d Cir. 1993); *Bridges v. Eastman Kodak Co.,* 822 F. Supp. 1020, 1026 (S.D.N.Y.1993) ("[T]he factual allegations in the EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of action is reasonably related to the plaintiff's EEOC charge.").

Here, Plaintiff's claims are reasonably related to her timely filed Charge because Plaintiff's Charge provided the EEOC with sufficient notice to investigate its material allegations, which included:

> I was discriminated against, passed up for a promotion that I was highly qualified for, and was ultimately terminated in January 2017 from my employment with Mitsubishi for the discriminatory reasons set forth below.
>
> \* \* \*
>
> It soon become [sic] clear to me that I was only 'acting' as General Counsel until the Company could hire a suitable male replacement, despite my experience and qualifications, because the Company values male leadership and could not tolerate the notion of having more than one woman (Ms. Costa and myself) in executive positions.
>
> \* \* \*
>
> Furthermore, I was retaliated against for my involvement in managing two separate investigations regarding complaints of sexual harassment.
>
> \* \* \*
>
> I know, as a matter of fact and law, the Company fabricated the grounds for my dismissal and why I know I was discriminated against, passed up for promotion and ultimately terminated based on my gender.

Charge, at 2-3.

B      <u>Plaintiff Properly States an Equal Pay Act Claim</u>

An entity that sets compensation in an unlawful manner under the Equal Pay Act may not evade liability by funding an intermediary and using it as a transactional middleman to disburse discriminatory wages. Federal law requires courts to apply the "economic realities" test to determine if the intermediary is part of a vertically integrated enterprise and, where it is, liability will attach to a joint employer who satisfies the test. *See Fernandez v. HR Parking Inc.,* 407 F. Supp.3d 445, 450-51 (S.D.N.Y. 2019). New York state law uses a nearly identical test. *Id*. at 452.

C      <u>The Court Has Supplemental Jurisdiction Over Plaintiff's State Law Claims</u>

Because Ms. Fischman has properly plead federal claims against Moving Defendant that should survive dismissal, the Court should exercise supplemental jurisdiction over her remaining causes of action. *See Allard v. Arthur Andersen & Co.*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997).

<u>Plaintiff's Failure-to-Promote Claims are Timely</u>

Defendants argue that Ms. Fischman's failure to promote claims are time-barred (*see* Def. Mem. at 24-25). Defendants are only partially correct, concerning Ms. Fischman's Second Cause of Action, but it should still survive based upon the timeliness of the other adverse employment actions included therein.

Ms. Fischman's failure to promote allegations are included within her claims for disparate treatment under Title VII (¶¶ 123-127,) ("Second Cause of Action," concerning her termination, disparate working conditions and compensation compared to Mr. Oliva); the New York State Human Rights Law ("NYSHRL") (¶¶ 140-144) ("Fourth Cause of Action," for passing Ms. Fischman up for promotion and demoting her in order to promote Mr. Oliva), and the New York City Human Rights Law ("NYCRL") (¶¶ 145-149) ("Fifth Cause of Action," for disparate treatment based on gender, including failing to promote Ms. Fischman).

The timeliness of a plaintiff's Title VII claims is measured from the date of filing of the administrative charge, not the date on which the Complaint is filed. In Title VII cases filed in New York, a charge of employment discrimination must be filed within 300 days of the last alleged unlawful practice because they are automatically cross-filed with a state or local agency with authority to act on them. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Cameron v. New York City Dept. of Education,* 2018 WL 1027710, *11 (S.D.N.Y. Feb. 21, 2018) ("Multiple courts have noted that there exists a work-sharing agreement between the EEOC and the New York State Division of Human Rights, under which discriminatory practice claims filed with the EEOC are automatically cross-filed with the New York State Division of Human Rights")(citing cases). Generally, Title VII's statute of limitations bars claims based on events occurring more than 300 days before filing a charge of discrimination in New York. *Anderson v. City of New York, Health and Hospital Corporation,* 2017 WL 9538862, *19 (S.D.N.Y. Jan. 19, 2017). Ms. Fischman was terminated

January 30, 2017 (¶84), filed her Charge on May 1, 2017, and filed suit on September 7, 2018, within 90 days of receiving her Right to Sue Notice dated June 14, 2018, so her claim is timely.

Ms. Fischman's NYSHRL and NYCHRL claims are timely because they are subject to a three year statute of limitations.[6] Moving Defendant failed to promote her on December 1, 2015 (¶ 63) and she filed suit on September 7, 2018. MCHC claims that the failure-to-promote actually transpired earlier in April 2015, and that the December 1, 2015 date conflicts with the allegations in Ms. Fischman's original complaint. Def. Mem. at 25. But the FAC alleges that Defendant Costa and MCHC's executive Masanori Sakaguchi planned "to place Ms. Fischman in the General Counsel and Chief Compliance Officer role on a provisional basis and, at the end of a twelve (12) month period, evaluate whether to let her continue that role or to recruit an external candidate for the position." ¶ 49. She was told initially that it was "unlikely" she would ever be promoted. ¶ 56. Nevertheless, Ms. Fischman continued to request that she be promoted, and her requests were continually denied, up through December 1, 2015. ¶ 52. The re-evaluation constitutes a second decision not to promote her. Ms. Fischman's allegations are consistent with her account of events in the first complaint, and are plausible because they are substantiated in an email from MCHA's human resources director, Pat Saunders, reflecting that the events took place as Ms. Fischman now alleges (*see* Berman Decl, Exh. A). Moreover, Ms. Fischman's NYCHRL claims were also tolled from the time she filed her charge to the date when the EEOC issued the Right to Sue notice. *See Cameron, supra,* at *11. Accordingly, Ms. Fischman's failure to promote claims are timely.

---

[6] Moving Defendant is incorrect in its contention that the statute of limitations for discrimination claims under New York law is two years. *See* Def. Mem., at 25. N. 21. Ms. Fischman's NYSHRL claims arise under N.Y. Exec. Law §§ 290-297, not New York Labor Law § 215. Both her NYSHRL and NYCHRL claims are subject to a three year limitations period. *See Kossner v. 2d Avenue Delicatessen Inc.,* 496 F.3d 229, 238 (2d Cir. 2007); N.Y. CPLR § 214; N.Y.C. Admin Code § 8-502(d).

## <u>CONCLUSION</u>

For the reasons set forth herein, the Motion should be denied in its entirety.


Dated: Garden City, New York
June 1, 2020

Respectfully Submitted,

**VALLI KANE & VAGNINI LLP**

By: <u>/s/ *Matthew L. Berman*</u>

Sara Wyn Kane
skane@vkvlawyers.com

Robert J. Valli, Jr.
rvalli@vkvlawyers.com

Matthew L. Berman
mberman@vkvlawyers.com

600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2020 a true and correct copy of Plaintiffs' Memorandum of Law in Opposition to Moving Defendant's Motion to Dismiss and all documents filed in support thereof via electronic email on all counsel of record.

Date:   June 1, 2020

*/s/ Matthew L. Berman*
Matthew L. Berman, Esq.