US.  We agreed to set a meeting among MTG, TNSC, MCHC and MCHA some time in January or February to discuss this matter.  I know that you already met and established a good relationship with Steve, but as a matter of formality, we need to have such a meeting to determine how to design our governance over TNSC affiliates in the world with a presence of the parents of both parties, especially with respect to the possible fees payable by TNSC to the OAHs.

I will let you know as soon as we got the proposal from TNSC about the possible dates for the meeting to schedule.

Best wishes for the holiday season,  Ken

> Donna USA0007 Costa---2014/12/10 09:45:56---Dear Ken: I hope you're well.

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC
日付: 2014/12/10 09:45
件名: MCHA GC

Dear Ken:

I hope you're well.

We had an all-day Legal Department Summit today that went quite well. We did some teamwork exercises, in addition to discussions of professional ethics, corporate governance and others. Then we drank Margaritas and Mojitos!

I received the message from Yoshisato-san that MCHA wants us to make Jennifer Acting-General Counsel for 12 months in the hope that she will grow into the job. I am working on a plan to communicate to her, which I will discuss with Yoshisato-san and later present to Jennifer.

In the mean time, please send me MCHC's proposal regarding my contract. Also please send me any other information that you consider relevant to the CEO transition.

Thanks as always for your support.

Regards,
Donna

Sent with Good (www.good.com)

From: Donna USA0007 Costa/USAP/USA
To: patricia_saunders@m-chem.com
Date: 08/07/2015 04:42 PM
Subject: Confidential - General Counsel

Pat,

Do you mind reviewing my email to Ken? I do not need your feedback this week.

Donna


Dear Ken:

I am writing to provide you with a status report on Jennifer and to explain why I would like to replace her as General Counsel.

When I learned last fall that I was going to be promoted, Yoshisato-san, Pat Saunders and I discussed my successor. As you know, we decided that the best course was to hire someone from outside. Although Jennifer is smart, the breadth and depth of her legal expertise were limited, she had no management experience, and she often behaved in a way that was incompatible with the position. (I had received many complaints about her style and attitude that impacted both her credibility and effectiveness.) Nevertheless, after discussions regarding the cost of hiring a General Counsel, MCHC directed MCHA to promote Jennifer, and I was asked to do my best to make it work. What I understood was that you felt that I could compensate for Jennifer's lack of experience and professionalism. I agreed to your request, with the hope that I could teach her, train her and coach her to grow into the role, and that I could fill any gaps in terms of both legal work and management. As you know, I am always up for a good challenge.

We promoted Jennifer to Acting General Counsel due to our uncertainty that she would succeed as General Counsel. We explained to her that she would be Acting for 12 months, and that we hoped that she would be made General Counsel at the end of that period. I told her that her success was my success and that I was committed to making it work. She asked for a contract, and I declined. She argued repeatedly in favor of being given the General Counsel title (in fact she made this argument to me again just last week); I repeatedly refused.

Although I was concerned about MCHC's decision, Jennifer is a good lawyer and had previously shown the capacity and willingness to grow, so I was cautiously optimistic. You wanted me to 'make it work,' so I set out to do everything I could to do so. I made her development and success a priority: I devoted the majority of my time in January and February to her training. I continued the transition through March. After April 1, I continued to coach her on working with members of the department and with clients in the US and Japan. I knew from my experience with her, and from statements she made to me directly, that she had a lot of insecurity and needed positive reinforcement to develop the confidence needed to do her job effectively. Therefore, for three months I provided only positive feedback and limited my involvement in Legal Department matters, giving her space to find her way in her new role, build relationships without my shadow, and develop her own approach to being General Counsel.

In some ways, things have improved. Other members of the Legal Department are getting along better with her and business people have said she is less arrogant, listens more, and is not as rude. Nevertheless, the fundamental matters that caused us concern are still there. She thinks she knows everything, even when she does not, which causes her to give advice and take action too quickly. She seems intent on not seeking input, because she doesn't want to appear

unknowledgeable or weak. If I do not schedule meetings with her or walk into her office, we could go weeks without interaction. She generally sees no need to consult with me, which gives me little opportunity to train her or coach her. When I do schedule meetings to discuss work or provide coaching, our discussions are often strained. She told me she is extremely nervous whenever she speaks with me because she is afraid of doing or saying something wrong, or being told she has disappointed me. She is like a child - she is insecure, but appears overly confidant to the point of arrogance; she gets teary-eyed nearly every time we talk; she tells me she doesn't understand me and then dismisses things I say with "well you and I just see things differently"; she is competitive rather than collaborative. All of these qualities, while easy to write-off as simple immaturity, make it difficult for me to teach her or coach her. They also make her less effective as a professional. She is so concerned with her image that she is at risk of missing things and making mistakes.

