# EXHIBIT C

```
 1
 2    UNITED STATES DISTRICT COURT
 3    SOUTHERN DISTRICT OF NEW YORK
 4    ---------------------------------------x
 5    JENNIFER S. FISCHMAN,
 6                     Plaintiff,        Index No.
 7           -against-                   18-CV-08188
 8    MITSUBISHI CHEMICAL HOLDINGS AMERICA,
 9    INC.; MITSUBISHI CHEMICAL HOLDINGS
10    CORPORATION; NICOLAS OLIVA, in his
11    individual and professional capacities;
12    DONNA COSTA, in her individual and
13    professional capacities; and JOHN DOES
14    1-10, in their individual and
15    professional capacities,
16                     Defendants.
17    ---------------------------------------x
18
19                     June 28, 2021
20                     10:09 a.m.
21
22
23
24
25
```

Page 271

June 28, 2021

10:09 a.m.

Continued videotaped deposition of JENNIFER FISCHMAN, held at the offices of Gordon Rees Scully Mansukhani LLP, One Battery Park Plaza, New York, New York, pursuant to Notice, before Lynne D. Metz, a Shorthand Reporter and Notary Public of the State of New York.

Case 1:18-cv-08188-JMF   Document 118-3   Filed 10/22/21   Page 4 of 11

Page 272

1
2  A P P E A R A N C E S:
3
4       VALLI KANE & VAGNINI
5       Attorneys for the Plaintiff
6            600 Old Country Road
7            Suite 519
8            Garden City, New York 11530
9       BY:  MATTHEW L. BERMAN, ESQ.
10           ROBERT VALLI, ESQ.
11           SARA WYN KANE, ESQ.
12
13
14      GORDON REES SCULLY MANSUKHANI LLP
15      Attorneys for Defendants MITSUBISHI CHEMICAL
16      HOLDINGS AMERICA, INC., NICOLAS OLIVA AND
17      DONNA COSTA
18           One Battery Park Plaza
19           28th Floor
20           New York, New York 10004
21      BY:  MERCEDES COLWIN, ESQ.
22           BRITTANY L. PRIMAVERA, ESQ.
23           File # MCHEM-1135398
24
25

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

Page 273

```
 1
 2        SHEARMAN & STERLING
 3        Attorneys for Defendant MITSUBISHI CHEMICAL
 4        HOLDINGS CORPORATION
 5              599 Lexington Avenue
 6              New York, New York 10022
 7        BY:   JEROME S. FORTINSKY, ESQ.
 8              SAM JOLLY, ESQ.
 9
10
11         CLARICK GUERON REISBAUM
12         Attorneys for Defendant DONNA COSTA
13               220 Fifth Avenue
14               New York, New York 10001
15         BY:  NICOLE GUERON, ESQ.
16
17
18         ALSO PRESENT:
19               Rocco Mercurio - videographer
20               Nicolas Oliva
21               Donna Costa
22               Skyler Stern - intern
23               Adriana Acosta - intern
24
25
```

Page 281

1           J. Fischman
2  Comments; correct?  It starts at 594 at the very
3  bottom and these are your comments above that
4  typewritten; correct, in terms of it starts "The
5  2015 fiscal year was a good and challenging year."
6           Is that right?
7      A.   Yes.
8      Q.   Is there any evidence of
9  discrimination related to the criticisms that are
10 set forth in your work --
11          MR. BERMAN:  Object to form.
12     Q.   -- in this document?
13     A.   Could you repeat the question?
14          (Record read.)
15          MR. BERMAN:  Object to form.
16     A.   Yes.
17     Q.   Where is that in the document?
18     A.   Well, it is not something that I would
19 have written in the document because this document
20 is submitted to my boss for his review and --
21     Q.   Ms. Fischman that's not the question.
22     A.   Actually, that's the answer.  You
23 asked me to answer the question.
24     Q.   Where is it in writing?  I am not
25 asking for the reason.

