**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER S. FISCHMAN, | Index No. 18-cv-08188 (JMF) |
| Plaintiff, | |
| v. | |
| MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.; MITSUBISHI CHEMICAL CORPORATION; MITSUBISHI CHEMICAL HOLDINGS CORPORATION; NICHOLAS OLIVA, in his individual and professional capacities; DONNA COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in their individual and professional capacities, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SANCTIONS

**GORDON REES SCULLY MANSUKHANI, LLP**
ATTORNEYS FOR DEFENDANTS MCHA, COSTA, AND OLIVA
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269-5500

**SHEARMAN & STERLING LLP**
ATTORNEYS FOR DEFENDANT MITSUBISHI CHEMICAL HOLDINGS CORPORATION
599 LEXINGTON AVE
NEW YORK, NEW YORK 10022
PHONE: (203) 536-4235

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................................3

    A.    Plaintiff's Factual Allegations Relevant to the Falsified Note ...............................3

    B.    The Alleged Origin of the Falsified Note ...............................................................4

    C.    Expert Analysis of the Falsified Note .....................................................................6

ARGUMENT ...............................................................................................................................9

PLAINTIFF HAS COMMITTED A FRAUD ON THE COURT AND MUST BE
SANCTIONED. ............................................................................................................................9

    A.    Sanctions Generally ................................................................................................9

    B.    Clear and Convincing Evidence Establishes that Plaintiff Is Committing a
            Fraud on the Court ................................................................................................11

    C.    Plaintiff's Abuse of the Discovery Process Warrants Dismissal of her Case
            under Rule 37 and the Court's Inherent Power.....................................................14

            1.    Factor One:  Plaintiff's misconduct was intentional and egregious .........15

            2.    Factor Two:  Plaintiff's misconduct prejudiced Defendants ....................16

            3.    Factor Three:  Plaintiff engaged in a pattern of misbehavior ..................17

            4.    Factors Four and Five:  This misconduct is ongoing and will
                  reoccur......................................................................................................18

    D.    Dismissal is Justified Under Rule 11 Because of Plaintiff's Fraudulent
            Submissions to Defendants and the Court .............................................................20

    E.    Defendants Should be Awarded Attorney's Fees Based on Plaintiff's
            Deceptive Practices and Submission of a Fabricated Document...........................23

CONCLUSION...........................................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  18 Civ. 3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019)
  *aff'd*, 829 F. App'x 533 (2d Cir. 2020)..............................................................................22, 23

*Amerisource Corp. v. Rx USA Intern. Inc.*,
  02 Civ. 2514 (JMA), 2010 WL 2730748 (E.D.N.Y. July 6, 2010),
  *aff'd* 432 F. App'x 25 (2d Cir. 2011).................................................................................10, 13

*Aoude v. Mobile Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989)...........................................................................................17, 20

*Campos v. Corr. Off. Smith*,
  418 F. Supp. 2d 277 (W.D.N.Y. 2006)....................................................................................22

*Ceglia v. Zuckerberg*,
  10 Civ. 00569 (AF), 2013 WL 1208558 (W.D.N.Y. Mar. 26, 2013),
  *aff'd*, 600 F. App'x 34 (2d Cir. 2015).....................................................................................13

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
  169 F.R.D. 573 (S.D.N.Y. 1996) ......................................................................................13, 18

*Chambers v. NASCO Inc.*,
  501 U.S. 32 (1991).............................................................................................9, 10, 21, 23

*Colella v. Republic of Argentina*,
  04 Civ. 2710 (LAP), 2020 WL 4700930 (S.D.N.Y. Aug. 13, 2020).....................11, 16, 17, 20

*ComLab, Corp. v. Kal Tire*,
  17 Civ. 1907 (KBF), 2018 WL 4333987 (S.D.N.Y. Sept. 11, 2018) ..........................11, 15, 16

*DAG Jewish Directories, Inc. v. Y&R Media, LLC*,
  09 Civ. 7802 (RJH), 2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010) ......................................19

*Dellefave v. Access Temporaries, Inc.*,
  99 Civ. 6098 (RWS), 2001 WL 286771 (S.D.N.Y. Mar. 22, 2001).......................................21

*Ford v. Amer. Broadcasting Co., Inc.*,
  101 F.R.D. 664 (S.D.N.Y. 1983),
  *aff'd* 742 F.2d 1434 (2d Cir. 1984).........................................................................................16

*Gleason v. Jandrucko*,
  860 F.2d 556 (2d Cir.1988) ....................................................................................................10

*Hargrove v. Riley*,
 No. CV-04-4587 (DGT), 2007 WL 389003 (E.D.N.Y. Jan. 31, 2007) ................ 10, 14, 15, 18

*Jiminez v. Madison Area Tech. Coll*,
 321 F.3d 652 (7th Cir. 2003) ........................................................................ 22

*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*,
 248 F.R.D. 126 (S.D.N.Y. 2007) ..................................................................... 9

*Lawrence v. City of New York*,
 15 Civ. 8947 (WHP), 2018 WL 3611963 (S.D.N.Y. July 27, 2018)................................. 14, 17

*McMunn v. Memorial Sloan-Kettering Cancer Ctr.*,
 191 F. Supp. 2d 440 (S.D.N.Y. 2002) ........................................................... 12, 18, 19

*Miller v. Bridgeport Bd. of Educ.*,
 12 Civ. 1287 (JAM), 2014 WL 3738057 (D. Conn. July 30, 2014)........................................ 22

*New York Credit & Fin. Mgt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
 432 F. App'x 25 (2d Cir. Sept. 15, 2011) .................................................... 10

*Offor v. Mercy Med. Ctr.*,
 327 F.R.D. 32 (E.D.N.Y. 2018)..................................................................... 23

*Pope v. Fed. Exp. Corp.*,
 974 F.2d 982 (8th Cir. 1992) ................................................................ 13, 17, 22

*Rossbach v. Montefiore Med. Ctr.*,
 19 Civ. 5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) ........................... 19, 23, 24

*S.E.C. v. Smith*,
 710 F.3d 87 (2d Cir. 2013) ........................................................................ 21

*Scholastic, Inc. v. Stouffer*,
 221 F. Supp.2d 425 (S.D.N.Y. 2002),
 *aff'd* 81 F. App'x 396 (2d Cir. 2003).................................................... 15, 18

*Shangold v. Walt Disney Co.*,
 03 Civ. 9522 (WHP), 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006),
 *aff'd* 275 F. App'x 72 (2d Cir. 2008).................................................... 9, 14

