# EXHIBIT 1

Gerald M. LaPorte M.S.F.S.
Forensic Chemist & Document Specialist
Colorado

Kristen Welch, B.S.
Forensic Document Examiner
District of Columbia

Ron Crichton, B.S.
Ballistics Examiner
Michigan

Thomas Riley, B.S.
Forensic Document Examiner
Michigan



Todd W. Welch, B.A.
Forensic Document Examiner
Michigan

Jennifer Naso, M.S.F.S.
Forensic Document Examiner
New York

Robert May, B.S.
Latent Print Examiner
Michigan

Jeffrey Nye, M.S.
Forensic DNA Analyst
Michigan

P.O. Box 70, Frankenmuth, Michigan 48734-0070
Telephone (517) 394-1512  Fax (517) 803-4403

August 4, 2021

Ms. Brittany Primavera
Gordon Rees Scully Mansukhani
1 Battery Park Plaza, 28th Floor
New York, NY 10004

RE:  **Expert Report of Gerald M. LaPorte, B. Sc., B. Comm., M.S.F.S.**
**Riley Welch LaPorte & Associates Forensic Laboratories**
**Our Case No.: 21-032**
**United States District Court Southern District of New York**

*JENNIFER S. FISCHMAN v MITSUBISHI CHEMICAL HOLDINGS*
*AMERICA, INC.; MITSUBISHI CHEMICAL HOLDINGS CORPORATION;*
*NICOLAS OLIVA, in his individual and professional capacities; DONNA*
*COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in*
*their individual and professional capacities*

**Civil Action No. 18-cv-08188 (JMF)**

## I.  BACKGROUND

1.    I submit this report on behalf of Defendants.  I have been retained by Gordon

Rees Scully Mansukhani to conduct a forensic examination and expert analysis of certain

documents further described in Section III of this report.

2.    On July 29, 2021, I performed an inspection of certain production documents at

the law office of Valli Kane & Vagnini LLP located at 600 Old Country Road (Suite 519)

in Garden City, New York.  Also present from my firm was Ms. Jennifer Naso, a Board-

Certified Forensic Document Examiner, who received her training with the United States

Secret Service.  Ms. Naso transported testing equipment from her office in the New York

City area that will be further described; captured high resolution photographs; and performed



examinations for indented or impressed writing using an Electrostatic Detection Apparatus (ESDA) under my supervision, which will be described in Section VI(B). I performed all the remaining testing, including the chemical analysis of the inks, and reviewed the results from the indented writing examinations performed by Ms. Naso.

3.     In this report, I provide my qualifications; a description of the documents I examined; the bases for the methods used for the testing; the results from my examinations and testing; and my opinions. I am being compensated in this matter at a rate of $500 per hour and my compensation is not contingent on my findings, testimony rendered, or the outcome of this litigation.

## II.     QUALIFICATIONS

4.     I am a Forensic Chemist and Document Dating Specialist with Riley Welch LaPorte & Associates Forensic Laboratories. I have 28 years of experience in the field of forensic science and 20 years of experience performing physical and chemical examinations on a variety of documents to determine how they were produced, where they may have originated from, when they were created, and whether they are authentic.

5.     I am also employed with Florida International University where I am the Director of Research Innovation at the Global Forensic and Justice Center. As of July 2019, I retired as the Director in the Office of Investigative and Forensic Sciences at the National Institute of Justice, which is within the United States Department of Justice.

6.     Prior to my position with the United States Department of Justice, I served as the Chief Research Forensic Chemist in the Forensic Services Division at the United States Secret Service. I trained with the United States Secret Service in the field of forensic



document examination, specializing in the area of ink and paper analysis, as well as authenticating documents.

7.    I was designated by the United States Secret Service as a "National Expert" in the forensic examination of documents created by printers and copiers. In order to achieve this status, I was required to have published articles in the topic area in peer reviewed publications, qualified as an expert witness in the subject area in criminal court, and recognized by my peers as an expert in the area of printers and copiers by teaching workshops and working cases that were referred by other State, Federal, and International forensic laboratories.

8.    For three years, I served as the co-chair of the Standards Practices and Protocols Interagency Working Group (SPPIWG), under the Office of Science and Technology Policy within the Executive Office of the President of the United States.

9.    I was selected by the Attorney General of the United States to serve as a Commissioner on the National Commission on Forensic Science from 2014 through 2017. This Commission was composed of esteemed scientists, law enforcement officials, prosecutors, defense attorneys, and judges, with the underlying objective to enhance the practice of forensic science.

10.    I currently serve as the Chairperson on the Forensic Document Examination Subcommittee on the Organization of Scientific Area Committees (OSAC) for Forensic Science, which works to strengthen the nation's use of forensic science by facilitating the development of technically sound forensic science standards and by promoting the adoption of those standards by the forensic science community.



11.   I am the co-editor of the Journal for the American Society of Questioned Document Examiners.

12.   I am a member of the American Academy of Forensic Sciences (AAFS) and the American Society of Questioned Document Examiners (ASQDE). I was also a contributing member in the Scientific Working Group for Questioned Documents (SWGDOC) and served as a Technical Contact when standards were developed for the questioned document community.

13.   I participated in the European Document Experts Working Group (EDEWG) and have been a contributing member of the International Collaboration for Ink Dating (INCID), an international group dedicated to collaborating on methods for ink dating.

14.   I have organized and personally conducted more than 100 lectures, seminars, and training events in over 15 different countries for law enforcement agencies, professional organizations, and technical experts.

15.   I have published several scientific papers in the area of forensic document examination and authored three textbook chapters in the **Forensic Chemistry Handbook** (*Chemical Analysis Techniques Used in Forensic Document Examinations*), **The Wiley Encyclopedia of Forensic Sciences** (*Documents, Forgeries and Counterfeits*), and **Forensic Chemistry Fundamentals and Applications** (*Chemical Analysis for the Scientific Examination of Questioned Documents*).

16.   I have testified over 100 times in County, State, Federal, and International courts. I have never been excluded from testifying as an expert witness, nor have my opinions been criticized by a fact finder in any County, State, Federal, or International court, arbitration or administrative proceeding.


17.    A full and complete copy of my curriculum vitae is included in **Attachment 1**.

## III.    DOCUMENTS RECEIVED FOR EXAMINATION

18.    On July 29, 2021, I received the following documents from a representative at the law office of Valli Kane & Vagnini LLP in Garden City, New York:

Q1    One (1) piece of lined paper containing written entries in a column format with the names at the top of each column reading "Jen" "Kathryn" "Andy +3" and "Nick". Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000788.  A true and accurate copy of Q1 (000788) is included as **Attachment 2**.

Q2    A black covered spiral bound notebook titled "CAMBRIDGE® Limited" on the cover bearing numerous pages with handwritten entries. Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000789 through 000824.

Q3    A copy of what appears to be an envelope addressed to "Ms. Jennifer Stome Fishman". Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000825.

Q4    A copy of a letter beginning "Merry Christmas and Best Wishes for happy new year". Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000826.

Q5    One (1) piece of lined paper bearing handwritten entries beginning, "MLA Morgan Applied Sole U.S. Counsel". Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000827.  A true and accurate copy of Q5 (000827) is included as **Attachment 3.**

Q6    One (1) piece of lined paper bearing handwritten entries beginning with notes in the top left reading "N.Y. Labor; CBRE".  Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000828. A true and accurate copy of Q6 (000828) is included as **Attachment 4.**

Q7    A one-page email dated 12/05/16 beginning, "Dear Jennifer, I have worked with a lot of attorneys ...".   Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000829.


Q8    One (1) piece of paper bearing handwritten entries on both sides, dated 3/1/16.  Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000830 and 000831.  A true and accurate copy of Q8 (000830/000831) is included as **Attachment 5.**

Q9    A copy of what appears to be an envelope addressed to "Jennifer Fishman Esq." and a letter beginning, "Dear Jennifer, Thank you for taking care ...".  Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000832.

Q10   A one-page email dated 08/03/2015 beginning, "He was registered for both days ...".  Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000833.

Q11   A piece of note paper beginning, "Oerlikon Westbury, N.Y." and piece of note paper beginning, "2016 2.3B Swiss Franks".  Based on a PDF copy I received prior to the inspection and examination, these documents were Bates-stamped FISCHMAN 000834.

Q12   A one-page machine printed document beginning, "To be delivered by N. Oliva in person, ..." also containing a handwritten note along the right edge beginning "NEVER" and a handwritten note at the bottom reading, "JSF Nick authorized in office mtg ...".  Based on a PDF copy I received prior to the inspection and examination, this document was Bates-stamped FISCHMAN 000835.  A true and accurate copy of Q12 (000788) is included as **Attachment 6.**

## IV.    REQUEST

19.    I was requested to conduct forensic examinations and testing of Q1 (000788), Q5 (000827), Q6 (000828), Q8 (000830 and 000831), Q11 (000834), and Q12 (000835) to determine whether the written entries were executed on or around their purported dates or on a date more recently.


## V.   SUMMARY OF OPINIONS

20.   Based on my forensic testing, including physical, microscopic, optical, and chemical analysis, the following is a summary of my final opinions:

(a)   It is highly probable [1] that the handwritten entries on both sides of Q8 (000830/000831) were not executed on the purported date of March 1, 2016.  Instead, the written entries were executed within two (2) years before I performed my testing, which would have been sometime after July 31, 2019.  I performed a chemical analysis to measure the amount of a volatile organic compound (VOC), referred to as 2-phenoxyethanol (2-PE).  The level of 2-PE stabilizes over a period of approximately six to eighteen months as an ink goes through a complex drying process and is not significant much beyond two years after the ink has been applied to paper.  However, the levels of 2-PE were extremely high, along with other test results, which are consistent with an ink is still in a very 'fresh' stage (e.g., less than 6 months old).

(b)   Q8 (000830/000831) was altered by adding the date "3/1/16" to the document using a different ink than what was used for the handwritten notes appearing on both sides of the document.

(c)   There are two (2) handwritten entries that have been added to Q12 (000835) on the right side of and beneath the text printed paragraph using the same formulation of ink that was used for the handwritten notes on Q8 (000830/000831).  It is probable[2]

---

[1] The forensic document community relies on the Scientific Working Group for Forensic Document Examiners: Standard Terminology for Expressing Conclusions of Forensic Document Examiners. "Highly Probable" is used to describe evidence that is very persuasive, and the examiner is virtually certain, but there is some factor that precludes the examiner from reaching absolute certainty. The "highly probable" threshold is one of virtual certainty based on the results from the examination and testing.
[2] The forensic document community relies on the Scientific Working Group for Forensic Document Examiners: Standard Terminology for Expressing Conclusions of Forensic Document Examiners. "Probable" is used to describe strong evidence that is persuasive. The "probable" conclusion is one of very high confidence based on the results from the examination and testing.



that the handwritten notes were not created until after July 31, 2019, which would be sometime in the two (2) years prior to my analysis. The results from the chemical testing are not consistent with an ink that is allegedly 4 ½ years old and are far more supportive of an ink that is less than two (2) years old.

