UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x

JENNIFER S. FISCHMAN,

                       Plaintiff,        Index No.

         -against-          18-CV-08188

MITSUBISHI CHEMICAL HOLDINGS AMERICA,

INC.; MITSUBISHI CHEMICAL HOLDINGS

CORPORATION; NICOLAS OLIVA, in his

individual and professional capacities;

DONNA COSTA, in her individual and

professional capacities; and JOHN DOES

1-10, in their individual and

professional capacities,

                   Defendants.

--------------------------------------x

                 June 28, 2021

                 10:09 a.m.

Veritext Legal Solutions
www.veritext.com
212-267-6868                 516-608-2400

1

2                    June 28, 2021

3                    10:09 a.m.

4

5           Continued videotaped deposition of

6  JENNIFER FISCHMAN, held at the offices of Gordon

7  Rees Scully Mansukhani LLP, One Battery Park

8  Plaza, New York, New York, pursuant to Notice,

9  before Lynne D. Metz, a Shorthand Reporter and

10 Notary Public of the State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2     A P P E A R A N C E S:

3

4         VALLI KANE & VAGNINI

5         Attorneys for the Plaintiff

6              600 Old Country Road

7              Suite 519

8              Garden City, New York 11530

9         BY:    MATTHEW L. BERMAN, ESQ.

10               ROBERT VALLI, ESQ.

11               SARA WYN KANE, ESQ.

12

13

14        GORDON REES SCULLY MANSUKHANI LLP

15        Attorneys for Defendants MITSUBISHI CHEMICAL

16        HOLDINGS AMERICA, INC., NICOLAS OLIVA AND

17        DONNA COSTA

18               One Battery Park Plaza

19               28th Floor

20               New York, New York 10004

21        BY:    MERCEDES COLWIN, ESQ.

22               BRITTANY L. PRIMAVERA, ESQ.

23               File # MCHEM-1135398

24

25

1
2          SHEARMAN & STERLING
3          Attorneys for Defendant MITSUBISHI CHEMICAL
4          HOLDINGS CORPORATION
5                  599 Lexington Avenue
6                  New York, New York 10022
7          BY:   JEROME S. FORTINSKY, ESQ.
8                  SAM JOLLY, ESQ.
9
10
11          CLARICK GUERON REISBAUM
12          Attorneys for Defendant DONNA COSTA
13                  220 Fifth Avenue
14                  New York, New York 10001
15          BY:   NICOLE GUERON, ESQ.
16
17
18          ALSO PRESENT:
19                  Rocco Mercurio - videographer
20                  Nicolas Oliva
21                  Donna Costa
22                  Skyler Stern - intern
23                  Adriana Acosta - intern
24
25

```
1              J. Fischman
2       A.    Yes.
3       Q.    -- to the places you applied?
4       A.    Yes, I did.
5       Q.    Do you know whether they actually
6  would have given you good references?
7       A.    Yes, I do.
8       Q.    How do you know?
9       A.    Because I was still in contact with
10 them.  I still had friendships with them.
11      Q.    How many companies did you apply to?
12      A.    I think over a hundred.
13      Q.    How did you go about looking for a
14 job?
15      A.    I looked when I first was terminated I
16 met with several recruiters.  People I had known
17 in the industry.  People that were friends,
18 family.  People that had placed me in this job.  I
19 had spoken with many of them.  I reached out to
20 Bliss who is a legal seconder.  I spoke with
21 people at Axiom and I did online research for
22 companies for which I had an appropriate
23 background for having come from manufacturing and
24 industrial corporations.
25      Q.    What is Axiom?
```

1              J. Fischman

2        A.      They are a temporary lawyer provider,

3   contract lawyer.  After multiple conversations

4   with Axiom and Bliss it became clear that I could

5   not take a temporary position from them because I

6   needed to be hired by a corporation in order to

7   practice law in the State of New York.

8        Q.      Did you ever take the New York Bar?

9        A.      I did not.

10       Q.      Why not?

11       A.      I had taken the California Bar in 1996

12  and it took three months of extraordinary time,

13  energy and effort and emotional strength to sit

14  for the bar exam and I did not feel that at this

15  time in my life that I had the emotional strength

16  to sit for that bar exam that many people do fail

17  and John F. Kennedy failed it three times.  It was

18  intimidating at that time in my life and I didn't

19  feel that was necessary.

20       Q.      Where were you looking to be hired?

21       A.      I looked in kind of -- I am sorry.  It

22  is very distracting when everybody is asking

23  questions.

