# EXHIBIT DDD

| | |
|---|---|
| **From:** | Donna_Costa@m-chem.com |
| **Sent:** | Tuesday, September 1, 2015 11:53 PM |
| **To:** | fujiwara ken |
| **Subject:** | Re: FYEO |

Dear Ken:

We scheduled the call for September 23 because I had wanted to give Jennifer more time to improve, but between the complaint by Kelli, the MCPP litigation, and some other things I have learned in the last two weeks, I no longer think there is any chance of improvement. Accordingly, if you would like to speak sooner I am happy to do so. Either way is fine with me.

The reason I proposed hiring outside counsel was to satisfy Jennifer that the investigation of Kelli's claim against her was being handled properly. Jennifer complained that Pat has a conflict of interest and that she cannot preserve the attorney-client privilege. In other words, Jennifer practically insisted that it would not be a proper investigation unless we use outside counsel. I do not agree with Jennifer on this, but given that Jennifer was not cooperative with Pat, I thought the simplest way to create an appropriate record related to Kelli's claim was to have counsel do the interviews. Nevertheless, I am willing to accept your request and replace the formal investigation with a discussion between me and Jennifer. Hiring counsel would provide greater protection to MCHA, but litigation is unlikely because I have no intention of allowing Jennifer to fire Kelli. I do not know how the two of them will ever be able to work together again now that Kelli knows that Jennifer has been trying to find ways to get Kelli fired, but I will try to find a temporary solution until we solve the broader Jennifer problem. I told Jennifer that I want to meet with her next week to discuss our relationship and communication as well as her relationship and communication with Kelli. (Pat and I are in complete agreement about what is really going on between Jennifer and Kelli, but I prefer to explain by phone not email.)

I know that it seems to you that things have moved quickly with Jennifer. They have. Before I visited Japan I was very optimistic. I was bending over backwards for Jennifer in every way, including giving her complete space to get used to the job without feeling like she was in my shadow. I told everyone they had to give her the benefit of the doubt. I insisted that all members of the Legal Department look to her as the GC and listen to her. I devoted a lot of my time and energy to her success. I did not complain that she never came to speak to me or consult with me, because I assumed the situation was temporary and transitional. But in July I began to engage with her more on specific matters and I asked her to engage with me. This is when Pat and I started to see problems, and there have been many. It has become painfully clear how difficult Jennifer is to work with. She does not listen, unless the speaker is telling her what she wants to hear. She does not inquire as to what other people need or want or think, and as a result often has an incomplete understanding of situations she is involved in. She gets defensive and argumentative, often without basis, determined to prove that she is right, blaming others in order to avoid taking responsibility. She is competitive, not collaborative. She will not let other members of the Legal Department speak to me directly - she insists that all information go through her - to the point that some members sneak around to get my advice on matters because they do not fully trust her. I do not trust her. A lot of her work is good, she is smart and capable in many ways. However, there is no way for me to protect our businesses from work that is not good because she is like a black box, with little transparency and little information about what is going in and what is going out. She will not admit that there is anything she does not know - which has led to her giving bad and costly advice. She will not ask questions or seek input for fear that she will look less-than-perfect - which has led her to act on incomplete information. She can be impulsive and exhibit poor judgment. She will not acknowledge that she is overworked and needs help, which results in things being misunderstood, falling through the cracks, and worse. When I went to speak to her about the fact that it appeared that she was overworked and that her stress level was getting higher, her response to my concern and offer of help was to yell at me, to state that she was not overworked, that she was capable of juggling many additional things, and that the only source of her stress was me! What we have all seen in the last couple of months is that Jennifer's personality is not something separate from her capabilities and professionalism - her personality negatively impacts the quality of her work and her ability to manage, and creates risk for the businesses being

supported by MCHA. I can give you many actual examples, but I will stop for now.

I am going to speak to Nick and see if he is interested. It would be great to have Nick back again.

Thanks for your patience,
Donna


Donna Costa
President
Mitsubishi Chemical Holdings America, Inc.
655 Third Avenue
New York, NY 10017
212-672-9403
donna_costa@m-chem.com

This e-mail may contain information that is confidential, privileged or otherwise protected from disclosure. If you are not an intended recipient of this email, please delete it and any attachments and notify the sender that you have received it in error. Any unauthorized use, dissemination, disclosure, copying or printing of this email or the information contained herein or attached hereto is strictly prohibited.


Ken 2905413 Fujiwara---09/01/2015 09:27:03 PM---Donna, In principle, I am simply waiting for Sept. 23 call in order to deepen our understanding and

From: Ken 2905413 Fujiwara/AP/MCC@MCC
To: Donna USA0007 Costa/USAP/USA@USA@FCD
Date: 09/01/2015 09:27 PM
Subject: Re: FYEO

---

Donna,

In principle, I am simply waiting for Sept. 23 call in order to deepen our understanding and clarification to the situation, while the situation is getting worse, but still I need to hear from you.  Although we may even want to listen to Jennifer's version of the story, we will just trust your explanation through the conversation over the phone.  For instance, we do not clearly understand such an immediate need to hire outside counsel for WHAT ? type of questions and wish to discuss with you.

Of course I am surprised because, as I wrote previously, the recent situation sounds a bit sudden, as we had heard from you the news only two weeks ago and are not in the position to judge things.

About Nick, I like him a lot more than Jennifer.  To be frank, Jennifer has been sometimes difficult for us, while, based on my experience, Nick had tried to understand our culture and to be nice with people from Japan.  If he is interested in coming back to us, I know many people, including me, welcome him.  Actually, when he had a chance to come to Japan for a business trip, he always try to contact Uemura-san from blood company to set a reunion.

Regards,  Ken

▼Donna USA0007 Costa---2015/09/01 20:26:32---Ken I feel your anger/disappointment/surprise from half-way around the world, though I do not think

送信元: Donna USA0007 Costa/USAP/USA@USA
宛先: Ken 2905413 Fujiwara/AP/MCC
日付: 2015/09/01 20:26
件名: FYEO

Ken

I feel your anger/disappointment/surprise from half-way around the world, though I do not think it can compare with mine.

I would like your thoughts on the following: would you truly prefer to keep Jennifer as GC knowing all the people who are miserable as a result, or would you prefer to have Nick Oliva as GC (or someone like him)? Nick took me for a belated birthday dinner and to thank him for a favor I did for him a few months ago -- he is not happy in his current job....

Donna

Sent with Good (www.good.com)