UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER S. FISCHMAN, | CIVIL ACTION NO.: 18-CV-08188 |
| Plaintiff, | |
| v. | |
| MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC. et al. | |
| Defendants. | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
THE REPORT AND TESTIMONY OF CHAD L. STALLER AND RONA WEXLER**

VALLI KANE & VAGNINI LLP

Sara Wyn Kane
Robert J. Valli, Jr.
Matthew L. Berman

600 Old Country Road, Suite 519
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248
*Attorneys for Plaintiff*

# Table of Contents

Introduction ............................................................................................................................. 1

I.    The Report and Anticipated Testimony of Chad L. Staller should be Excluded ................. 1

  A    Staller's Report and Anticipate Testimony Run Afoul of Second Circuit Caselaw ............ 1

  B    Defendants Fail to Rebut Plaintiff's Other Reasons to Preclude the Staller Testimony ..... 3

II.    The Report and Anticipated Testimony of Rona Wexler should be Excluded .................... 6

Conclusion ............................................................................................................................. 9

**Introduction**

Plaintiff Jennifer S. Fischman ("Ms. Fischman"), by and through her attorneys Valli Kane & Vagnini LLP, submits this reply memorandum of law in support of Plaintiff's Motions in Limine (ECF 132, the "Motions") to exclude the report and anticipated testimony of Chad L. Staller and Rona Wexler.

**I.     The Report and Anticipated Testimony of Chad L. Staller should be Excluded**

Plaintiff's opening brief identified numerous reasons why the entire report and testimony of Chad L. Staller should be precluded, and specifically challenged Mr. Staller's "Reasonableness Opinion," concerning whether Plaintiff's Job Search efforts were reasonable, and his "Duration of Employment" opinion, concerning how long it should have taken for Plaintiff to have found suitable employment. *See generally*, Plaintiff's Memorandum of Law in support of Plaintiff's Motions in Limine to Exclude the Testimony of Chad L. Staller ("Staller") and Rona Wexler ("Wexler") ("MOL," ECF 144).

A     Staller's Report and Anticipate Testimony Run Afoul of Second Circuit Caselaw

As a threshold matter, Plaintiff pointed out that Staller's report and anticipated testimony (the "Staller Testimony") here suffers from the same defects that were previously identified in three other Second Circuit cases where he sought to offer comparable testimony as in this case. Defendants have been unable to distinguish those cases, which compel exclusion of Staller's testimony here.

*First*, in *Yang v. Navigators,* 7:13-cv-02073-NSR-LMS, ECF Dkt No. 127 (S.D.N.Y. May 18, 2017) (Roman, D.J.), the held that Mr. Staller's opinions about the reasonableness of the plaintiff's job search efforts and expected period of unemployment, post-termination, were *both* inadmissible. MOL at 8-9. Here, Mr. Staller offers the same analysis, which impermissibly seeks to compare an educated, professional job seeker who possesses multiple advanced degrees (and

over a decade of experience) to members of the general public seeking social welfare benefits, and yet Defendants do not even *mention* the *Yang* case in their opposition brief. *See generally* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion in Limine ("Def. Mem.," ECF 146). The Staller Testimony should be precluded on this basis *alone*.

*Second*, we pointed to *Roniger v. McCall*, 2000 WL 1191078, *3 (S.D.N.Y. Aug. 22, 2000), which excluded the testimony of Mr. Staller's colleague when he offered a duration of unemployment opinion claiming that the plaintiff should have found comparable employment within a year. MOL At 10. There, the opinion was based upon *general* statistical data based upon categories of: (i) All Workers; (ii) Women Age 45 to 54; (iii) Management, professional, and related occupations; and (iv) Manufacturing, rather than information tailored to the plaintiff's particular field. The Court in *Roniger* excluded the opinion, finding the analytical gap between the general data and the plaintiff's particular circumstances too large for the opinion to be reliable.

While Defendants' opposition brief here at least acknowledges *Roniger* (unlike with *Yang*), they attempt to distinguish the facts here on the basis that Staller purportedly "did appropriately limit the data points, narrowing them by Plaintiff's gender, age, occupational group, and industry group." Def. Mem. at 9. This is a distinction without a difference, as Mr. Staller has simply applied slightly less generic categories than were applied in *Roniger*.

