UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER S. FISCHMAN,<br><br>     Plaintiff,<br><br> -against-<br><br>MITSUBISHI CHEMICAL HOLDINGS AMERICA, INC.; MITSUBISHI CHEMICAL CORPORATION; MITSUBISHI CHEMICAL HOLDINGS CORPORATION; NICHOLAS OLIVA, in his individual and professional capacities; DONNA COSTA, in her individual and professional capacities; and JOHN DOES 1-10, in their individual and professional capacities,<br><br>     Defendants. | Index No. 18-cv-08188 (JMF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.       The Undisputed Facts Defeat Plaintiff's Claims of Gender Discrimination. ......... 1

           A.      Plaintiff's Appeal to Her Purportedly Superior Qualifications Cannot Salvage Her Gender Discrimination Claims. .............................................. 2

           B.      Costa's Undisputedly Critical Role in Each of the Employment Decisions Defeats Any Inference of Discrimination. .................................................. 4

           C.      Plaintiff Has Failed To Point to Any Evidence Showing That Defendants' Legitimate, Non-Discriminatory Reasons for the Employment Decisions Were Pretextual. ......................................................................................... 5

    II.      The Undisputed Facts Defeat Plaintiff's Retaliation Claims. ................................ 7

    III.     The Undisputed Facts Defeat Plaintiff's Pay Discrimination Claims. ................ 10

    IV.     Plaintiff's Claims Against Costa and Oliva Should Also Be Dismissed. ............. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cooper v. Morgenthau*,
   No. 99-cv-11946, 2001 WL 868003 (S.D.N.Y. July 31, 2001) ................................................... 5

*Del Villar v. Hyatt Hotel Corp.*,
   No. 19-CV-10891, 2022 WL 2316205 (S.D.N.Y. June 28, 2022) ......................................... 1, 5

*Downey v. Adloox Inc.*,
   No. 16-cv-01689, 2018 WL 5266875 (S.D.N.Y. Oct. 23, 2018),
    *aff'd*, 789 F. App'x 903 (2d Cir. 2019) ................................................................................. 5

*Gerentine v. U.S.*,
   No. 00-cv-0813, 2003 WL 255326 (S.D.N.Y. Feb 4, 2003.) ................................................ 7, 8

*Halkitis v. New York City Dep't of Educ.*,
   No. 19-cv-11753, 2022 WL 392911 (S.D.N.Y. Feb. 9, 2022) ................................................... 6

*Jeune v. City of New York*,
   No. 11-cv-07424, 2014 WL 83851 (S.D.N.Y. Jan. 9, 2014) ..................................................... 2

*Natofsky v. City of New York*,
   921 F.3d 337 (2d Cir. 2019) ...................................................................................................... 8

*Oluyomi v. Napolitano*,
   811 F. Supp. 2d 926 (S.D.N.Y. 2011) ....................................................................................... 3

*Peddy v. L'Oreal USA, Inc.*,
   848 F. App'x 25 (2d Cir. 2021) ................................................................................................. 3

*Spire v. MetLife Grp.*,
   No. 18-cv-04464, 2021 WL 3544719 (S.D.N.Y. Aug. 10, 2021) .............................................. 3

*Yu v. New York City Hous. Dev. Corp.*,
   494 F. App'x 122 (2d Cir. 2012) ............................................................................................... 2

**Statutes**

29 U.S.C. § 206(d)(1) ................................................................................................................... 10

NYLL § 194(1)(iv) ....................................................................................................................... 10

NYLL § 215 .................................................................................................................................... 8

**Rules**

LR 56.1 .............................................................................................................................. 1

**PRELIMINARY STATEMENT**

Plaintiff's gender discrimination claims should be dismissed. As Plaintiff's opposition brief ("Opp.") and responses to Defendants' Local Rule 56.1 Statement ("Pl.'s Resp. SOF") acknowledge, Costa made each of the Employment Decisions[1] because she was dissatisfied with Plaintiff's performance. Plaintiff's repeated touting of her credentials does not establish a *prima facie* case that any of the Employment Decisions was prompted by discriminatory *animus*.