It has now been over eight months since she was told of her promotion, and more than seven months since it was announced. I have no reason to believe that the barriers to her success will disappear. In fact, my experience with her last week confirms that they will not. Since the Brazil deal came in she has been extremely busy and I was worried about her. I went to her office to suggest that she take some time to step back to make sure she is taking care of herself and her work. I suggested that perhaps there are things she is working on that could be delayed or delegated to give her more time for important matters like Brazil. Before long she was yelling at me, telling me she was not under stress and that her only cause of stress was me. She said she was doing a fine job of juggling everything and didn't need help or time to think about it. I pointed out that she was not giving the Brazil deal the attention it required and she told me it was because I was involved and was causing confusion. She came to me later and suggested that I manage Jordon and do the deal without her. She made it clear that she does not feel she can work with me on a project as a teammate or business partner, much less a supervisor. She is so competitive, so determined to prove that she doesn't need my help, that I am not able to support her development.

In sum, I am afraid we have reached our limit. Her style results in a lack of trust, which is unacceptable for someone in her role. Personally, I am growing exhausted from our discussions, which often leave me drained and frustrated. I need someone I can be honest with, rely on and depend on, without being worried that she will fall apart. I also need to be confidant that members of MCHA and our affiliates feel comfortable speaking to her and seeking her advice. The current situation is not healthy or productive, and it is not sustainable.

How would you like me to proceed? I have begun discussions on this with Pat Saunders and I am seeking the input of Dennis Trice as well. Would you like me to send you a proposal for when and how I would replace her?

Regards,
Donna

Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.

| | |
|---|---|
| **From:** | Donna_Costa@m-chem.com |
| **Sent:** | Tuesday, September 1, 2015 7:27 AM |
| **To:** | fujiwara ken |
| **Subject:** | FYEO |

Ken

I feel your anger/disappointment/surprise from half-way around the world, though I do not think it can compare with mine.

I would like your thoughts on the following: would you truly prefer to keep Jennifer as GC knowing all the people who are miserable as a result, or would you prefer to have Nick Oliva as GC (or someone like him)? Nick took me for a belated birthday dinner and to thank him for a favor I did for him a few months ago -- he is not happy in his current job....

Donna


Sent with Good (www.good.com)

CONFIDENTIAL					DEF-000289

| From: | fujiwara ken <Fujiwara.Ken@mp.mitsubishichem-hd.co.jp> |
|---|---|
| Sent: | Tuesday, September 1, 2015 9:27 PM |
| To: | Donna_Costa@m-chem.com |
| Subject: | Re: FYEO |

Donna,

In principle, I am simply waiting for Sept. 23 call in order to deepen our understanding and clarification to the situation, while the situation is getting worse, but still I need to hear from you. Although we may even want to listen to Jennifer's version of the story, we will just trust your explanation through the conversation over the phone. For instance, we do not clearly understand such an immediate need to hire outside counsel for WHAT ? type of questions and wish to discuss with you.

Of course I am surprised because, as I wrote previously, the recent situation sounds a bit sudden, as we had heard from you the news only two weeks ago and are not in the position to judge things.

About Nick, I like him a lot more than Jennifer. To be frank, Jennifer has been sometimes difficult for us, while, based on my experience, Nick had tried to understand our culture and to be nice with people from Japan. If he is interested in coming back to us, I know many people, including me, welcome him. Actually, when he had a chance to come to Japan for a business trip, he always try to contact Uemura-san from blood company to set a reunion.

Regards, Ken

▼Donna USA0007 Costa---2015/09/01 20:26:32---Ken I feel your anger/disappointment/surprise from half-way around the world, though I do not think

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC
日付: 2015/09/01 20:26
件名: FYEO

CONFIDENTIAL

DEF-000290

Ken

I feel your anger/disappointment/surprise from half-way around the world, though I do not think it can compare with mine.