Page 282

1         J. Fischman
2         Where is it in writing in this
3    document that you felt evidence of discrimination?
4         A.   Well actually, there is evidence of
5    retaliation, if you must know.  It's in the Needs
6    Improvement on the level of proficiency on page
7    592 which I had never received before and that was
8    in retaliation for comments that I had made to
9    Nick Oliva on or about March 1st when we had a
10   discussion about the dismissal of Amber Todd.
11        Q.   So it is your statement under oath
12   that the fact that you received a needs
13   improvement in communication was for retaliatory
14   motive by Mr. Oliva; is that your testimony?
15        A.   Yes.
16        Q.   And that stems from a conversation
17   that was had regarding Miss Amber Todd?
18        A.   Yes.
19        Q.   If you could, to the best of your
20   recollection, state for the record under oath what
21   the conversation you had with Mr. Oliva regarding
22   Miss Amber Todd in March of 2016?
23        A.   Two things Mercedes.  I am a lawyer.
24   You don't need to remind me that I am under oath.
25   So please don't do that.

1             J. Fischman
2        Secondly --
3     Q.   It is my deposition Ms. Fischman and I
4  am being very respectful.
5     A.   But I find that very disrespectful.  I
6  know I am under oath.  She just reminded me of it,
7  okay.  Under oath I state that when I returned
8  from vacation in early March, I believe it was
9  March 1st, we had a conversation about the
10 termination of Amber Todd, a woman who worked at
11 one of our affiliates for who we supported with
12 legal advice.  Dan Todd had previously worked at
13 the company back in the Fall of 2015.  Dan Todd
14 left the company and he received a very generous
15 year long severance package.  When Amber -- the
16 company was closing down or winding down its
17 operations and when Amber Todd identified that she
18 was ready to leave the company the company said
19 they would not give her a severance package.  All
20 of this occurred in early February of 2016.
21          I went on vacation with my family in
22 mid to late February and when I returned Mr. Oliva
23 told me that the company was not going to give
24 Amber a severance package but instead was going to
25 fire her for cause because there was a conflict

Page 284

1       J. Fischman
2  now that her husband worked for a customer of the
3  company.  So I said to Nick that that was
4  inappropriate and that I was not going to paper
5  any record as he had suggested and we got into
6  quite a -- we got into a strongly worded
7  conversation where he was angry with my response
8  and I did not want to do anything that I thought
9  was inappropriate and I told him that I thought it
10 was discrimination against Amber and that they had
11 treated her male husband quite differently and
12 that it was absolutely wrong and I wouldn't
13 support it.  He immediately changed the subject,
14 walked out of my office and I was very shaken from
15 that experience.
16      Q.   What, if anything, exists in writing
17 that details this conversation that you had with
18 Mr. Oliva?
19      A.   On that night I went home and I wrote
20 myself a note on a legal pad and I stuffed it in a
21 draw and hoped to forget about it.
22      Q.   Have you produced that?
23      A.   Yeah.  That was, remember last week
24 when I said there were a bunch of handwritten
25 documents that I thought had been produced.  We

Page 285

1              J. Fischman
2  have now produced everything.
3          MR. BERMAN:  I will represent to
4      counsel those were produced.
5      Q.   Ms. Fischman, we have been in this
6  controversy for quite a number of years.
7          Why is it that you just produced this
8  document to your counsel and then in turn
9  allegedly produced to us?
10         MR. BERMAN:  Object to form.
11     A.   I thought I had produced everything
12 and I went back and when I was preparing for this
13 deposition I went back and searched another part
14 of my bedroom office and found a couple of more
15 documents.  Not just this, but I also found a
16 notebook that I had kept.
17     Q.   You perceive this document as a
18 critically important document to your claim;
19 correct?
20         MR. BERMAN:  Object to form.
21     A.   Of course.
22     Q.   How is it that --
23     A.   It is the basis for which I used for
24 the complaint.
25     Q.   Ms. Fischman, let me finish.

Page 286

1         J. Fischman
2              How is it that we are in 2021 and now
3    for the first time you have given this document to
4    your counsel who then gave it to us?
5              MR. BERMAN:  Object to form.
6         A.   I don't know how to answer that.  I
7    found a couple of extra documents that I thought I
8    already produced it a year ago actually.
9         Q.   The circumstances regarding Mr. Todd
10   and Miss Todd are very different.
11             Mr. Todd was subject to a reduction in
12   force, was he not?
13             MR. BERMAN:  Object to form.
14             MS. COLWIN:  What's the objection to
15        the form counsel?
16             MR. BERMAN:  You provided a prequel to
17        the question.  So that was two questions or
18        one was a statement and one was a question.
19   BY MS. COLWIN:
20        Q.   Mr. Todd was subjected to a reduction
21   in force, was he not?
22        A.   I think the whole company was subject
23   to --
24        Q.   I am not asking you that question.  I
25   am asking you a question Ms. Fischman.