*Skywark v. Isaacson*,
 96 Civ. 2815 (JFK), 1999 WL 1489038 (S.D.N.Y. Oct. 14, 1999),
 *adopted by* 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000) ........................................ 10

*South Pacific Shipping Co. Ltd. Inc. v. Redi-Fresh Produce Inc.*,
 2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) .................................................. 21

*State v. United States Dep't of Comm.*,
    461 F. Supp. 3d 80 (S.D.N.Y. 2020) (JMF) ............................................................. 24

*StreetEasy, Inc. v. Chertok*,
    752 F.3d 298 (2d Cir. 2014) ................................................................................... 20

*U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*,
    948 F.2d 1338 (2d Cir. 1991) ................................................................................... 9

*Usherson v. Bandshell Artist Mgmt*,
    No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020) (JMF),
    *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*,
    858 F. App'x 457 (2d Cir. 2021),
    *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*,
    6 F.4th 267 (2d Cir. 2021) ..................................................................................... 23

*West v. Goodyear Tire & Rubber Co.*,
    167 F.3d 776 (2d Cir. 1999) ................................................................................... 14

**Statutes**

28 U.S.C.A. § 1927 .................................................................................................... 23

**Rules**

Fed. R. Civ. P. 11 .............................................................................. 9, 11, 20, 21, 22, 23

Fed. R. Civ. P. 11(b) ................................................................................................. 20

Fed. R. Civ. P. 11(c)(3) ............................................................................................. 20

Fed. R. Civ. P. 11(c)(4) ............................................................................................. 23

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 23

Fed. R. Civ. P. 37 .......................................................................................... 9, 11, 14

Fed. R. Civ. P. 37(b)(2)(C) ........................................................................................ 24

## PRELIMINARY STATEMENT

Plaintiff Jennifer Fischman manufactured and produced a falsified document critical to her factual and legal claims and then testified falsely under oath about it.  Unrefuted forensic evidence, attested to by one of the nation's leading experts on document dating and authenticity, proves this fraud.  Plaintiff's misconduct warrants the most serious sanctions, including dismissal of this case.

In 2018, Plaintiff, a former Assistant and Acting General Counsel of Defendant Mitsubishi Chemical Holdings America, Inc. ("MCHA"), filed this lawsuit alleging unlawful employment practices, including Defendants'[1] alleged failure to promote her or pay her the same as a male comparator (General Counsel Nicholas Oliva), and termination of her employment when she complained of gender discrimination.

Defendants have clear and convincing expert forensic evidence that Plaintiff, an attorney, manufactured a fake document before discovery closed in an attempt to bolster her frivolous claims of discrimination and retaliation.  Specifically, Plaintiff belatedly produced a handwritten document, facially dated March 1, 2016, that purports to contemporaneously memorialize a conversation in which Plaintiff accused Mr. Oliva of engaging in gender discrimination against a third party, and then noted her fear of retaliation by Mr. Oliva (the "Falsified Note").  Plaintiff produced this document in June 2021, *three years* into this litigation and nearly two years after she had initially responded to Defendants' discovery requests.  Confident that the Falsified Note was not what it appeared to be, Defendants retained an expert forensic ink chemist to analyze the original handwritten note for validity.

---

[1] All references to "Defendants" are to MCHA, Mitsubishi Chemical Holdings Corporation ("MCHC"), Nicholas Oliva and Donna Costa, collectively.  All references to "Rule" are to the Federal Rules of Civil Procedure.

Expert forensic analysis establishes that the Falsified Note is fraudulent and was in fact ***created years after the date on the document***.  Based on chemical analysis, this expert concluded that although the document bore the date March 1, 2016, it was actually created years later, well after this case began, and backdated. Specifically, Defendants' expert has established that he is "virtually certain" that the Falsified Note was *not* created on March 1, 2016, as the document states on its face and as Plaintiff testified at her deposition, but rather within the past two years.  Indeed, based on his forensic testing of the chemical compounds present in the Falsified Note, Defendants' expert opined that due to the extremely high levels of 2-phenoxyethanol ("2-PE"), along with other test results, the ink was still in a very 'fresh' stage (i.e., less than six months old). Plaintiff proffered no expert to refute what Defendants' expert concluded.

In response to this fraudulent conduct, Defendants move for sanctions against Plaintiff. The appropriate sanction for this severe misconduct is the outright dismissal of this lawsuit. Plaintiff manufactured a document that she testified at her deposition constituted "critically important" evidence, attempted to conceal her fraud through demonstrably false testimony, and refuses to withdraw her claims.  No more—and indeed, far less—is needed to warrant the sanction of dismissal.  Because the false testimony and the manufactured document remain a critical part of the record in this case, Plaintiff's fraud on this Court and Defendants will remain ongoing unless this case is dismissed. Simply excluding the tainted evidence would not suffice because it would allow cheating to go unpunished. Plaintiff committed fraud on this Court as well as perjury. Dismissal is especially justified here because Plaintiff is an attorney who should be held to a higher standard than a lay litigant, and whose litigation experience makes her attempt to perpetrate a fraud on the Court all the more shocking. Plaintiff's dishonest testimony also warrants an award of attorney's fees.

Accordingly, Defendants' motion for sanctions should be granted, this case should be dismissed in its entirety, and Defendants should be awarded attorney's fees for all costs incurred by Defendants that are attributable to Plaintiff's fraud, including without limitation the attorney's fees and other costs incurred in obtaining a document expert, preparing for and defending the expert's deposition, and preparing this motion, as well as the expert's fees.

## STATEMENT OF RELEVANT FACTS

### A.  Plaintiff's Factual Allegations Relevant to the Falsified Note

Plaintiff began working as Corporate Counsel in MCHA's legal department on March 3, 2008.  *See* First Amended Complaint, filed April 8, 2020 (Docket No. 89) ("FAC"), ¶¶ 10, 35.  In 2013, MCHA promoted her to the position of Assistant General Counsel ("Asst. GC").  *See* FAC ¶¶ 39, 41.  Plaintiff was then promoted to Acting General Counsel ("Acting GC") in April 2015, *see id.* ¶¶ 49-50, but was returned to her prior position of Asst. GC in November 2015, *see id.* ¶¶ 82-83.  MCHA hired Mr. Oliva as General Counsel in November 2015; Plaintiff claims that this action constituted gender discrimination, because MCHA allegedly placed her in the role of Acting GC only until it could find a suitable male replacement.  *See id.* ¶¶ 61, 63, 64, 72.