(d)    With respect to Q6 (000828), nearly all of the handwritten entries were executed with blue non-ballpoint writing ink (e.g., gel ink, felt tip pens, and roller-ball pens); however, there are no generally accepted methods to estimate the age since non-ballpoint inks are primarily water-based and do not contain solvents that persist over months or years like ballpoint inks; and

(e)    While I did examine the remaining documents, I did not perform ink dating analysis, and therefore, I cannot conclude whether or not the written entries on Q1 (000788), Q5 (000827), and Q11 (0000834) were executed sometime within the past two (2) years.

## VI.    REASONS AND BASES FOR EXAMINATIONS

21.    I performed a series of physical, optical, and chemical examinations using widely accepted procedures. As part of my testing, I also rely, in part, on published standards distributed by the Scientific Working Group for Forensic Document Examiners (SWGDOC).[3] The following is a list of six (6) standards applicable to the testing I conducted:

   A.  SWGDOC Standard for Scope of Work of Forensic Document Examiners

   B.  SWGDOC Standard for Examination of Altered Documents

---

[3] The SWGDOC standards can be found at the following web link:
http://www.swgdoc.org/index.php/standards/published-standards



C. SWGDOC Standard for Test Methods for Forensic Writing Ink Comparison

D. SWGDOC Standard for Indentation Examinations

E. SWGDOC Standard for Non-destructive Examination of Paper

F. SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners

22. A description and the scientific basis of the procedures I used are described in the following paragraphs of Section V.

**A.  Physical Examinations: Visual and Microscopic**

23. Physical examinations include non-destructive methods for inspecting the documents visually with an appropriate magnification device and/or light source. This portion of the examination is necessary to determine how a questioned document was produced and whether the written entries are original (i.e., created with a writing instrument) or reproductions (e.g., photocopied or scanned and printed).

24. The text, format, and/or images on documents can be printed using various methods. These methods of production are referred to as printing processes and are identifiable using a magnifying device with an appropriate light source. The most common types of home and office machines utilize toner (e.g., photocopiers, laser printers, and some facsimile machines) or inkjet technology (e.g., inkjet printers and some types of multifunction machines capable of scanning, copying, faxing, and printing). Typically, inkjet ink absorbs into the paper and appears planar, or flat, when visualized with a microscope. Toner consists of a particulate material and sits on top of the paper, which appears to have a three-dimensional effect when observed with magnification



25.     Writing inks can be classified into ballpoint, non-ballpoint (e.g., roller ball, felt tip, gel), and fountain pen inks based on their unique microscopic characteristics that result from the combination of their differential chemical composition and interactions with paper. Determining the type and color of a writing ink is commonly reported following a physical examination and is further described in the *Standard for Test Methods for Forensic Writing Ink Comparison,* which is published and endorsed by SWGDOC.

**B.      Physical Examinations: Indented Writing and Impression Evidence**

26.     Documents can be examined for the presence of indented writing or other identifying impressions (e.g., markings from printing devices), which can appear on paper from writings or other markings made to another page while it was superimposed over the questioned material.  In this case, an Electrostatic Detection Apparatus™ (ESDA) was used to recover potential impressions that could indicate what was written on top of the questioned document(s).

27.     Whenever two or more sheets of paper are stacked or placed on top of one another, traces of the writing executed on the top page tend to become impressed into the sheet or sheets below. These impressions can be vital in associating whether two documents purportedly prepared at significantly different times were created on their purported dates.

28.     The following illustration in **Figure 1** shows the sequence of how writing can be transferred and then impressed into the underlying sheet or sheets of paper.


**Figure 1: An illustration showing how written impressions can be transferred to an underlying questioned document, which can then be examined to show what was previously written atop of the questioned document**.



Writing on page 1written while on top of and impressed into page 2 and 3.

Writing on page 2 written while on top of and impressed into page 3.

Examination of page 3 reveals impressions from pages 1 and 2.

29.     Impressions can sometimes be seen with the naked eye, whether unaided or with the use of a microscope.  Often, however, special techniques must be used.  One technique involves utilizing grazing light, where the document is viewed while moving a strong light source, such as a fiber optic light, at various angles and directions.  The results can then be captured utilizing digital photography.

30.     The most common technique used to recover impression evidence, however, is by utilizing electrostatic processing of a document with an electrostatic detection device (EDD).  The most common EDD used, which is the one utilized by our firm, is the Electrostatic Detection Apparatus™ (ESDA and is manufactured by Foster & Freeman (see below images provided by Foster & Freeman).

31.     As described in the *SWGDOC Standard for Indentation Examinations*, in electrostatic processing, the document being examined is placed on a vacuum bed and covered with a thin clear plastic film.  An electrical charge is then placed on the surface of the document by passing a wand containing a high voltage charge over the surface of the



film. Next, tiny glass beads coated with black toner are cascaded over the surface of the clear plastic film. Due to the presence of the electrical charge, the toner fills in the impressed areas on the document. Finally, the developed toner image is fixed by encapsulating the toner with a lamination film containing an adhesive. The film adheres and fixes the toner, and then is placed onto a white backing. This is called an ESDA "lift." In an ESDA lift, impressions appear as dark lines and visible writing generally appears as white lines.

### C.   Optical Examinations

32.   Optical examinations, also referred to as filtered light examinations, are non-destructive and can provide valuable insight regarding the overall composition of ink and paper. Ink and paper are made from components that respond differently to different wavelengths of light, sometimes in regions of the electromagnetic spectrum beyond what the human eye is capable of seeing. The presence of colorants and other materials will directly affect the manner in which inks and paper absorb, reflect, and transmit light. Ultraviolet (UV), infrared reflectance (IRR) and infrared luminescence (IRL) illumination are energy sources that can be used to evaluate the properties of an ink. Forensic document examiners commonly use a Video Spectral Comparator (VSC) for this type of examination. I used a VSC 80, which is equipped with cameras, lights, and filters that allow me to conduct detailed examinations, while controlling both the wavelength of light being used to assess UV, IRR, and IRL characteristics of the writing inks. **Figure 2** below shows an example of two different black writing inks that appear to be the same under normal lighting conditions but are determined to be different once visualized in the infrared region.


**Figure 2: The top image is a check viewed with standard visible light and the bottom image is the check viewed using infrared luminescence (IRL). Viewing the check in the infrared region shows that the check was altered using a different black ink. The bright white writing is from the 'fluorescent' properties of one black ink that are not present in the other black ink.**



### D.    Chemical Examinations

33.    The various ingredients of an ink can be analyzed using specialized laboratory equipment and I use two widely accepted techniques to analyze the chemical components. The first is thin-layer chromatography (TLC), and the second is gas chromatography/mass spectrometry (GC/MS). In order to conduct both TLC and GC/MS, I remove paper and ink plugs (circular discs ranging from 0.5 to 1.0 millimeter in diameter) from representative areas of the written entries with a specialized hypodermic-like device.

34.    Inks are typically composed of dyes and pigments (colorants), solvents, and other trace materials. TLC is a widely used and scientifically accepted method to separate and compare the various colorants present in the inks. In order to perform TLC on ink, the ink is extracted with a solvent from the sample plugs removed from the written entries. The ink


extract is then applied, as a tiny liquid spot, onto a glass plate coated with a white chalk-like silica layer. The TLC plate is then developed with a mixture of solvents. As the TLC plate develops, the solvent mixture then diffuses up the plate by capillary action and carries the ink spot upwards. Each colorant component of the ink will move at different rates along the TLC plate due to their physical and chemical differences and stop migrating at different points. Once the TLC plate is fully developed, the multiple colorant components will appear as a pattern of spots and bands. The separated components can then be compared with the separated components of other ink samples. In the event that inks contain colorant components that separate and migrate identically, the ink formulations are then said to match each other per the *Standard for Test Methods for Forensic Writing Ink Comparison*. **Figure 3** is an example of the colorant (dyes) patterns from five (5) different ink samples. Based on the results from this demonstrative analysis, there are three (3) different patterns, and therefore, three (3) different ink formulations.

**Figure 3: Example of a TLC plate with five (5) ink samples determined to be three (3) different ink formulations (Ink A, Ink B, and Ink C)**





35.　With respect to the chemical analysis of inks, GC/MS is used to detect and identify the non-colorant components of an ink, such as solvents and other volatile organic compounds (VOCs), which aid in the application of the ink to paper. VOCs are age-dependent and it is well established that solvent evaporation is the first process to occur once an ink is placed on a document.

36.　More specifically, the rate of evaporation of 2-phenoxyethol (2-PE), a solvent found in over 85% of blue and black ballpoint writing inks, stabilizes over a period of approximately six to eighteen months and is not significant much beyond two years after the ink has been applied to paper. That is, 2-PE evaporates very quickly when an ink is first placed on paper and then eventually slows and may continue to evaporate up to 24 months after the ink has been placed on the document. After 24 months, PE no longer evaporates at a significant or measurable rate. **Figure 4** is an illustration to show how the theoretical rate at which 2-PE dissipates from an ink once the ink is placed on paper.

**THIS SPACE INTENTIONALLY LEFT BLANK**


**Figure 4: A theoretical illustration to show the rate at which 2-PE dissipates from ink once it has been placed on paper. Solvent evaporation is rapid in a fresh ink, becomes slower in a medium-aged ink, and then ceases to an immeasurable rate after two (2) years.**



37.    For ink dating, GC/MS is used to measure differences in the concentration of 2-PE when samples of the questioned ink are heated and unheated.  In this method, samples of the questioned ink are removed from the document, and then one set of samples is heated, and the other set is not.  A greater concentration of 2-PE will evaporate from fresh ink compared to older ink when the samples are heated at a temperature of 70 degrees Celsius (70°C) for 90 minutes.  The resulting difference in the amount of 2-PE in the unheated samples compared to the amount of 2-PE in the heated samples is often referred to as the 'solvent loss ratio' (SLR). Based on extensive research by forensic laboratories throughout the world including the United States, Russia, Germany, Canada, and Sweden, comparisons



with known aged samples, and validation studies, a solvent loss ratio of 25% or more is extremely strong evidence to conclude that the ink is less than two (2) years old.[4] There are factors that may affect the concentration of 2-PE prior to testing such as storage in extreme cold, which slows the ink drying process, or extreme heat, which hastens the ink drying process, but none of these factors would be expected to cause an increase in the level of 2-PE.