24              MS. COLWIN:  I am sorry.

25       A.      That's okay.

1          J. Fischman

2          I looked all up and down the eastern

3     seaboard.  I wanted to stay in the New York

4     Metropolitan area of course because my children

5     are in school here.  My family is here.  I have

6     elderly parents who are here.  I looked New York.

7     I looked in places where I could probably waive in

8     like Florida, Maryland, D.C.  I looked at

9     government contractors in D.C.  Maryland, New

10    Jersey and New York, Connecticut.

11         Q.    Can you waive that in New York?

12         A.    No.  They don't have reciprocity with

13    California.

14         Q.    Were there other companies besides

15    Axiom and Bliss where you couldn't go further in

16    the process because you were not a member of the

17    bar?

18         A.    No.

19         Q.    It was just those two?

20         A.    Because of their business model they

21    are a contract employer.  They loan out attorneys

22    to do contract work like document review and et

23    cetera.  So those weren't full time positions.

24    Those were sort of continue with some income.

25         Q.    So you are a member of the bar in

```
 1                    J. Fischman
 2     California?
 3          A.    Yes.
 4          Q.    You are not a member of the bar in New
 5     York?
 6          A.    Yes, we have established that.
 7          Q.    And your claim is that you --
 8     withdrawn.
 9                 You said taking the bar was an
10     emotional investment of time and emotional
11     resources.  I am paraphrasing.
12                 But you took the bar in California and
13     I take it you thought it was worth it to do that;
14     right?
15          A.    I had taken the bar in California 20
16     years earlier when I had just graduated law school
17     and didn't have the responsibilities of raising a
18     family or taking care of a family and yes, it was
19     to practice law in California.  I took the
20     California Bar.
21          Q.    Was it worth it?
22          A.    Yes.
23          Q.    Why not do the same in New York?
24          A.    Because the jobs that I wanted in New
25     York would have been to work in a corporation as
```

1              J. Fischman

2    inhouse counsel which I had been doing for the

3    last 15 years and I did not need the New York Bar

4    to do that.  I needed the New York Bar only to do

5    the temp work that would have kind of supplemented

6    my income until I got a full time position.

7         Q.    You said you had to leave the practice

8    of law because of the separation with MCHA; right?

9         A.    Yes.

10        Q.    So if you had taken the bar in New

11   York that would have opened up a whole range of

12   additional opportunities to practice in New York;

13   correct?

14              MR. BERMAN:  Object to form.

15        A.    Like what?

16        Q.    As you know I am asking the questions.

17        A.    You are doing as good a job as anybody

18   in testifying.

19              So tell me do you think there were

20   other opportunities that I missed.  I think that I

21   applied to the opportunities for which I was

22   qualified for.

23        Q.    My question is:  Do you agree or

24   disagree that taking the New York Bar would have

25   opened up a range of opportunities for a lawyer

1              J. Fischman

2    that would otherwise not be available?

3              MR. BERMAN:  Object to form.

4         A.    I disagree because I don't believe

5    that taking the New York Bar would have opened any

6    additional opportunities for me for which I wasn't

7    already qualified for.

8    MO        MR. FORTINSKY:  Move to strike as not

9         responsive.

10        Q.    I am not asking about you personally.

11   I am asking about the general principle.

12             Do you agree that applying for the New

13   York -- sorry.

14             Would you agree that being a member of

15   the New York Bar opens up a range of possible job

16   opportunities that are otherwise unavailable to a

17   lawyer?

18             MR. BERMAN:  Object to form.

19        A.    What kind of lawyer?

20        Q.    A lawyer generally.

21        A.    I think it depends on what kind of

22   lawyer you are talking about and what kind of

23   practice that person is interested in doing.

24        Q.    Can you practice law in New York State

25   without being admitted to the bar in New York?

1              J. Fischman

2        A.    No.  Except if you are a registered

3   inhouse counsel at a corporation, then you can

4   practice law in the State of New York without

5   being a member of the New York Bar.

6        Q.    And you were registered?

7        A.    Yes.

8        Q.    Who did you register with?

9        A.    The State Bar of New York.

10       Q.    And when did you first register?

11       A.    When I first moved to New York in

12   2008.

13       Q.    Has your registration lapsed since

14   then?

15       A.    You are required by law to send a

16   notice of termination within a certain time period

17   of your termination from the corporation from

18   which you were registered.  So yes.  It is not

19   lapsed.  I had to terminate it.

20       Q.    When did that happen?  When did you

21   terminate it?

22       A.    Sometime after my termination from

23   Mitsubishi.

24       Q.    You said you applied for more than a

25   hundred jobs I think you said; right.