*Third*, we cited *Castelluccio v. Intern Bus. Mach. Corp.*, 2012 WL 5408420 (D. Conn. Nov. 6, 2012), in which Staller's colleague was prevented from testifying as to whether the plaintiff there engaged in reasonable efforts to mitigate his damages, as opposed to opining concerning the nature and degree of efforts which might typify an average or successful job search. Again, Defendants do not even *mention* the *Castellucio* case in their opposition brief. They have no argument – so they duck the issue. The case law is clear: the Staller Testimony is impermissible

with respect to the reasonableness of Ms. Fischman's job search efforts, and her anticipated duration of unemployment.

### B  Defendants Fail to Rebut Plaintiff's Other Reasons to Preclude the Staller Testimony

Plaintiff's counsel made a number of additional arguments in support of precluding the Staller Testimony.  We explained that Staller is not offering any expert knowledge that will help a jury adjudicate this case.  *See* MOL at 12 - 14.  Nowhere in Defendants' brief do they contest the fact that we basically caught Staller attempting to cloak some folksy job search wisdom that he Googled under the veneer of "expert" knowledge.  *See generally*, Def. Mem.  Staller's deposition testimony revealed that he didn't even review Ms. Fischman's resume.  MOL at 18.

Nor do Defendants contest our argument that what Staller is offering up here is not expert testimony – it's just basic math.  MOL at 12.  Staller is counting Ms. Fischman's job search efforts and comparing them to how many job postings he found in a database.  *Id*. at 11.  The Jury doesn't need an expert to help them with basic counting.

Nor do Defendants dispute that Staller, in counting up the job openings that were ostensibly available to Ms. Fischman, includes jobs that are blatantly unsuitable for a job seeker in Ms. Fischman's position, such as Executive Officer positions, medical professional positions, and engineering positions.  MOL at 19.  As explained in our opening brief, Ms. Fischman had a California law license only, and yet Staller insisted that she was eligible for jobs that specifically called for a New York law license and that, if she accepted, would have placed her in violation of New York law which prohibits practicing law without a license.  *See* MOL at 2-3, 17-19.

Staller's comparisons only underscore another argument we presented, which is that Staller is not trained or qualified to compare jobs at all.  The science of comparing jobs belongs to the field of Industrial-Organizational Psychology, not labor economics.  MOL at 17.  Defendants have

3

barely anything to say about this point, either. They claim that "I-O psychology is another method of job analysis, and the method seemingly preferred by Plaintiff." Def. Mem. at 13. That's "thinking past the sale," because the implication is that Staller (and Wexler) conducted some other type of job analysis. They did no such thing. *See* MOL at 20 (Staller admitted he performed no job analysis to compare Ms. Fischman's previous job to the jobs available); *id*. at 30 (Wexler made a similar admission).

Nor do Defendants offer any substantive rebuttal of our arguments that the databases they rely on cannot be used for the purposes they seek to use them for. The Bureau of Labor Statistics database is not segmented finely enough to allow for any reliable conclusions about whether the job search efforts of an experienced, educated professional plaintiff such as Ms. Fischman. As we explained in our opening brief, BLS data doesn't include the age sex or other demographics of the job applicant pool, doesn't include compensation, doesn't identify whether jobs were posted internally or externally, and whether the positions were ultimately filled or unfilled, or how (i.e. through a recruiter). MOL at 31. Without this information, it's impossible to make any conclusions about whether there were jobs available that were suitable for Ms. Fischman.

Similarly, the Forensic Jobstats data is fundamentally unreliable, for all the reasons we pointed out in our opening brief (MOL at 16) and by the court in *Speights v. Arsens Home Care Inc.,* 2020 WL 6343263, *6-10 (E.D. Pa. Oct. 28, 2020). Defendants here attempt to distinguish *Speights* by claiming that the court in that case was not provided with information necessary to assess the reliability of the Forensic Jobstats database, and claiming that here, Staller has solved that issue by submitting a declaration specifying that the database is compiled from the Gartner TalentNeuron database, covering over 15,000 sources, and including job title, occupation, employer, geographic location, industry source, publication date, the full text of the

4

advertisements, and a URL with the source, confirming the listing was available to be viewed. *See* Declaration of Chad L. Staller ("Staller Decl., ECF 147), at ¶¶ 23-25. The problem is, Staller has no personal knowledge concerning the Forensic Jobstats database. His Declaration is based only on Gartner's web page entries. This doesn't solve the problem. Particularly because the "About" page of the database states that "Forensic Jobstats harnesses a unique database of help wanted adds **for use in litigation.**" *See* www.forensicjobstats.com/aboutus.html (visited 12/22/2022).