Further, Plaintiff has not produced sufficient evidence upon which a rational jury could find that the non-discriminatory reasons identified by Defendants for the Employment Decisions were "false," and that "more likely than not discrimination was the real reason for the employment action."[2]

Plaintiff's retaliation claims fare no better. She offers no evidence that her alleged protected activities prompted the Employment Decisions, and the time lag between those activities and the Employment Decisions is too great to support any inference of a causal relationship. As for Plaintiff's pay discrimination claim, it is defeated by her admission that the salary of her sole comparator, Nicholas Oliva, was determined based on work experience that she lacked. Finally, because Plaintiff's claims against MCHA and MCHC cannot survive summary judgment, her derivative claims against Costa and Oliva must also be dismissed.

**ARGUMENT**

**I.      The Undisputed Facts Defeat Plaintiff's Claims of Gender Discrimination.**

To establish a *prima facie* case of discrimination under Title VII, the NYSHRL, and the NYCHRL, Plaintiff must show that she "was competent to perform the job in question, or was

---

[1] Capitalized terms have the same meanings as in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Mem."), ECF No. 136.
[2] *Del Villar v. Hyatt Hotel Corp.*, No. 19-CV-10891, 2022 WL 2316205, at *4 (S.D.N.Y. June 28, 2022) (Furman, J.).

performing the job duties satisfactorily" and that the adverse employment actions taken against her "occurred under circumstances that give rise to an inference of discrimination." *Jeune v. City of New York*, No. 11-cv-07424, 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014) (Furman, J.). Plaintiff's opposition confirms that she cannot satisfy either of those prongs of the *prima facie* test.

### A. Plaintiff's Appeal to Her Purportedly Superior Qualifications Cannot Salvage Her Gender Discrimination Claims.

Plaintiff argues both that she was "qualified" for the full General Counsel position and that the superiority of her qualifications to Oliva's gives rise to an inference of discrimination. (Opp. at 5-9.) Neither contention is correct.

In light of Plaintiff's significant, documented professional deficits, her degree from "a top-25 tier law school," experience at various law firms, in-house experience at Raytheon, and brief tenure as an intern and extern for two federal judges (Pl. Ex. 1, ECF No. 152-1) did not qualify her to be MCHA's General Counsel. (*See* Opp. at 6-7.) Although she may have met the minimal technical requirements to fill the position, Plaintiff lacked the judgment and communication skills necessary to succeed in the role. *See Yu v. New York City Hous. Dev. Corp.*, 494 F. App'x 122, 125 (2d Cir. 2012) (affirming order granting summary judgment in defendants' favor where the "defendants demonstrated that the reason [the plaintiff] was not promoted . . . , despite having technical qualifications for the position, was that the position required strong communications, interpersonal, and leadership skills, and that the candidate who was promoted possessed these attributes while, in the judgment of his employers, [the plaintiff] did not."). Costa had supervised Plaintiff for years and harbored doubts about her ability to serve as MCHA's General Counsel. (*See, e.g.*, SOF ¶ 45.) Costa therefore decided to promote Plaintiff to the Acting General Counsel position for a probationary period to assess whether Plaintiff could handle the role. (SOF ¶ 46.) Within a few months, Costa determined that Plaintiff could not. (*See, e.g.*, SOF

¶ 66.) It is undisputed that others at MCHA shared Costa's assessment, including Saunders and Troccoli. (*See, e.g.*, Pl.'s Resp. SOF (ECF No. 151) ¶¶ 66-68.)³

Plaintiff's reliance on her credentials as evidence giving rise to an inference of discrimination is even more misplaced. A "plaintiff who raises her supposedly superior qualifications for the job as circumstantial evidence of causation must present evidence that her credentials were so superior to the credentials of the person selected for the job that no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question." *Peddy v. L'Oreal USA, Inc.*, 848 F. App'x 25, 26 (2d Cir. 2021) (internal quotation marks omitted). Plaintiff's contentions that Oliva purportedly "went to a less prestigious law school" and did not have some of her experience, plainly do not meet that high standard. (Pl.'s Resp. SOF ¶ 166.) Additionally, Plaintiff's admission that she lacked Mr. Oliva's management and pharmaceutical experience further undercuts her argument. (*Id.* ¶ 110 (not disputing that "Plaintiff did not have the same pharmaceutical experience as Mr. Oliva or experience managing a global team.").)