I would like your thoughts on the following: would you truly prefer to keep Jennifer as GC knowing all the people who are miserable as a result, or would you prefer to have Nick Oliva as GC (or someone like him)? Nick took me for a belated birthday dinner and to thank him for a favor I did for him a few months ago -- he is not happy in his current job....

Donna


Sent with Good (www.good.com)

| From: | Donna_Costa@m-chem.com |
|---|---|
| Sent: | Tuesday, September 1, 2015 11:53 PM |
| To: | fujiwara ken |
| Subject: | Re: FYEO |

Dear Ken:

We scheduled the call for September 23 because I had wanted to give Jennifer more time to improve, but between the complaint by Kelli, the MCPP litigation, and some other things I have learned in the last two weeks, I no longer think there is any chance of improvement. Accordingly, if you would like to speak sooner I am happy to do so. Either way is fine with me.

The reason I proposed hiring outside counsel was to satisfy Jennifer that the investigation of Kelli's claim against her was being handled properly. Jennifer complained that Pat has a conflict of interest and that she cannot preserve the attorney-client privilege. In other words, Jennifer practically insisted that it would not be a proper investigation unless we use outside counsel. I do not agree with Jennifer on this, but given that Jennifer was not cooperative with Pat, I thought the simplest way to create an appropriate record related to Kelli's claim was to have counsel do the interviews. Nevertheless, I am willing to accept your request and replace the formal investigation with a discussion between me and Jennifer. Hiring counsel would provide greater protection to MCHA, but litigation is unlikely because I have no intention of allowing Jennifer to fire Kelli. I do not know how the two of them will ever be able to work together again now that Kelli knows that Jennifer has been trying to find ways to get Kelli fired, but I will try to find a temporary solution until we solve the broader Jennifer problem. I told Jennifer that I want to meet with her next week to discuss our relationship and communication as well as her relationship and communication with Kelli. (Pat and I are in complete agreement about what is really going on between Jennifer and Kelli, but I prefer to explain by phone not email.)

I know that it seems to you that things have moved quickly with Jennifer. They have. Before I visited Japan I was very optimistic. I was bending over backwards for Jennifer in every way, including giving her complete space to get used to the job without feeling like she was in my shadow. I told everyone they had to give her the benefit of the doubt. I insisted that all members of the Legal Department look to her as the GC and listen to her. I devoted a lot of my time and energy to her success. I did not complain that she never came to speak to me or consult with me, because I assumed the situation was temporary and transitional. But in July I began to engage with her more on specific matters and I asked her to engage with me. This is when Pat and I started to see problems, and there have been many. It has become painfully clear how difficult Jennifer is to work with. She does not listen, unless the speaker is telling her what she wants to hear. She does not inquire as to what other people need or want or think, and as a result often has an incomplete understanding of situations she is involved in. She gets defensive and argumentative, often without basis, determined to prove that she is right, blaming others in order to avoid taking responsibility. She is competitive, not collaborative. She will not let other members of the Legal Department speak to me directly - she insists that all information go through her - to the point that some members sneak around to get my advice on matters because they do not fully trust her. I do not trust her. A lot of her work is good, she is smart and capable in many ways. However, there is no way for me to protect our businesses from work that is not good because she is like a black box, with little transparency and little information about what is going in and what is going out. She will not admit that there is anything she does not know - which has led to her giving bad and costly advice. She will not ask questions or seek input for fear that she will look less-than-perfect - which has led her to act on incomplete information. She can be impulsive and exhibit poor judgment. She will not acknowledge that she is overworked and needs help, which results in things being misunderstood, falling through the cracks, and worse. When I went to speak to her about the fact that it appeared that she was overworked and that her stress level was getting higher, her response to my concern and offer of help was to yell at me, to state that she was not overworked, that she was capable of juggling many additional things, and that the only source of her stress was me! What we have all seen in the last couple of months is that Jennifer's personality is not something separate from her capabilities and professionalism - her personality negatively impacts the quality of her work and her ability to manage, and creates risk for the businesses being

supported by MCHA. I can give you many actual examples, but I will stop for now.

I am going to speak to Nick and see if he is interested. It would be great to have Nick back again.

Thanks for your patience,
Donna


Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.