Plaintiff alleges that several months after Mr. Oliva became General Counsel, a Mitsubishi client company refused to provide a severance package to a female employee, Amber Todd, even though that company had a few months earlier given a severance package to her husband, Dan Todd, under purportedly similar circumstances. *See id.* ¶¶ 76-77. Plaintiff alleges that she confronted Mr. Oliva about this difference in treatment by the client company, and explicitly told him that "they are treating Amber differently than they treated Dan, because she's a woman, and I won't be a part of it." *Id.*  Plaintiff goes on to allege that these complaints of discrimination were the catalyst for her termination, in that they precipitated MCHA's purported retaliatory treatment

and poor evaluations of Plaintiff's performance.  *Id.*  Indeed, Plaintiff alleges that this specific complaint is what led Mr. Oliva to "paper[]" her file with erroneous evaluations and comments about her performance.  *Id.*  Plaintiff alleges that MCHA terminated her on January 30, 2017, in retaliation for her complaints of gender discrimination.  *See id.* ¶ 84.

## B.  The Alleged Origin of the Falsified Note

On December 2, 2019, Defendants MCHA, Oliva, and Costa served their initial set of interrogatories and document demands on Plaintiff. Among other things, these demands specifically sought "all hand-written notes that [Plaintiff] took on notepads during [Plaintiff's] employment with MCHA."  On February 6, 2020, Plaintiff served responses to these demands, which included hundreds of pages of documents. The Falsified Note, which purportedly contemporaneously memorialized a conversation with Mr. Oliva concerning disparate treatment of Amber Todd and Plaintiff's fear of retaliation, was not produced.

For the first time, in June 2021, between the first and second days of her deposition, Plaintiff made a supplemental production of additional documents. These documents included, among other things, the Falsified Note, a copy of which is annexed to the Declaration of Mercedes Colwin ("Colwin Declaration") as **Exhibit "A."** The Falsified Note describes Plaintiff's objection to what she perceived as disparate treatment of Amber Todd. The Falsified Note purportedly reflects that Plaintiff believed that the alleged disparate treatment by a client company constituted gender discrimination, and that Mr. Oliva was "spinning," and "manufacturing" distinctions that would "violat[e] the law and discriminat[e] against women."  Indeed, the note explicitly states that Plaintiff feared that Mr. Oliva was angry with her for "calling out the discrimination," and "may retaliate against me."  *Id.*  In other words, she claims that this evidence, if credited, would

corroborate her allegations of discriminatory treatment, her engaging in protected activity, and her fear of retaliation.

Defendants first became aware of the Falsified Note at Plaintiff's deposition, which was conducted over three separate dates: June 15, June 28, and July 26, 2021. On June 15, 2021, Plaintiff was repeatedly questioned as to whether she had any contemporaneous records or written documentation that would corroborate her claims. Plaintiff testified that she had recently discovered that some of the notes she took during her employment with MCHA had never been produced to Defendants. *See* Excerpts from the Deposition of Jennifer Fischman, dated June 15, 2021 ("Fischman June 15 Dep."), a copy of which is annexed to the Colwin Declaration as **Exhibit "B,"** at 117:9-118:7.  Defendants demanded the immediate production of these records, and less than one week before the second day of her deposition, Plaintiff produced new documents, including the Falsified Note.

On the second day of her deposition, Plaintiff told the story allegedly memorialized in the Falsified Note. *See* Excerpts from the Deposition of Jennifer Fischman, dated June 28, 2021 ("Fischman June 28 Dep."), a copy of which is annexed to the Colwin Declaration as **Exhibit "C,"** at 281:8-286:23. When asked about any contemporaneous records of this incident, Plaintiff identified only the Falsified Note, which she claimed she created on the evening of March 1, 2016, following a discussion earlier that day with Mr. Oliva.  *Id.*  at 282:4-285:2.  When asked why she had not produced that document earlier, Plaintiff testified under oath that she had recently found new documents in "another part of my bedroom office," including the Falsified Note.  *Id.*  at 285:14. When asked about the relevance of this note to her case, Plaintiff testified that it was "critically important," and testified that "[it] is the basis for which I used for the complaint [sic]," but did not plausibly explain why it was not produced sooner.  *Id.* at 285:17-24.

### C.  Expert Analysis of the Falsified Note

Understandably skeptical about Plaintiff's extraordinarily late production of the Falsified Note, a document that appeared suspiciously tailor-made to support her litigation claims and so vital that she described it as the "basis for . . .  the complaint," Defendants retained Gerald M. LaPorte, a forensic chemist and document dating specialist, to analyze the document. *See* Expert Report of Gerald M. LaPorte, dated August 4, 2021 ("LaPorte Report"), a copy of which is annexed to the Colwin Declaration as **Exhibit "D."** Mr. LaPorte is an expert in performing physical and chemical examinations on a variety of documents to determine how, where, and when they were created, and whether they are authentic. *See id.* at 2-5.  He has worked in the field of forensic science for the past 28 years, twenty of which have involved performing physical and chemical examinations on documents to determine their origins. *Id.*  Mr. LaPorte is the Director of Research Innovation at the Global Forensic and Justice Center of Florida International University, and, among other things, previously served as Director of the Office of Investigative and Forensic Sciences at the National Institute of Justice, as well as the Chief Research Forensic Chemist in the Forensic Services Division of the United States Secret Service. *Id.*  He has testified over 100 times in county, state, federal, and international courts concerning document analysis, dating, and authenticity, and no court has ever barred him from testifying as an expert witness or excluded his testimony. *Id.*

Mr. LaPorte used a variety of procedures to evaluate the authenticity of the Falsified Note and other late-produced documents, including: (1) a physical examination and microscopic analysis of the document to review the type of ink used; (2) a review of indentation and impression evidence, as detected on the page beneath the one being written on; (3) optical analysis using filtered light to highlight modifications made to a document and identify whether different inks

were used in a single writing; and (4) a chemical analysis of the writing itself, in which tiny circular discs of the document are removed and tested to analyze their chemical compounds. *See* Ex. D at 9-17. As discussed at length in the LaPorte Report, these techniques are widely accepted procedures in the field of document analysis, and rely, in part, on published standards distributed by the Scientific Working Group for Forensic Document Examiners. *See id.* at 8.