38. Finally, it is important to understand that some inks are known to be 'fast aging' where they dry at an extremely fast rate within the first several weeks from the time the ink is placed on paper. Therefore, if the level of 2-PE is less than 25% then the result does not imply that the writing was definitively applied more than 2 years ago. At this time, there is no generally accepted method to conclusively identify an ink as being fast aging.

## VII.    OBSERVATIONS AND RESULTS FROM TESTING

39. I performed a series of physical, optical, and chemical tests[5] on the writing inks used on Q1 (000788), Q5 (000827), Q6 (000828), Q8 (000830 and 000831), Q11 (000834), and Q12 (000835). At least five (5) different inks were used to create the written entries on the aforementioned documents. The results from my testing are summarized in **Table 1** and will be referenced throughout my report.

---

[4] The 25% threshold level is the equivalent to a 'highly probable' conclusion as defined in the Scientific Working Group for Forensic Document Examiners: Standard Terminology for Expressing Conclusions of Forensic Document Examiners. "Highly Probable" is used to describe evidence that is very persuasive, and the examiner is virtually certain, but there is some factor that precludes the examiner from reaching absolute certainty.
[5] The chemical testing includes thin layer chromatography (TLC) analysis.



**Table 1**

| Document (Date) | Bates Stamp Number | Description of Entry | Color of Ink | Type of Ink | Writing Ink Formulation |
|---|---|---|---|---|---|
| Q1 (No date) | Fischman 000788 | All entries except "corp (plus Aldila Inc.)" and "MCC Genomatica Litigation" | Blue | Ballpoint | Ink 1 (Blue) |
| Q1 (No date) | Fischman 000788 | "corp (plus Aldila Inc.)" and "MCC Genomatica Litigation" | Black | Ballpoint | Ink 2 (Black) |
| Q5 (No date) | Fischman 000827 | All entries up to "Base 200-250 20-40%" | Blue | Ballpoint | Ink 1 (Blue) |
| Q5 (No date) | Fischman 000827 | All entries following "Base 200-250 20-40%" | Black | Ballpoint | Ink 3 (Black) |
| Q6 (No date) | Fischman 000828 | All entries except "888" number in top left | Blue | Non-ballpoint | Ink 4 (Blue) |
| Q8 (3/1/16) | Fischman 000830 and 000831 | All entries except the date | Black | Ballpoint | Ink 3 (Black) |
| Q8 (3/1/16) | Fischman 000830 and 000831 | "3/1/16" | Black | Non-ballpoint | Ink 5 (Black) |
| Q12 (1/30/17) | Fischman 000835 | All handwritten entries | Black | Ballpoint | Ink 3 (Black) |

40.  Based on a microscopic and optical examination using the Video Spectral Comparator (VSC), I determined that Q8 (000830/000831) was altered by adding the date 3/1/16 with a different ink than what was used for the other handwritten entries.  The "3/1/16" was created with a black non-ballpoint ink (Ink 5), while the remaining written entries were executed with a black ballpoint ink (Ink 3).  As shown in **Figure 5**, when I visualized Q8 using the VSC in the infrared mode, the ink used for the "3/1/16" entry exhibits different properties than the other handwritten entries.



**Figure 5**



41.    I proceeded to focus my analysis on Q8 (000830/000831) and Q12 (000835) since the same formulation of writing ink was used for these documents, which are purported to have been executed approximately 10 months apart, and Q8 was altered with the addition of a date.  Therefore, I performed an ink dating analysis on the Black Ink 3 which was used for the handwritten entries on both sides of Q8 (000830 and 000831), dated March 1, 2016. I observed significantly high levels of 2-phenoxyethanol (2-PE) that would not be expected in an ink entry that is over five (5) years old.  I compared the amount of 2-PE in a set of heated samples with the amount of 2-PE in a set of unheated samples as described in paragraph 37 to calculate the solvent loss ratio (SLR).  The ink entries on the front of Q8 (000830) revealed a SLR of 33% and the ink entries on the back of Q8 (000831) showed a SLR of 28%, for an average SLR of 31%.  The SLR values obtained are very strong and persuasive evidence that the handwritten entries on Q8 (000830 and 000831) were not



executed on March 1, 2016.  Instead, the written entries were executed within two (2) years before I performed my testing, which would have been sometime after July 31, 2019.  Due to the extremely high levels of 2-PE and the average SLR of 31%, the entries are consistent with being prepared sometime within the past 6 months.

42.    As shown in Table 1, Black Ink 3 was also used for the two handwritten notes on Q12 (000835), dated January 30, 2017, which is shown in **Figure 6**.  I performed duplicate testing as part of my ink dating analysis on the handwritten note below the printed text.  Once again, I observed significantly high levels of 2-phenoxyethanol (2-PE) that would not be expected in an ink entry that is over 4 ½ years old.  I obtained SLR values of 20% and 18% for an average of 19%.  I have seen values in the 'high teens' in known aged samples that were less than two (2) years old many times over the course of performing ink dating analysis hundreds of times.  Given the high levels of 2-PE in this case and the SLR level of 19%, the written entry is not consistent with being executed approximately 4 ½ years ago.

**THIS SPACE INTENTIONALLY LEFT BLANK**


**Figure 6**

I called you in to deliver the news that today is your last day with
us.  As you know, you have a documented history of poor communication
and a lack of judgment set forth in evaluations.  I worked very hard
to provide you with guidance and feedback to assist you in overcoming
these deficiencies.  Unfortunately, the recent situation with
Genomatica demonstrates your judgment continues to be significantly
impaired.  Making an offer of settlement without the express
authorization to do so was patently unethical.  You worsened the
situation by repeatedly failing to make me aware of the situation and
repeatedly withholding information from the client, MCC.  It wasn't
until MCC made me aware of their concerns did you then admit your
wrongdoing.  Your actions in Genomatica are emblematic of the
persistent problems experienced with you in the legal department.  The
added layers of unethical and unprofessional conduct and a deliberate
failure to disclose your actions, makes your continued employment with
us impossible.  Any documents provided to you or prepared during your
employment are proprietary to the Company.  I remind you of your
ongoing legal and ethical obligations of confidentiality and attorney-
client privilege.  We expect any documents and all other company
property in your possession will be returned to us immediately.  Pat
will escort you to your office to gather your personal belongings.
Any personal belongings not removed today will be delivered to your
home, at which time the delivery person will pick up all company
property not returned to us today.  You will be receiving COBRA
paperwork in the mail.  Any questions can be directed to HR.

43.    As shown in **Figure 7**, nearly all of the handwritten entries on Q1 (000788) were executed with Blue Ink 1, except two (2) added entries reading "corp. (Plus Aldila Inc.)", which follows the Aldila Golf entry in the first column and "MCC Genomatica litigation" which has been written at the bottom of the first column.  Therefore, Q1 (000788) has been altered with the addition of these two (2) entries which were executed with Black Ink 2.

RILEY WELCH LAPORTE
& Associates
Forensic Laboratories

**Figure 7**



```
Jen                  Kathryn              Andy T3.
MC USA               Verbatim             MTPA
MCPP                 Yupo                 MTDA
MKIC                 MFA                  MPH.VM
MYTEX                Verbatim Argent.     Alpha
MCIS
Noitex
ComUSA
MEPA                 Nick
MPCA                 GeNix brazil
Hishi plastics
Quadrant
Dianal
MRCFC
Aldila Golf    Corp (Aldila Inc.) Plus
MRC-Golf
Qualicaps
Technophar
Mytex Mexico
Filtec
MCPP Brazil
USRO

MCHA
MCC · Genomatica litigation
```
27+ of 31

44.    As described in Section VI(B), documents can be examined for the presence of indented writing or other identifying impressions (e.g., markings from printing devices), which can appear on paper from writings or other markings made to another page while it was superimposed over the questioned material.  The two (2) added entries on Q1 (000788) were impressed into the front of Q12 (000835) indicating that when the two (2) entries were written on Q1, the document was over top of Q12.  Although Q1 is not dated, the two (2)



entries would have been added sometime after January 30, 2017, which is the date of the Q12, and when it first came into existence.

45.     I also observed some impressed writing on the front of Q6 (000828), which is considered unsourced because it did not originate from the other Questioned documents that were examined in this case.

## VIII.     CONCLUSION

46.     Based on my professional experience, established scientific principles, and full consideration of the testing results, it is my opinion that:

(a) It is highly probable that the handwritten entries on both sides of Q8 (000830/000831) were not executed on the purported date of March 1, 2016. Instead, the written entries were executed within two (2) years before I performed my testing, which would have been sometime after July 31, 2019. Due to the extremely high levels of 2-PE and the average SLR of 31%, the results are consistent with the writing being executed as early as sometime in the past six (6) months.

(b) It is probable that the handwritten notes on Q12 (000835) were not created until after July 31, 2019, which would be sometime in the two (2) years prior to my analysis. The results from the chemical testing are not consistent with an ink that is allegedly 4 ½ years old and are far more supportive of an ink that is less than two (2) years old.

(c) Q1 has been altered with the addition of two (2) entries reading, "corp. (Plus Aldila Inc.)" and "MCC Genomatica litigation".

(d) The two (2) entries reading, "corp. (Plus Aldila Inc.)" and "MCC Genomatica litigation" were executed when over top of Q8 (000835), which means that the two


(2) entries would have been written on or after Q12 came into existence on January 30, 2017.

(e) Q8 has been altered with the addition of the date "3/1/16".

(f) With respect to Q6 (000828), nearly all of the handwritten entries were executed with blue non-ballpoint writing ink (e.g., gel ink, felt tip pens, and roller-ball pens); however, there are no generally accepted methods to estimate the age since non-ballpoint inks are primarily water-based and do not contain solvents that persist over months or years like ballpoint inks; and

(g) While I did examine the remaining documents, I did not perform ink dating analysis and therefore, I cannot conclude whether or not the written entries on Q1 (000788), Q5 (000827), and Q11 (0000834) were executed sometime within the past two (2) years.

47.     The analyses and conclusions presented herein are based on the evidence available at this time.  I reserve the right to rely upon additional discovery that occurs after this report is submitted.  To the extent additional information becomes available relevant to the conclusions expressed in this report, I will update my conclusions as appropriate.

48.     All of the conclusions expressed in the aforementioned paragraphs are based on widely accepted scientific principles and methodologies.