1                    J. Fischman

2              How many of them did you have

3     interviews with?

4         A.    Very few.

5         Q.    Approximately?

6         A.    A dozen.

7         Q.    What companies?

8         A.    I would have to look at the list to

9     recall.  I was supposed to have an interview at

10    Amex.

11              I had an interview with CBRE.  I had

12    multiple interviews there.  Maybe had a couple of

13    other phone interviews, but I really didn't get

14    very many interviews.

15        Q.    How far did you get in the process?

16        A.    I may have had an interview at

17    MasterCard.

18        Q.    And then did you advance in the

19    process beyond that, beyond the first interview

20    stage?

21        A.    I would have to go back and see the

22    list of companies to recall.

23        Q.    Were there any companies where you got

24    into a negotiation about salary?

25        A.    No.

1              J. Fischman

2         Q.     Were there any companies where they

3    said they wanted to call your references?

4         A.     Yes.

5         Q.     Which ones?

6         A.     Certainly when I was speaking with

7    Bliss the recruiter and RPN, the recruiters and

8    Elise Abraham, another recruiter.  All of them

9    asked for my list of references because they

10   wanted to preposition me I suppose.

11        Q.     Of the dozen companies that you

12   interviewed with, did any of them ask for your

13   references?

14        A.     Possibly.  I would have to look at the

15   list.  I am not even sure I got interviews with a

16   dozen.

17        Q.     But do you remember any instance in

18   which you were asked to provide an employer after

19   your interview with a list of references to call?

20        A.     I believe that I was asked on a few

21   occasions do you have references.  Who can we call

22   at Mitsubishi?

23        Q.     Who asked you that?

24        A.     I would have to look at the list again

25   to see who they are.

1              J. Fischman

2        Q.    Do you have that list?

3        A.    We have produced the list of all the

4    places I applied to.

5        Q.    What about the places you interviewed,

6    did you produce that?

7        A.    I am not sure if we had a separate

8    list.  I don't think it was segregated.

9    RQ           MR. FORTINSKY:  We would call for the

10           production of that list if it hasn't been --

11       A.    I don't think we have a separate list.

12       Q.    You mentioned just now that you would

13   have to look at the list.  That was the list --

14       A.    No.  The list I am referring to is the

15   list of all the applications that might jog my

16   memory as to where I had interviews.

17       Q.    But --

18       A.    Because there were so few.

19       Q.    As you sit here today, you can't think

20   of any instance, any specific name of a company

21   that asked you for your references?

22       A.    I think MasterCard.

23       Q.    And did you provide the references?

24       A.    I would have, yes.

25       Q.    And did you hear anything further from

1

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------------------X
     JENNIFER S. FISCHMAN,
4

                                    PLAINTIFF,
5

6          -against-        Civil Action No.:
                            18-CV-08188
7

8    MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.;
     MITSUBISHI CHEMICAL HOLDINGS CORPORATION;
9    NICOLAS OLIVA, in his individual and
     professional capacities; DONNA COSTA, in
10   her individual and professional capacities;
     and JOHN DOES 1-10, in their individual and
11   professional capacities,

12                                  DEFENDANTS.
     ------------------------------------------X
13

14                    DATE:  July 26, 2021
15                    TIME:  11:24 A.M.
16

17             CONTINUED VIDEOTAPED VIDEO CONFERENCE
18   DEPOSITION of the Plaintiff, JENNIFER STONE
19   FISCHMAN, s/h/a JENNIFER S. FISCHMAN, taken
20   by the respective parties, pursuant to
21   Agreement and to the Federal Rules of Civil
22   Procedure, held at the above-mentioned date
23   and time, before Frances Fitzpatrick, a
24   Notary Public of the State of New York.
25

1
2    A P P E A R A N C E S:
3    (Via Video Conference)
4
5    VALLI KANE & VAGNINI, LLP
        Attorneys for the Plaintiff
6      JENNIFER S. FISCHMAN
        600 Old Country Road, Suite 519
7      Garden City, New York  11530
        BY: MATTHEW L. BERMAN, ESQ.
8          ROBERT J. VALLI, JR., ESQ.
           SARA WYN KANE, ESQ.
9
10   GORDON REES SCULLY MANSUKHANI LLP
        Attorneys for the Defendants
11     MITSUBISHI CHEMICAL HOLDINGS AMERICA,
        INC., NICOLAS OLIVA and DONNA COSTA
12     One Battery Park Plaza, 28th Floor
        New York, New York  10004
13     BY: MERCEDES COLWIN, ESQ.
           BRITTANY L. PRIMAVERA, ESQ.
14         File # MCHEM-1135398
15
     SHEARMAN & STERLING LLP
16      Attorneys for the Defendant
        MITSUBISHI CHEMICAL HOLDINGS CORPORATION
17     599 Lexington Avenue
        New York, New York 10022
18     BY: JEROME S. FORTINSKY, ESQ.
           SAMUEL JOLLY, ESQ.
19
20   CLARICK GUERON REISBAUM LLP
        Attorneys for the Defendant
21     DONNA COSTA
        220 Fifth Avenue
22     New York, New York  10001
        BY: NICOLE GUERON, ESQ.
23
24
25