The database is thus *inherently suspect*. We do not know anything about the entries it contains, which purport to be culled from many job posting sources that are of no known providence. Perusal of the job listings cited in Staller's report makes this clear. For example, picking arbitrary pages from the "Job Postings for Selected Ads" pulled by Staller reveals putative job listings from such web pages as "JobNetwork," "Jobvertise," US.jobs, Elance, Advertising Crossing, Compliance Jobs, and Recruit.net. *See* Staller Report, ECF 132-2, at page 17 of 608. There's no way to know whether these are genuine resources, whether they have any material market share that would justify their inclusion in a database, what kind of traffic they get, or anything of the kind. The problem identified in *Speights* remains unsolved here.

Moreover, even were the Court to allow the use of the Forensic Jobstats data, Staller failed to tailor the data, pulling jobs based upon a query of Standard Occupational Codes, including jobs that were unsuitable for several reasons, including: Ms. Fischman did not possess a New York law license; Staller made the incorrect assumption that she was eligible for bar reciprocity; Staller included jobs Ms. Fischman could not have qualified for prior to passing and gaining admission to the New York bar; and Staller included low paying *per diem* jobs that are not even close to suitable employment for an experienced Fortune 500 attorney. *See* MOL at 17-19. For all of the reasons set forth above, the Staller Testimony should be excluded.

## II.     The Report and Anticipated Testimony of Rona Wexler should be Excluded

As set forth in our opening brief, Wexler's entire report and anticipated testimony (the "Wexler Testimony") should be precluded.

### A     Wexler is not Qualified to Offer Expert Testimony

While Wexler *might* be qualified to provide expert testimony concerning vocational rehabilitation in a case involving a disabled worker, Wexler is not qualified to offer expert testimony as an *employability* expert, because she lacks any skills or qualifications related to the job search expertise, particularly with respect to job placement for an experienced Fortune 500 attorney such as Ms. Fischman.  *See* MOL at 23-25.

Indeed, Wexler's sole claim to qualification as an expert is that she has a "Diplomate" from the American Board of Vocational Experts ("ABVE"), although it's unclear that she even possesses the qualifications that the ABVE purports to require, including "specific knowledge or vocational assessment, functional capacity measures, psychological tests and measurement, job analysis, job placement, and job surveys." *Id*. at 23-24.

Wexler's CV does not indicate any type of training in psychological testing and measurement, and she admitted during her deposition that she has no job analysis experience or statistical training (*id*. at 24, citing Wexler deposition transcript).  Likewise, the declaration Wexler submitted in opposition to the instant Motions evades the question of whether she actually possesses all of the specific knowledge required by the ABVE.

Instead, Ms. Wexler's declaration states that the ABVE requires such knowledge (which is not disputed), but does not claim that she actually possesses any.  *See* Declaration of Rona Wexler,

6

filed as ECF 147-2, at ¶¶ 6-12 (failing to claim any specific knowledge concerning, for example, psychological tests and measurement, job analysis, job placement, and job surveys).

Most crucially, Wexler testified that there's nothing at all "scientific" about the nature of her work. She's a former *recruiter* but even this experience is confined to the media and publishing industry, because she has no legal training or any experience whatsoever concerning the placement of attorneys into jobs. MOL at 24. For these reasons, which Defendants do not even attempt to rebut, the Wexler Testimony should be excluded in its entirety.

### B  Wexler's Testimony Should Be Precluded under Second Circuit Caselaw

Wexler's Testimony suffers from the same legal defects that compel preclusion of Staller's Testimony, as set forth in section I(A), above, under Second Circuit caselaw including *Yang, Roniger,* and *Castelluccio, supra.* Like Staller, Wexler impermissibly seeks to opine on the *reasonableness* of Ms. Fischman's job search efforts, and that Ms. Fischman, had she performed a reasonably diligent job search for comparable employment, would have been expected to be hired into a Corporate Lawyer or Chief Executive position with significant higher earnings than she would reasonably expect to make as a Real Estate Sales Agent. As set forth in section I(a) above, such opinions are not proper subjects for expert testimony.