Costa and MCHA had the right to determine whether Oliva was more qualified than Plaintiff for the General Counsel position based on the needs of MCHA and its clients. *See, e.g.*, *Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 943 (S.D.N.Y. 2011) ("An employer has the right to decide how it will value the qualifications of different candidates."); *Spire v. MetLife Grp.*, No. 18-cv-04464, 2021 WL 3544719, at *7 (S.D.N.Y. Aug. 10, 2021) (finding the fact that plaintiff "was, in his view, more qualified than" the person promoted to be "immaterial"). Plaintiff's credentials, however strong they may be, neither qualified her for the role of MCHA's General Counsel nor raise any inference of discrimination against her.

---

³ Although the Local Rules and this Court's own rules neither require nor authorize a response to Plaintiff's statement of additional material facts (*see* Pl.'s Resp. SOF at 41-46), none of the additional facts offered by Plaintiff, whether admitted or contested by Defendants, would create an issue of *material* fact. Those additional facts do not undermine any of the points made either in Defendants' motion for summary judgment or in this reply memorandum of law.

Likewise unavailing is Plaintiff's assertion that Bill Radlien and Dennis Trice of Mitsubishi Polyester Film, each stated to Plaintiff that Costa had "expended all of her political capital" on her own promotion and that Defendants were not "going to let two women run that business." (Opp. at 2.) This assertion is inadmissible hearsay. It also is unsupported by the record. Indeed, it is telling that although both Radlien and Trice were deposed in this matter, Plaintiff does not cite to any of their respective testimony in raising this issue.

### B. Costa's Undisputedly Critical Role in Each of the Employment Decisions Defeats Any Inference of Discrimination.

Plaintiff argues that the same-actor inference does not apply here because Costa did not play a critical role in the Employment Decisions. (Opp. at 10.) That argument is both incorrect and irrelevant. There is no genuine dispute that Costa both hired Plaintiff and played a critical role in each of the Employment Decisions. Indeed, Plaintiff agrees that Costa hired her. (Pl.'s SOF Resp. ¶ 23.) Further, Plaintiff concedes that Costa made or drove each of the Employment Decisions:

1. ***Giving Plaintiff the Title of Acting General Counsel.*** Plaintiff concedes that the "decision" to name her *Acting* instead of *full* General Counsel was Costa's. (Pl.'s SOF. Resp. ¶ 31.)

2. ***Returning Plaintiff from the Role of MCHA's Acting General Counsel to Her Former Assistant General Counsel Position.*** Plaintiff does not dispute that Costa came up with the idea of replacing her with Oliva (Pl.'s SOF. Resp. ¶ 31) nor that Costa "accepted [an MCHC employee's] request that MCHA offer Plaintiff her prior position instead of terminating her employment" (*id*. ¶ 89.)

3. ***Terminating Plaintiff's Employment.*** Plaintiff concedes that the "inclination" to terminate her was Costa's. (*See* Pl.'s SOF. Resp. ¶ 71 (contending that "Costa's inclination to terminate Plaintiff was subject to MCHC's input and approval."); *see also id*. ¶ 87.) Indeed, Plaintiff's Opposition quotes notes written by Patricia Saunders, MCHA's Director of Human Resources, confirming that Costa made the ultimate decision to terminate Plaintiff for cause and without severance. (Opp. at 17 (quoting Berman Decl., Ex. 20 (ECF No. 152-20)); *see* Pl.'s SOF. Resp. ¶ 71 (same).)

Given Costa's undisputedly significant role in the Employment Decisions, the same-actor

-4-

inference applies here, defeating any inference of discrimination. *See, e.g.*, *Cooper v. Morgenthau*, No. 99-cv-11946, 2001 WL 868003, at *6 (S.D.N.Y. July 31, 2001) ("The same actor inference applies when the supervisor had important influence if not complete authority over the plaintiff."); *Downey v. Adloox Inc.*, No. 16-cv-01689, 2018 WL 5266875, at *7 (S.D.N.Y. Oct. 23, 2018) (Furman, J.) ("Second Circuit precedent weighs against finding an inference of discriminatory *animus* here given that the decisionmakers who were involved in firing [the plaintiff] . . . were the same people who had hired him . . . ."), *aff'd*, 789 F. App'x 903 (2d Cir. 2019).