Ken 2905413 Fujiwara---09/01/2015 09:27:03 PM---Donna, In principle, I am simply waiting for Sept. 23 call in order to deepen our understanding and

From: Ken 2905413 Fujiwara/AP/MCC@MCC
To: Donna USA0007 Costa/USAP/USA@USA@FCD
Date: 09/01/2015 09:27 PM
Subject: Re: FYEO


Donna,

In principle, I am simply waiting for Sept. 23 call in order to deepen our understanding and clarification to the situation, while the situation is getting worse, but still I need to hear from you. Although we may even want to listen to Jennifer's version of the story, we will just trust your explanation through the conversation over the phone. For instance, we do not clearly understand such an immediate need to hire outside counsel for WHAT ? type of questions and wish to discuss with you.

Of course I am surprised because, as I wrote previously, the recent situation sounds a bit sudden, as we had heard from you the news only two weeks ago and are not in the position to judge things.

About Nick, I like him a lot more than Jennifer.  To be frank, Jennifer has been sometimes difficult for us, while, based on my experience, Nick had tried to understand our culture and to be nice with people from Japan.  If he is interested in coming back to us, I know many people, including me, welcome him.  Actually, when he had a chance to come to Japan for a business trip, he always try to contact Uemura-san from blood company to set a reunion.

Regards,  Ken

▽Donna USA0007 Costa---2015/09/01 20:26:32---Ken I feel your anger/disappointment/surprise from half-way around the world, though I do not think

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC
日付: 2015/09/01 20:26
件名: FYEO

Ken

I feel your anger/disappointment/surprise from half-way around the world, though I do not think it can compare with mine.

I would like your thoughts on the following: would you truly prefer to keep Jennifer as GC knowing all the people who are miserable as a result, or would you prefer to have Nick Oliva as GC (or someone like him)? Nick took me for a belated birthday dinner and to thank him for a favor I did for him a few months ago -- he is not happy in his current job....

Donna


Sent with Good (www.good.com)

CONFIDENTIAL

DEF-000294

| From: | Donna_Costa@m-chem.com |
|---|---|
| Sent: | Friday, September 11, 2015 9:13 AM |
| To: | patricia_saunders@m-chem.com |
| Subject: | JF |

Pat:

Latest email from Ken:

> Thank you for the extensive reports on two issues. Now I have started to understand your position and am agreeing to, first, at the least JF's CCO must be removed. I tend to agree to your planned actions against her, but here is a question, i) is demoting her from "Acting GC" and "CCO" down to mere manager at legal an option, instead of termination, ii) have you spoken to Nick ??

Donna

Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.

CONFIDENTIAL                    DEF-000314

| From: | Donna_Costa@m-chem.com |
|---|---|
| Sent: | Friday, September 25, 2015 7:51 AM |
| To: | Patricia_Saunders@m-chem.com |
| Subject: | FW: *Confidential: ** Confidential - Privileged - JF ** |

!!


Sent with Good (www.good.com)


---------Forwarded by   Donna USA0007 Costa/USAP/USA  on 09/25/2015 07:51:20 AM------



--------Original Message--------

From : Ken 2905413 Fujiwara/AP/MCC@MCC@FCD
To : Donna USA0007 Costa/USAP/USA@USA@FCD
cc : Masanori 3113541 Sakaguchi/AP/MCC@MCC
Sent on :09/25/2015 04:59:38 PM ZE9
Subject : Re: *Confidential: ** Confidential - Privileged - JF **

Dear Donna,

Thank you for your having taken into account what we discussed and proposing the compromise.  We agree to your new approach.

Also, I spoke with Oohira-san to explain the situation this afternoon.  He was a bit surprised but understand the way how we deal with it.

I think you can speak to Jennifer when you think appropriate, without waiting until the end of this month.

Thank you again for your thoughts.

Regards,  Ken

▼ Donna USA0007 Costa---2015/09/25 04:52:36---Dear Ken and Sakaguchi-san: Thank you for your time yesterday immediately after your return from Sil

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC@MCC, Masanori 3113541 Sakaguchi/AP/MCC@MCC
日付: 2015/09/25 04:52
件名: *Confidential: ** Confidential - Privileged - JF **

Dear Ken and Sakaguchi-san:

Thank you for your time yesterday immediately after your return from Silver "Week".

I have considered Sakaguchi-san's request further, and have concluded that I am willing to offer Jennifer to return to her prior position rather than terminating her. If she does not accept, we will give her a severance package. If she does accept, we will return her to her former title and compensation package and we will do our best to make it work.