After analyzing the Falsified Note, Mr. LaPorte determined, to a degree of "virtual[] certain[ty]," that the Falsified Note was in fact ***not*** created in March 2016, as Plaintiff testified and as is written on the document itself. *Id.* at 7. Rather, Mr. LaPorte concluded that

> [i]t is highly probable that the handwritten entries on both sides of [the Falsified Note] were not executed on the purported date of March 1, 2016. Instead, the written entries were executed within two (2) years before I performed my testing, which would have been sometime after July 31, 2019.

*Id.* As Mr. LaPorte explained, under the definitions set out by the Scientific Working Group for Forensic Document Examiners: Standard Terminology for Expressing Conclusions of Forensic Document Examiners, "'Highly Probable' is used to describe evidence that is very persuasive, and the examiner is **<u>virtually certain</u>**, but there is some factor that precludes the examiner from reaching absolute certainty. The 'highly probable' threshold is one of **<u>virtual certainty</u>** based on the results from the examination and testing." *Id.* at 7 n.1.

Further, based on the "extremely high" amounts of volatile organic compounds found on the Falsified Note, Mr. LaPorte found it "probable" – that is, he was able to say with "very high confidence" – that the **<u>writing was less than six months old</u>** and consistent with the ink being in a "very 'fresh' stage." *Id.* Notably, this corresponds directly to the time period when the documents were produced, on June 25, 2021. Lastly, through his optical analysis of the Falsified Note, Mr. LaPorte uncovered that the written date, "3/1/2016," was written in a black ink different

from the one used to write the body of the note. *Id.* at 7-8.  In other words, although the difference in inks is undetectable to the naked eye, the Falsified Note was further modified to add the March 1, 2016, date.

It must also be noted that, in addition to all of the above, Mr. LaPorte found additional alterations in Plaintiff's belated production. This included edits and modifications to other documents, including references to the *Genomatica* litigation, as well as rebuttals to Plaintiff's termination. *See* Ex. D. at 20-24. As before, Mr. LaPorte's expert analysis has proven that these additional handwritten entries were not contemporaneously recorded by Plaintiff, but rather added subsequently, and after Plaintiff's termination.  *Id.*  This is only further evidence that Plaintiff's fraud was not an isolated occurrence, but rather part of an ongoing and calculated plan to deceive.

In short, this unchallenged evidence shows that Plaintiff: (1) manufactured the Falsified Note after she filed suit in 2018; (2) backdated the document to make it appear, falsely, as if it were created on March 1, 2016; (3) attempted to conceal the backdating by using a pen with the same color ink; and (4) committed perjury at her deposition when she verified that the document was authentic and created on March 1, 2016.

On August 4, 2021, Defendants wrote to Plaintiff's counsel to notify them that Plaintiff had materially altered documents and passed them off as original, contemporaneous records, committed perjury at her deposition, and was committing a fraud on the court by persisting in these lies. *See* Letter, dated August 4, 2021, a copy of which is annexed to the Colwin Declaration as **Exhibit "E."**  Defendants attached a copy of the LaPorte Report to this correspondence to fully advise counsel of the indisputable support for these conclusions. Pursuant to the Federal Rules of Civil Procedure, Defendants advised Plaintiff's counsel that, in light of Mr. LaPorte's expert analysis, many of the allegations in the FAC could not be pursued in good faith and that the case

should be withdrawn.  *See id.*  Plaintiff refused to withdraw her claims, admit to her fraud, or otherwise account for the evidence described in Mr. LaPorte's report.

After reviewing letter submissions from the parties and hearing from counsel at a teleconference, the Court provided Plaintiff six weeks to serve a rebuttal expert report concerning the Falsified Note. *See* Order dated August 5, 2021 [Dkt. No. 114]. Plaintiff failed to identify a rebuttal expert or serve a rebuttal expert report.

This motion followed.

**<u>ARGUMENT</u>**

**<u>PLAINTIFF HAS COMMITTED A FRAUD ON
THE COURT AND MUST BE SANCTIONED.</u>**

**A.  Sanctions Generally**

"Th[e] Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." *See Shangold v. Walt Disney Co.,* 03 Civ. 9522 (WHP), 2006 WL 71672, at \*4 (S.D.N.Y. Jan. 12, 2006) *aff'd* 275 F. App'x 72 (2d Cir. 2008); citing *Chambers v. NASCO Inc.*, 501 U.S. 32, 44 (1991) (a court has authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases"). This includes, among other things, the power to sanction parties for discovery abuses under Rule 37, as well as the authority to penalize parties for fraudulent filings under Rule 11.  *See Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 143-44 (S.D.N.Y. 2007) (Rule 37); *U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 948 F.2d 1338, 1343-44 (2d Cir. 1991) (Rule 11).

Further, "[b]eyond the powers expressly conferred by rule and statute, federal courts have the inherent power to sanction a party for conduct which abuses the judicial process." *See Skywark v. Isaacson*, 96 Civ. 2815 (JFK), 1999 WL 1489038, at \*14 (S.D.N.Y. Oct. 14, 1999), *adopted by*

Page **9** of 25

2000 WL 145465 (S.D.N.Y. Feb. 9, 2000). This authority includes and overlaps with the power to sanction a party under specific rules or statutes. Indeed, although a court should ordinarily rely on established rules in its determination of whether a party's conduct warrants discipline, "the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." *Chambers*, 501 U.S. at 33.

No matter the underlying foundation for the court's authority to sanction, courts routinely exercise their discretion to sanction a party where a "fraud on the court" has occurred – that is, "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action." *See Amerisource Corp. v. Rx USA Intern. Inc.*, 02 Civ. 2514 (JMA), 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd* 432 F. App'x 25 (2d Cir. 2011). Sanctions for a fraud on the court are warranted if a party establishes "by clear and convincing evidence" that the offending party "set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *See New York Credit & Fin. Mgt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25, 25 (2d Cir. Sept. 15, 2011) (citations omitted).

"Fraud upon the court has been defined as 'fraud which seriously affects the integrity of the normal process of adjudication.'" *Hargrove v. Riley*, No. CV-04-4587 (DGT), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007), citing *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir.1988). A "fraud on the court" explicitly and unequivocally includes falsifying evidence. *See New York Credit & Fin. Mgt. Grp.*, 432 F. App'x at 25 ("Falsifying evidence is sanctionable conduct."). Where such conduct is committed willfully or in bad faith, outright dismissal of an action is warranted. *See ComLab, Corp. v. Kal Tire*, 17 Civ. 1907 (KBF), 2018 WL 4333987, at

*9 (S.D.N.Y. Sept. 11, 2018); *accord Colella v. Republic of Argentina*, 04 Civ. 2710 (LAP), 2020 WL 4700930, at *4 (S.D.N.Y. Aug. 13, 2020) ("Where a party acts in bad faith, the actual effect of the [falsified evidence] on the litigation is not relevant to whether the conduct is sanctionable.") (citations omitted).