Gerald M. LaPorte, B.Sc., B. Comm., M.S.F.S.
Forensic Chemist and Document Dating Specialist

# ATTACHMENT 1

# GERALD M. LAPORTE
## Curriculum Vitae

**Positions:** | **Forensic Chemist & Document Dating Specialist**
Riley Welch LaPorte & Associates Forensic Laboratories
Lansing, Michigan USA

**Director of Research Innovation**
Florida International University – Global Forensic and Justice Center

United States Department of Justice and United States Secret Service (**RET**)

**Education:** University of Alabama at Birmingham (1994)
Birmingham, Alabama USA
Master of Science in Forensic Science (M.S.F.S.)

University of Windsor (1992)
Windsor, Ontario Canada
Bachelor of Commerce in Business Administration

University of Windsor (1990)
Windsor, Ontario Canada
Bachelor of Science in Biology (B.Sc.)

**Professional**
**Experience:** **Florida International University (FIU), Global Forensic and Justice Center**
**Director of Research Innovation (07/19 – Present)**
Duties: Oversee activities at the Global Forensic and Justice Center, which is an innovative resource for education, research, training and policy initiatives related to criminal justice, cyber and emerging forensic sciences.

**U.S. Department of Justice, National Institute of Justice (03/09 – 07/19)**
**Director, Office of Investigative and Forensic Sciences**
Duties: Provide expert analysis and advice on agency-wide programs or issues of national impact relating to forensic science; provide expert advice to top management officials; identify reasons for the nature and/or extent of program-related problems that arise and investigate area in need of improvement; write comprehensive resolution recommendations; formally present findings before large and diverse audiences, such as Federal, state, and local government representatives, special interest groups, the scientific community, and the media. Testify in Congress on behalf of the Department of Justice.

**United States Secret Service (04/01 – 03/09)**
**Chief Research Forensic Chemist (11/07-03/09); Senior Document Analyst (06/05-11/07); Document Analyst (04/01-06/05)**
<u>Duties</u>: Serve as the technical liaison and research chemist for the United States Secret Service pertaining to issues related to the chemistry of documents and fingerprints; coordinating clandestine tagging programs; direct all research projects within the Forensic Services Division.
<u>Laboratory Duties</u>: perform physical and chemical examinations on a variety of documents to determine how they were produced, where they may have originated from, and if they are authentic. These types of documents include anonymous letters (e.g., threatening, kidnapping, and extortion), suspected counterfeit identifications and financial documents (e.g. travelers checks, credit cards), contracts, and other miscellaneous written materials. Chemical examinations are conducted using thin layer chromatography (TLC), gas chromatography/mass spectrometry (GC/MS), liquid chromatography-mass spectrometry (LC/MS), infrared spectroscopy (IR), scanning electron microscopy/energy dispersive x-ray analysis (SEM/EDXA); perform chemical tests on unknown (e.g. miscellaneous powders) and controlled substances; testify in court as an expert witness.

**Marymount University (08/08 – 01/09)**
**Adjunct Professor of Forensic Science**
Arlington, VA
<u>Duties</u>: Prepare and conduct lecture material in various areas of the forensic sciences and prepare all laboratory exercises and examinations for graduate students
United States Secret Service, Washington, DC (04/01 – 03/09)

**Virginia Division of Forensic Science, Richmond, VA (11/99 – 04/01)**
**Forensic Scientist**
<u>Duties</u>: analyze evidence for the presence or absence of controlled substances using a variety of chemical and instrumental tests; utilize sophisticated instrumentation such as gas chromatography/mass spectrometry and Fourier transform infrared spectroscopy; testify in court as an expert witness

**Anne Arundel County Police Department Crime Lab, Millersville, MD (01/99 -11/99)**
**Forensic Chemist**
<u>Duties</u>: similar to the duties specified for Virginia Division of Forensic Science

**Government Scientific Source (GSS), Vienna, VA (09/98-01/99)**
**Technical Specialist**
<u>Duties:</u> serve as technical specialist in the sales of scientific and laboratory supplies and equipment.

**Accu-Chem Laboratories, Richardson, TX (07/96 – 09/98)**
**Forensic and Clinical Toxicology Specialist**
<u>Duties</u>: supervisor of toxicology department; sales and marketing of drug testing and occupational and environmental toxicology testing; serve as a liaison to physicians and personnel responsible for forensic urine drug testing; testify in court as an expert witness in the area of forensic urine drug testing

**Jefferson County Coroner/Medical Examiner Office, Birmingham, AL (09/93 - 07/96)**
**Autopsy Assistant/Forensic Technician**
<u>Duties</u>: identify, collect, preserve, and document any potential evidentiary material; eviscerate all human organs and document any relevant findings; perform histological examinations

**University of Alabama at Birmingham, Birmingham, AL (01/94 – 07/96)**
**Guest Forensic Science Lecturer**
<u>Duties</u>: lecture on areas related to forensic pathology and death investigation to undergraduate and graduate students

**Honors/Professional Affiliations:**

- American Academy of Forensic Sciences (AAFS)
- Mid-Atlantic Association of Forensic Scientists (MAAFS)
- American Society of Questioned Document Examiners (ASQDE)
- American Bar Association (ABA) – Criminal Justices Section
- Guest Reviewer for the Journal of Forensic Sciences
- Guest Reviewer for the Journal for the American Society of Questioned Document Examiners
- Contributing member and Technical Contact in the Scientific Working Group for Questioned Document Examiners (SWGDOC)
- Contributing member in the European Document Examiners Working Group (EDEWG) and the International Collaboration for Ink Dating (INCID)
- Recipient of the "2005 Forensic Scientist of the Year" by the Mid-Atlantic Association of Forensic Scientists
- Recipient of the United States Attorney's Office Eastern District of Virginia "Law Enforcement Public Service Award"
- Recipient of the FBI Director's Award of Excellence for Outstanding Scientific Advancement

**Professional and Scientific Committees:**

1. Co-Chair of the Standards, Practices, and Protocols Inter-Agency Working Group – **Executive Office of the President of the United States**/Office of Science and Technology Policy/National Science and Technology Council/Committee on Science/Subcommittee on Forensic Sciences
2. Participating member in the Expert Working Group for Human Factors in Latent Print Analysis
3. Participating member in the Expert Working Group for AFIS Interoperability
4. Participating member in the Expert Working Group for the Preservation of Biological Evidence
5. Commissioner on the National Commission on Forensic Science (NCFS)
6. Chair of the Forensic Document Examination Subcommittee on the National Institute of Standards and Technology (NIST) Organization of Scientific Area Committees (OSAC)
7. Co-Editor for the Journal for the American Society of Questioned Document Examiners

## INSTRUCTIONAL COURSES CONDUCTED

1. **Workshop Instructor**. "How Chemical Examinations of Inks and Paper Can Corroborate and Supplement Forensic Document Examinations." Presented at the Southwestern Association of Forensic Document Examiners (SWAFDE) Annual Meeting, Denver, CO. October 11, 2019.
2. **Workshop Instructor**. "How Chemical Examinations of Inks and Paper Can Corroborate and Supplement Forensic Document Examinations." Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Morgantown, WV. May 8, 2019.
3. **Workshop Instructor.** "Color and Light Theory: Applications for the Forensic Examination of Documents." Presented at the Southwestern Association of Forensic Document Examiners (SWAFDE) Annual Meeting, Las Vegas, NV. April 26, 2014.
4. **Workshop Instructor**. "Questioned Document Examination and Enhancement of Evidence and Interpretation of Evidence Using Various Light and Filter Technique." Presented at the American Academy of Forensic Sciences (AAFS) Annual Meeting, Seattle, WA. February 18, 2014.
5. **Workshop Instructor.** "Inkjet Technology and Forensic Examinations." Presented at the Annual Meeting for the American Society of Questioned Document Examiners (ASQDE). Dearborn, MI, August 2009.
6. **Workshop Instructor**. "Inkjet Technology and Forensic Examinations" at the Annual Meeting for the Southern Association of Forensic Document Examiners (SAFDE). Peach Tree City, GA, April 8, 2009.
7. **Workshop Instructor.** "Inkjet Technology and Forensic Examinations" at the Skill-Task Training Assessment & Research (ST2AR) Fall Workshop. Las Vegas, NV, October 22-23, 2008.
8. **Workshop Instructor.** "Applications of Light and Color Theory in Forensic Document Examinations" at the American Academy of Forensic Sciences (AAFS) Annual Meeting, Washington, DC. February 18, 2008.

9. **Workshop Instructor.** "Methods Used for Authenticating Questioned Documents" at the Mid-Western Association of Forensic Scientists (MAFS) Annual Meeting, Traverse City, MI. September 25, 2007.

10. **Workshop Instructor.** "Methods Used for Authenticating Questioned Documents" at the American Society of Questioned Document Examiners (ASQDE) Annual Meeting, Boulder, CO August 13-14, 2007.

11. **Instructor for the Midwest Forensic Resource Center (MFRC)** – Recorded Training. Questioned Documents and the Crime Scene, Ames, IA, July 18, 2007.

12. **Instructor at the Federal Bureau of Investigation (FBI) Academy** - Forensic Document Examiner Training Seminar, Quantico, VA. "An Analytical Approach to Forensic Document Examination." April 17, 2007.

13. **Instructor at the George Washington University**, Washington, DC. "An Analytical Approach to Forensic Document Examination." February 28, 2007.

14. **Instructor at Marymount University**, Arlington, VA. An Analytical Approach to Forensic Document Examination." November 14, 2006.

15. **Workshop Instructor**. "Authenticating Documents." Presented at the American Board of Forensic Document Examiners (ABFDE). Las Vegas, NV, November 6-7, 2006.

16. **Instructor at the George Washington University**, Washington, DC. "An Analytical Approach to Forensic Document Examination." October 18, 2006.

17. **Workshop Instructor.** "The Forensic Examination of Documents Produced with Office Machine Systems Utilizing Inkjet Technology." The International Association for Identification (IAI) 91st International Education Conference, Boston, MA, July 3, 2006.

18. **Workshop Instructor.** "Security Features in Documents. " Mid-Atlantic Association of Forensic Scientists Annual Meeting, May 3, 2006.

19. **Instructor at the Federal Bureau of Investigation (FBI) Academy** - Forensic Document Examiner Training Seminar, Quantico, VA. "The Forensic Examination of Inks." April 5, 2006.

20. **International Instructor in Doha, Qatar.** "The Examination of Counterfeit Documents." March 27-28, 2006.