1
2    A P P E A R A N C E S:   (Continued)
3
4
5
6    A L S O    P R E S E N T:
7
         Legal Videographer - Carlos King
8
         Nicolas Oliva
9
10
11
12           *           *           *
13
14
15
16
17
18
19
20
21
22
23
24
25

1    JENNIFER STONE FISCHMAN

2         MR. BERMAN:  I'll object to

3    form on the grounds that it seems

4    that your question calls for mental

5    impressions of an attorney.  If you

6    want to ask a factual question, I

7    don't have any issue with that.

8         MR. FORTINSKY:  I am intending

9    for it just to be a factual question.

10        Q.    As of early February, had you

11   reached the decision to sue?

12        A.    No.

13        Q.    When did you reach the decision

14   to sue?

15        A.    I couldn't say when we sued.

16   When we got the -- when we filed the EEOC,

17   I guess.  I don't know.

18        Q.    So, what caused you to change

19   from not being certain about your intention

20   to sue as of February 2017 to becoming

21   later certain that you intended to sue?

22        MR. BERMAN:  Object to form.

23        A.    I couldn't recall exactly what

24   the steps were at that time, but I will

25   tell you it was a pretty dark time for me,

```
 1              JENNIFER STONE FISCHMAN
 2      and I was number one focused on getting
 3      another job immediately.  I immediately
 4      started working on my resume, and I
 5      immediately contacted every recruiter that
 6      I had contact with and I'm sure it was a
 7      combination of timing, and, you know, and
 8      the concern of, you know, I had been so
 9      wronged that, yeah, I was going to sue.
10              Q.    Whose handwriting is on Exhibit
11      31?
12              A.    That's my handwriting.
13              Q.    All of it?
14              A.    All of it.
15              Q.    What does the word, never, on
16      the upper right refer to?
17              A.    That refers in direct response
18      to the sentence next to it where Nick Oliva
19      writes, I worked very hard to provide you
20      with guidance and feedback to assist you in
21      overcoming these deficiencies, and my
22      response was, he never did that and there
23      was never a need for it.
24              Q.    Are you saying that you never
25      got any guidance or feedback from Mr.
```

1                JENNIFER STONE FISCHMAN
2        sorry -- on a legal pad, and the next page,
3        as well, that I found on an old legal pad,
4        and I realized I had not submitted it with
5        my job search material, and, so, I
6        submitted it.
7                Q.      Okay.  So, these two pages
8        relate to your job search I take it?
9                A.      Yeah.  Uh-hum.
10               Q.      And this is all -- do these two
11       notes all relate to the same single
12       conversation with a recruiter?
13               A.      No, no, no, not at all.  I'm
14       not even sure they are from the same -- I'm
15       not even sure -- they're not from the same
16       pad even, so, no, and the first page, that
17       MLA, that would have been I think the name
18       of the recruiter, but I'm not sure, but
19       these would have related to jobs that I
20       would have put on the listing that I did
21       provide to you that I provided to New York
22       State Department of Labor of potential jobs
23       that I --
24               Q.      Do you recall when these notes
25       were made?

1          JENNIFER STONE FISCHMAN
2          A.    I believe these were made
3    around the spring of -- spring and summer
4    of 2017.
5          Q.    And is the same true for 828?
6          A.    Yes.
7          Q.    And these notes also relate to
8    your job search I take it?
9          A.    Yeah.
10         Q.    For this first -- what is MLA?
11         A.    That might have been the name
12   of this company for Morgan Applied, but I
13   can't recall.
14         Q.    Did you -- what happened with
15   your application?
16         A.    It didn't go anywhere on this
17   form.  I probably had a phone interview,
18   but I'd have to look back on -- I'd have to
19   look back on the listing I gave you from --
20         Q.    You had a phone interview with
21   Morgan Applied?
22         A.    I believe so.
23         Q.    Okay.  And then lower down it
24   says, Kathy Lueders.  Who is she?
25         A.    I can't recall at this time.