### C  Wexler's Testimony Will Not Aid the Factfinder

As set forth in our opening brief, Wexler's opinions are lay opinions – not expert opinions, and will not be helpful to the factfinder. While Wexler's Testimony purports to be based upon the fourteen step VRA model, she conceded that her use of the model "is as much an art as a science," that there is no professional methodology for applying some of the steps in the model, and that in preparing her report, she relied upon "common sense tips for job seekers" and that you don't need to be an expert to review a resume or LinkedIn profile for the purpose of identifying transportable job skills. MOL at 25-26. These concessions compel the conclusion that Wexler's Testimony

7

does not satisfy the expert testimony requirements of F.R.E. 702, and Defendants have not even attempted to rebut these points.

Nor do Defendants rebut our arguments that her Reasonableness Opinion is based on only five (5) of the fourteen (14) steps in the VRA model, and that her Earnings Opinion is based only on a review of Ms. Fischman's resume and LinkedIn profile. MOL at 26.

Similarly, Defendants fail to refute that Wexler's conclusions concerning Ms. Fischman's prospects as a realtor are founded entirely on *inadmissible hearsay.* MOL at 26. She admitted that she failed to take into consideration that Ms. Fischman's mother is a real estate powerhouse in her local community, and that this would significantly increase Ms. Fischman's economic prospects. *Id*. Wexler didn't even look at Ms. Fischman's actual earnings selling real estate, preferring to stick to her speculation about the future, even though Wexler *conceded* that Ms. Fischman's actual earnings might have changed her opinion. *Id*. at 26-27.

        D        <u>Wexler Omitted Crucial Facts about Ms. Fischman and Made Faulty Assumptions</u>

In our opening brief, we pointed out that Wexler didn't know that Ms. Fischman's practice of law as a California-licensed attorney residing in New York was dependent upon a special license that was only available for in-house attorneys during the course of their employment, and that terminated upon the cessation of that employment. MOL at 27. This lack of knowledge about such a fundamental aspect of Ms. Fischman's job prospects renders Wexler's Testimony fundamentally useless.

So, for example, Wexler considered Ms. Fischman eligible to apply for all legal jobs within commuting distance from her home in Westchester, New York, even though it would have been against the law for Ms. Fischman to practice law within the state without first sitting for (and passing) the licensing examination and gaining admission to the New York Bar.

Wexler also arrived at her Earnings Opinion without considering any of the actual job search efforts that Ms. Fischman took to seek employment, even though she admitted that this information could change her opinion. Ms. Wexler thus failed to consider Ms. Fischman's testimony that she applied to over one hundred companies, sough positions with recruiters that had placed her in jobs previously, and conducted online research. MOL at 28. Similarly, Wexler failed to consider the impact of Ms. Fischman not being able to provide prospective employers with references from the job where she had worked for the past ten years, or the impact of Ms. Fischman's emotional distress. *Id*. Defendants' opposition brief addresses none of these shortcomings of the Wexler Testimony. *See generally*, Def. Mem.

Defendants' opposition papers also seemingly ignore our criticism that Wexler's duration of employment opinion was not based on any scientific or mathematical analysis, but instead was based solely on Wexler's *subjective judgment*, even though she has *zero* experience with job placements for legal professionals. MOL at 30. Worse, Wexler admitted both that other experts in her field might obtain different results because they could exercise their own judgment differently, and that her work cannot be replicated based upon her report. *Id*. This falls far short of the reliable principles and methods required by Rule 702 and *Daubert*, and because Defendants have failed to meet their burden as the proponents of Wexler's Testimony, it should be precluded in its entirety.

## Conclusion

For the reasons set forth in our opening brief and herein, the Staller Testimony and the Wexler Testimony should be excluded in their entirety.

Dated: Garden City, New York
December 22, 2022

Respectfully Submitted,

**VALLI KANE & VAGNINI LLP**

By: /s/ *Matthew L. Berman*

Sara Wyn Kane
skane@vkvlawyers.com
Robert J. Valli, Jr.
rvalli@vkvlawyers.com
Matthew L. Berman
mberman@vkvlawyers.com
600 Old Country Road
Garden City, New York 11530
Tel: (516) 203-7180
Fax: (516) 706-0248

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2022 a true and correct copy of Plaintiffs' Reply Memorandum of Law in Support of Plaintiff's Motions in Limine was served via electronic email on all counsel of record.

Date:   December 22, 2022

                                                            */s/ Matthew L. Berman*
                                                            Matthew L. Berman, Esq.