      **C.**    **Plaintiff Has Failed To Point to Any Evidence Showing That Defendants' Legitimate, Non-Discriminatory Reasons for the Employment Decisions Were Pretextual.**

Plaintiff has failed to point to any evidence that Defendants' legitimate, business-related reasons for each of the Employment Decisions were pretextual—let alone "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [Defendants] were false, and that more likely than not discrimination was the real reason for the employment action." *Del Villar*, 2022 WL 2316205, at *4.

As to her promotion to the Acting rather than full General Counsel position, Plaintiff's opposition is devoid of any legal support for her contention that a significant promotion, though not the precise promotion Plaintiff preferred, is an adverse employment action. Even if this were an adverse employment action, Plaintiff's principal argument that this action must have been discriminatory must fail. Plaintiff contends that Costa could not have had concerns about her ability to handle the General Counsel position because Costa assigned her all responsibilities associated with that position. (Opp. at 12.) This is illogical: Costa promoted Plaintiff to the Acting General Counsel position on a probationary basis precisely to evaluate whether she could handle the role. (*See* SOF ¶ 46.) To make that evaluation, Costa had to assign Plaintiff all of the role's duties.

Plaintiff also argues that Oliva's hiring as a full (rather than Acting) General Counsel demonstrates that Plaintiff was not promoted to the full position because she is a woman. (Opp. at 12.) But that ignores that MCHA's previous General Counsel, Costa, was also a woman and, like Oliva, was hired as a full General Counsel. The factor distinguishing Plaintiff from Costa and Oliva was that MCHA had concerns about Plaintiff's ability to succeed in the General Counsel role, but not Costa's or Oliva's.

As to her return to her previous Assistant General Counsel position, Plaintiff quibbles with the accuracy of Costa's well-documented November 2015 mid-year review of her performance. (Opp. at 12-15.) But a plaintiff's "disagreement with [his] employer's evaluation of [his] performance is insufficient to establish discriminatory intent." *Halkitis v. New York City Dep't of Educ.*, No. 19-cv-11753, 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022) (Furman, J.) (alterations in original; internal quotation marks omitted). Plaintiff also argues that the November 2015 review "lacks credibility" because of how much it differed from Costa's earlier, more positive assessments of Plaintiff's performance. (Opp. at 14.) But the reason for Costa's changed assessment is obvious: the assessments were for two entirely different positions. While Plaintiff was able to handle the role of Assistant General Counsel, she floundered in the Acting General Counsel role.

Finally, as to her termination, Plaintiff argues that Defendants' ultimate reason for terminating her—her approval of a settlement proposal without client authorization—is pretextual. But Plaintiff does not dispute that after the incident "Oliva felt [he] could no longer trust Plaintiff to do her job or to advance the legal department of MCHA." (Pl.'s SOF Resp. ¶ 158). The evidence shows that was precisely the reason that MCHA cited for terminating Plaintiff. (*See* Ex. TTTT (email from Costa approving the decision to terminate Plaintiff because "[her] most recent conduct [wa]s egregious and ha[d] completely destroyed Nick [Oliva]'s trust in her").) Even if Plaintiff's

characterization of that incident as a "miscommunication" were right (*see*, Pl.'s SOF Resp. ¶ 149), the conclusion would be the same: it is undisputed that Plaintiff's colleagues at MCHA had for years and on many occasions expressed concern about her communication skills. (*See, e.g.*, Pl.'s SOF Resp. ¶¶ 37, 46, 59, 68, 78, 132.) Whether a miscommunication or worse, the incident, not Plaintiff's gender, was the reason for Plaintiff's termination. *See Gerentine v. U.S.*, No. 00-cv-0813, 2003 WL 255326, at *5 (S.D.N.Y. Feb 4, 2003.) (Courts "do not sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, [their] inquiry is limited to whether the employer gave an honest explanation of its behavior . . . .").