I hope that with this compromise you are prepared to approve the proposal next week. If there are further matters you would like me to address before you make your decision, please let me know.  I have a strong candidate who I believe will be able to begin work in October or November.

Regards,
Donna

Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.

| | |
|---|---|
| **From:** | Donna_Costa@m-chem.com |
| **Sent:** | Sunday, September 27, 2015 10:18 PM |
| **To:** | fujiwara ken |
| **Subject:** | RE: *Confidential: ** Confidential - Privileged - JF ** |

Dear Ken:

I have not told Date-san because I thought this was your issue, but I am happy to tell him if I should do so.

I think there is a 50% chance that Jennifer will accept her old position. If she does, I expect she will leave within one year for a new job.

If Jennifer accepts, her decision will cost MCHA less in 2015 than her leaving, because paying her severance is more expensive than demoting her. Either way, we will use 2015 'profit' to cover any unbudgeted costs and I believe we will not have to request additional money from MCHC. Of course, this money will not be available to pay dividends.

If Jennifer stays beyond April 1, the 2016 Legal Department budget will be covered by legal services fees. Assuming Jennifer leaves at some point in 2016, the cost of the Legal Department will be below budget, because we will not replace her.

Regardless of what happens with the Legal Department in 2015 and 2016, MCHC/BHQs will have to pay my costs in 2016. Shin and I are working on the Management budget in the coming weeks. Keep in mind that part of my costs are covered by Qualicaps beginning October 1, so the impact on MCHC will be lower than originally expected.

I am uncomfortable waiting past October 26 to tell Jennifer. I'm not sure I understand why we would delay this any longer. We could lose Nick, things could blow up with Jennifer, things could get worse with Kelli, and in the end MCHC will have to pay for a new GC and for Jennifer to stay or go regardless.

Regarding Jennifer's trip to Japan, I realize it is strange, but MCHA would be letting down the ICO and the Global Compliance Meeting if we do not send someone. Since we are not firing her, I don't see a problem with sending her. However, if you want me to go in her place, I will do so. But that will mean I need to tell her about her demotion this Wednesday, because I am traveling and she is traveling and this Wednesday is the only day I will see her before she is scheduled to leave for Tokyo.

Please let me know your thoughts as soon as possible so I can squeeze Tokyo into my October schedule. Also, based on your email last week I have set things in motion regarding hiring Nick and demoting Jennifer (including telling Nick and five people at MCHA) and it won't be easy for me to go back without creating some problems. I am quite tense about this possible reversal.

If you want to discuss this, you can call me before noon Japan time. Otherwise, I await your response by email.

Regards,
Donna

Sent with Good (www.good.com)

--------Original Message--------

From : Ken 2905413 Fujiwara/AP/MCC@MCC@FCD
To : Donna USA0007 Costa/USAP/USA@USA@FCD
cc :
Sent on :09/28/2015 10:09:47 AM ZE9
Subject : Re: *Confidential: ** Confidential - Privileged - JF **

Donna,

Thank you for the email.  I hope things go well.  To be frank, what is your estimation or guess as to the possibility of Jennifer's accepting the idea of putting back to her the old position, while we are already prepared for the idea of replacing GC.

As you recall, the reason of us in Japan having not agreed to the idea of hiring new GC after your taking the president's position was because of the anticipated increase in the costs at the legal department or MCHA.  If JF accepts the idea, it will result in the same situation as before.  As you are also aware, Date-san's department is primary responsible for the management of MCHA, in particular for its operating budget.  I do not think you told Date-san or Kosakai-san about your concern over JF, when they were there.  I think we need to know the impact in the operating costs associated with this whole thing in relation to the 2015 budget, so that we could explain to Date-san and/or Kosakai-san before it happens.  In that regard, I do not know when is the best time to tell JF the idea, and also if it is advisable to bring JF to Japan, who is possible to be terminated after the trip, that might result in huge distrust from people in Japan.

What do you think ?

Regards,  Ken

▼Donna USA0007 Costa---2015/09/26 06:49:21---Dear Ken: Thank you very much for your support and understanding.

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC@MCC@FCD
Cc: Masanori 3113541 Sakaguchi/AP/MCC@MCC
日付: 2015/09/26 06:49
件名: Re: *Confidential: ** Confidential - Privileged - JF **

Dear Ken:

Thank you very much for your support and understanding.