Here, Plaintiff created a fake document integral to her legal claims, took efforts to conceal her fabrication, falsely affirmed its authenticity in her discovery responses, and then committed perjury at her deposition when questioned on this issue. Plaintiff's abuse of the judicial process – including fabrication of evidence, refusal to correct her discovery responses or deposition testimony, and continued pursuit of knowingly false claims – demands severe sanctions under Rule 37, Rule 11, and the Court's inherent power. The fact that Plaintiff is a lawyer and officer of the court renders her conduct all the more worthy of sanction.

## B. Clear and Convincing Evidence Establishes that Plaintiff Is Committing a Fraud on the Court

The LaPorte Report provides compelling evidence that Plaintiff manufactured the Falsified Note after she filed suit in 2018, backdated the document to make it appear genuine, lied about the note's origin during her deposition, and used this "critically important" document as "the basis for . . . the complaint." *See* Ex. C, Fischman June 28 Dep. at 285:17-24; Ex. D, LaPorte Report, *passim*. Mr. LaPorte analyzed the Falsified Note using a combination of physical and microscopic examinations, as well as optical and chemical tests. This examination revealed extraordinarily high levels of 2-PE, a volatile organic compound found in certain inks, which takes approximately six to eighteen months to stabilize during its drying process. *See* Ex. D at 7. The high levels of 2-PE alone belie Plaintiff's claim that the document was created in March 2016 – more than five years prior to testing. Further, Mr. LaPorte tested pieces of the Falsified Note in heated and unheated

conditions, in order to compare the degree of evaporation of 2-PE and confirm the document's solvent loss ratio ("SLR").  Based on industry standards, an SLR of 25% or more is "extremely strong evidence" that the ink in question is less than two (2) years old.  *Id.* at 16-17.  Here, the average SLR of the Falsified Note was 31% – well beyond this threshold and indisputable evidence that the document was not created in 2016 as Plaintiff testified.  *Id.* at 19.  Finally, Mr. LaPorte's optical analysis of the Falsified Note, using infrared lighting, revealed that a different black ink was used to write the date of the document – that is, one ink was used to draft the body of the Falsified Note, and then a different black ink (of similar color) was used to write the date.  *Id.* at 17-19.  Although to the naked eye it appears that the entire page was written all at once, Mr. LaPorte's expert analysis uncovered that this misperception results from Plaintiff's fraud.

It must be reiterated that this document was not ancillary to Plaintiff's claims or her allegations of misconduct. Rather, the Falsified Note, which was slipped into a last-minute production provided after her first day of deposition testimony and one week prior to the *second* day of Plaintiff's deposition, appeared to corroborate her claims that she engaged in purportedly protected activity in March 2016 (namely, her complaint that Mr. Oliva condoned gender discrimination by a client company), and that the company terminated her in retaliation for those protected complaints. Indeed, as Plaintiff herself testified, the Falsified Note is "critically important" to her case, and she used this document as the "basis for . . . the complaint." Ex. C, Fischman June 28 Dep. at 285:17-24.

Mr. LaPorte's expert analysis, physical, optical, and chemical testing, and conclusions based on industry standards are more than sufficient to provide "clear and convincing" evidence that Plaintiff has committed a fraud on the Court. *See McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 444-45 (S.D.N.Y. 2002) (expert conclusion that audio tapes

were improperly edited by plaintiff was sufficient evidence of spoliation); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 582-83 (S.D.N.Y. 1996) (court-appointed expert's testimony provided "ample basis for concluding that Cerruti fabricated records . . . ."); *see also Pope v. Fed. Exp. Corp.*, 974 F.2d 982, 983 (8th Cir. 1992) ("Based on expert testimony and demonstrative evidence, the district court ruled that this note could not have been handwritten by defendant Collins, and instead had been manufactured as a cut and paste composite of other documents.").

Indeed, courts in this Circuit have explicitly credited Mr. LaPorte's expert analysis and ink-dating techniques, including the exact methodologies used here. *See*, *e.g.*, *Ceglia v. Zuckerberg*, 10 Civ. 00569 (AF), 2013 WL 1208558, at \*24-29 (W.D.N.Y. Mar. 26, 2013), *aff'd*, 600 F. App'x 34 (2d Cir. 2015) (accepting LaPorte's ink-dating conclusions and test of 2-PE evaporation rates to conclude that "it is highly probable the ink is less than two-years old"; case dismissed based on plaintiff's fraud on the court). Bolstered by Mr. LaPorte's stature as an expert, his report presents irrefutable (and unrefuted) proof that Plaintiff has committed a fraud on this Court by fabricating evidence, testifying falsely, and thereby "hinder[ing] the fact finder's fair adjudication of the case and [Defendants'] defense of the action." *See Amerisource Corp.*, 2010 WL 2730748, at \*5.

In opposition, Plaintiff provides no expert analysis to dispute Mr. LaPorte's conclusions, nor any comparable testing or chemical examination of the Falsified Note. Indeed, although Plaintiff specifically asked the Court for an opportunity to produce a counter-report in opposition to Mr. LaPorte's findings, she has failed to do so. Evidently she could not find a document examiner able to refute Mr. LaPorte's findings.

### C. Plaintiff's Abuse of the Discovery Process Warrants Dismissal of her Case under Rule 37 and the Court's Inherent Power

Once a court concludes that a fraud on the court has occurred, it must next determine what sanction is appropriate to "preserve the integrity of the courts." *Shangold*, 2006 WL 71672, at *1. In analyzing what sanction to impose, courts consider five factors:

> (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the [other party]; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future.

*Hargrove*, 2007 WL 389003, at *11 (citations omitted).  The ultimate decision of what sanction to impose is left to the sound discretion of the district court, and may include, among other things, a substantial fine, an adverse jury instruction, or dismissal of the suit. Neither a fine nor an adverse jury instruction would be appropriate here. Fines are insufficient to deter falsifying evidence because they allow the risk of detection to be treated as simply the cost of doing business. While an adverse jury instruction (such as an instruction to assume that a missing document would have supported the other party's assertions about what the document said) can be appropriate to remedy the loss or destruction of evidence, it does not sufficiently penalize the plaintiff for falsifying evidence, since the Court would exclude falsified evidence in any event. *See Lawrence v. City of New York*, 15 Civ. 8947 (WHP), 2018 WL 3611963, at *2, 8 (S.D.N.Y. July 27, 2018). Where "willfulness, bad faith, or fault on the part of the sanctioned party" is shown, however, dismissal with prejudice is appropriate.  *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Here, all factors militate in favor of dismissal.