21. **Instructor at Marshall University**, Huntington, WV. "Forensic Science at the United States Secret Service." March 15, 2006.

22. I**nstructor at Indiana University-Purdue University at Indianapolis.** "Forensic Science at the United States Secret Service." December 12, 2005.

23. **Workshop Instructor.** "The Forensic Examination of Printing Processes." American Board of Forensic Document Examiners (ABFDE). Las Vegas, NV, November 7-8, 2005.

24. **Instructor at the George Washington University**, Washington, DC. "The Forensic Examination of Printers and Copiers." December 1, 2004.

25. **Instructor at the University of Windsor**, Windsor, Ontario Canada. "Questioned Document Examinations." November 10, 2004.

26. **Instructor at the University of Windsor**, Windsor, Ontario Canada. "Forensic Science at the United States Secret Service." November 9, 2004.

27. **Instructor at the University of Windsor**, Windsor, Ontario Canada. "Forensic Drug Chemistry and Toxicology." November 8, 2004.

28. **Instructor at George Washington University**. "The Forensic Examinations of Inks and Paper." George Washington University, October 27, 2004.

29. **Workshop Instructor.** "The Forensic Examination of Documents Produced By Office Machine Systems Utilizing Inkjet Technology." Northeastern Association of Forensic Sciences, September 30, 2004.
30. **Instructor at Federal Law Enforcement Training Center.** "The Forensic Examination of Printers and Copiers" and "The Forensic Analysis of Inks and Paper." Brunswick, GA. June 21, 2004.
31. **Guest Speaker at the Federal Bureau of Investigation Laboratory.** "Forensic Chemistry and Questioned Document Examinations." Quantico, VA. May 5, 2004.
32. **Instructor at Forest Park High School.** "Applications of Forensic Chemistry." Woodbridge, VA. May 18, 2004.
33. **Workshop Instructor.** "The Forensic Examination of Documents Produced By Office Machine Systems Utilizing Inkjet Technology." Mid-Atlantic Association of Forensic Sciences, April 20, 2004.
34. **Instructor at George Washington University.** "The Forensic Examination of Printers and Copiers." George Washington University, November 20, 2003.
35. **Instructor at George Washington University.** "Ink and Paper Chemistry." George Washington University, October 30, 2003.
36. **Instructor at Marshall University.** "Ink and Paper Chemistry" and "Counterfeit Identification Examinations." Huntington, WV. September 23, 2003.
37. **International Instructor. International Law Enforcement Academy (ILEA).** "Ink and Paper Chemistry" and Counterfeit Document Examinations." Pretoria, South Africa. May 19-20, 2003.
38. **Instructor at Federal Law Enforcement Training Center.** "Printing Processes" and "Physical and Chemical Analysis of Inks and Paper." Brunswick, GA. June 22, 2003.
39. **International Instructor. International Law Enforcement Academy (ILEA).** "Ink and Paper Chemistry" and Counterfeit Document Examinations." Pretoria, South Africa. May 19-20, 2003
40. **International Instructor. International Criminal Investigative Training Program (ICITAP)**, U.S. Department of Justice, "Counterfeit Document Examinations" and "Ink and Paper Chemistry." Sophia, Bulgaria. January 16-17, 2003.

## PROFESSIONAL PUBLICATIONS

1. National Best Practices for Sexual Assault Kits: A Multidisciplinary Approach, August 2018: https://www.ncjrs.gov/pdffiles1/nij/250384.pdf.
2. Faraco, C. and **LaPorte, G**. National Institute of Justice Investing in Innovation for the Identification, Collection, and Analysis of Sexual Assault Evidence. Forensic Science Review; Volume 30 (2); July 2018: 113-117.
3. Chase, R and **LaPorte, G.** The Next Generation of Crime Tools and Challenges: 3D Printing. NIJ Journal No. 279, September 2017: https://www.nij.gov/journals/279/Pages/next-generation-of-crime-tools-and-challenges-3d-printing.aspx.
4. Weiss, D. and **LaPorte, G.** Uncertainty Ahead: A Shift in How Federal Experts Can Testify. NIJ Journal No. 279, September 2017: https://www.nij.gov/journals/279/Pages/a-shift-in-how-federal-scientific-experts-can-testify.aspx.

5. Wagstaff, I. and LaPorte, G. The Importance of Diversity and Inclusion in the Forensic Sciences. NIJ Journal No. 279, September 2017: https://www.nij.gov/journals/279/Pages/importance-of-diversity-and-inclusion-in-forensic-sciences.aspx.

6. **LaPorte, G**. Wrongful Convictions and DNA Exonerations: Understanding the Role of Forensic Science. NIJ Journal No. 279, September 2017: https://nij.gov/journals/279/Pages/wrongful-convictions-and-dna-exonerations.aspx.

7. Waltke, H., **LaPorte, G**., Weiss, D., Schwarting, D., Nguyen, M. and Scott, F. Sexual Assault Cases: Exploring the Importance of Non-DNA Forensic Evidence. NIJ Journal No. 279, September 2017: https://nij.gov/journals/279/Pages/non-dna-evidence-in-sexual-assault-cases.aspx.

8. Dutton, G. **LaPorte G**., Wagstaff, I. and Spivak, Cultivating the Next Generation of Forensic Scientists Through Science, Technology. Engineering and Mathematics (STEM). Journal of Forensic Research 2017,8:4; DOI: 10.4172/2157-7145.10000384. https://www.omicsonline.org/open-access/cultivating-the-next-generation-of-forensic-scientists-through-sciencetechnology-engineering-and-mathematics-stem-2157-7145-1000384.pdf

9. Gresham, K., **LaPorte, G**.., Montgomery, B. and Weiss, D. Using Innovative Technology to Investigate Targeted Mass Violence: What the Future Holds (May 2017) http://www.policechiefmagazine.org/using-innovative-technology/#sthash.bPcOad34.dpuf.

10. Jones, N., & **LaPorte, G**. (Eds.) (2017). *2017 National Institute of Justice Forensic Science Research and Development Symposium*. (RTI Press Publication No. CP-0004-1705). Research Triangle Park, NC: RTI Press. DOI: 10.3768/rtipress.2017.cp.0004.1705.

11. **LaPorte, GM.** (2015) Chemical analysis for the scientific examination of questioned documents, in Forensic Chemistry: Fundamentals and Applications (ed J. A. Siegel), John Wiley & Sons, Ltd, Chichester, UK. doi: 10.1002/9781118897768.ch8.

12. Technical Working Group on Biological Evidence. *Biological Evidence Preservation: Considerations for Policy Makers (*April 2015) (http://nvlpubs.nist.gov/nistpubs/ir/2015/NIST.IR.8048.pdf).

13. Technical Working Group on Biological Evidence Preservation. *The Biological Evidence Preservation Handbook: Best Practice for Evidence Handlers*. April 2013 (http://www.crime-scene-investigator.net/BiologicalEvidencePreservationHandbook.pdf)

14. Expert Working Group on Human Factors in Latent Print Analysis. *Latent Print Examination and Human Factors: Improving the Practice through a Systems Approach.* U.S. Department of Commerce, National Institute of Standards and Technology. February, 2012 (http://nij.gov/pubs-sum/latent-print-human-factors.htm).

15. Houlgrave, S., **LaPorte, G**., & Stephens, J. The Classification of Inkjet Inks Using AccuTOF™ DART™ (Direct Analysis in Real Time) Mass Spectrometry - A Preliminary Study. Accepted for Publication in the Journal of forensic Science on February 25, 2012.

16. **LaPorte, G.** & Stephens, J. *Analysis Techniques Used for the Forensic Examination of Writing and Printing Inks* in The Forensic Chemistry Handbook, John Wiley & Sons, 2012.

17. Houlgrave, S., **LaPorte, G**., & Stephens, J.  The Use of Filtered Light for the Evaluation of Writing Inks Analyzed Using Thin Layer Chromatography.  Journal of Forensic Sciences, Volume 56 (3), May 2011.

18. **LaPorte, G**., Stephens, J, and Beuchel, A.  The Examination of Commercial Printing Defects to Assess Common Origin, Batch Variation, and Error Rate.  Journal of Forensic Sciences, Volume 55 (1), January 2009.

19. Bicknell, D & **LaPorte, G**.  *Documents, Forgeries and Counterfeit*" in The Wiley Encyclopedia of Forensic Sciences.  John Wiley & Sons, 2009.

20. Arredondo, M., **LaPorte, G**., Wilson, J., McConnell, T., Shaffer, D., & Stam, M. Analytical Methods Used for the Discrimination of Substances Suspected to be Bar Soap: A Preliminary Study.  Journal of Forensic Sciences, Volume 51 (6), November 2006.

21. **LaPorte, G.**, Arredondo, M., McConnell, T., Stephens, J., Cantu, A., & Shaffer, D.  An Evaluation of Matching Unknown Writing Inks with the United States International Ink Library.  Journal of Forensic Sciences, Volume 51 (3), May 2006.

22. **LaPorte, G**.  Modern Approaches to the Forensic Analysis of Inkjet Printing – Physical and Chemical Examinations.  Journal of the American Society of Questioned Document Examiners, Volume 7, Number 1, June 2004.

23. **LaPorte, G**. The Use of an Electrostatic Detection Device to Identify Individual and Class Characteristics on Documents Produced by Printers and Copiers – A Preliminary Study.  Journal of Forensic Sciences, Volume 49 (3), May 2004.

24. **LaPorte, G.**., Wilson, J, & Cantu, A.  The Identification of 2-Phenoxyethanol in Ballpoint Inks Using Gas Chromatography/Mass Spectrometry.  Journal of Forensic Sciences, Volume 49 (1), January 2004.

25. Wilson, J, **LaPorte, G**, & Cantu, A.  Differentiation of Black Gel Inks Using Optical and Chemical Techniques.  Journal of Forensic Sciences, Volume 49 (2), March 2004.

26. **LaPorte, G**. Published Book Review, "Advances in the Forensic Analysis and Dating of Writing Ink."  Journal of Forensic Identification Volume 53(6), 2003\735.

27. **LaPorte, G,** Wilson, J, Mancke, S. Amanda, Payne, J, Ramotowski, R, & Fortunato, S. The Forensic Analysis of Thermal Transfer Printers, Journal of Forensic Sciences, Volume 48 (5), September 2003.

28. **LaPorte, G** & Ramotowski, R.  The Effects of Latent Print Processing on Questioned Documents Produced by Office Machine Systems Utilizing Inkjet Technology and Toner, Journal of Forensic Sciences, Volume 48 (3), May, 2003.