Plaintiff has failed to raise a genuine issue of material fact as to her gender discrimination claims. To the extent Plaintiff relies on an alleged pay disparity between her and Oliva to support her gender discrimination claims, those claims should be dismissed for the same reasons enumerated above (*see also infra* Section III)—Plaintiff has failed to establish a *prima facie* case of gender discrimination or to point to sufficient evidence demonstrating that Defendants' legitimate, business-related reasons for Oliva's compensation were pretextual. Summary judgment is warranted on those claims.

**II.     The Undisputed Facts Defeat Plaintiff's Retaliation Claims.**

Plaintiff's Opposition describes three alleged instances of protected activity. Even if they occurred, not one caused any of the Employment Decisions. *First*, Plaintiff doubles down on her argument that Shoji Yoshisato, MCHA's then-president, retaliated against her for investigating sexual harassment claims against him by "suggest[ing] naming Plaintiff as *Acting* (not Full) GC." (Opp. at 10 (emphasis in original).) Even if that were true—and it is not (*see* Mem. at 22–23)—it would be irrelevant because it is undisputed that the decision to name Plaintiff Acting General Counsel, a significant promotion, was Costa's, not Yoshisato's. (*See* Pl.'s SOF. Resp. ¶ 31 (referring to "Costa's decision to name Plaintiff Acting General Counsel").)

Plaintiff also argues that "Costa's concerns" about her suitability for the General Counsel role were "pretextual" because Costa was purportedly less qualified than Plaintiff to be MCHA's General Counsel when she was appointed to that position. (Opp. at 19.) Plaintiff's assertion that she had more experience than Costa did in 1996 is irrelevant because Costa belongs to the same protected class as Plaintiff. Plaintiff's assertion provides no basis to question Costa's judgment about the qualifications that were most important for MCHA's General Counsel. *See Gerentine*, 2003 WL 255326, at *5. Costa—who directly supervised Plaintiff and whose 19-year tenure as MCHA's General Counsel was so successful that she was promoted to President of MCHA (Pl.'s SOF. Resp. ¶¶ 2,26, 42)—was ideally situated to determine whether Plaintiff should be appointed to the full General Counsel position or promoted to the Acting position for a probationary period.

*Second*, Plaintiff argues that Defendants retaliated against her for a complaint she allegedly made to Oliva in March 2016 about the denial of severance to an employee of an MCHA client company. (Opp. at 20.) This Court has already dismissed Plaintiff's analogous retaliation claim under NYLL § 215 based on the same factual predicate on the grounds that the "nearly ten-month gap" between the complaint she allegedly made in March 2016 and her termination in January 2017 was "insufficient to support an inference of causation." (July 11, 2019 Opinion and Order (ECF No. 35) at 14-15.) Instead, Plaintiff now asserts that Oliva retaliated against her by giving her a "Needs Improvement" rating in an April 2016 performance review. (Opp. at 20.) However, a "negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019).

*Finally*, Plaintiff cites her own deposition testimony asserting, in a wholly conclusory fashion, that she was terminated for allegedly "complain[ing] about the disparate treatment she suffered at MCHA based on her gender." (Opp. at 20.) Neither Plaintiff's opposition brief (*see id.*

at 20-21) nor the testimony she cites (*see* Ex. J at 423:8-17) indicates when or to whom she made those purported complaints.[4] Even if Plaintiff had made such complaints that constituted protected activity, she cannot establish that those complaints caused her termination. Plaintiff points to no documentary evidence suggesting that her complaints led to her termination. Furthermore, any such complaints would have been made far too long before her termination for Plaintiff to rely on temporal proximity for causation. (*See, e.g.*, (July 11, 2019 Opinion and Order (ECF No. 35) at 15 (citing decisions holding that time lapses as short as two months between a plaintiff's protected activities and the alleged retaliatory acts are, without more, too long to support an inference of causation).) Even the latest event of disparate treatment that Plaintiff alleges—Oliva's hiring in the fall of 2015—happened well over a year before she was terminated in late January 2017. (Pl.'s Resp. SOF ¶¶ 1, 3.)