We will proceed as follows:

- Nick Oliva will come in for interviews on October 12. (I tried to do it sooner, but people's schedules are busy this month.)
- Assuming everything goes as planned on October 12:
    - We will confirm all details with Nick by the end of that week. Nick will be offered the same compensation package Jennifer would receive upon being named General Counsel. Nick will not be offered a contract.
    - I will report to you on the final outcome as soon as we reach agreement with Nick.
    - I will notify Jennifer of the change when she returns from Japan at the end of October. (I considered telling her before she goes to Japan, but Pat and I agree that could create greater friction. In this regard, please limit the number of people who know about this so that there is no risk of her hearing about it accidentally while she is in Tokyo.)
    - Nick will begin work in mid-November. This timing will allow Jennifer some time to adjust before he arrives.
    - 

On Monday or Tuesday, I will speak to Kelli to ensure that no problems occur with her before Jennifer is notified.

Again, thank you for your support.

Regards,
Donna

Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.

Ken 2905413 Fujiwara---09/25/2015 03:59:42 AM---Dear Donna, Thank you for your having taken into account what we discussed and proposing the comprom

From: Ken 2905413 Fujiwara/AP/MCC@MCC
To: Donna USA0007 Costa/USAP/USA@USA@FCD
Cc: Masanori 3113541 Sakaguchi/AP/MCC@MCC
Date: 09/25/2015 03:59 AM
Subject: Re: *Confidential: ** Confidential - Privileged - JF **

Dear Donna,

Thank you for your having taken into account what we discussed and proposing the compromise.  We agree to your new approach.

Also, I spoke with Oohira-san to explain the situation this afternoon.  He was a bit surprised but understand the way how we deal with it.

I think you can speak to Jennifer when you think appropriate, without waiting until the end of this month.

Thank you again for your thoughts.

Regards,  Ken



▼Donna USA0007 Costa---2015/09/25 04:52:36---Dear Ken and Sakaguchi-san: Thank you for your time yesterday immediately after your return from Sil

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC@MCC, Masanori 3113541 Sakaguchi/AP/MCC@MCC
日付: 2015/09/25 04:52
件名: *Confidential: ** Confidential - Privileged - JF **


Dear Ken and Sakaguchi-san:

Thank you for your time yesterday immediately after your return from Silver "Week".

I have considered Sakaguchi-san's request further, and have concluded that I am willing to offer Jennifer to return to her prior position rather than terminating her. If she does not accept, we will give her a severance package. If she does accept, we will return her to her former title and compensation package and we will do our best to make it work.

I hope that with this compromise you are prepared to approve the proposal next week. If there are further matters you would like me to address before you make your decision, please let me know.  I have a strong candidate who I believe will be able to begin work in October or November.

Regards,
Donna

Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.

| From: | Donna_Costa@m-chem.com |
|---|---|
| Sent: | Monday, September 28, 2015 1:44 AM |
| To: | fujiwara ken |
| Subject: | RE: *Confidential: ** Confidential - Privileged - JF ** |

Dear Ken,

Thank you for your prompt response. To clarify:

Shin is fully informed. He will discuss the budget with Date-san in October and I will follow up with Date-san in November.

As you explained, if Jennifer accepts and continues to work after April 1, running costs in 2016 will exceed 2015 due to the increase in head count.

Should I tell Jennifer next week, in which case she will not go to Japan for the Global Compliance Meeting, or should she go to Japan and I tell her the week of October 26? The problems with telling her next week are (1) we have not yet reached agreement with Nick, (2) we will have to wait until mid-November for him to start even if we notify her now, (3) I would like to notify members of the Legal Department while she is in Japan so they can think about and prepare for the impact if she leaves, and (4) I would like her to make more progress on Project Genesis before notifying her. My previously proposed schedule minimizes the risk and disruption to MCHA and our affiliates.

I recognize the discomfort and potential confusion in Japan caused by sending her to HQ before she is notified (it will be upsetting for her as well), but I think it is the best option on balance. We can minimize the concerns by limiting her activities in Tokyo to the compliance meeting, time with Sebastian and time with MCHJ Legal. This should be easy, because she arrives on Wednesday evening and leaves on Saturday morning. What do you think?