1.  <u>Factor One:  Plaintiff's misconduct was intentional and egregious</u>

Plaintiff's creation of fake evidence, which she backdated and falsely presented as genuine, was the product of intentional bad faith. The degree of this fraud is exacerbated by Plaintiff's deposition testimony—on two separate dates—in which she emphasized how "critically important" the document was to her case, and how it provided contemporaneous proof in support of her claims of discrimination and retaliation. *See* Ex. C. at 285:17-24. Indeed, Plaintiff's outright refusal to correct the record, even after the falsity of the document was exposed, is telling as to the degree of bad faith at issue. *See Hargrove*, 2007 WL 389003, at *11 ("A severe sanction is warranted as [plaintiff's] forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity."); *Scholastic, Inc. v. Stouffer*, 221 F. Supp.2d 425, 444 (S.D.N.Y. 2002), *aff'd* 81 F. App'x 396 (2d Cir. 2003) (awarding sanctions based on party's "intentional bad faith conduct and fail[ure] to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions.").

Further, Plaintiff's efforts to conceal her fraud and distort the truth strongly weigh in favor of severe sanctions. *See ComLab, Corp.*, 2018 WL 4333987, at *8-9 ("ComLab not only intentionally fabricated critical evidence thereby perpetuating a fraud on the court, it subsequently spoliated evidence that was critical to Kal Tires defense in this case – let alone the Court's ability to easily determine whether fabrication occurred."). Here, Plaintiff first produced the Falsified Note in June 2021, slipped into a trove of previously unproduced documents, after her initial deposition testimony and only one week before the *second* day of her deposition. *See* Ex. B, Fischman June 15 Dep. 284:16 – 285:16. At her deposition, Plaintiff explained her delay in

locating this "critical[]" document by claiming that it was inadvertently lost and only recently discovered in her bedroom office.  *Id.*  As shown by the LaPorte Report, all of this was a lie. The fact is, that Plaintiff created the Falsified Note at least several years after 2016, and then went so far as to backdate it in order to add more fabricated support to her claims. This extraordinary misconduct demands equally extraordinary sanctions.  *See Colella*, 2020 WL 4700930, at *9 ("the finding of fraud on the Court calls for nothing less than a complete denial of relief for Plaintiffs") (citations omitted).

The severity of Plaintiff's efforts to create fake evidence and conceal the truth from both Defendants and the Court is compounded by the fact that she herself is an attorney.  *See Ford v. Amer. Broadcasting Co., Inc.*, 101 F.R.D. 664, 667 (S.D.N.Y. 1983) *aff'd* 742 F.2d 1434 (2d Cir. 1984) (discovery abuses heightened by the fact that "Plaintiff is himself a lawyer . . . [and the abuses] result from plaintiff's own bad faith and dishonest conduct, his deliberate and selective attempt to deceive by concealing evidence which he well knows would be powerfully damaging to his lawsuit."). Plaintiff is well aware of her discovery obligations, of the kind of evidence that would be "critical[]" to her case, and most importantly, of the gravity of the offense of falsifying evidence. She used her legal expertise to fabricate documents that she knew would be vital to her case and then lied about it under oath – the egregiousness of this fraud cannot be overstated.

2. <u>Factor Two:  Plaintiff's misconduct prejudiced Defendants</u>

This fraud has unfairly prejudiced Defendants. Defendants were, and continue to be, forced to expend substantial resources to defend against this lawsuit, investigate Plaintiff's perjury at her deposition, and retain an expert to analyze the fabricated documents that otherwise would have been presented as genuine to the Court and jury. *See ComLab, Corp.*, 2018 WL 4333987, at *9 ("ComLab's actions not only prejudiced Kal Tire, which has no doubt expended significant

resources in defending this litigation, but also the Court, which has now been forced to spend significant time presiding over this absurd series of events."). Plaintiff undertook substantial efforts to conceal this fraud from Defendants, including backdating the Falsified Note and committing perjury at her deposition, which made uncovering this fraud all the more difficult and burdensome. Plaintiff manufactured "critical[]" evidence in support of her case, and admitted at her deposition that she used this document as the "basis" for her complaint as a whole. *See* Ex. C, Fischman June 28 Dep. at 285:17-24.

The fact that this Falsified Note was fabricated calls into question the veracity of the entire complaint. A sanction of anything less than dismissal would only reward Plaintiff for her fraud – she would be allowed to pursue claims "based" on a document that Defendants have proven was entirely fake. As such, this factor, too, weighs strongly in favor of dismissal. *See Colella*, 2020 WL 4700930, at *9 ("once a litigant chooses to practice fraud, that misconduct infects his cause of action, in whatever guises it may subsequently appear.") (citation omitted). Indeed, courts across the country have held that where fabricated evidence is used to 'build up' a case, dismissal with prejudice is warranted. *See*, *e.g.*, *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) (dismissing case where party fabricated agreement upon which the breach of contract claim was based); *Pope*, 974 F.2d 982 (affirming dismissal where plaintiff fabricated handwritten note in support of case); *Lawrence*, 2018 WL 3611963 ("Dismissal is particularly appropriate where a plaintiff seeks to enhance the merits of her case with fabricated evidence.").

3.  Factor Three:  Plaintiff engaged in a pattern of misbehavior

Plaintiff's repeated misrepresentations warrant significant sanctions because her misconduct is not an isolated incident that can be remedied through lesser sanctions. Plaintiff manufactured "critical[]" evidence, added a backdate to make it appear more relevant, in support

of her case, took efforts to conceal her fraud by backdating the document using similar ink, and committed perjury at her deposition concerning the document's authenticity and origin. Indeed, she twice testified under oath that she had belatedly discovered these purportedly years-old handwritten notes, affirmed repeatedly that these documents were genuine, and then when confronted with this fraud, refused to accept responsibility and forced Defendants to engage in motion practice to seek relief.  This ongoing pattern of misconduct supports the outright dismissal of this suit.  *See Cerutti 1881 S.A.*, 169 F.R.D. at 582 ("pattern" of falsehoods supported dismissal); *Hargrove*, 2007 WL 389003, at *11 ("Given that there is clear and convincing evidence that [Plaintiff] has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate.").