29. Lovett Doust, J & **LaPorte, G** (1991).  Population Sex Ratios, Population Mixtures and Fecundity in a Clonal Dioecious Macrophyte, *Vallisneria Americana*.  Journal of Ecology.  79: 477-489.

# PROFESSIONAL PRESENTATIONS

1. **LaPorte, G.M**., B. Johnson, and L.S. Schaeffer. "NIJ's NamUs and FBI Laboratory Collaboration: Using Next Generation Identification to Solve Unidentified Persons Cases." *American Academy of Forensic Sciences, 2018 Annual Scientific Meeting,* February 19-24, 2018, Seattle, WA. Program, p. 176, https://www.aafs.org/wp-content/uploads/2018FINALPROGRAM.pdf.

2. **LaPorte, G.** Strengthening Forensic Science: The Changing Landscape. Midwestern Association of Forensic Scientists Fall Meeting, Mackinac Island, Michigan, September 24, 2015.

3. **LaPorte, G.** Strengthening the Science in Forensic Science: An Update on Research and Development. Presented for the American Bar Association: 5th Annual Prescription for Criminal Justice Forensics, Fordham University, New York, New York, June 6, 2014.

4. **LaPorte, G.** The Forensic Examination of Non-Original Documents and Images: Is it Reliable to Make Conclusions About the Printing Process and the Type of Ink Used to Create the Original Document? Presented at the American Academy of Forensic Sciences Annual Meeting, Washington, DC, February 21, 2013.

5. **LaPorte, G.** The Challenges of Translating Forensic Science Research into Practice. Presented at the American Academy of Forensic Sciences Annual Meeting, Washington, DC, February 21, 2013.

6. **LaPorte, G.** Forensic Science: A Discussion on the Importance of Research and Practical Applications in High Profile Cases. Presented at Penn State University, State College, PA, October 25, 2012.

7. **LaPorte, G.** A Validated Approach to Ink Dating Using Solvent Analysis. Presented at the American Society of Questioned Document Examiners (ASQDE) Annual Meeting, Charleston, South Carolina, August 21, 2012.

8. **LaPorte, G.** and Stephens, J. The Importance of Validating and Verifying a Standardized Method: Envelope Examinations and the Anthrax Investigation. Presented at the NIJ/FBI Impression and Pattern Evidence Symposium, Clearwater, FL. August 7, 2012.

9. Taylor, M., Roberts, M, and **LaPorte, G**. Expert working Group on Human Factors in Latent Print Analysis. Presented at the 7th International Symposium on Fingerprints at the International Criminal Police Organization (INTERPOL), Lyon, France, April 25, 2012.

10. Taylor, M., Roberts, M, and **LaPorte, G.** Expert working Group on Human Factors in Latent Print Analysis. Presented at the Chesapeake Bay Division for the International Association of Identification. Cambridge, MD, March 28, 2012.

11. **LaPorte, G.** and Singer, K. Artificial Aging of Documents. Presented at the American Academy of Forensic Sciences Annual Meeting, Atlanta, GA, February 23, 2012.

12. **LaPorte, G.** Trace Evidence Moving Forward. Presented as part of a plenary panel at the 2011 Trace Evidence Symposium: Science, Significance, and Impact. Kansas City, MO, August 9, 2011.

13. **LaPorte, G**. The National Academy of Sciences Report: 2 Years Later. Presented at the Chesapeake Bay Division for the International Association of Identification. Cambridge, MD, March 21, 2011.

14. **LaPorte, G**. Forensic Science: The Importance of Research for Practical Casework. Presented as a Keynote Speech at the 1st Annual World Congress of Forensic Science. Dalian, China, October 21, 2010.

15. **LaPorte, G.** The Importance of Validating and Verifying a Standardized Method: Envelope Examinations and the Anthrax Investigation. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting. Hunt Valley, MD, May 8, 2009.

16. **LaPorte, G.** Questioned Documents and Homicide Investigations. Presented at the Annual Meeting for the Virginia Homicide Investigators Association. Norfolk, VA, October 6, 2008.

17. **LaPorte, G.** Questioned Documents and the Sub-Disciplines. Presented at the Symposium on Special Topics in Questioned Document Analysis. Ankeny, IA, September 30, 2008.

18. **LaPorte, G.** An Overview of the Forensic Examinations on Documents Produced Using Inkjet and Thermal Printing Devices and the Increasing Need for Security. 31st Annual Global Inkjet Printing Conference, Budapest, Hungary, March 12, 2008.

19. **LaPorte, G**, Beuchel, A, and Stepehns, J. The Examination of Commercial Printing Defects to Assess Common Origin and Batch Variation. Presented at the American Academy of Forensic Sciences Annual Meeting, Washington, DC, February 22, 2008.

20. **LaPorte, G.** Exonerations and Incarcerations: The Key Role of the Forensic Sciences – Questioned Documents. Presented at the American Academy of Forensic Sciences Annual Meeting, Washington, DC, February 19, 2008.

21. **LaPorte, G**, Holifield, A, and Stephens, J. The Black Money Scam. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Washington, DC, May 24, 2007.

22. Schwartz, R. and **LaPorte, G.** The Effects of Common Environmental Variables on the Infrared Luminescence Properties of Writing Inks. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Washington, DC, May 25, 2007.

23. Holifield, A and **LaPorte, G**. Artificially Aged Documents. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Washington, DC, May 25, 2007.

24. Voiles, R., Stephens, J., and **LaPorte, G.** The Forensic Examination of Documents Using Print Quality Analysis Software. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Washington, DC, May 25, 2007.

25. **LaPorte, G.** Forensic Applications of Chromatography at the United States Secret Service. Presented for the Minnesota Chromatography Forum. Minneapolis, MN, March 27, 2007.

26. **LaPorte, G**. The Necessity of Security Printing for the Forensic Scientist. Presented at the 30th Annual Global Inkjet and Thermal Conference. Prague, Czech Republic, March 2, 2007.

27. **LaPorte, G.,** Stoker, D., Thomas, Y, Stephens, J, and Shaffer, D. The Analysis of 2-Phenoxyethanol for the Dating of Documents. Presented at the 59th Annual Meeting of the American Academy of Forensic Sciences, San Antonio, TX, February 22, 2007.

28. Shaffer, D., Stephens, J. **LaPorte, G**. A Comparison of the Physical and Chemical Characterization of Conventional Toners vs. Chemically Prepared Toners. Presented at the 59th Annual Meeting of the American Academy of Forensic Sciences, San Antonio, TX, February 23, 2007.

29. Nelis, E., LaPorte, G., and Thomas, Y. The Use of Electrospray Ionization – Mass Spectrometry for the Identification of Controlled Substances. Presented at the 59th Annual Meeting of the American Academy of Forensic Sciences, San Antonio, TX, February 23, 2007.

30. **LaPorte, G.** The Forensic Examination of Documents Produced on Office Machine Systems Utilizing Inkjet Technology. Presented at the California Association of Criminalistics Fall Workshop Meeting, October 12, 2006.

31. **LaPorte, G**. The Physical and Chemical Examinations of Documents Produced Using Inkjet Technology. Presented at the 4th Meeting of the European Document Experts Working Group, The Hague, Netherlands, September 28, 2006.

32. Schuler, R., Treado, P.J., Gardner, C., **LaPorte, G.**, Stephens, J. Chemical Imaging for Questioned Document Examination. Presented at the 4th Meeting of the European Document Experts Working Group, The Hague, Netherlands, September 29, 2006.

33. **LaPorte, G.** The Forensic Examination of Documents Produced Using Inkjet Technology. Presented at the Imaging Materials Seminar: Inkjet Ink, Rochester, NY, May2, 2006.

34. Layman, M. and **LaPorte, G.** Questioned Documents and the Crime Scene. Presented at the 58th Annual Meeting of the American Academy of Forensic Sciences, Seattle, WA, February 23, 2006.

35. Shaffer, D, Stephens, J., and **LaPorte, G**. The Characterization of Envelopes for Questioned Document Examinations. Presented at the 58th Annual Meeting of the American Academy of Forensic Sciences, Seattle, WA, February 23, 2006.

36. Stephens, J. and **LaPorte, G** The Use of Hyperspectral Contrast Imaging for the Examination of Writing Inks. Presented at the 58th Annual Meeting of the American Academy of Forensic Sciences, Seattle, WA, February 23, 2006.

37. **LaPorte, G**. and Layman, M. The Use of Supplementary Testing in Forensic Document Examinations. Presented at the Annual Meeting for the American Society of Questioned Document Examiners, Montreal, Quebec, August 15, 2005.

38. **LaPorte, G.,** Arredondo, M, McConnell, Cantu, A. The Static Method of Dating Writing Inks – A Preliminary Assessment of the United States International Ink Library. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Pittsburgh, PA, May 19, 2005.

39. **LaPorte, G.** The Forensic Examination of Documents Produced Using Inkjet and Thermal Technology. Presented at the 28th Global Inkjet and Thermal Printing Conference, Barcelona, Spain, March 16, 2005.

40. **LaPorte, G**. The Examination of Inkjet Printed Documents – What's on the Frontier? Presented at the 57th Annual Meeting of the American Academy of Forensic Sciences, New Orleans, LA, February 24, 2005.

41. Shaffer, D. and **LaPorte, G.** Applications of Scanning Electron Microscopy/Energy Dispersive X-Ray Analysis at the United States Secret Service. Scanning: The Journal of Scanning Microscopies, Volume 26(2), March/April, 2004.

42. Arredondo, M and **LaPorte, G.** The Forensic Examination of Paper. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Wilmington, DE, April 23, 2004.

43. **LaPorte, G.** The Forensic Examination of Documents and Counterfeit Identifications Related to Terrorism and Financial Crimes. International Conference on Asian Organized Crime and Terrorism. Honolulu, HI, April 10-16, 2004.

44. Cochran, J., Glisson, F., and **LaPorte, G** Characterization of Inks by Solid Phase Microextraction – Gas Chromatography/Time-of-Flight Mass Spectrometry. Pittconn 2004, Chicago, IL.

45. **LaPorte, G**. Analyzing Bar Soaps by Utilizing a Variety of Optical and Chemical Techniques. Presented at the 56th Annual Meeting of the American Academy of Forensic Sciences, Dallas, TX, February 20, 2004.

46. **LaPorte, G.** The Analysis of Volatile Organic Compounds in Ballpoint Inks Using Gas Chromatography/Mass Spectrometery. Presented at the 56th Annual Meeting of the American Academy of Forensic Sciences, Dallas, TX, February 19, 2004.