In any event, the reason for Plaintiff's termination is not genuinely disputed. Plaintiff was terminated because of multiple shortcomings and mistakes, culminating in her failure to secure a client's authorization before she approved a multimillion-dollar settlement counterproposal in a pending litigation. (*See* Defs.' SOF ¶¶ 136–65.) Although Plaintiff characterizes this incident as a "miscommunication" (Pl.'s Resp. SOF ¶ 149), she does not dispute that after the incident "Oliva felt [he] could no longer trust Plaintiff to do her job or to advance the legal department of MCHA." (*Id.* ¶ 158.) Plaintiff's assertion of pretext is further contradicted by her admission that she was long scheduled for a business trip to California with Oliva. The trip is evidence that her termination had not been planned, but rather was prompted by Oliva's discovery of Plaintiff's misconduct regarding the unauthorized settlement offer. Plaintiff offers no genuine dispute of fact to undercut

---

[4] In support of the argument that she complained about her own alleged disparate treatment, Plaintiff also cites Saunders's testimony. (*See* Opp. at 20 (citing Ex. G at 215:25-216:4).) But the testimony Plaintiff cites merely says that Plaintiff once made a "remark" to Saunders "in passing" that MCHA "hired a male." (Ex. G. at 215:25-216:10.) And Saunders testified repeatedly that the remark "was not a complaint." (Ex. G at 216:11–18).

Defendants' proffered legitimate reason for terminating her.

### III. The Undisputed Facts Defeat Plaintiff's Pay Discrimination Claims.

Plaintiff argues that Defendants violated the federal and New York state Equal Pay Acts because MCHA paid Oliva $25,000 more in salary than it had paid Plaintiff when she served as MCHA's Acting General Counsel. (Opp. at 22–23.) But the undisputed facts put the lie to that argument. Plaintiff disputes neither that "[she] did not have the same pharmaceutical experience as Mr. Oliva or experience managing a global team," nor that "Mr. Oliva negotiated with MCHA over his compensation package, . . . securing . . . a base salary of $325,000 **based upon his work experience**." (Pl.'s Resp. SOF ¶¶ 110, 113 (emphasis added).) It is therefore undisputed that the difference between Plaintiff's and Oliva's salaries is justified by "a differential based on [a] factor other than sex"—his work experience. 29 U.S.C. § 206(d)(1)); *see* N.Y. Lab. Law 194(1)(iv).

Plaintiff also argues that "a jury could reasonably conclude" that MCHA's reason for paying Oliva more than Plaintiff was "pretextual" because "Plaintiff was more qualified for the GC position." (Opp. at 23.) Not so. Her concessions that Oliva's salary was based on his work experience and that she lacked some of the relevant experience that he had vitiate any pretext argument. Plaintiff's Equal Pay Act claims therefore cannot survive summary judgment.

### IV. Plaintiff's Claims Against Costa and Oliva Should Also Be Dismissed.

Because none of Plaintiff's claims against MCHA or MCHC can survive summary judgment, Plaintiff's aiding and abetting claims against Costa and Oliva must also be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment in its entirety.

Dated: New York, New York
December 22, 2022

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

/s/*Mercedes Colwin*
Mercedes Colwin
Brittany L. Primavera
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Telephone: (212) 269-5500
mcolwin@grsm.com
bprimavera@grsm.com

*Attorneys for Defendants Mitsubishi Chemical Holdings America, Inc., now known as Mitsubishi Chemical America, Inc., Donna Costa, and Nicholas Oliva*

SHEARMAN & STERLING LLP

/s/*Jerome S. Fortinsky*
Jerome S. Fortinsky
Nikolai Krylov
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
jfortinsky@shearman.com
nik.krylov@shearman.com

George Anhang
401 9th Street, N.W.
Suite 800
Washington, DC  20004
Telephone: (202) 508-8000
george.anhang@shearman.com

*Attorneys for Defendant Mitsubishi Chemical Holdings Corporation, now known as Mitsubishi Chemical Group Corporation*

-12-

                CLARICK GUERON REISBAUM LLP

                /s/*Nicole L. Gueron*
                Nicole L. Gueron
                220 Fifth Avenue
                New York, New York 10001
                Telephone: (212) 633-4310
                ngueron@cgr-law.com

                *Attorneys for Defendant Donna Costa*