This has been incredibly difficult. It will continue to be so for awhile. But it is unavoidable and there is no way to make it perfect. I will do the best I can.

Thanks,
Donna



Sent with Good (www.good.com)



--------Original Message--------

From : Ken 2905413 Fujiwara/AP/MCC@MCC@FCD
To : Donna USA0007 Costa/USAP/USA@USA@FCD

cc :
Sent on :09/28/2015 02:06:05 PM ZE9
Subject : RE: *Confidential: ** Confidential - Privileged - JF **

Dear Donna,

Thank you for the explanatory message. As you mentioned, this is my (and Sakaguchi-san's) issue, not Deta-san's nor Kosakai-san's, but the management issue, including its budget, of MCHA as a subsidiary of MCHC is under the responsibility of Date-san's department, as you well aware of. But, now that I think I understood the foreseeable costs structure at MCHA. As long as Shin is aware of the situation, future options and possible change in the budget, you do not directly tell Date-san this matter before November when you come to Japan for the presidents meeting.

As to the timing of telling JF the plan, I was trying to say even October 26 was late, because I had thought JF would leave much earlier, should she have not accepted our idea of demotion and thus, I said, sending her to Japan just before her leave did not seem to me a good idea.

In anyway, however, please confirm that 2016 total running costs of MCHA (except a one time expense such as a severance payment) will be more than 2015, if JF accepted the demotion, where the total in 2016 would be NO plus JF, an increase in head count because of a new GC, Nick.

Regards, Ken


Donna USA0007 Costa---2015/09/28 12:25:06---Ken: My apology, but I cannot go to the ICO meeting due to my first Qualicaps board meeting.

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC
日付: 2015/09/28 12:25
件名: RE: *Confidential: ** Confidential - Privileged - JF **

---

Ken:

My apology, but I cannot go to the ICO meeting due to my first Qualicaps board meeting.

Donna


Sent with Good (www.good.com)

--------Original Message--------

From : Donna USA0007 Costa/USAP/USA
To : Ken 2905413 Fujiwara/AP/MCC@MCC@FCD
cc :
Sent on :09/27/2015 10:18:03 PM EDT
Subject : RE: *Confidential: ** Confidential - Privileged - JF **

Dear Ken:

I have not told Date-san because I thought this was your issue, but I am happy to tell him if I should do so.

I think there is a 50% chance that Jennifer will accept her old position. If she does, I expect she will leave within one year for a new job.

If Jennifer accepts, her decision will cost MCHA less in 2015 than her leaving, because paying her severance is more expensive than demoting her. Either way, we will use 2015 'profit' to cover any unbudgeted costs and I believe we will not have to request additional money from MCHC. Of course, this money will not be available to pay dividends.

If Jennifer stays beyond April 1, the 2016 Legal Department budget will be covered by legal services fees. Assuming Jennifer leaves at some point in 2016, the cost of the Legal Department will be below budget, because we will not replace her.

Regardless of what happens with the Legal Department in 2015 and 2016, MCHC/BHQs will have to pay my costs in 2016. Shin and I are working on the Management budget in the coming weeks. Keep in mind that part of my costs are covered by Qualicaps beginning October 1, so the impact on MCHC will be lower than originally expected.

I am uncomfortable waiting past October 26 to tell Jennifer. I'm not sure I understand why we would delay this any longer. We could lose Nick, things could blow up with Jennifer, things could get worse with Kelli, and in the end MCHC will have to pay for a new GC and for Jennifer to stay or go regardless.

Regarding Jennifer's trip to Japan, I realize it is strange, but MCHA would be letting down the ICO and the Global Compliance Meeting if we do not send someone. Since we are not firing her, I don't see a problem with sending her. However, if you want me to go in her place, I will do so. But that will mean I need to tell her about her demotion this Wednesday, because I am traveling and she is traveling and this Wednesday is the only day I will see her before she is scheduled to leave for Tokyo.

Please let me know your thoughts as soon as possible so I can squeeze Tokyo into my October schedule. Also, based on your email last week I have set things in motion regarding hiring Nick and demoting Jennifer (including telling Nick and five people at MCHA) and it won't be easy for me to go back without creating some problems. I am quite tense about this possible reversal.

If you want to discuss this, you can call me before noon Japan time. Otherwise, I await your response by email.

Regards,
Donna