    4.   <u>Factors Four and Five:  This misconduct is ongoing and will reoccur</u>

The fourth and fifth factors both strongly support dismissal of this case. Plaintiff's fraud is ongoing, because she continues to rely on false evidence even in the face of expert testing that uncovered her fraud, and her trial testimony will inevitably be consistent with the testimony she gave at her deposition. *Hargrove*, 2007 WL 389003, at *11 ("A severe sanction is warranted as [Plaintiff's] forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity."); *Scholastic, Inc.*, 221 F. Supp.2d at 444 (awarding sanctions after dismissing case at summary judgment because, among other things, "Stouffer has engaged in a pattern of intentional bad faith conduct and failed to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions."). As bluntly stated by this Court in *McMunn*, severe sanctions are warranted because Plaintiff's:

> lies and misconduct will almost certainly continue in the future
> if this action is permitted to go forward, thus nullifying any
> chance for a fair adjudication on the merits of her claim. She has
> shown no remorse for her deceptions, offered no apologies for
> her lies, and never corrected her misstatements.  In short, she
> deserves to be punished severely for perpetrating a fraud upon
> this Court.

*McMunn*, 191 F. Supp.2d at 462. As in *McMunn*, nothing in the record suggests that Plaintiff will

suddenly transform into a truthful litigant pursuing her claims in good faith. Plaintiff is an attorney

who well understands the wrongfulness of document fraud, the strategic importance of the

Falsified Note to her case, the severity of her misconduct, and the difficulty of uncovering her

fraud. She manufactured this document in an attempt to build up her frivolous claims, committed

perjury to bolster their relevance and support for her case, and now refuses to accept responsibility

for her fraud. No more and far less is needed to warrant the ultimate sanction of dismissal.

Further, "[n]othing less than outright dismissal would deter similar misconduct or

sufficiently punish plaintiff[]." *See DAG Jewish Directories, Inc. v. Y&R Media, LLC*, 09 Civ.

7802 (RJH), 2010 WL 3219292, at *5 (S.D.N.Y. Aug. 12, 2010).  As this Court only recently held

earlier this year,

> Given the severity and willfulness of her conduct, dismissal with
> prejudice is the only appropriate sanction for her actions.
> Overwhelming evidence indicates that [plaintiff] sought to
> defraud the court and defendants through a willful and persistent
> campaign of fabrication, spoliation and perjury. A lesser
> sanction – such as a monetary sanction, the exclusion of
> evidence, or an appropriate instruction to the jury at trial – would
> be insufficient to remedy the impact of this misconduct or to
> deter future misconduct.

*See Rossbach v. Montefiore Med. Ctr.*, 19 Civ. 5758 (DLC), 2021 WL 3421569, at *7

(S.D.N.Y. Aug. 5, 2021) (intentional fabrication of text message to support claims of harassment

warranted dismissal). *Rossbach* is directly analogous to the instant suit and demands dismissal

here as well.  No lesser sanction could remedy Plaintiff's misconduct without harming Defendants, because Plaintiff admittedly "based" her whole complaint on this manufactured document. Its fabrication calls into question the entirety of her case in chief and allowing her to continue in these claims would be to perpetuate this fraud.  *See Colella*, 2020 WL 4700930, at *9 (noting that where a fraud on the court occurred, "nothing less than a complete denial of relief," is appropriate, including the dismissal of parallel suits by a plaintiff) (citing *Aoude*, 892 F.2s at 1121).

This extraordinary fraud must end now. This case should be dismissed.

### D.  Dismissal is Justified Under Rule 11 Because of Plaintiff's Fraudulent Submissions to Defendants and the Court

Rule 11 provides a separate and distinct mechanism for sanctioning Plaintiff and dismissing this case. Rule 11 provides, in pertinent part, that

> [b]y presenting the court a pleading, written motion, or other paper – *whether by signing, filing, submitting, or later advocating it* – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b) (emphasis added). After a party is provided with due notice and an opportunity to respond to an alleged Rule 11 violation, the court has discretion to impose an "appropriate sanction" on a party for its misconduct.  *See id.* With respect to factual contentions in a pleading or other document, Rule 11 sanctions are appropriate where the specific allegation is "utterly lacking in support," and exhibits an "objective unreasonableness" on the part of the attorney or client signing the papers. *See StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014).  A court may sanction a party under Rule 11(c)(3), or through its inherent power, where a party has made a "false statement to the court and has done so in bad faith." *See S.E.C. v. Smith*,

710 F.3d 87, 97 (2d Cir. 2013). Although sanctions under Rule 11 are appropriate for filings or representations to the court, the court's inherent power to regulate its docket and root out bad faith conduct similarly authorizes sanctions for repeated misrepresentations made to an opposing party.

Here, Plaintiff's Complaint and Amended Complaint, which were "based" on the Falsified Note, run afoul of Rule 11. These pleadings were certified by Plaintiff or her counsel on her behalf, despite Plaintiff's knowledge that her claims had no basis in fact. *See South Pacific Shipping Co. Ltd. Inc. v. Redi-Fresh Produce Inc.*, 2014 WL 6968039, at *9 (S.D.N.Y. Dec. 9, 2014) (outlining the reasonable inquiry necessary before submitting filings with the Court). Indeed, Plaintiff's explicit representation to the Court that no misconduct has occurred, constitutes a direct violation of Rule 11. *See Dellefave v. Access Temporaries, Inc.*, 99 Civ. 6098 (RWS), 2001 WL 286771, at *5-6 (S.D.N.Y. Mar. 22, 2001) ("By advocating the allegations in the original complaint in his written and oral opposition to Druzakio's dismissal and sanctions motions . . . Dellefave has 'presented' the claims of the original complaint to this Court.") (internal citations omitted); *South Pacific Shipping Co. Ltd. Inc.*, 2014 WL 6968039, at *9 ("Counsel's continued advocacy of South Pacific's objectively unreasonable claim after removal warrants sanctions.").

Worse still, Plaintiff's fraud remains ongoing and unresolved. Even after being confronted with expert evidence of her fabrication and failing to produce any rebuttal expert report, Plaintiff has not withdrawn her claims. Rather, she is persisting in this fraud on Defendants and the Court through multiple avenues, both in her submissions before the Court and in her sworn statements to Defendants. To the extent some of these false, sworn statements are not explicitly covered by Rule 11, sanctions are certainly available under the Court's inherent authority. *See Chambers*, 501 U.S. at 46 (acknowledging the breadth of a court's inherent power to impose sanctions for bad-faith conduct).