47. **LaPorte, G.** Inkjet Technology: The Need for Security and Forensic Traceability. Presented at the 11th Annual European Inkjet Printing Conference, Lisbon, Portugal, November 10, 2003.

48. **LaPorte. G.** Cold Cases in Forensic Science. Presented to the Virginia Homicide Investigators Association (VHIA). October 6, 2003.

49. **LaPorte, G.** The Use of an Electrostatic Detection Device (EDD) to Identify Class Characteristics on Documents Produced by Printers and Copiers. Presented at the American Society of Questioned Document Examiners Annual Meeting. August, 2003.

50. Wilson, J & **LaPorte, G**. The Differentiation of Gel Inks using Various Optical and Chemical Techniques. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Annapolis, MD, May 8, 2003.

51. **LaPorte, G**. The Analysis of 2-Phenoxyethanol in Ballpoint Inks Using Gas Chromatography/Mass Spectrometry. Presented at the Mid-Atlantic Association of Forensic Scientists Annual Meeting, Annapolis, MD, May 8, 2003.

52. **LaPorte, G**. The Forensic Examination of Thermal Transfer Printing. Presented for Information Management Institute: The 14th Annual Thermal Printing Conference, Scottsdale, AZ, April 28-30, 2003.

53. **LaPorte, G**. The Use of an Electrostatic Detection Device (EDD) to Identify Class Characteristics on Documents Produced by Printers and Copiers. Presented at the American Academy of Forensic Sciences Annual Meeting, Chicago, IL, February, 2003.

54. **LaPorte, G.** The Forensic Examination of Office Machine Systems Utilizing Inkjet and Toner Technology. Presented for Information Management Institute: The 10th Annual European Ink Jet Printing Conference, Lisbon, Portugal, October 28-30, 2002.

55. Payne, J & **LaPorte, G**. The Forensic Examination of Thermal Transfer Printers. Presented at the Mid-Atlantic Association of Forensic Scientists, Frederick Maryland, April 25, 2002.

56. **LaPorte, G** & Ramotowski, R. The Effects of Latent Print Processing on Questioned Documents Produced by Office Machine Systems Utilizing Inkjet Technology and Toner. Presented at the Mid-Atlantic Association of Forensic Scientists, Frederick Maryland, April 25, 2002.

57. **LaPorte, GM** & Davis, G.G. (1995). A Retrospective Study of the Incidence of Drugs in Decomposed Remains in Jefferson County, Alabama. Presented as an oral presentation at the American Academy of Forensic Sciences Annual Meeting, Seattle, WA.

58. Gruszecki, A, Davis, GG, **LaPorte, GM** & Robinson, CA (1995). The Incidence of Corresponding Presence of Cocaine and Cocaethylene in Both Hair and Routine Postmortem Biological Samples. Presented as a poster at the American Academy of Forensic Sciences Annual Meeting, Seattle, WA.

## COURT AND DEPOSITION TESTIMONY

I have testified approximately 35-40 times in the Commonwealth of Virginia and the States of Texas and Maryland on issues related to forensic urine drug testing, forensic chemistry, and controlled substance analysis.

I have provided testimony over 80 times in matters related to forensic document examinations in State, Federal, and International courts as follows:

1.  Tax Court of Canada vs L.D.G. 2000 Incorporated
    Montreal, Quebec Canada                                        April 9, 2002
2.  *USA v William Bartmann*
    United States District Court – Northern District of Oklahoma   October 17, 2003
3.  *USA v Clayton Lee Waagner*
    United States District Court – Eastern District of Pennsylvania   December 2, 2003
4.  Matter of Singh, Atvar (A76-676-494)
    U.S. Department of Homeland Security –
    Immigration and Customs Enforcement                            July 16, 2004
5.  *USA vs Paul Ihle, Jr.*
    United States District Court – Northern Indiana                September 9, 2004
6.  *State v Matthew C. Owens,*
    Case # 2NO-SO3-821 CR
    Nome, Alaska                                                   January 27, 2005
7.  *USA v Sylvester Richards Gayekpar*
    United States District Court – District of Minnesota           October 12, 2005
8.  *State v Matthew Owens, Case # 2NO-S03-821 CR*
    Kotzebue, Alaska                                               November 2, 2005
9.  *USA v Robert Sterling Miller*
    United States District Court -Western District of Texas
    Austin, Texas, Case#A-05-CR-247 SS                            April 26, 2006
10. *USA v Hector R. Lugo-Rios*
    United States District Court,
    Judicial District of Puerto Rico
    San Juan, Puerto Rico, Case#05-354 (JAF)                       May 24, 2006
11. *USA v Nancy Harlow*
    Northern District of Texas
    Dallas, TX Case#3:06-CR-011-D                                  July 18, 2006
12. *USA v Hector R. Lugo-Rios et al*
    United States District Court
    Judicial District of Puerto Rico
    San Juan, Puerto Rico, Case#05-354 (JAF)                       August 25, 2006
13. *State of New Jersey v Alfred Smith*
    Superior Court of New Jersey, County of Burlington
    Mt. Holly, NJ, Case#05-1988                                    August 31, 2006
14. *USA v Cleveland Kilgore*
    U.S. District Court For the District of Maryland
    Baltimore, MD, Case#RDB-06-0115                                September 21, 2006

15. *USA v Isidore Nouthong et al*
    U.S. District Court For the Eastern District of Virginia
    Alexandria, VA, Case#:1:06cr305                              October 26, 2006
16. *USA v Isidore Nouthong et al*
    U.S. District Court For the Eastern District of Virginia
    Alexandria, VA, Case#:1:06cr305                              February 7, 2007
17. *USA v Clyde Cook*
    U.S. District Court For the Eastern District of Tennessee
    Memphis, TN                                                  April 10, 2007
18. *USA v Jermain Betea*
    Eastern District of Virginia
    Alexandria, VA, Case#1:06cr305                                May 3, 2007
19. *USA v Crist Dauberman*
    Eastern District of Virginia
    Richmond, VA, Case#3:07CR040                                  May 8, 2007
20. *USA v Jose Padilla et al –*
    U.S. District Court For the Southern District of Florida
    Miami, FL, Case#04-60001-CR-Cooke                            July 12, 2007
21. *Commonwealth of Kentucky v Quincy Omar Cross*
    Hickman Circuit
    Clinton, KY, Case#08-CR-00001                                April 2, 2008
22. Blau v. Schaefer, MD (Docket MID-L-3015-05)
    New Jersey (**Deposition**)                                  July 25, 2008
23. *People of the State of NY v Stacey Castor*
    County of Onondaga
    Syracuse, NY, DR#05-359834/07-402152                         January 21, 2009
24. International Arbitration. Bank Julius Baer Co. Ltd v
    Waxfield Ltd Llc Bbcfd Sa G 04-6668-Cv 424 F.3d 278,
    New York, NY.                                                June 11, 2009
25. *USA v Mark A. O'Hair, Et al*
    Northern District of Florida
    Pensacola, FL, Case #3:08cr75/LAC                            July 28, 2009
26. *Giorgio v. Gibbens, M.D., et al*
    File No. 2392/S
    New Jersey (**Deposition**)                                  August 26, 2009
27. International Center for Settlement of Disputes (ICSID);
    Libananco Holdings Co. Limited v. Republic of Turkey
    ICSID Case No. ARB/06/8
    World Bank- Washington, DC                                   November 3, 2009
28. *Lake Forest Homeowner's Association v. Orlando Lake Forest*
    *Joint Venture, et al*
    Seminole County
    Case No. 07-CA-1867-16-L (**Deposition**)                    March 19, 2010
29. *Lake Forest Master Community Association v. Orlando Lake*
    *Forest Joint Venture, Orlando Lake Forest Inc., NTS Mortgage*
    Case No. 07-CA-1867-L
    Seminole County, FL                                          March 25, 2010

30. *Yakov Shlimovich, Derivatively on Behalf of*
    *Rightime Enterpirse, Inc. v. Mikhail Cheban*
    The Superior Court of the State of California,
    County of Los Angeles – Central District,
    Case Number BC 408095 (**Deposition**)                    February 28, 2011

31. *USA v Raogo Ouedraogo*
    U.S. Western District of Michigan
    Case No. 1:08-CR-68
    Grand Rapids, MI                                          March 10, 2011

32. *Yakov Shlimovich v. Mikhail Cheban, et al*
    Case No. BC408095
    Superior Court of the State of California
    Los Angeles, CA                                           March 25, 2011

33. *USA v. Rami Saba*
    U.S. Western District of Michigan
    Case No. 1:08-CR-68
    Grand Rapids, MI                                          May 20, 2011

34. *Susana Garcia Badaracco v. Ricardo Garcia Badaracco,*
    *Hermes Investment C. Inc ., Atrukay, Inc.,*
    Circuit Court of the 20th Judicial Circuit in and for
    Lee County, Florida (**Deposition**)                      September 23, 2011

35. *Pactool International, Ltd v. Kett Tool Company, Inc.,*
    United States District Court for the
    Western District of Washington at Tacoma,
    Civil Action No. 3:06-cv-05367-BHS (**Deposition**)       October 14, 2011

36. *Todd Basilone v. Ryan Basilone*
    Superior Court for the State of Alaska
    Third Judicial District at Anchorage
    Case Number: 3AN-08-10257 CI                              April 30, 2012

37. *Underhill v. APG Security-RI, LLC, The*
    *Asset Protection Group, LLC, and*
    *Dennis M. Kelly*
    Superior Court of Rhode Island
    Case Number: C.A. No. PB 10-6489                          September 18, 2012

38. *Paul D. Ceglia v. Mark Elliot Zuckerberg, Individually,*
    *and Facebook, Inc,*
    United States District Court Western District of New York,
    Civil Action No. : 1:10-cv-00569-RJA (**Deposition**)     July 26, 2012

39. Cott Beverages, INC v. Americann CO-Pack, Inc.
    and Automated Process and Packaging, LLC.
    Fourth Judicial District Court
    Civil No.: 100402774                                      September 24, 2012

40. *Shanna K. Bever et al v. Estate of James R. Freudenberg*,
    In The Circuit Court of Clay County, Missouri,
    Case No. 11CY-CV10505 (**Deposition**)                    October 26, 2012