The appropriate sanction is dismissal of this case. Only dismissal will adequately deter future misconduct and avoid penalizing Defendants for Plaintiff's fraud, which is sure to continue if this matter is permitted to survive. Plaintiff, an attorney who is certainly aware of her Rule 11 obligations, fabricated evidence to bolster her claims, and committed perjury at her deposition in an attempt to conceal this fraud. Thus, the sanction of dismissal is fully justified. *See AJ Energy LLC v. Woori Bank*, 18 Civ. 3735 (JMF), 2019 WL 4688629, at *12 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).

As this Court recently held in *AJ Energy*, only the sanction of dismissal can adequately deter bad faith actors, such as Plaintiff, from committing further abuses on the judicial process in an effort to bolster a frivolous suit. *See id.* ("One appropriate sanction is plainly dismissal of the FAC with prejudice, which, among other things, will help prevent future fraudulent lawsuits based on the factual allegations pressed here."). Indeed, courts have repeatedly dismissed cases under Rule 11 where, as here, a plaintiff attempts to build support for their claims through the submission of fraudulent evidence. *See Miller v. Bridgeport Bd. of Educ.*, 12 Civ. 1287 (JAM), 2014 WL 3738057, at *8 (D. Conn. July 30, 2014) (Rule 11 dismissal justified based on fabricated allegations used to bolster frivolous claims); *accord Jiminez v. Madison Area Tech. Coll*, 321 F.3d 652, 656-57 (7th Cir. 2003) (affirming Rule 11 dismissal in discrimination case where plaintiff submitted falsified documents in support of his claims); *Pope*, 974 F.2d at 983-94 (affirming Rule 11 dismissal where plaintiff "manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct."). Here, Plaintiff's "knowing presentation of a falsified document to [the] court is sufficient grounds for dismissal of [her] complaint." *Campos v. Corr. Off. Smith*, 418 F. Supp. 2d 277, 279 (W.D.N.Y. 2006).

**E.  Defendants Should be Awarded Attorney's Fees Based on Plaintiff's Deceptive Practices and Submission of a Fabricated Document**

Although under the "American Rule" parties are generally responsible for their own attorney's fees and costs, the Supreme Court has explicitly held that in addition to other sanctions, a court may exercise its inherent power to award attorney's fees when a party has acted in bad faith. *See Chambers*, 501 U.S. at 33; *accord Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 34 (E.D.N.Y. 2018) ("If a party violates Rule 11's requirements, courts may impose a sanction against the offending party including, *inter alia*, 'an order directing payment . . . of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.") (citing Fed. R. Civ. P. 11(c)(4)). Indeed, under 28 U.S.C.A. § 1927, an award of attorney's fees is explicitly provided for by statute where an attorney "unreasonably and vexatiously" multiplies proceedings and pursues claims in bad faith. *See Rossbach*, 2021 WL 3421569, at *6 ("When an attorney continues to defend a complaint even after learning of facts rendering the complaint 'fatally flawed' he has engaged in bad faith conduct sanctionable under § 1927.") (citation and internal brackets omitted).

Moreover, this Court has found, in a case where the plaintiff filed a forged affidavit, that the sanction of dismissal where it "would merely leave [plaintiff] and its counsel in the same position they were in prior to bringing this lawsuit" may not "provide sufficient deterrence . . . " *See AJ Energy LLC*, 2019 WL 4688629, at *12  (sanctioning plaintiff and counsel for violation of Rule 11 by awarding defendant "fees and costs associated with briefing its Rule 12(b)(6) motion and the Rule 11 motions" which, "combined with dismissal with prejudice, is a reasonably accurate measure of the harm [plaintiff] and its counsel have caused"); *see also Usherson v. Bandshell Artist Mgmt*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *20 (S.D.N.Y. June 26, 2020) (JMF), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 858 F. App'x 457 (2d Cir. 2021), and *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) ("The

Court begins with monetary sanctions. A "well-accepted" measure of sanctions for "bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary" is the opposing counsel's attorney's fees and costs."); *State v. United States Dep't of Comm.*, 461 F. Supp. 3d 80, 94 (S.D.N.Y. 2020) (JMF) ("Accordingly the Court will – and arguably 'must' Fed. R. Civ. P. 37(b)(2)(C) – order Defendants to pay the reasonable costs and attorney's fees caused by their lapse" of failing to provide complete administrative records and delay in producing documents in litigation).

Plaintiff initiated this suit in 2018 and has forced Defendants to incur substantial costs defending against her baseless claims for three years. This case has been the subject of extensive motion practice and costly discovery, including the retention of an expert witness to expose Plaintiff's fraud. Further, even after being confronted with her fraud, Plaintiff has refused to withdraw her claims. This has forced Defendants to incur the further costs of this motion for sanctions. The scope of Plaintiff's bad faith conduct calls for a sanction of dismissal and the award of attorneys' fees. *See Rossbach*, 2021 WL 3421569, at *8 (dismissing case and awarding attorney's fees where plaintiff's, "willful misconduct in fabricating evidence and destroying evidence of that fabrication" forced defendants to incur substantial costs investigating and revealing that fraud).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion for Sanctions in full and direct that (i) the Amended Complaint be dismissed in its entirety with prejudice, (ii) judgment be entered for Defendants, and (iii) Plaintiff pay Defendants' costs, legal fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                October 22, 2021

                                        Respectfully submitted,

                                        GORDON, REES, SCULLY &
                                        MANSUKHANI, LLP

                                        By:     /s/ *Mercedes Colwin*

                                                Mercedes Colwin
                                                Brittany L. Primavera
                                                *Attorneys for Defendants MCHA,*
                                                *Costa, and Oliva*
                                                1 Battery Park Plaza, 28th Floor
                                                New York, New York 10004
                                                (212) 269-5500


                                        SHEARMAN & STERLING LLP

                                        By:     /s/ *Jerome Fortinsky*

                                                Jerome S. Fortinsky
                                                Samuel J. Jolly
                                                599 Lexington Avenue
                                                New York, NY 10022-6069
                                                Telephone:  +1.212.848.4000
                                                Facsimile: +1.212.848.7179
                                                jfortinsky@shearman.com
                                                sam.jolly@shearman.com

                                                George Anhang
                                                401 9th Street, N.W.
                                                Suite 800
                                                Washington, DC 20004
                                                Telephone: +1.202.508.8000
                                                Facsimile: +1.202.508.8100
                                                george.anhang@shearman.com

                                                *Attorneys for Mitsubishi Chemical*
                                                *Holdings Corporation*