41. *Aequitas Solutions, Inc. v. Larry Anderson, Gary P. Lloyd,*
    *and C Innovation, Inc.*
    In the Court of Chancery of the State of Delaware
    Case No. 7249-ML                                          November 27, 2012
42. *Shanna K. Bever et al v. Estate of James R. Freudenberg*,
    In The Circuit Court of Clay County, Missouri,
    Case No. 11CY-CV10505                                     November 28, 2012
43. *Gerald Morawski v. Lightstorm Entertainment, Inc.,*
    *James Cameron*
    United States District Court for the Central District of California
    Civil Action No. CV-11-10294 MMM (**Deposition**)        December 20, 2012
44. *In the Matter of Certain Opaque Polymers*
    United States International Trade Commission, Washington, DC
    Investigation No. 337-TA-883 (**Deposition**)             April 22, 2014
45. *Compania General Financiera Y Desarollo, S.A.*
    *v. La Banque Nationale de Paris*
    In the Circuit Court of the 11th Judicial District, Miami, FL
    Case No.: 11-17213 CA 30 (**Deposition**)                 June 2, 2014
46. *LPG Warehouses, Ltd., Russell Grigsby and Peniel Investments*
    *v. Storrie Street Investments, Ltd. and Michael Hogan*
    In the 26th District Court of Williamson County, TX
    Cause No.: 10-1284-C26                                    June 13, 2014
47. *Al Maya Trading Establishment v. Global Export Marketing*
    *Co. Ltd* (**Deposition**)
    In the Southern District of New York
    Case No. 14-cv-0275                                       July 18, 2014
48. *Korff v. Corbett, et al* (**Deposition**)
    Supreme Court of the State of New York
    Index No. 601425/03                                       July 25, 2014
49. *Fawzy amer Deghedy v. Viztek, Inc*.
    United States District Court for the Southern District of Iowa
    Case No. 3:12-cv-00048-CRW-TJS                            September 16, 2014
50. *Method Of Processing  Ethanol Byproducts and*
    *Related Subsystems ('858) Patent Litigation* (**Deposition**)
    United States District Court For the Southern District Of Indiana
    Case 1:10-ml-2181-LJM-DML                                 December 11, 2014
51. *Lela M. Kratz et al v. Sheri Meeks et al*
    Iowa District Court – Linn County
    Case No. EQCV 79541                                       January 15, 2015
52. *Compania General Financiera Y Desarrollo v.*
    *La Banque National De Paris*
    Circuit Court of the 11th Judicial Circuit
    Miami-Dade County, Florida
    Case No. 11-17213 CA 30                                   January 28, 2015

53. *Debra Wear v. Todd S. Hewell, III, M.D.*
    *and Todd S. Hewell, III, M.D., F.A.C.S. LTD* (**Deposition**)
    Circuit Court of Cook County, Illinois
    Case No. 10 L 002261 "E"                                    June 2, 2015

54. *In Re: Method Of Processing Ethanol Byproducts*
    *And Related Subsystems ('858) Patent Litigation*
    Southern District of Indiana - Indianapolis Division
    Master Case No.: 1:10-ml-02181-LJM-DML                      October 6, 2015

55. *WCA Logistics, LLC. v. Cyndi Carpenter, NKA*
    Cyndi Dibert
    In The Municipal Court of Champaign County, Ohio
    Civil Division
    Case No.: 15 CV F227                                        January 22, 2016

56. *Frank Beatty v. Oak Grove Technologies, LLC, et al*
    In The Circuit Court of Fairfax County, Virginia
    Case No: CL-2015-6923                                       March 14, 2016

57. *Phosint Limited, Cyprus v. National Bank Trust, Pjsc, Russia*
    The International Commercial Arbitration Court at
    the Chamber of Commerce and Industry of the
    Russian Federation
    Arbitration Case No. 159/2015                               September 6, 2016

58. *Nite Glow Industries Inc., I Did it, Inc. and*
    *Marni Markell Hurwitz vs. Central Garden &*
    *Pet Company & Four Paws, d/b/a Four Paws Products, Ltd.*
    United States District Court, District of New Jersey
    Case No.: 2:12-cv-04047-KSH-CLW (**Deposition**)           October 11, 2016

59. *Lincoln Studios, LLC, et al. v. DLA, et al.;*
    *P6 LA MF Holdings, LLC vs. NMS Capital Partners I, LLC*
    *And Related Cross-Actions*
    Superior Court of the State of California
    County of Los Angeles, Central District
    Case No.: BC551551 (Related Case BC 550227)                 October 14/18, 2016

60. *William Baker, Sr., Individually, and as an Heir of the Estate*
    *of Frederick Tyrone Baker, and Candice Renae Bryan as*
    *of Frederick Tyrone Baker, Deceased vs. Timothy Eichenlaub*
    *Individually, Las Vegas Pain Institute and Medical Center, LLC*
    *dba Comprehensive Urgent Care; Las Vegas Pain Institute, LLC*
    District Court, Clark County, NV
    Case No.: A-15-714369-C (**Deposition**)                    November 18, 2016

61. *Girish Dahyabhai Patel v.*
    *Yashwant Dahyabhai Patel*
    In the High Court of Justice
    Chancery Division Probate
    Case No.: HC-2015-002485
    London, England                                             November 24, 2016

62. International Center for Settlement of Disputes (ICSID)
    *Tethyan Copper Company Pty Limited (Claimant)*
    *v. The Islamic Republic of Pakistan (Respondent)*
    Case No. Arb/12/1
    Paris, France                                        February 22, 2017

63. *Bruce Jacobs v. Bank of America*
    United States District Court
    Southern District of Florida
    Case No. 15-24585-CV-UNGARO (**Deposition**)         October 12, 2017

64. *McClain/Plum v. David J. Gehring, M.D., et al*
    New Jersey Superior Court,
    Glouster County
    Docket No.: GLO-L-414-15
    Conventus No.: 101755-1 (**Deposition**)              November 9, 2017

65. *USA v. Kaleil Isaza Tuzman and*
    *Omar Amanat*
    United States District Court
    Southern District of New York                        November 20, 2017

66. *Mt. Charleston Investments, LLC v. Huerta, et al*
    District Court, Clark County, NV
    A-15-715918-B
    Las Vegas, NV                                        November 21, 2017

67. *Estate of Frederick Tyrone Baker et al. v.*
    *Timothy Eichenlaub et al.*
    District Court, Clark County, NV
    A-15-714369
    Las Vegas, NV                                        January 12, 2018

68. International Center for Settlement of Disputes (ICSID)
    *BSG Resources Limited, BSG Resources (Guinea) and BSG*
    *Resources (Guinea) SARL v. Republic of Guinea*
    Case No. Arb/14/22
    Paris, France                                        March 26-27, 2018

69. *Ida Mae Lee, LLC v. Icor, Ltd. et al.*
    Docket No.: 2017 CAR 004289
    Superior Court of the District of Columbia Civil Division
    Washington, DC
    (Hearing; Plaintiff Stipulated to Expert Findings)   July 3, 2018

70. *Chen Jinhui v. Wong Kam San; Huang Yuexia;*
    *Line Power Ltd; Trengei Development Ltd;*
    *Hawkins Development Ltd; Superfine Group Ltd.*
    In the High Court of the Hong Kong
    Special Administrative Region
    Court of First instance
    Action No. 1524 of 2012                              January 23-24, 2019

71. *United States of America v. Rao Desu*
    United States District Court, District of New Jersey
    Criminal No. 18-CR.613 (BRM)
    Trenton, New Jersey                                    October 16, 2019
72. *U.S. Bank National Association v. Harry H. Morall, II;*
    *Jane E. Carey; et al*
    Case No. 09CA3175
    In the Circuit Court of the 9th Judicial Circuit
    Orange County, FL                                      January 3, 2020
73. *Harold and Jill Lewis v. David E. Taylor, and Joshua Media*
    *Ministries International, Inc*.
    Case No. 18SL-CC02174
    In the Circuit Court of the County of St. Louis State of Missouri
    St. Louis, MO (**Deposition**)                         February 27, 2020
74. *Paul Atkinson & Glyn Mummery*
    (as joint liquidators of Grosvenor Property Developers
    Limited) v. Grosvenor Property Developers Limited
    (In Liquidation)/Mr. Siddhant Varma
    CR-2018-006183
    In the High Court of Justice Business and Property Courts
    of England and Wales (Chd)
    London, England                                        June 23, 2020
75. *Le Dec Investments 1800, LTD, et al. v. Alberto Kamhazi, et al*.
    Court Case No. 2018-017377-CA-44
    In the Circuit Court of the 11th Judicial Circuit in and for
    Miami-Dade County, FL (**Deposition**)                 July 31, 2020
76. *Duane Fox v. Richard Fox & Joanne Krebs*
    Case No. 19-CV-42
    State of Wisconsin – Circuit Court
    Green County, WI (**Deposition**)                      August 4, 2020
77. *Peerenboom v. Perlmutter*,
    Case No. 2013-CA-015257
    The 15th Judicial Circuit of Florida
    Palm Beach County, FL (**Deposition**)                 October 23, 2020
78. In the Matter of the Estate of:
    Robert Kit Kheong Lee,
    a/k/a Robert Kit Lee,
    a/k/a Robert Lee (Deceased)
    Case No. 2019PR30763
    Probate Court, City and County of Denver (**Deposition**)  December 11, 2020
79. Marguerite Malek v. Pierre Marc Malek and
    Kymed, Ltd, a British Virgin Islands Corporation;
    Loris Malek, Third Party Defendants
    Case No. 2019-16957-FC-04
    Miami, FL (**Deposition**)                             February 5, 2021

80. Marguerite Malek v. Pierre Marc Malek and
    Kymed, Ltd, a British Virgin Islands Corporation;
    Loris Malek, Third Party Defendants
    Case No. 2019-16957-FC-04
    Miami, FL                                    February 11, 2021

81. *Joseph C. Bamford and Young Min Ban v. Penfold, L.P.;*
    *Delaware Valley Regional Center, LLC; West 36th, Inc.;*
    *Joseph Manheim; And Reath & Co., LLC.*
    In the Court of Chancery of The State of Delaware
    C.A. No. 2019-0005-JTL (**Deposition**)        February 12, 2021

82. *Kellianne Goodnight v. Mark G. Tusa, M.D.;*
    *Sharon Ann Brown and Chattanooga Skin and Cancer Clinic, P.C.*
    In the Circuit Court for Hamilton County, Tennessee
    No. 19-C-331 (**Deposition**)                  April 21, 2021

83. *Joseph C. Bamford and Young Min Ban v. Penfold, L.P.;*
    *Delaware Valley Regional Center, LLC; West 36th, Inc.;*
    *Joseph Manheim; And Reath & Co., LLC.*
    In the Court of Chancery of The State of Delaware
    C.A. No. 2019-0005-JTL                         June 12, 2021


**Last Updated: June 13, 2021**